RUSS AUGUST & KABAT
Marc A. Fenster (SBN 181067)
mfenster@raklaw.com
Dale Chang (SBN 248657)
dchang@raklaw.com
Paul A. Kroeger (SBN 229074)
pkroeger@raklaw.com
12424 Wilshire Boulevard, 12FL
Los Angeles, California 90025
310/826-7474 – Telephone
310/826-6991 – Facsimile

*Attorneys for Plaintiff*
MR TECHNOLOGIES, GMBH

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MR TECHNOLOGIES, GMBH,<br><br>    Plaintiff,<br><br>v.<br><br>WESTERN DIGITAL TECHNOLOGIES, INC.,<br><br>    Defendant.<br><br>WESTERN DIGITAL TECHNOLOGIES, INC.,<br><br>    Counterclaimant,<br><br>v.<br><br>MR TECHNOLOGIES, GMBH,<br><br>    Counterclaim-Defendant. | Case No. 8:22-CV-01599-JVS-DFM<br><br>**PLAINTIFF MR TECHNOLOGIES, GMBH'S REPLY IN SUPPORT OF MOTION TO STRIKE DEFENDANT WESTERN DIGITAL TECHNOLOGIES, INC.'S UNTIMELY NONINFRINGEMENT ARGUMENTS**<br><br>Date: March 18, 2024<br>Time: 1:30 p.m.<br>Courtroom: 10C<br><br>Complaint Filed: August 26, 2022 |

### A. WD Was Required—and Failed—to Timely Amend Its Contention Interrogatories

WD has apparently taken the position that it is entitled to withhold disclosure of its noninfringement theories until the deadline for its noninfringement expert report (March 12). Not so. Indeed, the *Medtronic* case cited by WD as purported support for this erroneous position expressly states that "[a]lthough the Patent Local Rules do not require disclosure theories of non-infringement, ***the party asserting non-infringement has a duty to amend contention interrogatories in a timely manner*** even where the patentee's opening expert reports disclose additional details and evidence." *Medtronic Inc. v. Edwards Lifesciences Corp.*, No. SACV 12-00327-JVS (MLGx), 2013 U.S. Dist. LEXIS 201301, at *10 (C.D. Cal. July 24, 2013); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 U.S. Dist. LEXIS 108648, at *25 (N.D. Cal. Aug. 2, 2012) (upholding order excluding portions of rebuttal expert reports offering new non-infringement theories and relying on previously undisclosed evidence, finding that defendant had a duty to "amend[] its responses to the contention interrogatories in a timely manner"). The other cases cited by WD are inapposite, as they hold only that deficiencies in asserted noninfringement theories do not justify a plaintiff's "delay in asserting all of the infringement theories it reasonably believed it could assert." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 91450, at *38 (N.D. Cal. June 26, 2013); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 21413, at *25 (N.D. Cal. Feb. 20, 2015) (denying leave to amend infringement contentions). Unlike those cases, MR Tech is not seeking to add any new infringement theories to this case. Rather, it is seeking to preclude WD's eleventh-hour disclosures, as this Court did in *SPEX*.

WD's attempt to distinguish *SPEX* is unavailing, and only further demonstrates that striking its newly disclosed noninfringement theories is appropriate here. According to WD, "SPEX relied on the same infringement theories

it previously asserted," "WD supplemented its prior non-infringement theory with new arguments," and because "SPEX did not have an opportunity to conduct fact discovery on these new theories, … the Court struck these new non-infringement theories." Opp. at 14. These statements are equally applicable here. MR Tech is relying on the same infringement theories it previously asserted, WD has added new arguments to its noninfringement theories, and MR Tech did not have an opportunity conduct full fact discovery on these new theories.

