**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

MR TECHNOLOGIES, GMBH,                    )
                                          )
          Plaintiff and                   )   **Certified Transcript**
          Counterclaim Defendant,         )
                                          )   Case No.
          vs.                             )   8:22-cv-01599-JVS-DFM
                                          )
WESTERN DIGITAL TECHNOLOGIES,             )
INC.,                                     )
                                          )
          Defendant and                   )
          Counterclaim Plaintiff.         )   **DAY 1, VOLUME II**
                                          )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

TUESDAY, JULY 16, 2024

1:03 P.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**


**FOR PLAINTIFF and COUNTERCLAIM DEFENDANT:**

RUSS AUGUST & KABAT
BY:  MARC A FENSTER, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
mfenster@raklaw.com

RUSS AUGUST & KABAT
BY:  BRIAN D. LEDAHL, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
bledahl@raklaw.com

RUSS AUGUST & KABAT
BY:  JACOB ROBERT BUCZKO, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
jbuczko@raklaw.com

RUSS AUGUST & KABAT
BY:  MATTHEW D. AICHELE, ESQ., Pro Hac Vice
800 Maine Avenue, SW
Suite 200
Washington, D.C. 20024
202-664-0623
maichele@raklaw.com

RUSS AUGUST & KABAT
BY:  MINNA Y. CHAN, ATTORNEY AT LAW
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
mchan@raklaw.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL**
**(Continued:)**


**FOR PLAINTIFF AND COUNTERCLAIM DEFENDANT:**

RUSS AUGUST & KABAT
BY:  PAUL A. KROEGER, ESQ.
1224 Wilshire Boulevard
Suite 1200
Los Angeles, California 90025
310-826-7474
pkroeger@raklaw.com

RUSS AUGUST & KABAT
BY:  REZA MIRZAIE, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
rmirzaie@raklaw.com

RUSS AUGUST & KABAT
BY:  DALE CHANG, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
dchang@raklaw.com


**FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF:**

LATHAM & WATKINS LLP
BY:  DOUGLAS E. LUMISH, ESQ.
140 Scott Drive
Menlo Park, California 94025
650-328-4600
doug.lumish@lw.com

LATHAM & WATKINS LLP
BY:  JOSEPH HYUK LEE, ESQ.
650 Town Center Drive
20th Floor
Costa Mesa, California 92626
714-540-1235
joseph.lee@lw.com


**UNITED STATES DISTRICT COURT**

4

**APPEARANCES OF COUNSEL**
**(Continued:)**


**FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF:**


STRADLING YOCCA CARLSON & RAUTH LLP
BY:  SALIL BALI, ESQ.
660 Newport Center Drive
Suite 1600
Newport Beach, California 92660
949-725-4278
sbali@stradlinglaw.com

LATHAM & WATKINS LLP
BY:  CHAARUSHENA DEB, ATTORNEY AT LAW
140 Scott Drive
Menlo Park, California 94025
650-328-4600
chaaru.deb@lw.com

STRADLING YOCCA CARLSON & RAUTH LLP
BY:  STEVEN M. HANLE, ESQ.
660 Newport Center Drive
Suite 1600
Newport Beach, California 92660
949-725-4000
shanle@stradlinglaw.com

LATHAM AND WATKINS LLP
BY:  SARAH W. WANG, ATTORNEY AT LAW
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
312-876-7700
sarah.wang@lw.com

LATHAM & WATKINS LLP
BY:  PATRICIA YOUNG, ATTORNEY AT LAW
140 Scott Drive
Menlo Park, California 94025
650-328-4600
patricia.young@lw.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL**
**(Continued:)**


**FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF:**

LATHAM & WATKINS LLP
BY:  RICHARD GREGORY FRENKEL, ESQ.
140 Scott Drive
Menlo Park, California 94025-1008
650-328-4600
rick.frenkel@lw.com


**ALSO PRESENT:**

Wendy Liu, paralegal (Russ August & Kabat)
Dieter Suess, plaintiff's corporate representative
Chris Schmoller, defendant's IT technician
Mary Noffsinger, defendant's jury consultant

**I N D E X**

| | PAGE |
|---|---|
| Jury voir dire | 7 |
| Jury is sworn | 21 |
| Preliminary instructions | 22 |

**UNITED STATES DISTRICT COURT**

**SANTA ANA, CALIFORNIA; TUESDAY, JULY 16, 2024**

**1:03 P.M.**

**- - -**

**(Out of the presence of the prospective jurors.)**

THE COURT:  Anything before we bring the jury in?

THE COURTROOM DEPUTY:  All rise.

**(In the presence of the jury.)**

*Jury Voir Dire*

THE COURT:  Good afternoon, ladies and gentlemen.

At this time I am going to excuse Mr. I.C.  We thank you for being with us.  And --

MR. HANLE:  Your Honor, that wasn't one of the ones that was agreed to.

THE COURT:  Wait a minute.  I'm sorry.  Mr. J.R.

MR. LUMISH:  Mr. K.H.C.

MR. HANLE:  Mr. K.H.C.

THE COURT:  Mr. K.H.C., okay.

Mr. K.H.C., you're excused.

And I'm also going to excuse Ms. M.O.

Thank you for being with us.  Would you check out with the folks on the first floor, please.

THE COURTROOM DEPUTY:  M.J.R.  J.C.M.

THE COURT:  Good afternoon, Ms. M.J.R.

THE PROSPECTIVE JUROR:  Good afternoon.

**UNITED STATES DISTRICT COURT**

THE COURT: Do you have any answers from the group questions that I asked this morning?

THE PROSPECTIVE JUROR: I worked at the Naval Weapons Station in Seal Beach as an intern in college. That was my only military, working for the government experience.

THE COURT: Anything else from the questioning this morning that rang a bell with you?

THE PROSPECTIVE JUROR: No.

THE COURT: Can you tell us about your background, please.

THE PROSPECTIVE JUROR: With this sheet?

THE COURT: Yeah.

THE PROSPECTIVE JUROR: My name is M.J.R. I live in Midway City, which is a small town near Huntington Beach. Not too many people know where it is.

I have a Bachelor of Science in electrical engineering. I work for a company called Thales Avionics. They build in-flight entertainment for most of the commercial aircraft. We do use hard drives in our products. I manage a group of engineers that do the troubleshooting on things as they fail when they're installed at Boeing and Airbus mostly.

And I don't have any affiliation or background really with Western Digital other than it's a hard drive. I know kind of how they work, being an engineer. And no real feeling one way or the other about anything about that.

UNITED STATES DISTRICT COURT

I'm married.  I have three children, two boys that are mechanical engineers and work in the HVAC industry locally, and a daughter who is a credentialed teacher.  They're all out of college and in their 30s.  The adults I'm living with are my husband and my daughter.  Teachers don't get jobs quickly.  Let's see.  I told you about my children.

Prior jury service.  I was on one Superior Court trial for DUI, and we found him guilty.

THE COURT:  Thank you.

Ms. J.C.M., good afternoon.

THE PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Do you have any information to share with us from the group questions?

THE PROSPECTIVE JUROR:  No.

THE COURT:  Tell us about your background then.

THE PROSPECTIVE JUROR:  My name is J.C.M.  I live in Placentia.  I graduated high school.  I am an overnight stocker at Walmart.  I am married.  And I have three children: 22, 18 and 4.  Only my 22-year-old is working right now.

Prior jury service, no.

THE COURT:  What's your son do?

THE PROSPECTIVE JUROR:  My son works for a PCV piping company.

THE COURT:  Mr. Fenster, would you like to question?

MR. FENSTER:  Briefly, Your Honor.  Thank you.

Ms. J.C.M., as long as you have the microphone. Welcome. Good afternoon.

THE PROSPECTIVE JUROR: Good afternoon.

MR. FENSTER: Can you tell us a little bit about your sort of tech background or tech-savviness, how you feel about technology?

THE PROSPECTIVE JUROR: I rate myself, like the others, about a 5.

MR. FENSTER: Okay. And are you the person who takes care of technology in your house?

THE PROSPECTIVE JUROR: Not really. My son and my daughter, because they're younger. Younger crowd seems to be more tech-savvy.

MR. FENSTER: Yep. They do. Can you tell us a little bit about some of the websites or news sources or places you like to go for information?

THE PROSPECTIVE JUROR: I kind of gather information a few different ways. Do old-school library. We also do a lot of Google and news as well.

MR. FENSTER: Is there anything that you've heard, sitting in the cheap seats today, that would give you any pause or concern about serving on a jury today?

THE PROSPECTIVE JUROR: No.

MR. FENSTER: Okay. Thanks very much. If you wouldn't mind passing the microphone to Ms. M.J.R.

Good afternoon, Ms. M.J.R.

THE PROSPECTIVE JUROR:  Good afternoon.

MR. FENSTER:  Okay.  So you are an engineering manager; is that right?

THE PROSPECTIVE JUROR:  Yes.

MR. FENSTER:  And it's Thales --

THE PROSPECTIVE JUROR:  T-h-a-l-e-s.  It's a French company named Thales.

MR. FENSTER:  How large a company is that?

THE PROSPECTIVE JUROR:  Over 80,000 people internationally.  They do everything gate to gate for aircraft. Our specific Irvine office does the in-flight entertainment.

MR. FENSTER:  Okay.  And so who are some of your customers?

THE PROSPECTIVE JUROR:  Recently, Delta, American Airlines, Qatar, Emirates.  Even LOT, a Polish airlines.

MR. FENSTER:  And are you providing both the hardware and software for all of the in-flight entertainment?

THE PROSPECTIVE JUROR:  The company does.  I work mostly on the hardware end in operations.

MR. FENSTER:  Okay.  And what do you do on the hardware end?

THE PROSPECTIVE JUROR:  So when one of our units -- which they do have patents on; I'm not involved in that -- is installed at Boeing or Airbus, if it's a fail on fit or if it

UNITED STATES DISTRICT COURT

fails before the aircraft actually flies away to the final customer, whatever failure it is, it comes back to our office usually in Irvine.  They have parts there to replace it, so we don't slow down the assembly line.  It's kind of like a Ford plant.  They just kind of go along, and you can't slow them down.

And then it comes back here, it gets inspected and troubleshot by another group in our department.  I manage the engineers that actually look at the collective removals and see what's going on, if there's trends and things like that that are going on.  We don't go down and tear apart things like hard drives, but we would, you know, take a look and see if there's an issue and then work with the manufacturer if we saw a problem.

MR. FENSTER:  And who are some of the manufacturers that you work with?

THE PROSPECTIVE JUROR:  So, you know, Intrinsic and all kinds of IC companies.  Every kind of component that would be in a TV kind of piece of equipment or cabling, things like that.  Hard drives are part of that, obviously, because we have servers that store the TV shows and the movies that you're watching on the airplane.  But, again, I don't play with that kind of detail really a lot.

MR. FENSTER:  Are you involved in product selection or procurement or negotiation --

UNITED STATES DISTRICT COURT

THE PROSPECTIVE JUROR:  No.

MR. FENSTER:  -- or anything like that?

THE PROSPECTIVE JUROR:  No.

MR. FENSTER:  You mentioned that hard drives are used as part of your system.  Can you tell us a little bit about that?

THE PROSPECTIVE JUROR:  Sure.  So in the belly of the aircraft there are these servers that have multiple hard drives in them.  And they're either SSD or, you know -- the other style would have this spinning -- they work -- you know, obviously that's a very key part because you don't have a lot of those on the aircraft.  There's over 200 seats.  So one of those fails, one person doesn't have a thing working.  But if there's a hard drive failure, there's redundancy and things like that.

So it doesn't always come up.  As it's a problem, one will fail and they'll replace it.  But we haven't had any major things that I've been aware of in the ten years that I've been there that were specifically about a hard drive that was named as a brand and was a real problem.  It's just a trending problem with the system as a whole.

MR. FENSTER:  Do you happen to know which kinds of hard drives are used in your systems?

THE PROSPECTIVE JUROR:  I don't have names at the forefront.  You know, Western Digital is a very big one.

Possibly it was in that.  But like I said, I don't keep track of that kind of information for me.

MR. FENSTER:  You mentioned that your company has some patents on your systems?

THE PROSPECTIVE JUROR:  They do.  Because they're designing things and they're building these custom things for aircraft, there are patents that are created within our company and our division.  But I don't -- I have not gotten involved in that at all.

MR. FENSTER:  And has your company, to your knowledge, ever had to assert those patents if someone was -- that they felt that someone was infringing?

THE PROSPECTIVE JUROR:  You know, this is a very big company.  Most of the cases I hear about are the HR type.  I really don't know anything about any hardware issues that have been designed and their type of patents.

MR. FENSTER:  You've never heard of anyone alleging that your system or your company's system is infringing someone else's patents?

THE PROSPECTIVE JUROR:  No.  Huh-uh.  Not at all.  I know we had one handheld unit that came back that had been built in China.  It was obviously copied.  But I don't think -- I don't even know what happened with that.  I don't think there were patent issues.

MR. FENSTER:  Do you have any feelings one way or

the other about the importance of patents or whether patents help to promote the arts and sciences like they're designed to do?

THE PROSPECTIVE JUROR:  I'm sure there's a very important purpose for having them.  I have not benefited nor been hurt by that at all.  So I don't really know, you know, what the reasons are that would cause you to be worried about -- I mean, I understand why you want a patent.  You want to own your -- what you've intellectually created.  But I don't really have a feeling about -- anything about patents specifically.

MR. FENSTER:  Do you have any feelings about it being okay or not okay to try to get a patent on something that you've invented?

THE PROSPECTIVE JUROR:  If I created something that was that important, I would want a patent.  But I don't really have a feeling that you're asking about.

MR. FENSTER:  Okay.  And do you happen to know anything about the magnetic recording media or how data is actually stored on hard disk drives?

THE PROSPECTIVE JUROR:  Zeros and ones.

MR. FENSTER:  Zeros and ones.  That's right.

THE PROSPECTIVE JUROR:  You know, I think there was an issue with -- I think it's those spinning drives that have kind of like a record player kind of needle that, you know, if

it fails, it will pull it back and scratch it.  And we've had failures with that.

So we've done some things with that in the past where we had a graceful shutdown and certain things like that. But again, my knowledge is very limited and on topics that are at that general level.

MR. FENSTER:  Do you have any concerns as you've been sitting here or as you're sitting there today about serving on the jury?

THE PROSPECTIVE JUROR:  No.  Not at all.

MR. FENSTER:  Thank you very much, Your Honor.

THE COURT:  Mr. Lumish.

MR. LUMISH:  Ms. M.J.R., do you still have the microphone?

THE PROSPECTIVE JUROR:  I do.

MR. LUMISH:  I'll just stay with you, then, for a moment, if you don't mind.  You said you manage engineers.  Are you, yourself, working technically to design and develop products?

THE PROSPECTIVE JUROR:  I'm not technically designing, no.

MR. LUMISH:  Okay.  So only managing folks?

THE PROSPECTIVE JUROR:  Yes.

MR. LUMISH:  Do you like/dislike the management aspects of your work?

THE PROSPECTIVE JUROR:  I like it.  My people are really good.  And so I have a team I trust.  My tasks generally are to take a look at what I'm getting in email and direct them if they're not looking at what they should, possibly help them to know what to do further to resolve an issue, who to contact, and make sure we cover things correctly and that we have, you know, the correct kind of follow-up you would want to make sure things are working correctly long term.