WD's assertion that its "positions and evidence were disclosed before the close of fact discovery" (Opp. at 14) fails. The court-ordered deadline for fact discovery was January 30. Dkt. 187. WD disclosed its new theories for the first time in an email sent on February 7. While it is true that the parties stipulated to a brief extension of fact discovery to February 12, WD simply ignores that this extension was for the limited purpose of completing previously noticed fact depositions and allowing WD to produce certain documents that MR Tech had been requesting for months. Ex. 2. WD does not dispute this fact, nor does it point to anything supporting that MR Tech agreed to allow WD's belated disclosure of new noninfringement theories. And even *if* its disclosures could be properly considered as within the fact discovery period, WD cannot seriously contend that the three court days between WD's email disclosure and the stipulated extended discovery cutoff was sufficient for MR Tech to conduct a fulsome investigation of the new theories.

**B.    WD Has No Excuse for Its Late Disclosure**

According to WD, its new noninfringement theories are based on "analysis [that] was developed by or at the direction of Dr. Bertero after the Court's claim construction ruling on December 26, 2023." Opp. at 3. Said analysis and testing allegedly was not completed until February 6, 2023. *Id.* WD, however, fails to explain how the Court's claim construction ruling had any bearing on its new noninfringement positions—because they do not. For example, MR Tech identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by no later than February 21,

2023 in its first amended infringement contentions. *See* Ex. 4 at 22 (stating that ▮▮▮ ▮▮▮ ▮▮▮); Ex. 5 at 33 (same). MR Tech identified ▮▮▮ in its second amended infringement contentions served on July 14, 2023. *See, e.g.*, Ex. 6 at 10, Ex. 7. WD never suggested that these contentions were deficient. Moreover, *both WD and MR Tech* proposed constructions that required ▮▮▮ to "store information in magnetically oriented bits." Dkt. 137 at 2.

| 4. "hard magnetic storage layer" | plain meaning - a magnetic layer that has higher anisotropy than the nucleation host and which stores information in magnetically oriented bits | a magnetic layer that has $H_c > 2$ T and the highest anisotropy of the layers in the recording medium, and which stores information in magnetically oriented bits |
|---|---|---|

In other words, WD *never disputed* that ▮▮▮. It is thus clear that WD's brand new noninfringement argument that ▮▮▮ has nothing to do with the Court's claim construction order.

For the "coercive field" limitation, there likewise can be no dispute that WD was on notice of MR Tech's contention that ▮▮▮. MR Tech also clearly asserted that ▮▮▮. *See* Ex. 6 at 10 (further noting that "WD has not yet produced responsive documents relevant to this limitation"); Ex. 8 at 11–12 (same). The parties *agreed* that the "coercive field" should be construed in accordance with its plain meaning, i.e., "a property of magnetic materials that provides a measure of the ability of a ferromagnetic material to withstand an external magnetic field without becoming demagnetized." Dkt. 137 at 1. WD *never disputed* that ▮▮▮. Thus, WD's new noninfringement

3
REPLY IN SUPPORT OF MOTION TO STRIKE

theory disputing this limitation also has nothing to do with the Court's claim construction order.

For the "formed on" limitation, MR Tech clearly identified ████████ ████████████████████████████████████████████████████████. See Ex. 6 at 9. Notably, the parties agreed this term should be given its plain meaning, and thus "formed on" was not proposed for construction. See Dkt. 137. Furthermore, on November 9, 2023, MR Tech made clear that ████████████████████ ██████████████████████████████████████████████████████████." Ex. 10. Thus, WD cannot credibly argue that its new noninfringement argument that ██ ████████████████████████████████████████████████████████████ ████ has anything to do with the Court's claim construction order or any new infringement arguments by MR Tech regarding ████████████.

Regarding the new testing conducted by WD at the close of fact discovery, Dr. Bertero testified at his February 22, 2024 deposition that "maybe it was months ago" that he asked WD to perform the testing. And Dr. Bertero was hardly involved—he admitted that he does not know who conducted the tests, where they were done (China or US), or when they were conducted. Dkt. 264-2 at 316:21–319:13. He did not examine the samples (before or after the test), did not supervise the testing, was not present for the testing, and was not provided the protocols used to conduct the testing. *Id*. Further, WD's 30(b)(6) representative Dr. Desai, who was designated on topics relating to the design and development of the accused products, admitted at deposition that WD conducted the testing without Dr. Bertero's input at all and simply provided him with the test results after it was completed. Ex. 9 at 288:25–291:23, 301:22–303:25 (admitting that "[WD] just provided the data to [Dr. Bertero]" and that Dr. Bertero did not question or provide any feedback or input on the test results). This testimony refutes WD's representation to the Court that its new noninfringement theories are based on "analysis [that] was developed by or at the direction of Dr. Bertero."