MR. LUMISH:  Got it.  And I think I know the answer to this -- from your answers to Mr. Fenster's questions, but I heard you say you didn't have any patents.  Did you ever try to get a patent?

THE PROSPECTIVE JUROR:  No.

MR. LUMISH:  Do you know anything about the process for getting patents?

THE PROSPECTIVE JUROR:  I know it's not easy.  You have to have somebody help you.  Other than that, I don't really know much about it.

MR. LUMISH:  Would you mind passing the microphone forward to Ms. J.C.M.

I won't ask you about engineering folks, but do you have any views about big companies?

THE PROSPECTIVE JUROR:  No.

MR. LUMISH:  You heard me ask, I think, the people before about whether they might feel strongly about big

technology companies in particular.  Do you have any views, one way or the other, about big technology companies, good, bad, indifferent?

THE PROSPECTIVE JUROR:  No, not really.

MR. LUMISH:  Do you have any concerns about whether you could be impartial and keep an open mind even though Western Digital is a large company that's been accused here?

THE PROSPECTIVE JUROR:  No concerns.

MR. LUMISH:  Have you ever been involved in a lawsuit in any way?

THE PROSPECTIVE JUROR:  No.

MR. LUMISH:  And just how about really broadly?  Do you have any concerns about being a juror in this case?

THE PROSPECTIVE JUROR:  No.

MR. LUMISH:  All right.  Thank you very much.  Appreciate it.

Thank you, Your Honor.

THE COURT:  Do we need a sidebar?

MR. FENSTER:  No, Your Honor.

MR. LUMISH:  No, Your Honor.

THE COURT:  Okay.  At this time, the parties will have an opportunity to exercise peremptory challenges.  Each side will have three challenges.  If you pass, you do not lose a challenge.  However, if we have two passes in a row, first eight jurors in the box will be our jury.

Any questions?

MR. FENSTER:  Is it two passes in a row per side or two passes in a row for one party?

THE COURT:  Two in a row.

MR. FENSTER:  Got it.

THE COURT:  Okay.  Plaintiffs first.

MR. FENSTER:  Your Honor, plaintiff passes.

THE COURT:  Okay.  Mr. Lumish.

MR. LUMISH:  Your Honor, Western Digital thanks and excuses Juror Number 2.

THE COURTROOM DEPUTY:  What's the name?

MR. LUMISH:  Ms. S.L.T.

THE COURT:  You're excused.  Thank you.  Thank you for coming down today.

THE PROSPECTIVE JUROR:  Thank you.

THE COURT:  Defendant's first.  I'm sorry.  Plaintiff's second.

MR. FENSTER:  Your Honor, we ask the Court to thank and excuse Ms. W.D.L.

THE COURT:  Ms. W.D.L., thank you for being with us.

Defendant's second.

MR. LUMISH:  Your Honor, Western Digital would ask the Court to thank and excuse Juror Number 4, Ms. F.J.H.

THE COURT:  Ms. F.J.H., thank you for being with us.

Plaintiff's second.

**UNITED STATES DISTRICT COURT**

MR. FENSTER:  Your Honor, we'd ask the Court to thank and excuse Mr. J.R.S.

THE COURT:  Mr. J.R.S., thank you for being with us.

Defendant's third and last.

MR. LUMISH:  Your Honor, we would ask the Court to thank and excuse Juror Number 10, Ms. E.K.W.

THE COURT:  Ms. E.K.W., thank you for being with us.

And plaintiff's third and last.

MR. FENSTER:  Your Honor, we'd ask the Court to thank and excuse Mr. I.C.

THE COURT:  Mr. I.C., thank you for being with us.

Ladies and gentlemen, you are now going to be the jury in this case.  And we're going to reorganize slightly. I -- if you folks -- Mr. C.M., if you'd move down a couple. One more.  One more.  Right there.

Ms. J.C.M., if you'd --

THE COURTROOM DEPUTY:  Sir, in the front.

THE COURT:  You still have a front row seat.

And, Mr. M.I.S., would you come down and take the seat on the end of the first row.

Ms. S.A.C., would you move down one row.

Now, before you're sworn, I want to make sure everybody knows that we're likely to run through next Wednesday, Thursday, and that you're available.

Would the clerk swear the jurors, please.

UNITED STATES DISTRICT COURT

THE COURTROOM DEPUTY:  Please stand.

**(The jury is sworn:)**

THE COURTROOM DEPUTY:  Ladies and gentlemen of the jury, do you solemnly swear that you will well and truly try the cause now before this Court and a true verdict therein render according to the evidence and instructions of the Court, so help you God?

**(The jury collectively responded "I do.")**

THE COURTROOM DEPUTY:  Please be seated.

THE COURT:  Ladies and gentlemen, I think we have a video to show you to provide you some background on patents, and then I have some initial instructions.  And I think we will have time to --

MR. LEDAHL:  Your Honor, my understanding, just briefly, is there's a bit of an issue with the sound for the video, and so I think we would suggest maybe -- it should be able to be remedied pretty quickly, but maybe the preliminary instructions before the video might work better.

THE COURT:  Okay.  We'll do that.

Let me excuse everyone else that's still out there.

I want to thank you folks for coming down today.  You probably had the toughest job of all.  You wonder why we have so many people left.  Depending on the time of year or the particular issue in the case, we can go through the whole panel and actually need more people.  So I appreciate you coming down

here today.  It allowed us to make sure that we did select a jury.  Thank you.

**(Remaining prospective jurors left the courtroom.)**

***Preliminary Jury Instructions***

THE COURT:  (Reading:)

"Ladies and gentlemen, you are now the jury in this case.  It is my duty to instruct you on the law.

"These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidences as you listen to it.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions that will govern your deliberations.

"You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

"It is your duty to find the facts from all the evidence.  To those facts, you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices,

**UNITED STATES DISTRICT COURT**

or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

"Perform these duties fairly and impartially. You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances.  Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

"In following my instructions, you must follow all of them and not single out some and ignore others.  They are all important.

"To help you follow the evidence, I will give you a brief summary of the positions of the parties.

"The parties are plaintiff MR Technologies, GMBH, MR Technologies; and defendant Western Digital Technologies, Inc., Western Digital.

**UNITED STATES DISTRICT COURT**

"The patents at issue are U.S. Patent Number 9,9828,864 [sic], which may be referred to as the ''864 patent,' and U.S. Patent Number 11,138,997, which may be referred to as the ''997 patent.' Plaintiff MR Technologies argues that defendant Western Digital infringes Claims 1, 2, 10, 11, and 13 of the '864 patent, and Claims 1, 4, 5, 7, and 9, of the '997 patent. The claims are generally directed to hard drive magnetic recording media. The structures of that media are specified in the language of the inserted claims -- asserted claims as interpreted by the Court. MR Technologies argues that certain Western Digital products infringe the asserted claims of the '864 and '997 patents. These products may be referred to as the 'accused products.' MR Technologies seeks money damages from Western Digital for allegedly infringing the '864 and '997 patents.

"Western Digital argues that its products do not infringe the asserted patents of the '864 and '997. Western Digital also argues that the asserted claims are invalid. Invalidity is a defense to patent infringement. Western Digital also argues that MRT is not entitled to any damages.

**UNITED STATES DISTRICT COURT**

"When a party has the burden of proof of any claim by a preponderance of the evidence, that means that the party must be persuaded that the evidence of the -- that the claim is more likely -- is more probably true than not true.

"When a party has the burden of proving any claim by clear and convincing evidence, it means that you must be persuaded by the evidence that the claim or defense is highly probable.  The higher -- this higher standard of proof -- this is a higher standard of proof than proof by a preponderance of the evidence.

"You should base your decision on all the evidence regardless of which party presented it.

"The following facts are admitted and require no proof:

"U.S. Patent 9,928,864 was issued March 27, 2018.

"The application for the '864 patent, United States Patent Application Number 12/619,849, was filed November 17, 2009.

"U.S. Patent 11,138,997 was issued on October 5, 2021.

"The application for the '997 patent, United States Patent Application Number 15/925,749,

**UNITED STATES DISTRICT COURT**

was filed on March 19, 2018.

"MR Technologies filed the complaint in this case on August 26, 2022.

"Da DCM code identifies a specific magnetic recording medium design used in the disks in one or more accused HDDs.

"A representative DCM is deemed to have substantially the same structure and design as other members of the group."

In your -- in the binders you will receive, you'll receive several charts telling you what the groups of products are.  (Reading:)

"The evidence you are to consider in deciding what the facts are consists of:

"1.  The sworn testimony of any witness.

"2.  The exhibits received into evidence.

"3.  Any facts to which the lawyers have agreed.

"Some evidence may be admitted for a limited purpose.

"When I instruct you that an item of evidence is admitted for a limited purpose, you must consider it only for that purpose and for no other.

"Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact such as

testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give any evidence.

"By way of example, if you woke up in the morning and see that the -- wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

"In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

**UNITED STATES DISTRICT COURT**

"1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts, as you remember them, differ from the way the lawyers have stated them, your memory of them controls.

"2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the Rules of Evidence.  You should not be influenced by the objection or by the Court's ruling on it.

"3.  Testimony that has been excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose.  When I give a limiting instruction, you must follow it.

"4.  Anything you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received in trial.

"There are Rules of Evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the Rules of Evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

"Sometimes I may order that evidence be stricken from the record and that you disregard or ignore it. That means that when you're deciding the case, you must not consider the evidence that I told you to disregard.

"In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

"In considering the testimony of any witness, you may take into account:

"1.   The opportunity and ability of the witness to see or hear or know the things testified to.

"2.   The witness's memory.

"3.   The witness's manner while testifying.

"4.   The witness's interest in the outcome of the case and any bias or prejudice.

"5.   Whether other evidence contradicted the witness's testimony.

"6.   The reasonableness of the witness's testimony in light of all the evidence; and

"7.   Any other factors that bear on believability.

"You must avoid bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

"Sometimes a witness may say something that is not consistent with something he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently.  You may consider these

UNITED STATES DISTRICT COURT

differences, but do not decide that the testimony is untrue just because it differs from other testimony.

"However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

"The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.  What is important is how believable the witnesses are and how much weight you think their testimony deserves.

"I will now say a few words about your conduct as jurors.

"First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

"Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you

must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case, unless I tell you otherwise:

"Do not communicate with anyone in any way, and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, electronic means, via email, text messaging, or any internet chat room, blog, website, or other feature.  This applies to communicating with your fellow jurors until I give you the case for deliberations, and it applies to communications with everyone else, including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated on a jury in the case.  But if you are asked or approached in any way about your jury service or anything to do with this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the Court.

"Because you will receive all the evidence and legal instruction you properly may consider to return a verdict, do not read, watch, or listen to

any news or media accounts or commentary about the case or anything to do with it.  Do not do any research, such as consulting dictionaries, searching the internet, or using other reference materials, and do not make any investigation or in any way try to learn about the case on your own.

"The law requires these restrictions to ensure the parties have a fair and impartial -- a fair trial based on the same evidence that each party had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the Court immediately.

"During deliberations, you may ask to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

"If at any time you cannot hear or see the testimony, evidence, or questions, arguments, let me know so that I can correct the problem.

"If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your

UNITED STATES DISTRICT COURT

fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

"Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

"Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

"The plaintiff will then present evidence, and counsel for defendant may cross-examine.  Then defendant may present evidence, and counsel for plaintiff may cross-examine.

"After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

"After that, you will go to the jury room to deliberate on your verdict.

"I have some additional instructions about the COVID-19 pandemic and the steps we will be taking to keep us all safe and healthy.

"The Court follows the CDC guidelines.  Masks are not required, but if you prefer, you may wear a mask.  Do not concern yourself with the reasons why a participant may or may not wear a mask or face shield.  You should not draw any conclusions or be influenced in any way based solely on whether someone wears a mask or face shield during the trial.

"If conditions change, we will take appropriate actions.

"Throughout the trial, please immediately notify the Court of any change in your health and the health of those you live with or have been close -- in close contact.  Do not report to the courthouse if you develop symptoms associated with COVID, have reason to believe that you have COVID, have taken a COVID-19 test and are awaiting results, or have heard -- or have learned that you have had close contact with anyone who has been suspected of or diagnosed with COVID-19 within the last 14 days.  Instead, immediately contact the courtroom deputy at the number that you will be

**UNITED STATES DISTRICT COURT**

provided.  We will then determine whether it's safe for you to report to the courthouse.

"If you have any questions about COVID-19 or these procedures, please send me a note by giving it to the courtroom deputy.

"I want all of us to be safe and healthy.  So thank you for your understanding and cooperation.

"Patents are granted by the United States Patent and Trademark Office, sometimes called the PTO or USPTO.  Patents give the owner the right to exclude others from making, using, offering to sell, or selling the claimed invention within the United States or importing into the United States. During the trial the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background -- give you general background here.

"To obtain a patent, an application -- to obtain a patent, an application for a patent must be filed with the PTO by an applicant.  The application includes a specification, which should have a written description of the invention, how it works, and how to make and use it so as to enable others skilled in the art to do so.

"The specification concludes with one or more

numbered sentences or paragraphs.  These are called 'claims' of the patent.  The purpose of the claims is to particularly point out what the applicant regards as the claimed invention and to define the scope of the patent owner's exclusive rights.

"After an application for a patent is filed with the PTO, the application is reviewed by a trained PTO patent examiner.  The patent examiner reviews or examines the patent application to determine whether the patent is -- the patent -- the claims are patentable and whether the specification adequately describes the claimed invention.

"In examining a patent application, the patent examiner searches the records -- searches records available to the PTO for what is referred to as prior art, and he or she will also review prior art submitted by the applicant.

"When the parties are done presenting evidence, I will give you some specific instructions as to what constitutes prior art in this case.  Based on my guidance, you must decide whether or not a reference is prior art. Generally, prior art is previously existing technical information or knowledge which the patent

examiner -- which the patent examiners determine whether or not the claim in the application is patentable.

"The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.  In addition, the patent examiner may consider whether the claims are directed to subject matter that is not eligible for patenting, such as natural phenomena, laws of nature, and abstract ideas.  The patent examiner may also consider whether the claims are definite, are adequately enabled, and are adequately described by the application specification.

"Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable, in other words, allowed.  This writing from the patent examiner is called an 'office action.'

"More often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to the office action and sometimes cancels or changes the claims or

**UNITED STATES DISTRICT COURT**

submits new claims or makes arguments against rejection.  The process may go back and forth between the patent examiner and the patent -- and the applicant for several months, or even years, until the patent examiner is satisfied that the application and claims are patentable.

"Upon payment of an issue fee by the applicant, the PTO then issues or grants a patent with the allowed claims.  The collection of papers generated by the patent examiner and the applicant during the time of corresponding back and forth is called the 'prosecution history' or the 'file wrapper.'  In this case, it is ultimately for you to decide based on my instructions to you whether Western Digital has shown that the patent claims are valid -- invalid.

"Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention as defined by the claims within the United States before the term of the patent expires.  A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringement --

infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.

"The patent owner must prove infringement of the claims of the patent.  The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

"A party accused of infringing a patent may deny the infringement and/or prove the asserted claims in the patent are invalid.  A patent is presumed to be valid.  In other words, it is presumed to have been properly granted by the PTO.  But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

"Before you can decide many of the issues in this case, you will need to understand the role of patent claims.  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what the patent covers.  The figures and text and the rest of the patent provide a description and/or examples of the invention and

provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers -- therefore, what a patent covers depends, in turn, on what each of the claims covers.