1    It is thus clear that WD's attempts to blame its late testing and disclosures on the Court's claim construction order, Dr. Bertero (who has been WD's expert since at least March 2023 (*see* Dkt. 38-2)), and MR Tech's infringement theories are without merit. WD could have and should have begun the product testing much sooner. Notably, when MR Tech and WD were discussing the stipulated extension of time to complete fact depositions and document production, WD *never mentioned* that it had begun new testing or that it was planning to supplement its contention rog responses.

WD seems to think that disclosing its new theories two days before the deposition of its 30(b)(6) witness, and serving amended interrogatory responses *the morning of* the deposition, somehow constituted sufficient notice to MR Tech. Opp. at 3. That is absurd. While it is true that MR Tech questioned the witness about the testing (certainly not "extensively," as WD claims), and that MR Tech's expert addressed these arguments in its expert report, MR Tech and its expert were rushed and did the best they could with the little time they had. MR Tech did not have sufficient time to conduct a fulsome investigation of the new test data or conduct its own discovery in response. The fact that MR Tech will be able to depose Dr. Bertero on his forthcoming expert report does not change the fact that MR Tech was not able to conduct additional fact discovery into the underlying testing and results, which Dr. Bertero was barely involved with in the first place. As discussed in the copending evidentiary objections (Dkt. 234-1), WD has not authenticated the tests, and has not even identified who performed the tests, when or where they were performed, any information about the samples or the protocols used. Thus, MR Tech is unable to depose those who performed the testing, seek documents regarding the testing so that it might verify the results or repeat the tests to confirm the results, determine whether the proper testing parameters and protocols were used, or confirm that WD did not exclude unfavorable test results.

### C. The Prejudice to MR Tech Caused by WD's Late Disclosure of New Theories Cannot Be Cured

WD's assertion that the prejudice caused by its late disclosure of new noninfringement theories can be cured is wrong. Again, MR Tech was deprived the opportunity to conduct fact discovery into the underlying test data. A further "limited deposition" of Dr. Bertero and/or "allowing Dr. Re to issue a supplemental report, of limited scope to append to his opening expert report, to further address WD's noninfringement positions" (Opp. at 5) will not cure that prejudice. The only other option would be to reopen fact discovery—which has already been extended multiple times—but that would delay the trial, which would also prejudice MR Tech. Thus, the only way to avoid any prejudice to MR Tech would be to strike the new noninfringement theories.

The cases cited by WD are inapposite. As pointed out by WD, in *Altria*, the patentee's late-disclosed opinions at issue were primarily based on "publicly available information," depositions of the inventors, and a deposition of the defendant's corporate representative. *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, No. 1:20CV472, 2022 U.S. Dist. LEXIS 124411, at *16 (M.D.N.C. July 14, 2022). But here, WD's new theories were not based on public information or other information readily available to MR Tech—it was based on brand new testing data, conducted at the last minute by WD solely for the purpose of disputing claim limitations that WD had not previously disputed in this case. In *Biedermann*, the late contentions were disclosed with almost a month of fact discovery left—unlike the mere three court days here. *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, No. 2:18-CV-585, 2020 WL 1648470, at *1 (E.D. Va. Mar. 16, 2020). And in *Katz*, the court found the plaintiff was not prejudiced by the defendant's late disclosure of noninfringement contentions because the plaintiff's opposition to such contentions was based on a "purely legal argument *requiring no discovery*." *In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816-B-RGK (FFMx), 2008

U.S. Dist. LEXIS 128256, at *266 (C.D. Cal. Oct. 10, 2008) (emphasis added). Unlike *Katz*, MR Tech's counterarguments are highly fact intensive, and MR Tech and its experts would have benefitted from additional fact discovery into these issues. *See* Dkt. 257-4.