"You will first need to understand what each claim covers in order to decide whether or not there's infringement of the claim and whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide -- to decide the case.  Therefore, I have determined the meaning of certain terms of the claims, and I will provide you those definitions.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding.  For a claim term for which I have not provided you with a definition, you should assume -- you should assume the ordinary meaning.

"You are to apply my definitions to the terms

throughout the case.  However, my interpretation of the language of the claims should be taken -- should not be taken as an indication that I have a view regarding the issues, such as infringement and invalidity.  Those issues are yours to decide.

"I will now explain the meaning of some of the words of the claims.  In this case, in doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words -- my definition of these words in the claims as correct.  For any words in the claims which I have not provided you with a definition, you should apply their ordinary meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement.  The issues are for you to decide.

"I will now read to you definitions for certain terms.  The definitions are also provided in your juror binder, and you may rely on these definitions as you listen to the evidence.

"'Coercive field,' means 'a property of magnetic materials that provides a measure of

UNITED STATES DISTRICT COURT

ability of a ferromagnetic material to withstand an external magnetic field without becoming demagnetized.

"'Exchange coupled magnetic multilayer structure' means 'a structure including a nucleation host that is exchange coupled to a hard magnetic storage layer,' and 'exchange coupled' means 'magnetic moments in the nucleation host interact through exchange with the moments in the hard magnetic storage layer.'

"'Coupling layer' means 'layer that alters the coupling between adjacent layers.'

"'The nucleation -- 'nucleation host is coupled to a hard magnetic storage layer by an exchange coupling layer' means 'the nucleation host is coupled to the hard magnetic storage layer by a layer that alters the exchange coupling between the nucleation host and the hard magnetic storage layer.'

"'Nucleation host comprises ferromagnetic layers which increase -- with increasing anisotropy constant K from layer to layer' means 'nucleation host includes two or more ferromagnetic layers which have anisotropy constants K, and the values of the anisotropy constants K for the layers increase as the layers get closer to the hard

magnetic storage layer, such as the nucleation host has an overall increase in anisotropy toward the hard magnetic storage layer.'

"'Ferromagnetic layer' means 'layers with a net magnetic moment $M_s$ greater than zero in the absence of an applied magnetic field.'

"'Nucleation host' means 'a structure that includes ferromagnetic layers that assist in switching the hard magnetic storage layer and optional coupling layers.'

"'Hard magnetic storage layer' means 'a magnetic layer that stores information in magnetically oriented bits.'

"'Underlayer' means 'one or more layers on which the hard magnetic storage layer is formed.'

And, finally:

"'A thin exchange coupling layer' means 'a layer that is sufficiently thin to alter but not prevent exchange coupling between the adjacent ferromagnetic layers.'"

Okay.  Ladies and gentlemen, I think we'll take a short recess here, and we'll resume.

THE COURTROOM DEPUTY:  All rise.

**(Out of the presence of the jury.)**

THE COURT:  How are we coming with the video?

MR. LEDAHL:  We probably should test it out for just a second, but I believe it works now.

THE COURT:  Okay.  One question first.  You each estimated between a half an hour and 45 minutes for your openings.  I have to stop at --

MR. FENSTER:  You'll recall I think we ended up at about an hour.  I'll be just short of that, Your Honor.

THE COURT:  Okay.  It's my strong preference, unless you wish to do otherwise, to start the opening statements tomorrow so that the jury can hear those opening statements back to back.

MR. LUMISH:  We appreciate that, Your Honor.

THE COURT:  Mr. Lumish, you got a mic there.

MR. LUMISH:  I was just agreeing with Your Honor. We would prefer that our opening be heard quickly after theirs so there's not some long gap in between.  So thank you for that.

MR. FENSTER:  We're ready to go, but that's fine.

Your Honor, the parties apologize to the Court. There was an error in the preliminary instructions regarding the asserted claims.  The asserted claims are 1, 10, and 11.

THE COURT:  Just a minute.  What page -- oh, here we go.

MR. FENSTER:  So for the '864, Your Honor, it's 1, 10, and 11.

UNITED STATES DISTRICT COURT

THE COURT:  Just a minute.  1, 10, and 11 for the '864.

MR. FENSTER:  And for the '997, it's 1 --

THE COURT:  Just a minute.  And for the --

MR. FENSTER:  For the '997, it is 1 and 7.

THE COURT:  Okay.

MR. FENSTER:  I apologize that that wasn't updated, Your Honor.

THE COURT:  Okay.  I'll reread that.  I think it ought to be clear on the record before the jury as to what claims we're talking about.  Take two seconds.

MR. FENSTER:  Yep.

THE COURT:  Want to give it a test?

MR. LEDAHL:  One other thing, Your Honor.  We have the juror notebooks.  Would you like us to just put those --

THE COURT:  Sure.

MR. LEDAHL:  -- for the moment?

THE COURT:  Do you have an extra one for the Court?

MR. KROEGER:  Notebook?  We do not, Your Honor.  Would you like me to make you one?

THE COURT:  Let me just look at one, please.  I really want to see in what format they've got these.

**(Pause in proceedings.)**

THE COURT:  Okay.  Thank you.

MR. LUMISH:  Your Honor, I just want to make an

objection on process.  We had met and conferred with opposing counsel about what these notebooks would have in them, and we now see, when we look at them, that they included extra material.  They're taking it out, but as a process matter, we object to additional materials having been put in those binders after we had already cleared them.

MR. KROEGER:  And, your Honor, that was simply a printing mistake.  We had pulled them before we shared them.  It was completely unintentional.  And we're making it what we gave to them right now.

THE COURT:  Okay.  All that should be there are claim constructions, the agreed facts, and the patents.

Would you folks like to take a ten-minute break before we --

MR. LUMISH:  Were you going to test the video?

MR. LEDAHL:  We did a second ago.

MR. LUMISH:  And it worked?

MR. LEDAHL:  It does work.

THE COURT:  How long does it run?

MR. LEDAHL:  It's 17 minutes, Your Honor.

THE COURT:  Okay.  If you -- all folks would like to take a break before we do that.  We've been going a while.

MR. LEDAHL:  As soon as those are ready, I think we're probably, for our side, fine either way, Your Honor.  But I won't speak for defense counsel if they want a break.

MR. LUMISH:  We're happy to proceed, Your Honor. Whatever is best for the Court.

THE COURT:  Okay.

MR. LEDAHL:  Thank you, Your Honor.  I think we're all set.

THE COURT:  Okay.  Let's bring the jury in, please.

Mr. Fenster, would you give me those claims again. I want to make sure I wrote them down correctly.

For the '864, 1, 10, 11.

MR. FENSTER:  Yes.

THE COURT:  And for the...

MR. FENSTER:  '864 is 1, 10, 11.  For the '997 patent, it's Claims 1 and 7.

THE COURT:  Okay.

MR. FENSTER:  Thank you.

**(Pause in proceedings.)**

**(In the presence of the jury.)**

THE COURT:  Ladies and gentlemen, I want to make a correction as to the claims at issue.  This will be clearer as we go through the evidence.  But for the record, plaintiff MR Technologies argues that defendant Western Digital infringes Claims 1, 10, and 11 of the '864 patent, and Claims 1 and 7 of the '997 patent.

In your notebooks you should have three things:  a copy of the Court's claim constructions and a copy of the facts

**UNITED STATES DISTRICT COURT**

to which the parties have agreed, and a copy of each patent. So from time to time, if you want to pull any of those materials out to reference while you listen to the testimony or the opening statements, you're free to do that.

At this time we have a video that's prepared by the Federal Judicial Center to give you some more background on the process of obtaining a patent and what patents are all about. That's the educational arm of the judiciary.  So it's a neutral source, and the parties have agreed that it will be beneficial if you watch that video.  It's 17 minutes.

After that, we're going to adjourn for the day.  I believe it would be most helpful for you to hear the opening statements back to back.  And it just isn't enough time to get that done today.  So we'll do that first thing tomorrow.  First thing tomorrow will be 9:00 o'clock.

So let's play the video, please.

**(Videotape played, not reported.)**

THE COURT:  Ladies and gentlemen, we're going to adjourn here for the day.

Let me say a few words about scheduling.  Our usual day will be 9:00 to 12:00 and 1:30 to 4:30, take a 15-minute break about 10:30 and a 15-minute break about 3:00 o'clock.  If you'd like to take a break at another point, catch my eye or Mr. Pasqual's -- well, he'll be here tomorrow morning -- my eye or the courtroom deputy, and we'll take a break.  I want

everybody to be comfortable at all times.

You may see me doing more than one thing at a time, listening to the trial and presiding over it.  A lot of paperwork goes with this job, a lot of motions, a lot of paperwork in this case, including the jury instructions, which I need and have worked out with counsel initially and will have some more.

So I don't want you to take a cue from me that because I may be doing two things at once, what's going on is not important.  Everything is going to be important.  So I ask you to give your full attention to counsel as they make their opening statements and as the witnesses are examined.  I've been doing this a while.  I really can do that.

And if I think I missed a word, I just have to look right there (indicating).  There's a realtime transcript of all that's being said.  So not to worry that I may be doing two things at once.

So I'm going to excuse you for the day, ladies and gentlemen.  Please remember the admonition not to discuss the case with anyone, not to form any opinions on issues in the case until it's submitted to you.  So see you tomorrow morning.

THE COURTROOM DEPUTY:  All rise.

**(Out of the presence of the jury.)**

THE COURT:  I've had a chance to read the two briefs regarding the Bergman testimony.  I think the Order 505 sums up

my views.  I'm going to allow MR Technologies to use the patent, to use those slides.  I think it's pages 41 to 44.  The objections are overruled.

Anything else you want to take up before we conclude?

MR. FENSTER:  Not for plaintiff, Your Honor.

MR. LUMISH:  Not from the defendants, Your Honor.

THE COURT:  Okay.  As I indicated, I'll ask you to come every day, regularly, at a quarter to 9:00.  If you think we have more than that to take up, please come a little bit earlier so that we start the jury's day promptly at 9:00.  Okay.  Thank you.

MR. FENSTER:  Thank you, Your Honor.

MR. LUMISH:  Thank you, Your Honor.

**(Proceedings concluded at 2:31 p.m.)**

--oOo--

*CERTIFICATE OF OFFICIAL REPORTER*

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME COURT REPORTER, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Date:  July 17, 2024*

                              /S/ DEBBIE HINO-SPAAN

                              *Debbie Hino-Spaan, CSR No. 7953*
                              *Federal Official Court Reporter*

**UNITED STATES DISTRICT COURT**

| ' | | | | |
|---|---|---|---|---|

**"864** [1] - 24:3
**"997** [1] - 24:4
**'864** [10] - 24:7, 24:14, 24:18, 24:20, 25:19, 45:24, 46:2, 48:9, 48:12, 48:22
**'997** [9] - 24:8, 24:14, 24:18, 24:21, 25:24, 46:3, 46:5, 48:12, 48:23
**'a** [1] - 44:17
**'accused** [1] - 24:16
**'claims'** [1] - 37:2
**'coercive** [1] - 42:24
**'coupling** [1] - 43:11
**'exchange** [2] - 43:4, 43:7
**'ferromagnetic** [1] - 44:4
**'file** [1] - 39:12
**'hard** [1] - 44:11
**'layer** [1] - 43:11
**'layers** [1] - 44:4
**'magnetic** [1] - 43:8
**'nucleation** [4] - 43:13, 43:19, 43:21, 44:7
**'office** [1] - 38:20
**'one** [1] - 44:14
**'prosecution** [1] - 39:12
**'the** [2] - 43:13, 43:15
**'underlayer'** [1] - 44:14

| / | | | | |
|---|---|---|---|---|

**/S** [1] - 52:19

| 1 | | | | |
|---|---|---|---|---|

**1** [16] - 1:10, 24:6, 24:7, 26:15, 28:1, 30:1, 45:21, 45:24, 46:1, 46:3, 46:5, 48:9, 48:12, 48:13, 48:22
**1-053** [1] - 1:24
**10** [8] - 20:6, 24:6, 45:21, 45:25, 46:1, 48:9, 48:12, 48:22
**10:30** [1] - 49:22
**11** [7] - 24:6, 45:21, 45:25, 46:1, 48:9, 48:12, 48:22
**11,138,997** [2] - 24:3, 25:22
**12/619,849** [1] - 25:20

**1200** [1] - 3:5
**1224** [1] - 3:5
**12424** [5] - 2:5, 2:9, 2:13, 2:21, 3:9
**12:00** [1] - 49:21
**12th** [5] - 2:5, 2:9, 2:13, 2:21, 3:9
**13** [1] - 24:7
**14** [1] - 35:24
**140** [4] - 3:19, 4:9, 4:21, 5:5
**15-minute** [2] - 49:21, 49:22
**15/925,749** [1] - 25:25
**16** [2] - 1:16, 7:1
**1600** [2] - 4:6, 4:13
**17** [4] - 25:21, 47:20, 49:10, 52:15
**18** [1] - 9:18
**19** [1] - 26:1
**1:03** [2] - 1:17, 7:2
**1:30** [1] - 49:21

| 2 | | | | |
|---|---|---|---|---|

**2** [5] - 19:10, 24:6, 26:16, 28:9, 30:4
**200** [2] - 2:17, 13:12
**20024** [1] - 2:18
**2009** [1] - 25:21
**2018** [2] - 25:18, 26:1
**202-664-0623** [1] - 2:18
**2021** [1] - 25:23
**2022** [1] - 26:3
**2024** [3] - 1:16, 7:1, 52:15
**20th** [1] - 3:23
**21** [1] - 6:4
**22** [2] - 6:5, 9:18
**22-year-old** [1] - 9:19
**26** [1] - 26:3
**27** [1] - 25:17
**28** [1] - 52:8
**2800** [2] - 3:13, 4:17
**2:31** [1] - 51:15

| 3 | | | | |
|---|---|---|---|---|

**3** [3] - 26:17, 28:15, 30:5
**30s** [1] - 9:4
**310-826-7474** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**312-876-7700** [2] - 3:14, 4:18
**330** [2] - 3:13, 4:17
**3:00** [1] - 49:22

| 4 | | | | |
|---|---|---|---|---|

**4** [5] - 9:19, 19:23, 24:7, 28:22, 30:6
**41** [1] - 51:2
**411** [1] - 1:24
**44** [1] - 51:2
**45** [1] - 45:4
**4:30** [1] - 49:21
**4TH** [1] - 1:24

| 5 | | | | |
|---|---|---|---|---|

**5** [4] - 10:8, 24:7, 25:23, 30:8
**505** [1] - 50:25

| 6 | | | | |
|---|---|---|---|---|

**6** [1] - 30:10
**60611** [2] - 3:14, 4:18
**650** [1] - 3:22
**650-328-4600** [4] - 3:20, 4:10, 4:22, 5:6
**660** [2] - 4:5, 4:13

| 7 | | | | |
|---|---|---|---|---|

**7** [6] - 6:3, 24:7, 30:12, 46:5, 48:13, 48:22
**714-540-1235** [1] - 3:24
**753** [1] - 52:8
**7953** [2] - 1:23, 52:20