### D. MR Tech Timely Updated Its Infringement Contentions, and WD's Assertions Otherwise Are False

WD spends 8 pages of its 16-page opposition detailing how MR Tech purportedly failed to update its infringement contentions. Opp. at 6–13. This fails.

As an initial matter, WD's assertions are completely false. MR Tech served third amended infringement contentions on October 17, 2023, and then updated its contentions again on November 21, 2023 by serving Amended Appendix A to the contentions. *See* Ex. 11. Upon receipt of the updated contentions, counsel for WD specifically asked ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ *Id.* Counsel for MR Tech confirmed that they "████████████████████████ ██████████." *Id.* In other words, MR Tech did not add any new infringement theories. Rather, MR Tech only updated its contentions to add additional factual support (DCM codes) for the products that *WD delayed in producing*, and which were in WD's possession at least a month before the claim construction hearing and well before any substantive depositions. WD conveniently fails to mention any of the foregoing facts about MR Tech's November 21, 2023 amendment.

WD also fails to identify any new *arguments or theories* presented in Dr. Re's expert report—because there are none (as confirmed by WD's complaints about reliance on new "evidence" and data produced by WD as late as December 8, 2023 in place of estimated values (Opp. at 7–10)). Dr. Re's report reflects the same theories that MR Tech has been asserting in this case from the beginning. The last

time MR Tech added new theories was in August 2023, when MR Tech moved the Court to amend its contentions to add doctrine of equivalents arguments. Dkt. 100. The Court granted leave on October 6, 2023. Dkt. 153. To the extent that Dr. Re's report relies on additional *test data* produced by WD *after* November 21, 2023, this is inconsequential. Again, MR Tech did not change its theories, but rather added additional factual support that it had been seeking from WD for several months, and that WD failed to produce until the very end of fact discovery. Indeed, WD's final production of test data was not made until February 6, 2024. WD cannot seriously complain that MR Tech did not update its contentions with information that WD had been withholding until the end of fact discovery prior to serving its expert report on February 13.

WD's attempt to compare its failure to timely conduct the testing of its own products, and disclose its new noninfringement theories based thereon, to MR Tech's use of estimates as placeholders in its infringement contentions due to WD's failure to produce responsive documents relevant to certain claim limitations is nonsensical. All of the information regarding the functionality of WD's products has always been exclusively in the possession, custody, and control of WD. As detailed above, WD has been on notice of MR Tech's theories regarding the limitations implicated by WD's new noninfringement arguments since at least February 2023.

### E.    MR Tech Fully Complied with L.R. 7-3

WD asserts that MR Tech "made no attempt to thoroughly discuss the substance of this motion to strike with WD and as such makes no statement in this motion asserting its compliance with L.R. 7-3." Opp. at 16. This is false. The notice of motion and motion expressly states that "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 9, 2024." Dkt. 235. On February 9, the parties met in person, and MR Tech raised the issue of WD's improper disclosure of new noninfringement theories and notified WD it would proceed with a motion to strike. WD responded that it would oppose MR

Tech's motion and never proposed the "ameliorative measures" mentioned in its opposition (Opp. at 16). And regardless, for the reasons discussed above, they are insufficient to cure the prejudice to MR Tech. MR Tech thus fully complied with L.R. 7-3's meet and confer requirement.

* * *

For the reasons set forth above and in the motion and supporting memorandum of points and authorities, WD's new noninfringement theories disclosed in its second supplemental response to Interrogatory No. 1, served on February 9, 2024, should be struck from this case.

RUSS AUGUST & KABAT

Dated: March 4, 2024

By: */s/ Marc Fenster*
Marc Fenster
Dale Chang
Paul Kroeger

*Attorneys for Plaintiff*
MR TECHNOLOGIES, GMBH

## CERITICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document contains 2,816 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Marc A. Fenster*
Marc A. Fenster

## CERTIFICATE OF SERVICE

I hereby certify pursuant to the Federal Rules of Civil Procedure and LR 5-3 and 5-4 that the above document was served upon the attorney(s) of record for each party through the ECF system.

By: /s/ *Marc A. Fenster*
Marc A. Fenster