| 8 | | | | |
|---|---|---|---|---|

**80,000** [1] - 11:10
**800** [1] - 2:17
**8:22-cv-01599-JVS-DFM** [1] - 1:7

| 9 | | | | |
|---|---|---|---|---|

**9** [1] - 24:8
**9,928,864** [1] - 25:17
**9,9828,864** [1] - 24:2
**90025** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**92626** [1] - 3:23
**92660** [2] - 4:6, 4:14
**92701** [1] - 1:25
**94025** [3] - 3:19, 4:10, 4:21
**94025-1008** [1] - 5:5
**949-725-4000** [1] - 4:14
**949-725-4278** [1] - 4:7
**9:00** [4] - 49:15, 49:21, 51:9, 51:11

| A | | | | |
|---|---|---|---|---|

**ability** [2] - 30:1, 43:1
**able** [1] - 21:17
**above-entitled** [1] - 52:11
**absence** [1] - 44:6
**abstract** [1] - 38:11
**accept** [3] - 31:10, 41:18, 42:10
**according** [1] - 21:6
**account** [1] - 29:25
**accounts** [1] - 33:1
**accused** [3] - 18:7, 26:6, 40:10
**action** [3] - 38:21, 38:23, 38:24
**actions** [1] - 35:13
**acts** [2] - 40:1, 40:9
**addition** [2] - 28:18, 38:7
**additional** [2] - 35:1, 47:5
**address** [1] - 33:10
**adequately** [3] - 37:12, 38:13
**adjacent** [2] - 43:12, 44:19
**adjourn** [2] - 49:11, 49:19
**admitted** [3] - 25:15, 26:19, 26:22
**admonition** [1] - 50:19
**adults** [1] - 9:4
**advises** [1] - 38:17
**affect** [1] - 23:15
**affiliation** [1] - 8:22
**afternoon** [9] - 7:10, 7:24, 7:25, 9:10, 9:11, 10:2, 10:3, 11:1, 11:2
**ago** [1] - 47:16
**agree** [1] - 22:23
**agreed** [5] - 7:14, 26:18, 47:12, 49:1, 49:9
**agreeing** [1] - 45:14
**AICHELE** [1] - 2:16
**Airbus** [2] - 8:21, 11:25
**aircraft** [6] - 8:19, 11:11, 12:1, 13:8, 13:12, 14:7
**Airlines** [1] - 11:16
**airlines** [1] - 11:16
**airplane** [1] - 12:22
**alleged** [1] - 39:25
**allegedly** [1] - 24:17
**alleging** [1] - 14:17
**allow** [2] - 23:8, 51:1

**allowed** [3] - 22:1, 38:19, 39:9
**ALSO** [1] - 5:8
**alter** [1] - 44:18
**alters** [2] - 43:11, 43:16
**American** [1] - 11:15
**amount** [1] - 40:7
**ANA** [3] - 1:18, 1:25, 7:1
**ancestry** [2] - 23:6, 30:16
**AND** [5] - 3:3, 3:17, 4:3, 4:16, 5:3
**ANGELES** [1] - 52:3
**Angeles** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**anisotropy** [4] - 43:20, 43:23, 43:24, 44:2
**answer** [2] - 17:9, 29:12
**answered** [2] - 29:7, 29:9
**answers** [2] - 8:1, 17:10
**apart** [1] - 12:11
**apologize** [2] - 45:19, 46:7
**APPEARANCES** [4] - 2:1, 3:1, 4:1, 5:1
**applicant** [8] - 36:20, 37:3, 37:18, 38:17, 38:24, 39:4, 39:8, 39:10
**application** [13] - 25:19, 25:24, 36:18, 36:19, 36:21, 37:6, 37:7, 37:9, 37:14, 38:2, 38:14, 38:16, 39:6
**Application** [2] - 25:20, 25:25
**applied** [1] - 44:6
**applies** [4] - 31:25, 32:11, 32:13, 34:22
**apply** [6] - 22:11, 22:21, 41:14, 41:20, 41:25, 42:13
**appreciate** [3] - 18:16, 21:25, 45:12
**approached** [1] - 32:19
**appropriate** [1] - 35:13
**argues** [6] - 24:5, 24:13, 24:19, 24:21, 24:24, 48:21
**arguments** [5] - 28:1, 28:4, 33:21, 34:23,

39:1
**arm** [1] - 49:8
**art** [8] - 36:24, 37:17, 37:18, 37:21, 37:23, 37:24, 38:7, 38:15
**arts** [1] - 15:2
**aspects** [1] - 16:25
**assembly** [1] - 12:4
**assert** [1] - 14:11
**asserted** [7] - 24:11, 24:14, 24:20, 24:22, 40:11, 45:21
**assist** [2] - 34:8, 44:8
**associated** [1] - 35:18
**assume** [2] - 41:23
**AT** [4] - 2:20, 4:9, 4:16, 4:20
**attempt** [1] - 39:25
**attention** [2] - 33:18, 50:11
**attitudes** [1] - 23:12
**ATTORNEY** [4] - 2:20, 4:9, 4:16, 4:20
**attorneys** [2] - 28:10, 34:23
**AUGUST** [7] - 2:4, 2:8, 2:12, 2:16, 2:20, 3:4, 3:8
**August** [2] - 5:9, 26:3
**available** [2] - 20:24, 37:16
**Avenue** [3] - 2:17, 3:13, 4:17
**Avionics** [1] - 8:17
**avoid** [1] - 30:14
**awaiting** [1] - 35:20
**aware** [1] - 13:18
**awareness** [1] - 23:14

### B

**Bachelor** [1] - 8:16
**background** [8] - 8:9, 8:22, 9:15, 10:5, 21:11, 36:17, 49:6
**bad** [1] - 18:2
**BALI** [1] - 4:5
**base** [1] - 25:13
**based** [7] - 30:15, 31:24, 33:9, 33:16, 35:9, 37:22, 39:14
**Beach** [4] - 4:6, 4:14, 8:4, 8:14
**bear** [1] - 30:12
**becoming** [1] - 43:2
**beliefs** [2] - 23:6, 30:16
**believability** [1] - 30:13
**believable** [1] - 31:15

**believes** [1] - 39:22
**bell** [1] - 8:7
**belly** [1] - 13:7
**beneficial** [1] - 49:9
**benefited** [1] - 15:5
**Bergman** [1] - 50:25
**best** [1] - 48:2
**better** [1] - 21:18
**between** [7] - 27:6, 39:3, 43:12, 43:17, 44:19, 45:4, 45:16
**bias** [4] - 23:15, 30:7, 30:14
**biases** [3] - 23:10, 23:11
**big** [5] - 13:25, 14:13, 17:22, 17:25, 18:2
**binder** [1] - 42:22
**binders** [2] - 26:10, 47:5
**bit** [5] - 10:4, 10:15, 13:5, 21:15, 51:10
**bits** [1] - 44:13
**bledahl@raklaw. com** [1] - 2:11
**blog** [1] - 32:11
**Boeing** [2] - 8:21, 11:25
**Boulevard** [6] - 2:5, 2:9, 2:13, 2:21, 3:5, 3:9
**box** [1] - 18:25
**boys** [1] - 9:1
**brand** [1] - 13:20
**breadth** [1] - 41:2
**break** [7] - 47:13, 47:22, 47:25, 49:22, 49:23, 49:25
**BRIAN** [1] - 2:8
**brief** [1] - 23:21
**briefly** [2] - 9:25, 21:15
**briefs** [1] - 50:24
**bring** [3] - 7:6, 39:24, 48:6
**broadly** [1] - 18:12
**BUCZKO** [1] - 2:12
**build** [1] - 8:18
**building** [1] - 14:6
**built** [1] - 14:22
**burden** [2] - 25:1, 25:6
**BY** [12] - 2:8, 2:16, 3:8, 3:12, 3:18, 3:22, 4:5, 4:9, 4:12, 4:16, 4:20, 5:4

### C

**C.M** [1] - 20:14
**CA** [1] - 1:25

**cabling** [1] - 12:19
**CALIFORNIA** [4] - 1:2, 1:18, 7:1, 52:4
**California** [14] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10, 3:19, 3:23, 4:6, 4:10, 4:14, 4:21, 5:5, 52:7
**cancels** [1] - 38:25
**cannot** [3] - 29:8, 29:9, 33:20
**care** [1] - 10:10
**CARLSON** [2] - 4:4, 4:12
**case** [34] - 18:13, 20:13, 21:24, 22:7, 23:2, 26:3, 28:24, 29:16, 29:18, 30:7, 31:22, 31:23, 31:24, 32:2, 32:4, 32:7, 32:8, 32:13, 32:18, 32:20, 33:2, 33:6, 34:2, 34:5, 34:23, 37:22, 39:13, 40:19, 41:15, 42:1, 42:7, 50:5, 50:20, 50:21
**Case** [1] - 1:6
**cases** [1] - 14:14
**catch** [1] - 49:23
**caused** [1] - 40:3
**CDC** [1] - 35:4
**Center** [4] - 3:22, 4:5, 4:13, 49:6
**CENTRAL** [1] - 1:2
**Central** [1] - 52:7
**certain** [5] - 16:4, 24:13, 27:23, 41:16, 42:21
**CERTIFICATE** [1] - 52:1
**Certified** [1] - 1:5
**certify** [1] - 52:7
**chaaru.deb@lw.com** [1] - 4:11
**CHAARUSHENA** [1] - 4:9
**challenge** [1] - 18:24
**challenges** [2] - 18:22, 18:23
**CHAN** [1] - 2:20
**chance** [1] - 50:24
**CHANG** [1] - 3:12
**change** [2] - 35:12, 35:15
**changes** [1] - 38:25
**charts** [1] - 26:11
**chat** [1] - 32:10
**cheap** [1] - 10:21
**check** [1] - 7:21
**Chicago** [2] - 3:14,

4:18
**children** [3] - 9:1, 9:6, 9:18
**China** [1] - 14:22
**choose** [1] - 31:6
**Chris** [1] - 5:10
**circumstances** [2] - 23:8, 30:18
**circumstantial** [4] - 26:24, 27:2, 27:7, 27:18
**City** [1] - 8:14
**civil** [1] - 22:11
**claim** [17] - 25:2, 25:4, 25:7, 25:9, 38:2, 38:5, 38:18, 39:17, 41:3, 41:4, 41:5, 41:10, 41:11, 41:12, 41:21, 47:12, 48:25
**claimed** [4] - 36:12, 37:4, 37:12, 39:20
**Claims** [5] - 24:6, 24:7, 48:13, 48:22
**claims** [39] - 24:8, 24:11, 24:14, 24:22, 37:2, 37:11, 38:8, 38:12, 38:23, 38:25, 39:1, 39:6, 39:9, 39:15, 39:20, 40:6, 40:12, 40:20, 40:21, 40:22, 41:1, 41:2, 41:7, 41:13, 41:17, 41:19, 42:2, 42:7, 42:9, 42:11, 42:12, 42:15, 45:21, 46:11, 48:7, 48:19
**clear** [3] - 25:7, 40:16, 46:10
**cleared** [1] - 47:6
**clearer** [1] - 48:19
**clerk** [1] - 20:25
**clients** [1] - 28:11
**close** [4] - 33:18, 35:17, 35:22
**closer** [1] - 43:25
**closing** [2] - 28:4, 34:23
**Code** [1] - 52:8
**code** [1] - 26:4
**collection** [1] - 39:9
**collective** [1] - 12:9
**collectively** [1] - 21:8
**college** [2] - 8:4, 9:4
**color** [2] - 23:6, 30:15
**comfortable** [1] - 50:1
**coming** [4] - 19:14, 21:21, 21:25, 44:25
**commentary** [1] - 33:1
**commercial** [1] - 8:18
**common** [1] - 27:20

**communicate** [2] - 32:5, 32:6
**communicating** [1] - 32:12
**communications** [1] - 32:14
**companies** [4] - 12:18, 17:22, 18:1, 18:2
**company** [10] - 8:17, 9:23, 11:8, 11:9, 11:19, 14:3, 14:7, 14:10, 14:14, 18:7
**company's** [1] - 14:18
**compensate** [1] - 40:3
**compensation** [1] - 40:9
**complaint** [1] - 26:2
**completed** [1] - 31:21
**completely** [1] - 47:9
**component** [1] - 12:18
**comprises** [1] - 43:19
**concern** [2] - 10:22, 35:6
**concerns** [4] - 16:7, 18:5, 18:8, 18:13
**conclude** [1] - 51:5
**concluded** [1] - 51:15
**concludes** [1] - 36:25
**conclusion** [1] - 34:5
**conclusions** [1] - 35:8
**conditions** [1] - 35:12
**conduct** [1] - 31:18
**Conference** [1] - 52:12
**conferred** [1] - 47:1
**conformance** [1] - 52:12
**conscious** [3] - 23:14, 23:15, 30:14
**consciously** [1] - 23:13
**consider** [11] - 26:13, 26:23, 27:4, 27:18, 27:21, 27:24, 29:16, 30:25, 32:24, 38:8, 38:12
**considered** [1] - 28:18
**considering** [1] - 29:24
**considers** [1] - 38:4
**consistent** [1] - 30:20
**consists** [1] - 26:14
**constant** [1] - 43:21
**constants** [2] - 43:23, 43:24
**constitutes** [1] - 37:21
**constructions** [2] - 47:12, 48:25
**consultant** [1] - 5:10

consulting [1] - 33:3
contact [5] - 17:5, 32:22, 35:17, 35:22, 35:24
context [1] - 41:1
Continued [3] - 3:1, 4:1, 5:1
contradicted [1] - 30:8
control [2] - 23:14, 29:1
controls [1] - 28:8
convincing [2] - 25:7, 40:16
cooperation [1] - 36:7
copied [1] - 14:22
copy [3] - 48:25, 49:1
corporate [1] - 5:9
correct [5] - 17:7, 33:22, 41:19, 42:11, 52:9
correction [1] - 48:19
correctly [3] - 17:6, 17:8, 48:8
corresponding [1] - 39:11
Costa [1] - 3:23
COUNSEL [4] - 2:1, 3:1, 4:1, 5:1
counsel [6] - 34:18, 34:19, 47:2, 47:25, 50:6, 50:11
COUNTERCLAIM [5] - 2:3, 3:3, 3:17, 4:3, 5:3
Counterclaim [2] - 1:6, 1:10
COUNTY [1] - 52:3
couple [1] - 20:14
coupled [4] - 43:4, 43:6, 43:13, 43:15
coupled' [1] - 43:7
coupling [6] - 43:12, 43:14, 43:16, 44:10, 44:17, 44:19
course [1] - 32:3
Court [19] - 9:7, 19:18, 19:23, 20:1, 20:5, 20:9, 21:5, 21:6, 24:12, 28:23, 32:22, 33:14, 35:4, 35:15, 45:19, 46:18, 48:2, 52:6, 52:20
court [1] - 40:16
COURT [59] - 1:1, 1:24, 7:6, 7:10, 7:15, 7:18, 7:24, 8:1, 8:6, 8:9, 8:12, 9:9, 9:12, 9:15, 9:21, 9:24, 16:12, 18:18, 18:21,

19:4, 19:6, 19:8, 19:13, 19:16, 19:20, 19:24, 20:3, 20:7, 20:11, 20:18, 21:10, 21:19, 22:5, 44:25, 45:3, 45:8, 45:13, 45:22, 46:1, 46:4, 46:6, 46:9, 46:13, 46:16, 46:18, 46:21, 46:24, 47:11, 47:19, 47:21, 48:3, 48:6, 48:11, 48:14, 48:18, 49:18, 50:24, 51:8, 52:6
Court's [2] - 28:14, 48:25
courthouse [2] - 35:18, 36:2
COURTROOM [9] - 7:7, 7:23, 19:11, 20:17, 21:1, 21:3, 21:9, 44:23, 50:22
courtroom [5] - 22:3, 34:4, 35:25, 36:5, 49:25
cover [2] - 17:6, 41:4
coverage [1] - 41:3
covers [5] - 40:23, 41:6, 41:8, 41:10
COVID [2] - 35:19
COVID-19 [4] - 35:2, 35:20, 35:23, 36:3
created [3] - 14:7, 15:9, 15:15
credentialed [1] - 9:3
credibility [1] - 30:18
cross [2] - 34:18, 34:20
cross-examine [2] - 34:18, 34:20
crowd [1] - 10:12
CRR [1] - 1:23
CSR [2] - 1:23, 52:20
cue [1] - 50:8
custom [1] - 14:6
customer [1] - 12:2
customers [1] - 11:14

**D**

D.C [1] - 2:18
DALE [1] - 3:12
damages [4] - 24:17, 24:25, 40:1, 40:7
data [1] - 15:19
Date [1] - 52:15
daughter [3] - 9:3, 9:5, 10:12
DAY [1] - 1:10
days [1] - 35:24

dchang@raklaw. com [1] - 3:15
DCM [2] - 26:4, 26:7
DEB [1] - 4:9
Debbie [1] - 52:20
DEBBIE [3] - 1:23, 52:5, 52:19
decide [20] - 23:1, 27:8, 27:17, 28:24, 29:19, 31:1, 31:4, 31:20, 31:23, 34:1, 37:22, 39:14, 40:18, 41:10, 41:15, 42:5, 42:17, 42:18, 42:19
deciding [5] - 26:13, 27:24, 29:15, 29:18, 41:21
decision [2] - 25:13, 33:16
decisions [1] - 23:16
deemed [1] - 26:7
DEFENDANT [5] - 2:3, 3:3, 3:17, 4:3, 5:3
Defendant [2] - 1:6, 1:9
defendant [5] - 23:24, 24:5, 34:18, 34:19, 48:21
defendant's [5] - 5:10, 5:10, 19:16, 19:21, 20:4
defendants [1] - 51:7
defense [3] - 24:23, 25:9, 47:25
define [4] - 37:4, 40:23, 41:2, 41:13
defined [1] - 39:20
defines [1] - 38:5
definite [1] - 38:12
definition [5] - 41:23, 42:10, 42:11, 42:13, 42:15
definitions [8] - 41:14, 41:18, 41:20, 41:25, 42:20, 42:21, 42:23
deliberate [1] - 34:25
deliberately [1] - 31:5
deliberations [4] - 22:15, 31:22, 32:13, 33:15
Delta [1] - 11:15
demagnetized [1] - 43:3
deny [1] - 40:11
department [1] - 12:8
deputy [3] - 35:25, 36:5, 49:25
DEPUTY [9] - 7:7, 7:23, 19:11, 20:17, 21:1, 21:3, 21:9,

44:23, 50:22
described [1] - 38:13
describes [1] - 37:12
description [2] - 36:22, 40:25
deserves [1] - 31:16
design [3] - 16:18, 26:5, 26:8
designed [2] - 14:16, 15:2
designing [2] - 14:6, 16:21
destroyed [1] - 34:5
detail [1] - 12:23
determination [1] - 30:18
determine [3] - 36:1, 37:10, 38:1
determined [1] - 41:16
develop [2] - 16:18, 35:18
dhinospaan@yahoo. com [1] - 1:25
diagnosed [1] - 35:23
dictionaries [1] - 33:3
Dieter [1] - 5:9
differ [1] - 28:7
differences [1] - 31:1
different [4] - 10:18, 27:15, 30:21
differently [1] - 30:25
differs [1] - 31:2
DIGITAL [1] - 1:8
Digital [15] - 8:23, 13:25, 18:7, 19:9, 19:22, 23:25, 24:6, 24:13, 24:17, 24:19, 24:21, 24:23, 39:15, 48:21
dire [1] - 6:3
Dire [1] - 7:9
direct [5] - 17:3, 26:24, 26:25, 27:7
directed [2] - 24:9, 38:8
discuss [2] - 32:21, 50:19
discussing [1] - 32:8
disk [1] - 15:20
disks [1] - 26:5
dislikes [2] - 22:25, 23:9
disregard [3] - 28:17, 29:14, 29:17
distinction [1] - 27:6
distract [1] - 34:2
District [2] - 52:6, 52:7
DISTRICT [3] - 1:1, 1:2, 1:3
division [1] - 14:8

DIVISION [1] - 1:2
done [3] - 16:3, 37:19, 49:14
doug.lumish@lw. com [1] - 3:20
DOUGLAS [1] - 3:18
down [10] - 12:4, 12:6, 12:11, 19:14, 20:14, 20:19, 20:21, 21:21, 21:25, 48:8
draw [1] - 35:8
drive [4] - 8:23, 13:14, 13:19, 24:9
Drive [7] - 3:19, 3:22, 4:5, 4:9, 4:13, 4:21, 5:5
drives [8] - 8:19, 12:12, 12:20, 13:4, 13:9, 13:23, 15:20, 15:24
DUI [1] - 9:8
during [6] - 27:13, 32:2, 33:15, 35:10, 36:14, 39:11
duties [1] - 23:4
duty [4] - 22:7, 22:20, 28:10, 32:3

**E**

E.K.W [2] - 20:6, 20:7
easy [1] - 17:16
economic [2] - 23:7, 30:17
educational [1] - 49:8
effectively [1] - 41:3
eight [1] - 18:25
either [3] - 13:9, 27:7, 47:24
electrical [1] - 8:16
electronic [1] - 32:9
eligible [1] - 38:9
email [2] - 17:3, 32:10
Emirates [1] - 11:16
employer [2] - 32:15, 32:17
enable [1] - 36:23
enabled [1] - 38:13
end [7] - 11:20, 11:22, 20:20, 22:13, 31:22, 32:3, 40:21
ended [1] - 45:6
engineer [1] - 8:24
engineering [3] - 8:17, 11:3, 17:21
engineers [4] - 8:20, 9:2, 12:9, 16:17
ensure [1] - 33:8
entertainment [3] - 8:18, 11:12, 11:18

entitled [3] - 24:24, 40:8, 52:11
equipment [1] - 12:19
error [1] - 45:20
ESQ [12] - 2:4, 2:8, 2:12, 2:16, 3:4, 3:8, 3:12, 3:18, 3:22, 4:5, 4:12, 5:4
estimated [1] - 45:4
evaluate [1] - 23:16
event [1] - 30:24
evidence [56] - 21:6, 22:18, 22:21, 23:2, 23:20, 25:2, 25:4, 25:7, 25:8, 25:12, 25:14, 26:13, 26:16, 26:19, 26:21, 26:24, 26:25, 27:3, 27:5, 27:7, 27:9, 27:14, 27:18, 27:19, 27:23, 28:2, 28:5, 28:6, 28:10, 28:17, 28:23, 28:24, 29:2, 29:3, 29:13, 29:16, 30:8, 30:11, 31:12, 31:24, 32:23, 33:9, 33:17, 33:21, 33:24, 34:7, 34:13, 34:15, 34:17, 34:19, 34:21, 37:20, 40:16, 42:23, 48:20
Evidence [3] - 28:12, 29:1, 29:5
evidences [1] - 22:12
examination [1] - 38:16
examine [2] - 34:18, 34:20
examined [1] - 50:12
examiner [14] - 37:8, 37:15, 38:1, 38:4, 38:7, 38:11, 38:16, 38:18, 38:20, 38:23, 39:3, 39:5, 39:10
examiners [1] - 38:1
examines [1] - 37:9
examining [1] - 37:14
example [1] - 27:10
examples [1] - 40:25
exchange [6] - 43:6, 43:9, 43:14, 43:16, 44:17, 44:19
exclude [1] - 36:11
excluded [1] - 28:15
exclusive [2] - 37:5, 39:23
excuse [9] - 7:11, 7:20, 19:19, 19:23, 20:2, 20:6, 20:10, 21:20, 50:18
excused [2] - 7:19, 19:13
excuses [1] - 19:10
exercise [1] - 18:22
exhibit [3] - 29:3, 29:7, 29:9
exhibits [3] - 26:16, 27:22, 28:19
existing [1] - 37:24
expects [1] - 34:15
experience [2] - 8:5, 27:19
expires [1] - 39:22
explain [2] - 42:6, 42:8
explanation [1] - 27:15
exposed [2] - 32:1, 33:13
expressed [1] - 23:13
external [1] - 43:2
extra [2] - 46:18, 47:3
eye [2] - 49:23, 49:24

**F**

F.J.H [2] - 19:23, 19:24
face [2] - 35:7, 35:10
fact [6] - 26:25, 27:4, 27:13, 27:17, 29:22, 31:12
factors [1] - 30:12
facts [11] - 22:20, 22:21, 25:15, 26:14, 26:17, 27:3, 27:24, 28:6, 29:18, 47:12, 48:25
fail [3] - 8:21, 11:25, 13:17
fails [3] - 12:1, 13:13, 16:1
failure [2] - 12:2, 13:14
failures [1] - 16:2
fair [2] - 33:8, 33:9
fairly [1] - 23:4
fairness [1] - 33:12
familiarize [1] - 36:15
family [2] - 32:15, 32:17
fear [1] - 23:10
feature [1] - 32:11
Federal [2] - 49:6, 52:20
FEDERAL [2] - 1:24, 52:5
fee [1] - 39:7
feelings [2] - 14:25, 15:12
fellow [4] - 31:21, 32:12, 34:1, 34:10
felt [1] - 14:12
FENSTER [46] - 2:4, 9:25, 10:4, 10:9, 10:14, 10:20, 10:24, 11:3, 11:6, 11:9, 11:13, 11:17, 11:21, 12:15, 12:24, 13:2, 13:4, 13:22, 14:3, 14:10, 14:17, 14:25, 15:12, 15:18, 15:22, 16:7, 16:11, 18:19, 19:2, 19:5, 19:7, 19:18, 20:1, 20:9, 45:6, 45:18, 45:24, 46:3, 46:5, 46:7, 46:12, 48:10, 48:12, 48:15, 51:6, 51:13
Fenster [2] - 9:24, 48:7
Fenster's [1] - 17:10
ferromagnetic [5] - 43:1, 43:19, 43:22, 44:8, 44:20
few [3] - 10:18, 31:17, 49:20
field [3] - 42:24, 43:2, 44:6
figures [1] - 40:23
filed [5] - 25:21, 26:1, 26:2, 36:20, 37:6
final [3] - 12:1, 22:13, 22:14
finally [1] - 44:16
fine [2] - 45:18, 47:24
first [11] - 7:22, 18:24, 19:6, 19:16, 20:20, 31:19, 34:11, 41:9, 45:3, 49:14
fit [1] - 11:25
flies [1] - 12:1
flight [3] - 8:18, 11:12, 11:18
Floor [6] - 2:5, 2:9, 2:13, 2:21, 3:9, 3:23
floor [1] - 7:22
folks [7] - 7:22, 16:22, 17:21, 20:14, 21:21, 47:13, 47:21
follow [5] - 17:7, 22:22, 23:18, 23:20, 28:20
follow-up [1] - 17:7
following [4] - 23:17, 25:15, 34:11, 38:15
follows [1] - 35:4
FOR [5] - 2:3, 3:3, 3:17, 4:3, 5:3
Ford [1] - 12:4
forefront [1] - 13:25
foregoing [1] - 52:9
forget [1] - 30:22
form [1] - 50:20
format [2] - 46:22, 52:11
formed [1] - 44:15
forth [2] - 39:2, 39:11
forward [1] - 17:20
free [1] - 49:4
French [1] - 11:7
FRENKEL [1] - 5:4
front [2] - 20:17, 20:18
full [1] - 50:11

**G**

gap [1] - 45:16
garden [1] - 27:14
gate [2] - 11:11
gather [1] - 10:17
gender [4] - 23:7, 30:17
general [3] - 16:6, 36:16, 36:17
generally [4] - 17:2, 24:8, 37:24, 40:2
generated [1] - 39:10
gentlemen [9] - 7:10, 20:12, 21:3, 21:10, 22:6, 44:21, 48:18, 49:18, 50:19
given [2] - 27:6, 33:19
GMBH [2] - 1:4, 23:24
God [1] - 21:7
Google [1] - 10:19
govern [1] - 22:15
government [1] - 8:5
graceful [1] - 16:4
graduated [1] - 9:17
granted [2] - 36:8, 40:14
grants [1] - 39:8
greater [1] - 44:5
GREGORY [1] - 5:4
group [5] - 8:1, 8:20, 9:13, 12:8, 26:9
groups [1] - 26:11
guess [1] - 29:11
guidance [1] - 37:22
guidelines [1] - 35:4
guilty [1] - 9:8

**H**

Hac [1] - 2:16
half [1] - 45:4
hand [1] - 31:7
handheld [1] - 14:21
HANLE [3] - 4:12, 7:13, 7:17
happy [1] - 48:1
hard [20] - 8:19, 8:23, 12:11, 12:20, 13:4, 13:8, 13:14, 13:19, 13:23, 15:20, 24:9, 43:6, 43:10, 43:14, 43:15, 43:17, 43:25, 44:3, 44:9, 44:15
hardware [4] - 11:18, 11:20, 11:22, 14:15
harm [1] - 40:3
HDDs [1] - 26:6
health [2] - 35:15, 35:16
healthy [2] - 35:3, 36:6
hear [5] - 14:14, 30:2, 33:20, 45:10, 49:12
heard [8] - 10:20, 14:17, 17:11, 17:24, 27:2, 28:22, 35:21, 45:15
held [1] - 52:10
help [10] - 15:2, 17:4, 17:17, 21:7, 22:10, 22:11, 23:20, 28:5, 33:23, 34:14
helpful [1] - 49:12
hereby [1] - 52:7
high [1] - 9:17
higher [3] - 25:9, 25:10
highly [1] - 25:9
HINO [3] - 1:23, 52:5, 52:19
Hino [1] - 52:20
HINO-SPAAN [3] - 1:23, 52:5, 52:19
Hino-Spaan [1] - 52:20
history' [1] - 39:12
Honor [32] - 7:13, 9:25, 16:11, 18:17, 18:19, 18:20, 19:7, 19:9, 19:18, 19:22, 20:1, 20:5, 20:9, 21:14, 45:7, 45:12, 45:14, 45:19, 45:24, 46:8, 46:14, 46:19, 46:25, 47:7, 47:20, 47:24, 48:1, 48:4, 51:6, 51:7, 51:13, 51:14
HONORABLE [1] - 1:3
hose [1] - 27:15
host [8] - 43:6, 43:8, 43:13, 43:15, 43:17, 43:19, 43:22, 44:1
host' [1] - 44:7
hour [2] - 45:4, 45:7
house [1] - 10:10

*HR* [1] - 14:14
*Huntington* [1] - 8:14
*hurt* [1] - 15:6
*husband* [1] - 9:5
*HVAC* [1] - 9:2
*HYUK* [1] - 3:22

## I

*I.C* [3] - 7:11, 20:10, 20:11
*IC* [1] - 12:18
*ideas* [1] - 38:11
*identifies* [1] - 26:4
*identity* [2] - 23:7, 30:17
*ignore* [4] - 23:19, 29:11, 29:15, 31:10
*II* [1] - 1:10
*Illinois* [2] - 3:14, 4:18
*immediately* [3] - 33:14, 35:14, 35:24
*impartial* [2] - 18:6, 33:8
*impartially* [1] - 23:4
*import* [1] - 39:19
*importance* [1] - 15:1
*important* [8] - 15:5, 15:16, 23:19, 31:6, 31:14, 40:22, 50:10
*importing* [1] - 36:13
*improper* [1] - 28:12
*in-flight* [3] - 8:18, 11:12, 11:18
*Inc* [1] - 23:25
*INC* [1] - 1:8
*included* [1] - 47:3
*includes* [4] - 32:8, 36:21, 43:22, 44:8
*including* [4] - 23:11, 32:14, 43:5, 50:5
*increase* [3] - 43:20, 43:25, 44:2
*increasing* [1] - 43:20
*indicated* [1] - 51:8
*indicating* [1] - 22:17
*indicating)* [1] - 50:15
*indication* [2] - 42:3, 42:16
*indifferent* [1] - 18:3
*industry* [1] - 9:2
*infer* [1] - 22:16
*influenced* [6] - 22:24, 23:5, 23:9, 28:13, 34:9, 35:9
*information* [9] - 9:12, 10:16, 10:17, 14:2, 23:16, 32:1, 33:13, 37:25, 44:12
*infringe* [2] - 24:14,

24:20
*infringement* [8] - 24:23, 39:25, 40:4, 40:5, 40:11, 41:11, 42:4, 42:18
*infringer* [2] - 40:2, 40:8
*infringes* [2] - 24:6, 48:21
*infringing* [8] - 14:12, 14:18, 24:18, 39:17, 39:23, 40:1, 40:9, 40:10
*initial* [2] - 21:12, 38:22
*inserted* [1] - 24:11
*inspected* [1] - 12:7
*installed* [2] - 8:21, 11:25
*instead* [1] - 35:24
*instruct* [3] - 22:7, 26:21, 34:22
*instructed* [2] - 28:16, 42:9
*instruction* [2] - 28:20, 32:24
*instructions* [16] - 6:5, 21:6, 21:12, 21:18, 22:9, 22:10, 22:14, 22:15, 22:16, 23:17, 31:25, 35:1, 37:21, 39:14, 45:20, 50:5
*Instructions* [1] - 22:4
*intellectually* [1] - 15:9
*intended* [1] - 28:5
*intention* [1] - 23:14
*interact* [1] - 43:9
*interest* [1] - 30:6
*intern* [1] - 8:4
*internationally* [1] - 11:11
*internet* [2] - 32:10, 33:4
*interpret* [1] - 28:5
*interpretation* [1] - 42:1
*interpreted* [1] - 24:12
*Intrinsic* [1] - 12:17
*invalid* [5] - 24:22, 39:16, 40:12, 40:17, 41:12
*invalidity* [2] - 24:22, 42:5
*invented* [1] - 15:14
*invention* [7] - 36:12, 36:22, 37:4, 37:13, 38:5, 39:20, 40:25
*investigation* [1] - 33:5

*involved* [5] - 11:24, 12:24, 14:8, 18:9, 32:16
*involves* [1] - 32:2
*Irvine* [2] - 11:12, 12:3
*issue* [8] - 12:13, 15:24, 17:5, 21:15, 21:24, 24:1, 39:7, 48:19
*issued* [2] - 25:17, 25:22
*issues* [12] - 14:15, 14:24, 32:2, 39:8, 40:18, 41:14, 41:21, 42:4, 42:5, 42:17, 42:18, 50:20
*IT* [1] - 5:10
*item* [1] - 26:21

## J

*J.C.M* [6] - 7:23, 9:10, 9:16, 10:1, 17:20, 20:16
*J.R* [1] - 7:15
*J.R.S* [2] - 20:2, 20:3
*JACOB* [1] - 2:12
*JAMES* [1] - 1:3
*jbuczko@raklaw. com* [1] - 2:15
*jeopardizes* [1] - 33:11
*job* [3] - 21:22, 41:20, 50:4
*jobs* [1] - 9:5
*JOSEPH* [1] - 3:22
*joseph.lee@lw.com* [1] - 3:24
*JUDGE* [1] - 1:3
*Judicial* [2] - 49:6, 52:12
*judiciary* [1] - 49:8
*July* [1] - 52:15
*JULY* [2] - 1:16, 7:1
*juror* [5] - 18:13, 33:10, 33:12, 42:22, 46:15
*JUROR* [46] - 7:25, 8:3, 8:8, 8:11, 8:13, 9:11, 9:14, 9:16, 9:22, 10:3, 10:7, 10:11, 10:17, 10:23, 11:2, 11:5, 11:7, 11:10, 11:15, 11:19, 11:23, 12:17, 13:1, 13:3, 13:7, 13:24, 14:5, 14:13, 14:20, 15:4, 15:15, 15:21, 15:23, 16:10, 16:15, 16:20, 16:23, 17:1,

17:13, 17:16, 17:23, 18:4, 18:8, 18:11, 18:14, 19:15
*Juror* [3] - 19:10, 19:23, 20:6
*jurors* [9] - 7:5, 18:25, 20:25, 22:3, 31:18, 31:21, 32:12, 34:1, 34:10
*JURY* [1] - 1:15
*jury* [26] - 5:10, 7:6, 7:8, 9:7, 9:20, 10:22, 16:9, 18:25, 20:13, 21:2, 21:4, 21:8, 22:2, 22:6, 32:3, 32:18, 32:19, 34:1, 34:24, 44:24, 45:10, 46:10, 48:6, 48:17, 50:5, 50:23
*Jury* [4] - 6:3, 6:4, 7:9, 22:4
*jury's* [1] - 51:11

## K

*K.H.C* [4] - 7:16, 7:17, 7:18, 7:19
*KABAT* [7] - 2:4, 2:8, 2:12, 2:16, 2:20, 3:4, 3:8
*Kabat* [1] - 5:9
*keep* [5] - 14:1, 18:6, 31:19, 33:25, 35:3
*key* [1] - 13:11
*kind* [11] - 8:24, 10:17, 12:4, 12:5, 12:18, 12:19, 12:23, 14:2, 15:25, 17:7
*kinds* [3] - 12:18, 13:22, 27:5
*knowledge* [3] - 14:11, 16:5, 37:25
*knows* [1] - 20:23
*KROEGER* [3] - 3:4, 46:19, 47:7

## L

*ladies* [9] - 7:10, 20:12, 21:3, 21:10, 22:6, 44:21, 48:18, 49:18, 50:18
*language* [3] - 24:11, 42:2, 42:15
*large* [2] - 11:9, 18:7
*last* [3] - 20:4, 20:8, 35:24
*LATHAM* [7] - 3:12, 3:18, 3:21, 4:8, 4:16, 4:20, 5:4
*law* [8] - 22:8, 22:22,

27:5, 31:25, 33:7, 34:22, 41:12
*LAW* [4] - 2:20, 4:9, 4:16, 4:20
*laws* [1] - 38:10
*lawsuit* [2] - 18:10, 39:24
*lawyer* [3] - 29:2, 29:4, 29:5
*lawyers* [5] - 26:17, 28:1, 28:2, 28:7, 28:9
*layer* [13] - 43:7, 43:10, 43:14, 43:16, 43:18, 43:21, 44:1, 44:3, 44:9, 44:12, 44:15, 44:18
*layer'* [6] - 43:11, 43:14, 43:21, 44:4, 44:11, 44:17
*layers* [9] - 43:12, 43:20, 43:22, 43:24, 43:25, 44:8, 44:10, 44:14, 44:20
*learn* [1] - 33:6
*learned* [1] - 35:21
*leave* [1] - 34:3
*LEDAHL* [10] - 2:8, 21:14, 45:1, 46:14, 46:17, 47:16, 47:18, 47:20, 47:23, 48:4
*LEE* [1] - 3:22
*left* [3] - 21:23, 22:3, 34:3
*legal* [1] - 32:24
*less* [1] - 41:5
*level* [1] - 16:6
*library* [1] - 10:18
*light* [2] - 27:19, 30:11
*like/dislike* [1] - 16:24
*likely* [2] - 20:23, 25:4
*limited* [4] - 16:5, 26:19, 26:22, 28:19
*limiting* [1] - 28:20
*line* [1] - 12:4
*list* [1] - 27:25
*listen* [4] - 22:12, 32:25, 42:23, 49:3
*listening* [1] - 50:3
*Liu* [1] - 5:9
*live* [3] - 8:13, 9:16, 35:16
*living* [1] - 9:4
*LLP* [9] - 3:12, 3:18, 3:21, 4:4, 4:8, 4:12, 4:16, 4:20, 5:4
*locally* [1] - 9:2
*look* [6] - 12:9, 12:12, 17:3, 46:21, 47:3, 50:14

**UNITED STATES DISTRICT COURT**

looking *[1]* - 17:4
LOS *[1]* - 52:3
Los *[6]* - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
lose *[1]* - 18:23
LOT *[1]* - 11:16
Lumish *[3]* - 16:12, 19:8, 45:13
LUMISH *[27]* - 3:18, 7:16, 16:13, 16:16, 16:22, 16:24, 17:9, 17:14, 17:19, 17:24, 18:5, 18:9, 18:12, 18:15, 18:20, 19:9, 19:12, 19:22, 20:5, 45:12, 45:14, 46:25, 47:15, 47:17, 48:1, 51:7, 51:14

## M

M.I.S *[1]* - 20:19
M.J.R *[6]* - 7:23, 7:24, 8:13, 10:25, 11:1, 16:13
M.O *[1]* - 7:20
magnetic *[19]* - 15:19, 24:9, 26:4, 42:25, 43:2, 43:4, 43:7, 43:10, 43:14, 43:15, 43:17, 44:1, 44:3, 44:5, 44:6, 44:9, 44:11, 44:12, 44:15
magnetically *[1]* - 44:13
maichele@raklaw. com *[1]* - 2:19
Maine *[1]* - 2:17
major *[1]* - 13:18
manage *[3]* - 8:19, 12:8, 16:17
management *[1]* - 16:24
manager *[1]* - 11:4
managing *[1]* - 16:22
manner *[1]* - 30:5
manufacturer *[1]* - 12:13
manufacturers *[1]* - 12:15
MARC *[1]* - 2:4
March *[2]* - 25:17, 26:1
married *[2]* - 9:1, 9:18
mary *[1]* - 5:10
mask *[3]* - 35:6, 35:7, 35:10
masks *[1]* - 35:4
material *[2]* - 43:1, 47:4
materials *[4]* - 33:5,

42:25, 47:5, 49:3
matter *[4]* - 32:22, 38:9, 47:4, 52:11
MATTHEW *[1]* - 2:16
mchan@raklaw.com *[1]* - 2:23
mean *[1]* - 15:8
meaning *[4]* - 41:16, 41:24, 42:6, 42:14
means *[17]* - 23:1, 25:3, 25:7, 29:15, 32:9, 40:2, 42:24, 43:5, 43:8, 43:11, 43:15, 43:21, 44:4, 44:7, 44:11, 44:14, 44:17
measure *[1]* - 42:25
mechanical *[1]* - 9:2
media *[4]* - 15:19, 24:9, 24:10, 33:1
medium *[1]* - 26:5
members *[2]* - 26:9, 32:15
memory *[4]* - 28:8, 30:4, 34:7, 34:8
Menlo *[4]* - 3:19, 4:10, 4:21, 5:5
mentioned *[2]* - 13:4, 14:3
merits *[1]* - 32:7
Mesa *[1]* - 3:23
messaging *[1]* - 32:10
met *[1]* - 47:1
mfenster@raklaw. com *[1]* - 2:7
mic *[1]* - 45:13
microphone *[4]* - 10:1, 10:25, 16:14, 17:19
Midway *[1]* - 8:14
might *[3]* - 17:25, 21:18, 29:12
military *[1]* - 8:5
mind *[5]* - 10:25, 16:17, 17:19, 18:6, 31:19
MINNA *[1]* - 2:20
minute *[5]* - 7:15, 45:22, 46:1, 46:4, 47:13
minutes *[3]* - 45:4, 47:20, 49:10
MIRZAIE *[1]* - 3:8
missed *[1]* - 50:14
mistake *[1]* - 47:8
mistakes *[1]* - 30:23
moment *[3]* - 16:17, 44:5, 46:17
moments *[2]* - 43:8, 43:9

money *[2]* - 24:16, 40:2
months *[1]* - 39:4
morning *[6]* - 8:2, 8:7, 27:11, 49:24, 50:21
most *[3]* - 8:18, 14:14, 49:12
mostly *[2]* - 8:21, 11:20
motions *[1]* - 50:4
move *[2]* - 20:14, 20:21
movies *[1]* - 12:21
MR *[93]* - 1:4, 7:13, 7:16, 7:17, 9:25, 10:4, 10:9, 10:14, 10:20, 10:24, 11:3, 11:6, 11:9, 11:13, 11:17, 11:21, 12:15, 12:24, 13:2, 13:4, 13:22, 14:3, 14:10, 14:17, 14:25, 15:12, 15:18, 15:22, 16:7, 16:11, 16:13, 16:16, 16:22, 16:24, 17:9, 17:14, 17:19, 17:24, 18:5, 18:9, 18:12, 18:15, 18:19, 18:20, 19:2, 19:5, 19:7, 19:9, 19:12, 19:18, 19:22, 20:1, 20:5, 20:9, 21:14, 23:23, 23:24, 24:5, 24:12, 24:16, 26:2, 45:1, 45:6, 45:12, 45:14, 45:18, 45:24, 46:3, 46:5, 46:7, 46:12, 46:14, 46:17, 46:19, 46:25, 47:7, 47:15, 47:16, 47:17, 47:18, 47:20, 47:23, 48:1, 48:4, 48:10, 48:12, 48:15, 48:21, 51:1, 51:6, 51:7, 51:13, 51:14
MRT *[1]* - 24:24
multilayer *[1]* - 43:4
multiple *[1]* - 13:8
must *[24]* - 22:16, 22:22, 22:24, 23:1, 23:17, 25:3, 25:8, 26:22, 27:18, 28:17, 28:20, 29:11, 29:16, 30:14, 31:23, 32:1, 32:20, 36:19, 37:22, 40:5, 40:6, 41:18, 42:10

## N

name *[3]* - 8:13, 9:16,

19:11
named *[2]* - 11:8, 13:20
names *[1]* - 13:24
national *[2]* - 23:6, 30:16
natural *[1]* - 38:10
nature *[1]* - 38:10
Naval *[1]* - 8:3
near *[1]* - 8:14
necessarily *[2]* - 29:22, 31:13
need *[5]* - 18:18, 21:25, 40:19, 41:9, 50:6
needle *[1]* - 15:25
negotiation *[1]* - 12:25
net *[1]* - 44:5
neutral *[1]* - 49:8
never *[1]* - 14:17
new *[2]* - 38:6, 39:1
Newport *[4]* - 4:5, 4:6, 4:13, 4:14
news *[3]* - 10:15, 10:19, 33:1
next *[1]* - 20:23
night *[1]* - 27:13
Noffsinger *[1]* - 5:10
none *[1]* - 29:21
North *[2]* - 3:13, 4:17
note *[2]* - 34:2, 36:4
note-taking *[1]* - 34:2
notebook *[1]* - 46:19
notebooks *[3]* - 46:15, 47:2, 48:24
notes *[7]* - 33:23, 33:24, 34:3, 34:4, 34:6, 34:7, 34:9
notify *[3]* - 32:16, 33:13, 35:15
November *[1]* - 25:21
nucleation *[6]* - 43:6, 43:8, 43:13, 43:15, 43:17, 44:1
Number *[7]* - 19:10, 19:23, 20:6, 24:1, 24:3, 25:20, 25:25
number *[3]* - 29:23, 31:13, 35:25
numbered *[2]* - 37:1, 40:20

## O

o'clock *[2]* - 49:15, 49:22
oath *[1]* - 23:3
object *[3]* - 28:11, 29:6, 47:5
objection *[5]* - 28:13,

29:6, 29:8, 29:10, 47:1
objections *[2]* - 28:9, 51:3
obtain *[2]* - 36:18, 36:19
obtaining *[1]* - 49:7
obtains *[1]* - 36:15
obvious *[1]* - 38:6
obviously *[3]* - 12:20, 13:11, 14:22
October *[1]* - 25:23
OF *[9]* - 1:2, 1:14, 2:1, 3:1, 4:1, 5:1, 52:1, 52:3, 52:4
offer *[2]* - 36:14, 39:19
offering *[1]* - 36:11
offers *[1]* - 29:3
office *[4]* - 11:12, 12:2, 38:22, 38:24
Office *[1]* - 36:9
OFFICIAL *[3]* - 1:24, 52:1, 52:5
Official *[1]* - 52:20
often *[2]* - 30:22, 38:22
old *[1]* - 10:18
old-school *[1]* - 10:18
once *[2]* - 50:9, 50:17
one *[27]* - 7:13, 8:25, 9:7, 11:23, 13:12, 13:13, 13:17, 13:25, 14:21, 14:25, 18:1, 19:3, 20:15, 20:21, 26:5, 27:3, 34:4, 36:15, 36:25, 39:24, 45:3, 46:14, 46:18, 46:20, 46:21, 50:2
ones *[3]* - 7:13, 15:21, 15:22
oOo *[1]* - 51:16
open *[2]* - 18:6, 31:19
opening *[10]* - 28:3, 34:12, 34:13, 34:16, 45:9, 45:10, 45:15, 49:4, 49:12, 50:12
openings *[1]* - 45:5
operations *[1]* - 11:20
opinion *[2]* - 22:18, 23:10
opinions *[2]* - 22:25, 50:20
opportunity *[3]* - 18:22, 30:1, 33:10
opposing *[1]* - 47:1
optional *[1]* - 44:10
order *[2]* - 29:13, 41:10
Order *[1]* - 50:25
ordered *[1]* - 32:21

| | | | | |
|---|---|---|---|---|
| **ordinary** [2] - 41:24, 42:14 | **passing** [2] - 10:25, 17:19 | **person's** [1] - 23:5 | 40:15 | **proves** [1] - 40:17 |
| **orientation** [2] - 23:7, 30:17 | **past** [1] - 16:3 | **personal** [2] - 22:25, 23:9 | **pretty** [1] - 21:17 | **provide** [5] - 21:11, 27:15, 40:24, 41:1, 41:17 |
| **oriented** [1] - 44:13 | **Patent** [7] - 24:1, 24:3, 25:17, 25:20, 25:22, 25:25, 36:9 | **personally** [1] - 27:2 | **prevent** [1] - 44:19 | |
| **otherwise** [2] - 32:4, 45:9 | | **persuaded** [2] - 25:3, 25:8 | **previously** [2] - 37:24, 42:9 | **provided** [4] - 36:1, 41:22, 42:13, 42:21 |
| **ought** [1] - 46:10 | **patent** [69] - 14:24, 15:8, 15:13, 15:16, 17:12, 24:3, 24:4, 24:7, 24:8, 24:23, 25:19, 25:24, 36:15, 36:18, 36:19, 37:2, 37:5, 37:6, 37:8, 37:9, 37:10, 37:14, 37:15, 37:25, 38:1, 38:4, 38:7, 38:11, 38:16, 38:17, 38:20, 38:23, 39:3, 39:5, 39:8, 39:10, 39:15, 39:18, 39:19, 39:22, 39:24, 40:3, 40:5, 40:6, 40:7, 40:10, 40:12, 40:17, 40:20, 40:21, 40:23, 40:24, 41:4, 41:6, 48:13, 48:22, 48:23, 49:1, 49:7, 51:2 | **phenomena** [1] - 38:10 | **principles** [1] - 22:10 | **provides** [1] - 42:25 |
| **outcome** [1] - 30:6 | | **phone** [1] - 32:9 | **printing** [1] - 47:8 | **providing** [1] - 11:17 |
| **outline** [1] - 34:14 | | **piece** [1] - 12:19 | **Pro** [1] - 2:16 | **proving** [1] - 25:6 |
| **outside** [1] - 33:13 | | **piping** [1] - 9:23 | **probable** [1] - 25:9 | **PTO** [8] - 36:10, 36:16, 36:20, 37:7, 37:8, 37:16, 39:8, 40:14 |
| **overall** [1] - 44:2 | | **pkroeger@raklaw. com** [1] - 3:7 | **problem** [5] - 12:14, 13:16, 13:20, 13:21, 33:22 | |
| **overcome** [1] - 40:15 | | **Placentia** [1] - 9:17 | | **public** [1] - 23:10 |
| **overly** [1] - 34:9 | | **places** [1] - 10:15 | **procedures** [1] - 36:4 | **pull** [2] - 16:1, 49:2 |
| **overnight** [1] - 9:17 | | **plaintiff** [7] - 19:7, 23:23, 24:5, 34:17, 34:20, 48:20, 51:6 | **proceed** [2] - 34:11, 48:1 | **pulled** [1] - 47:8 |
| **overrule** [1] - 29:6 | | | **Proceedings** [1] - 51:15 | **purpose** [6] - 15:5, 26:20, 26:22, 26:23, 28:19, 37:2 |
| **overruled** [1] - 51:3 | | **PLAINTIFF** [5] - 2:3, 3:3, 3:17, 4:3, 5:3 | | |
| **own** [3] - 15:9, 33:6, 34:7 | | **Plaintiff** [2] - 1:5, 1:10 | **PROCEEDINGS** [1] - 1:14 | **pursuant** [1] - 52:8 |
| **owner** [7] - 36:10, 39:19, 39:22, 40:3, 40:5, 40:6, 40:7 | | **plaintiff's** [4] - 5:9, 19:17, 19:25, 20:8 | **proceedings** [4] - 33:12, 46:23, 48:16, 52:10 | **put** [2] - 46:15, 47:5 |
| **owner's** [1] - 37:5 | | **plaintiffs** [1] - 19:6 | **process** [5] - 17:14, 39:2, 47:1, 47:4, 49:7 | |
| | | **plant** [1] - 12:5 | | **Q** |
| **P** | | **play** [2] - 12:22, 49:16 | **procurement** [1] - 12:25 | **Qatar** [1] - 11:16 |
| **P.M** [2] - 1:17, 7:2 | | **played** [1] - 49:17 | | **quarter** [1] - 51:9 |
| **p.m** [1] - 51:15 | | **player** [1] - 15:25 | **product** [1] - 12:24 | **questioning** [1] - 8:6 |
| **PAGE** [1] - 6:2 | | **point** [2] - 37:3, 49:23 | **products** [7] - 8:19, 16:19, 24:13, 24:15, 24:16, 24:19, 26:11 | **questions** [7] - 8:2, 9:13, 17:10, 19:1, 28:9, 33:21, 36:3 |
| **page** [2] - 45:22, 52:11 | | **Polish** [1] - 11:16 | | |
| **pages** [1] - 51:2 | **patent's** [1] - 41:2 | **positions** [1] - 23:21 | | **quickly** [3] - 9:5, 21:17, 45:15 |
| **paid** [1] - 40:2 | **patentable** [4] - 37:11, 38:3, 38:19, 39:6 | **possibly** [2] - 14:1, 17:4 | **promote** [1] - 15:2 | |
| **pandemic** [1] - 35:2 | | | **promptly** [1] - 51:11 | **R** |
| **panel** [1] - 21:24 | **patenting** [1] - 38:9 | **prefer** [2] - 35:5, 45:15 | **proof** [8] - 25:1, 25:10, 25:11, 25:16, 26:25, 27:3, 29:22 | |
| **papers** [1] - 39:9 | **patents** [20] - 11:24, 14:4, 14:7, 14:11, 14:16, 14:19, 15:1, 15:10, 17:11, 17:15, 21:11, 24:1, 24:15, 24:18, 24:20, 36:8, 36:10, 47:12, 49:7 | **preference** [1] - 45:8 | | **race** [2] - 23:5, 30:15 |
| **paperwork** [2] - 50:4, 50:5 | | **preferences** [1] - 23:12 | | **rained** [1] - 27:13 |
| **paragraphs** [1] - 37:1 | | **prejudice** [2] - 23:10, 30:7 | **properly** [2] - 32:24, 40:14 | **rang** [1] - 8:7 |
| **paralegal** [1] - 5:9 | | | **property** [1] - 42:24 | **rate** [1] - 10:7 |
| **Park** [4] - 3:19, 4:10, 4:21, 5:5 | | **prejudices** [1] - 22:25 | **prospective** [2] - 7:5, 22:3 | **RAUTH** [2] - 4:4, 4:12 |
| **part** [5] - 12:20, 13:5, 13:11, 29:21, 31:10 | **PATRICIA** [1] - 4:20 | **preliminary** [3] - 21:17, 22:9, 45:20 | | **reaching** [1] - 27:21 |
| | **patricia.young@lw. com** [1] - 4:22 | | **PROSPECTIVE** [46] - 7:25, 8:3, 8:8, 8:11, 8:13, 9:11, 9:14, 9:16, 9:22, 10:3, 10:7, 10:11, 10:17, 10:23, 11:2, 11:5, 11:7, 11:10, 11:15, 11:19, 11:23, 12:17, 13:1, 13:3, 13:7, 13:24, 14:5, 14:13, 14:20, 15:4, 15:15, 15:21, 15:23, 16:10, 16:15, 16:20, 16:23, 17:1, 17:13, 17:16, 17:23, 18:4, 18:8, 18:11, 18:14, 19:15 | **read** [4] - 32:25, 34:4, 42:20, 50:24 |
| **participant** [1] - 35:7 | | **Preliminary** [2] - 6:5, 22:4 | | |
| **particular** [2] - 18:1, 21:24 | **PAUL** [1] - 3:4 | **prepared** [1] - 49:5 | | **Reading** [2] - 22:5, 26:12 |
| **particularly** [1] - 37:3 | **Pause** [2] - 46:23, 48:16 | **preponderance** [2] - 25:2, 25:11 | | **ready** [2] - 45:18, 47:23 |
| **parties** [9] - 18:21, 23:22, 23:23, 33:8, 36:14, 37:19, 45:19, 49:1, 49:9 | **pause** [1] - 10:21 | **presence** [6] - 7:5, 7:8, 27:16, 44:24, 48:17, 50:23 | | **real** [2] - 8:24, 13:20 |
| | **pay** [1] - 33:18 | | | **really** [13] - 8:23, 10:11, 12:23, 14:15, 15:6, 15:10, 15:16, 17:2, 17:18, 18:4, 18:12, 46:22, 50:13 |
| | **payment** [1] - 39:7 | **present** [2] - 34:17, 34:19 | | |
| | **PCV** [1] - 9:22 | **PRESENT** [1] - 5:8 | | |
| **parts** [1] - 12:3 | **people** [10] - 8:15, 11:10, 17:1, 17:24, 21:23, 21:25, 23:13, 30:22, 30:24, 32:15 | **presented** [3] - 25:14, 34:21, 40:16 | | |
| **party** [9] - 19:3, 25:1, 25:3, 25:6, 25:14, 33:10, 34:14, 34:15, 40:10 | | **presenting** [1] - 37:19 | | **realtime** [1] - 50:15 |
| | | **presiding** [1] - 50:3 | **prove** [3] - 40:5, 40:7, 40:11 | **REALTIME** [1] - 52:5 |
| | **per** [1] - 19:2 | **presumed** [2] - 40:13, 40:14 | | **reason** [2] - 27:19, 35:19 |
| | **peremptory** [1] - 18:22 | | **proved** [1] - 27:17 | |
| **Pasqual's** [1] - 49:24 | **perform** [1] - 23:4 | **presumption** [1] - | | **reasonableness** [1] - 30:10 |
| **pass** [1] - 18:23 | **permission** [1] - 39:18 | | | |
| **passes** [4] - 18:24, 19:2, 19:3, 19:7 | **permitted** [1] - 29:5 | | | **reasons** [2] - 15:7, 35:6 |
| | **person** [3] - 10:9, 13:13, 32:9 | | | |

receive *[4]* - 26:10, 26:11, 32:23, 40:8
received *[8]* - 26:16, 27:22, 28:19, 28:25, 29:2, 29:7, 29:9, 31:24
recently *[1]* - 11:15
recess *[1]* - 44:22
record *[4]* - 15:25, 29:14, 46:10, 48:20
recording *[3]* - 15:19, 24:9, 26:5
records *[2]* - 37:15, 37:16
recover *[1]* - 40:1
redundancy *[1]* - 13:14
reference *[3]* - 33:4, 37:23, 49:3
referred *[4]* - 24:2, 24:4, 24:15, 37:16
regarding *[5]* - 22:18, 42:4, 42:16, 45:20, 50:25
regardless *[1]* - 25:14
regards *[1]* - 37:4
regularly *[1]* - 51:9
regulations *[1]* - 52:12
reject *[1]* - 23:13
rejection *[1]* - 39:2
rejects *[1]* - 38:23
religious *[2]* - 23:6, 30:16
rely *[2]* - 34:7, 42:22
remaining *[1]* - 22:3
remedied *[1]* - 21:17
remember *[5]* - 28:6, 30:23, 30:25, 33:24, 50:19
removals *[1]* - 12:9
render *[1]* - 21:6
reorganize *[1]* - 20:13
replace *[2]* - 12:3, 13:17
report *[3]* - 32:22, 35:17, 36:2
reported *[2]* - 49:17, 52:10
REPORTER *[3]* - 1:24, 52:1, 52:6
Reporter *[1]* - 52:20
REPORTER'S *[1]* - 1:14
representative *[2]* - 5:9, 26:7
require *[1]* - 25:15
required *[2]* - 34:16, 35:5
requirements *[1]* - 42:8

requires *[1]* - 33:7
reread *[1]* - 46:9
research *[1]* - 33:3
resolve *[1]* - 17:5
respond *[1]* - 32:20
responded *[1]* - 21:8
responds *[1]* - 38:24
rest *[2]* - 31:11, 40:24
restrictions *[2]* - 33:7, 33:11
results *[1]* - 35:21
resume *[1]* - 44:22
return *[1]* - 32:25
review *[1]* - 37:17
reviewed *[1]* - 37:7
reviews *[1]* - 37:9
REZA *[1]* - 3:8
RICHARD *[1]* - 5:4
rick.frenkel@lw.com *[1]* - 5:6
rights *[2]* - 37:5, 39:23
rise *[3]* - 7:7, 44:23, 50:22
rmirzaie@raklaw. com *[1]* - 3:11
ROBERT *[1]* - 2:12
role *[3]* - 40:19, 41:13, 41:14
ROOM *[1]* - 1:24
room *[3]* - 32:10, 34:1, 34:24
row *[7]* - 18:24, 19:2, 19:3, 19:4, 20:18, 20:20, 20:21
Rules *[3]* - 28:12, 29:1, 29:5
ruling *[1]* - 28:14
run *[2]* - 20:23, 47:19
Russ *[1]* - 5:9
RUSS *[7]* - 2:4, 2:8, 2:12, 2:16, 2:20, 3:4, 3:8

**S**

S.A.C *[1]* - 20:21
S.L.T *[1]* - 19:12
safe *[3]* - 35:3, 36:1, 36:6
SALIL *[1]* - 4:5
SANTA *[3]* - 1:18, 1:25, 7:1
SARAH *[1]* - 4:16
sarah.wang@lw. com *[1]* - 4:19
satisfied *[1]* - 39:5
savviness *[1]* - 10:5
savvy *[1]* - 10:13
saw *[2]* - 12:13, 27:2
sbali@stradlinglaw.

com *[1]* - 4:7
scheduling *[1]* - 49:20
Schmoller *[1]* - 5:10
school *[2]* - 9:17, 10:18
Science *[1]* - 8:16
sciences *[1]* - 15:2
scope *[1]* - 37:5
Scott *[4]* - 3:19, 4:9, 4:21, 5:5
scratch *[1]* - 16:1
Seal *[1]* - 8:4
search *[1]* - 38:15
searches *[2]* - 37:15
searching *[1]* - 33:4
seat *[2]* - 20:18, 20:20
seated *[2]* - 21:9, 32:17
seats *[2]* - 10:21, 13:12
second *[6]* - 19:17, 19:21, 19:25, 31:23, 45:2, 47:16
seconds *[1]* - 46:11
Section *[1]* - 52:8
see *[12]* - 9:6, 12:9, 12:12, 27:11, 27:12, 30:2, 30:24, 33:20, 46:22, 47:3, 50:2, 50:21
seeks *[1]* - 24:16
select *[1]* - 22:1
selection *[1]* - 12:24
sell *[3]* - 36:12, 39:19, 39:20
selling *[1]* - 36:12
SELNA *[1]* - 1:3
send *[1]* - 36:4
sense *[1]* - 27:20
sentences *[2]* - 37:1, 40:21
separate *[1]* - 41:4
servers *[2]* - 12:21, 13:8
service *[3]* - 9:7, 9:20, 32:19
serving *[2]* - 10:22, 16:9
session *[1]* - 28:23
set *[3]* - 22:13, 22:14, 48:5
several *[2]* - 26:11, 39:4
sexual *[2]* - 23:6, 30:16
share *[1]* - 9:12
shared *[1]* - 47:8

sheet *[1]* - 8:11
shield *[2]* - 35:8, 35:10
short *[2]* - 44:22, 45:7
show *[2]* - 21:11, 34:15
shown *[1]* - 39:15
shows *[1]* - 12:21
shutdown *[1]* - 16:4
sic *[1]* - 24:2
side *[5]* - 18:23, 19:2, 29:4, 34:12, 47:24
sidebar *[1]* - 18:18
sidewalk *[2]* - 27:12, 27:16
simply *[2]* - 34:13, 47:7
single *[1]* - 23:18
sitting *[3]* - 10:21, 16:8
skilled *[1]* - 36:24
slides *[1]* - 51:2
slightly *[1]* - 20:13
slow *[2]* - 12:4, 12:5
small *[1]* - 8:14
software *[1]* - 11:18
solely *[3]* - 23:2, 28:24, 35:9
solemnly *[1]* - 21:4
someone *[6]* - 14:11, 14:12, 14:18, 35:10, 39:17, 39:23
sometimes *[6]* - 28:18, 29:13, 30:19, 30:21, 36:9, 38:25
son *[3]* - 9:21, 9:22, 10:11
soon *[1]* - 47:23
sorry *[2]* - 7:15, 19:16
sort *[1]* - 10:5
sound *[1]* - 21:15
source *[1]* - 49:9
sources *[1]* - 10:15
SOUTHERN *[1]* - 1:2
Spaan *[1]* - 52:20
SPAAN *[3]* - 1:23, 52:5, 52:19
specific *[3]* - 11:12, 26:4, 37:20
specifically *[2]* - 13:19, 15:11
specification *[4]* - 36:21, 36:25, 37:12, 38:14
specified *[1]* - 24:10
spinning *[2]* - 13:10, 15:24
SSD *[1]* - 13:9
stand *[1]* - 21:1
standard *[2]* - 25:10, 25:11

start *[2]* - 45:9, 51:11
STATE *[1]* - 52:4
statement *[3]* - 34:12, 34:13, 34:16
statements *[7]* - 28:1, 28:3, 45:9, 45:10, 49:4, 49:13, 50:12
STATES *[1]* - 1:1
States *[9]* - 25:20, 25:25, 36:8, 36:13, 39:21, 52:6, 52:8, 52:13
Station *[1]* - 8:4
stay *[1]* - 16:16
stenographically *[1]* - 52:10
steps *[1]* - 35:2
stereotypes *[1]* - 23:12
STEVEN *[1]* - 4:12
still *[3]* - 16:13, 20:18, 21:20
stocker *[1]* - 9:17
stop *[2]* - 39:25, 45:5
storage *[10]* - 43:7, 43:10, 43:14, 43:16, 43:17, 44:1, 44:3, 44:9, 44:11, 44:15
store *[1]* - 12:21
stored *[1]* - 15:20
stores *[1]* - 44:12
STRADLING *[2]* - 4:4, 4:12
STREET *[1]* - 1:24
stricken *[2]* - 28:16, 29:14
strong *[1]* - 45:8
strongly *[1]* - 17:25
structure *[3]* - 26:8, 43:5, 44:7
structure' *[1]* - 43:5
structures *[1]* - 24:10
style *[1]* - 13:10
subject *[1]* - 38:9
submits *[1]* - 39:1
submitted *[2]* - 37:18, 50:21
substantially *[1]* - 26:8
Suess *[1]* - 5:9
sufficiently *[1]* - 44:18
suggest *[1]* - 21:16
Suite *[6]* - 2:17, 3:5, 3:13, 4:6, 4:13, 4:17
summary *[1]* - 23:21
sums *[1]* - 50:25
Superior *[1]* - 9:7
suspected *[1]* - 35:23
sustain *[2]* - 29:8, 29:10

**UNITED STATES DISTRICT COURT**

SW [1] - 2:17
swear [2] - 20:25, 21:4
switching [1] - 44:9
sworn [4] - 6:4, 20:22, 21:2, 26:15
sympathy [2] - 23:1, 23:9
symptoms [1] - 35:18
system [4] - 13:5, 13:21, 14:18
systems [2] - 13:23, 14:4

## T

t-h-a-l-e-s [1] - 11:7
tasks [1] - 17:2
teacher [1] - 9:3
teachers [1] - 9:5
team [1] - 17:2
tear [1] - 12:11
tech [3] - 10:5, 10:13
tech-savviness [1] - 10:5
tech-savvy [1] - 10:13
technical [1] - 37:25
technically [2] - 16:18, 16:20
technician [1] - 5:10
TECHNOLOGIES [2] - 1:4, 1:8
Technologies [9] - 23:23, 23:24, 23:25, 24:5, 24:12, 24:16, 26:2, 48:21, 51:1
technology [4] - 10:6, 10:10, 18:1, 18:2
ten [2] - 13:18, 47:13
ten-minute [1] - 47:13
term [3] - 17:8, 39:21, 41:22
terms [4] - 41:13, 41:17, 41:25, 42:21
test [4] - 35:20, 45:1, 46:13, 47:15
testified [3] - 30:2, 31:5, 31:8
testify [2] - 29:23, 31:14
testifying [1] - 30:5
testimony [18] - 26:15, 27:1, 27:22, 28:15, 28:18, 29:19, 29:20, 29:24, 30:9, 30:11, 31:1, 31:3, 31:16, 33:19, 33:21, 36:14, 49:3, 50:25
text [2] - 32:10, 40:24
Thales [3] - 8:17, 11:6, 11:8

THE [111] - 7:6, 7:7, 7:10, 7:15, 7:18, 7:23, 7:24, 7:25, 8:1, 8:3, 8:6, 8:8, 8:9, 8:11, 8:12, 8:13, 9:9, 9:11, 9:12, 9:14, 9:15, 9:16, 9:21, 9:22, 9:24, 10:3, 10:7, 10:11, 10:17, 10:23, 11:2, 11:5, 11:7, 11:10, 11:15, 11:19, 11:23, 12:17, 13:1, 13:3, 13:7, 13:24, 14:5, 14:13, 14:20, 15:4, 15:15, 15:21, 15:23, 16:10, 16:12, 16:15, 16:20, 16:23, 17:1, 17:13, 17:16, 17:23, 18:4, 18:8, 18:11, 18:14, 18:18, 18:21, 19:4, 19:6, 19:8, 19:11, 19:13, 19:15, 19:16, 19:20, 19:24, 20:3, 20:7, 20:11, 20:17, 20:18, 21:1, 21:3, 21:9, 21:10, 21:19, 22:5, 44:23, 44:25, 45:3, 45:8, 45:13, 45:22, 46:1, 46:4, 46:6, 46:9, 46:13, 46:16, 46:18, 46:21, 46:24, 47:11, 47:19, 47:21, 48:3, 48:6, 48:11, 48:14, 48:18, 49:18, 50:22, 50:24, 51:8
the.. [1] - 48:11
theirs [1] - 45:15
therefore [4] - 27:16, 41:5, 41:6, 41:16
therein [1] - 21:5
they've [1] - 46:22
thin [2] - 44:17, 44:18
thinks [1] - 29:4
third [2] - 20:4, 20:8
three [4] - 9:1, 9:18, 18:23, 48:24
throughout [3] - 31:19, 35:14, 42:1
Thursday [1] - 20:24
Title [1] - 52:8
today [7] - 10:21, 10:22, 16:8, 19:14, 21:21, 22:1, 49:14
tomorrow [5] - 45:10, 49:14, 49:15, 49:24, 50:21
took [1] - 23:3
topics [1] - 16:5

toughest [1] - 21:22
toward [1] - 44:2
Town [1] - 3:22
town [1] - 8:14
track [1] - 14:1
Trademark [1] - 36:9
trained [1] - 37:8
transcript [4] - 33:17, 50:15, 52:9, 52:11
Transcript [1] - 1:5
TRANSCRIPT [1] - 1:14
treated [1] - 41:3
trending [1] - 13:20
trends [1] - 12:10
trial [11] - 9:8, 22:13, 28:25, 31:20, 32:16, 33:9, 33:18, 35:11, 35:14, 36:14, 50:3
TRIAL [1] - 1:15
trials [2] - 22:11, 34:11
troubleshooting [1] - 8:20
troubleshot [1] - 12:8
true [5] - 21:5, 25:5, 31:10, 52:9
truly [1] - 21:4
trust [1] - 17:2
truth [1] - 31:9
try [4] - 15:13, 17:11, 21:4, 33:6
TUESDAY [2] - 1:16, 7:1
turn [1] - 41:7
turned [1] - 27:14
turned-on [1] - 27:14
TV [2] - 12:19, 12:21
two [11] - 9:1, 18:24, 19:2, 19:3, 19:4, 30:24, 43:22, 46:11, 50:9, 50:16, 50:24
type [2] - 14:14, 14:16

## U

U.S [5] - 1:3, 24:1, 24:3, 25:17, 25:22
ultimately [1] - 39:13
unconscious [4] - 23:11, 23:15, 30:15
under [1] - 28:12
unintentional [1] - 47:9
unit [1] - 14:21
UNITED [1] - 1:1
United [9] - 25:20, 25:25, 36:8, 36:13, 39:21, 52:6, 52:8, 52:13

units [1] - 11:23
unless [2] - 32:4, 45:8
untrue [1] - 31:2
untruthfully [2] - 31:5, 31:8
up [8] - 13:16, 17:7, 27:10, 27:11, 45:6, 50:25, 51:4, 51:10
updated [1] - 46:7
urge [1] - 33:18
useful [1] - 38:6
USPTO [1] - 36:10
usual [1] - 49:20

## V

valid [2] - 39:16, 40:13
validity [1] - 40:15
values [1] - 43:23
verdict [6] - 21:5, 22:19, 27:21, 31:20, 32:25, 34:25
versions [1] - 30:22
via [1] - 32:9
Vice [1] - 2:16
video [8] - 21:11, 21:16, 21:18, 44:25, 47:15, 49:5, 49:10, 49:16
Videotape [1] - 49:17
view [3] - 38:6, 42:4, 42:16
views [3] - 17:22, 18:1, 51:1
violates [1] - 33:11
voir [1] - 6:3
Voir [1] - 7:9
VOLUME [1] - 1:10
vs [1] - 1:7

## W

W.D.L [2] - 19:19, 19:20
Wabash [2] - 3:13, 4:17
wait [1] - 7:15
wake [1] - 27:11
Walmart [1] - 9:18
WANG [1] - 4:16
Washington [1] - 2:18
watch [2] - 32:25, 49:10
watching [1] - 12:22
water [1] - 27:16
WATKINS [7] - 3:12, 3:18, 3:21, 4:8, 4:16, 4:20, 5:4
ways [1] - 10:18
Weapons [1] - 8:4

wear [2] - 35:5, 35:7
wears [1] - 35:10
website [1] - 32:11
websites [1] - 10:15
Wednesday [1] - 20:24
weight [4] - 27:6, 27:8, 31:12, 31:15
welcome [1] - 10:2
Wendy [1] - 5:9
WEST [1] - 1:24
Western [15] - 8:23, 13:25, 18:7, 19:9, 19:22, 23:24, 23:25, 24:6, 24:13, 24:17, 24:19, 24:21, 24:23, 39:15, 48:21
WESTERN [1] - 1:8
wet [1] - 27:12
whole [2] - 13:21, 21:24
Wilshire [6] - 2:5, 2:9, 2:13, 2:21, 3:5, 3:9
wish [2] - 33:23, 45:9
withstand [1] - 43:1
witness [10] - 26:15, 27:1, 29:21, 29:24, 30:2, 30:19, 31:4, 31:7, 31:8
witness's [6] - 30:4, 30:5, 30:6, 30:9, 30:10, 30:15
witnesses [6] - 28:2, 29:23, 30:21, 31:13, 31:15, 50:12
woke [1] - 27:10
wonder [1] - 21:22
word [1] - 50:14
words [10] - 31:17, 38:19, 40:13, 40:22, 41:19, 42:7, 42:10, 42:11, 42:12, 49:20
works [3] - 9:22, 36:23, 45:2
worried [1] - 15:7
worry [1] - 50:16
wrapper [1] - 39:13
writing [3] - 32:9, 38:17, 38:19
written [1] - 36:22
wrote [1] - 48:8

## Y

year [1] - 21:23
years [2] - 13:18, 39:4
YOCCA [2] - 4:4, 4:12
YOUNG [1] - 4:20
younger [2] - 10:12
yourself [4] - 16:18,

*23:8, 33:25, 35:6*

**Z**

**zero** [1] - 44:5
**zeros** [2] - 15:21,
  15:22

**UNITED STATES DISTRICT COURT**