**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

MR TECHNOLOGIES, GMBH,                )
                                      )
        Plaintiff and                 )   **Certified Transcript**
        Counterclaim Defendant,       )
                                      )   Case No.
        vs.                           )   8:22-cv-01599-JVS-DFM
                                      )
WESTERN DIGITAL TECHNOLOGIES,         )
INC.,                                 )
                                      )
        Defendant and                 )
        Counterclaim Plaintiff.       )   **DAY 5, VOLUME I**
                                      )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

TUESDAY, JULY 23, 2024

9:43 A.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**

**FOR PLAINTIFF and COUNTERCLAIM DEFENDANT:**

RUSS AUGUST & KABAT
BY:  MARC A FENSTER, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
mfenster@raklaw.com

RUSS AUGUST & KABAT
BY:  BRIAN D. LEDAHL, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
bledahl@raklaw.com

RUSS AUGUST & KABAT
BY:  JACOB ROBERT BUCZKO, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
jbuczko@raklaw.com

RUSS AUGUST & KABAT
BY:  MATTHEW D. AICHELE, ESQ., Pro Hac Vice
800 Maine Avenue, SW
Suite 200
Washington, D.C. 20024
202-664-0623
maichele@raklaw.com

RUSS AUGUST & KABAT
BY:  MINNA Y. CHAN, ATTORNEY AT LAW
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
mchan@raklaw.com

**UNITED STATES DISTRICT COURT**

3

**APPEARANCES OF COUNSEL**
**(Continued:)**


**FOR PLAINTIFF AND COUNTERCLAIM DEFENDANT:**

RUSS AUGUST & KABAT
BY:  PAUL A. KROEGER, ESQ.
1224 Wilshire Boulevard
Suite 1200
Los Angeles, California 90025
310-826-7474
pkroeger@raklaw.com

RUSS AUGUST & KABAT
BY:  REZA MIRZAIE, ESQ.
12424 Wilshire Boulevard
12th Floor
Los Angeles, California 90025
310-826-7474
rmirzaie@raklaw.com

LATHAM & WATKINS LLP
BY:  DALE CHANG, ESQ.
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
312-876-7700
dchang@raklaw.com


**FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF:**

LATHAM & WATKINS LLP
BY:  DOUGLAS E. LUMISH, ESQ.
140 Scott Drive
Menlo Park, California 94025
650-328-4600
doug.lumish@lw.com

LATHAM & WATKINS LLP
BY:  JOSEPH HYUK LEE, ESQ.
650 Town Center Drive
20th Floor
Costa Mesa, California 92626
714-540-1235
joseph.lee@lw.com


**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL**
**(Continued:)**


**FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF:**


          STRADLING YOCCA CARLSON & RAUTH LLP
          BY:  SALIL BALI, ESQ.
          660 Newport Center Drive
          Suite 1600
          Newport Beach, California 92660
          949-725-4278
          sbali@stradlinglaw.com

          LATHAM & WATKINS LLP
          BY:  CHAARUSHENA DEB, ATTORNEY AT LAW
          140 Scott Drive
          Menlo Park, California 94025
          650-328-4600
          chaaru.deb@lw.com

          STRADLING YOCCA CARLSON & RAUTH LLP
          BY:  STEVEN M. HANLE, ESQ.
          660 Newport Center Drive
          Suite 1600
          Newport Beach, California 92660
          949-725-4000
          shanle@stradlinglaw.com

          LATHAM AND WATKINS LLP
          BY:  SARAH W. WANG, ATTORNEY AT LAW
          330 North Wabash Avenue
          Suite 2800
          Chicago, Illinois 60611
          312-876-7700
          sarah.wang@lw.com

          LATHAM & WATKINS LLP
          BY:  PATRICIA YOUNG, ATTORNEY AT LAW
          140 Scott Drive
          Menlo Park, California 94025
          650-328-4600
          patricia.young@lw.com


**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL**
**(Continued:)**


**FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF:**

       LATHAM & WATKINS LLP
       BY:  RICHARD GREGORY FRENKEL, ESQ.
       140 Scott Drive
       Menlo Park, California 94025-1008
       650-328-4600
       rick.frenkel@lw.com


**ALSO PRESENT:**

       Wendy Liu, paralegal (Russ August & Kabat)
       Dieter Suess, plaintiff's corporate representative
       Andy Mortensen, plaintiff's IT technician
       Chris Schmoller, defendant's IT technician

**UNITED STATES DISTRICT COURT**

6

**I N D E X**

| WITNESSES | PAGE |
|---|---|

**MRUGESH DESAI, CALLED BY THE DEFENDANT**
Redirect Examination by Mr. Lee (continued)    26
Recross-Examination by Mr. Mirzaie             34

**PETER GOGLIA, CALLED BY THE DEFENDANT**
Direct Examination by Mr. Bali                 64

**EXHIBITS**

| EXHIBIT | | IN EVIDENCE | WITHDRAWN OR REJECTED |
|---|---|---|---|
| DX-1460 | Slide deck titled Hard Disk Drives: The Giants of the Storage Industry by Dr. Edward Grochowski | 69 | |

**UNITED STATES DISTRICT COURT**

**SANTA ANA, CALIFORNIA; TUESDAY, JULY 23, 2024**

**9:43 A.M.**

**- - -**

**(Out of the presence of the jury.)**

THE COURTROOM DEPUTY:  Calling Matter 1, SACV-22-1599, MR Technologies, GmbH, vs. Western Digital Technologies, Inc.

Counsel, please state your appearances for the record.

MR. FENSTER:  Good morning, Your Honor.  Marc Fenster for the plaintiff, MR Tech.  Our client representative, Dr. Dieter Suess, Brian Ledahl, Reza Mirzaie, Paul Kroeger, Jacob Buczko, Dale Chang, Wendy Liu, Minna Chan, and Matthew Aichele.  We're ready to proceed, Your Honor.

THE COURT:  Good morning.

MR. LUMISH:  Good morning, Your Honor.  Doug Lumish, Latham & Watkins, for Western Digital.  At counsel table we have Joseph Lee, Rick Frankel, Patricia Young, Salil Bali, Steve Hanle, Sarah Wang, Ahmad Takouche and Chaaru Deb.  With us also from the client this morning, we have Jesse Mulholland and Jennifer Beard.

THE COURT:  Good morning.  Welcome.

Anything we need to take up?

MR. FENSTER:  Yes, Your Honor.

**UNITED STATES DISTRICT COURT**

THE COURT:  Please.

MR. FENSTER:  May I pass up a copy of the slides?  (Indicating.)

Good morning, Your Honor.  Marc Fenster for the plaintiff.  There are three issues, and they're kind of serious.

So the first is we filed a motion.  Over the weekend they responded on a brand-new argument that was never disclosed in the noninfringement interrogatory responses nor even in the amended, which were struck, nor even in Dr. Bertero's report.  And that is the argument that the upper layers of the nucleation host do not assist in switching the G1 layer.

Your Honor, we served an interrogatory response.  You'll recall that the first interrogatory response only identified the increasing layers -- the increasing anisotropy layer to layer.  That was the only noninfringement argument identified by defendant.  Then they served their second one which served -- identified four new arguments.  Your Honor struck all of those.

This is a brand-new argument that was never raised in the original noninfringement arguments nor even in the second, and it's not even raised in Dr. Bertero's report.  He never argues that the upper G layers do not assist in switching.  This is brand-new, sprung on us at trial.  It

should be excluded.

That was the -- that's the first issue. And that's under -- that was the subject of the motion. I suggest we take that up and then I'll go to the Bertero slides.

THE COURT: Okay. Mr. Lumish.

MR. LUMISH: Thank you, Your Honor.

Their trial brief, as Mr. Fenster did, bases this motion on the interrogatory responses and says there's no response to the assisting. Your Honor's construction that requires the nucleation host to assist the switching, it's not in their infringement contentions, it's not in their discovery. And so it's a double standard that they're asking Your Honor to apply, that they don't have to tell us what's assisting, but we had to tell them what wasn't assisting in our interrogatory response in response to their contentions. That's a double standard that we think should not apply, first of all.

Second, Your Honor, these are part and parcel. It's part of the distinct -- do you have a question, Your Honor?

THE COURT: No.

MR. LUMISH: Okay. It's part of the distinct nucleation host versus hard magnetic storage layer issue. Our position has been throughout that there is no two distinct things, that there's only storage layers that all switch together, that all store together. And that because of that, they can't prove the two separate function -- two separate

modules, excuse me, that have two separate functions.

Dr. Bertero's report does address that. He talks about how they switch together. Dr. Desai's deposition, he said the same thing he said on the stand.

And I'd like to show you in Dr. Bertero's deposition -- this didn't make it into our papers, Your Honor. I apologize for that. But they asked him about the switching. And you can see here, he's talking -- this is Dr. Bertero in his deposition, Your Honor. He's talking about how everything switches together and everything stores together, which is a fundamental position we've taken all along.

And he says:

"So that would indicate to me that there is no domain wall switching here where one layer assists the other and it's a cascading process."

That's all we're saying in the trial. That's all we've been saying, is we don't have distinct modules. We have one set of storage layers. There's no separate collection that does the switching. There's no separate layer that does the storing. We don't have this kind of functionality that they rely upon of this cascading magnetization.

So they asked about it. Dr. Bertero told them in their deposition. Our position has been coherent and consistent throughout.

So just to summarize all that: It's in Dr. Desai's

deposition.  It's in Dr. Bertero's report as it relates to the hard magnetic storage layer.  He says that they all switch together there.  It's in his deposition expressly about how that means they don't assist each other.  And to say that "Well, it wasn't in their interrogatory response" I think cuts both ways for them, because it wasn't in their infringement contentions, their version of the interrogatory.

So we would ask that there -- there be a consistent standard on that.  We responded to each of their positions as they came in.  Their infringement contentions don't say, "Here's assisting."  Our interrogatory response doesn't say that's wrong, but their expert report says it, and then our expert report says, "No, there's not separate modules.  There's no ones that switch and no ones that store.  They're all together."  Our client representative technical witness acknowledges it, and then our expert acknowledges it in deposition.

We just think this is an attempt to try to hamstring our case at the last second and should be denied.

THE COURT:  Mr. Fenster.

MR. LUMISH:  Oh, Your Honor, can I make one more point so Mr. Fenster can respond to it?

The additional point, Your Honor, is I want to separate the notion of the expert report from their burden of proof.  And I don't think we made this super clear in our

UNITED STATES DISTRICT COURT

papers, and that's my fault, but we're not trying to go beyond Dr. Bertero's report or his deposition.  We think he should be permitted to testify to the balance of that report and what he said in deposition.  And so even if he's limited to saying, "Well, to me that shows distinction, it shows there's no hard magnetic storage layer," we should have every right to point out where they fail in their trial presentation to prove an element of their case.

Let's imagine -- this is hypothetical.  It didn't happen.  Let's imagine they presented no evidence at all about the nonmagnetic substrate requirement of their claims.  That would be a failure of burden of proof.  Even if our experts hadn't fought it or denied it, we should still be able to tell the jury that they didn't prove one of the elements of the claim and so they failed to prove infringement.

And so I don't think you need to get there here, but even if Dr. Bertero is limited in some way in what he can say, we should be permitted to point out they don't have any -- in our view, they don't have sufficient proof of this claim construction requirement of assisting.  That was the additional thing.

THE COURT:  Mr. Fenster.

MR. FENSTER:  Your Honor, this is *deja vu* all over again.  So, first, in our infringement contentions, we did identify the upper G layers as the nucleation host.  In

Dr. Bertero -- in Dr. Re's report, we identified the layers that switch, the G4 -- the G4, G3, G2 layers are ferromagnetic layers that assist in switching.  We have that for every one of them.  He refers back to the section on pages 38 and 39 of his report where he describes all the evidence that shows how they do that.

So this was -- this was disclosed.  We moved for summary judgment of infringement on this element.  And in their opposition, they never raised any opposition to the nucleation host layers don't assist in switching.  This is a brand-new argument.  I agree that they can point out deficiencies.  They cannot affirmatively argue something -- an affirmative noninfringement argument.  This is exactly like the "formed on" argument that you excluded earlier in the case, only this one's even worse.

Now, what Mr. Lumish pointed to is what we've been -- what they've been saying all along is that this is two distinct functions.  Your Honor, that is what they're saying now, and that is exactly the reverse doctrine of equivalents argument that you struck in the motion *in limine*.  And I'll show you where.

So this is -- now I'm moving to Dr. Bertero's slides.  So Dr. Bertero, these are -- if you want to stay on the assist...

THE COURT:  Well, you want to move those -- that's

separate from your projection?

MR. FENSTER:  So for the assist layers, we disclosed it in our infringement contentions, we disclosed it in Dr. Re. They never moved to exclude it, they never moved to strike it. This is just -- we've heard this argument before when we moved to strike their coercive field testing, and they said -- it was in response to Dr. Re.  Your Honor rejected that.  And it's the exact same issue here.

We disclosed assisting in our expert report and our infringement contentions.  We moved for summary judgment on it. They've never ever said that the upper layers do not assist in switching.  They should not be able to make that affirmative argument here.  It's not in Dr. Bertero's report.  That's a Rule 26 issue.  But a disclosure issue, Western Digital should not be able to argue affirmatively that it's not met.

THE COURT:  Why can't they argue that each layer doesn't assist?  I mean, it's the negative of what -- of your position and what you've put forward as what occurs.  Why can't they offer that testimony?

MR. FENSTER:  So, Your Honor, in the interrogatories we asked, "Identify all your bases for noninfringement."  And the only thing they identified was it doesn't meet the increasing anisotropy layer to layer.  Okay?  So they never made this argument.  Even in the amended noninfringement arguments, they never said, "It doesn't assist in switching.

They're not nucleation hosts because they don't assist in switching."

I agree that they can challenge, on cross-examination they can challenge, and they can even argue that Dr. Re didn't prove it up, but they can't put in affirmative evidence for something that they never disclosed. Dr. Bertero doesn't have it in his report.

THE COURT:  What about the passage Mr. Lumish just showed me?

MR. FENSTER:  So he was -- so he was -- the passage that he showed you, Your Honor, is talking about the -- was about the deposition.

THE COURT:  Right.

MR. FENSTER:  And the deposition, I was asking -- and you'll recall that in the interrogatories they never disclosed a reverse doctrine of equivalents, even in the second amended interrogatories.

Dr. Bertero, for the first time, in his expert report put in paragraphs -- I think it's like 183 to 217 or something -- expressing a new doctrine of equivalents -- reverse doctrine of equivalents argument.  That was never disclosed.  We moved *in limine*.  And Your Honor, in the order on motions *in limine* at pages 3 to 4, struck it because it had never been disclosed.

That's the testimony that Mr. Lumish is referring

to.  I was asking him about his reverse doctrine of equivalents arguments that he disclosed in his report, because he had put them in his report.  We moved to strike it timely, and Your Honor struck it.  And I'll show you exactly where it appears in their -- in the reverse doctrine of equivalents section.

So if I can take Your Honor to -- so --

THE COURT:  I think I appreciate the arguments at this point.  Objection will be granted.

MR. FENSTER:  Thank you, Your Honor.

MR. LUMISH:  Your Honor, may I respond?

THE COURT:  No.  Next issue.

MR. FENSTER:  So that's the nucleation host.  They can't argue that nucleation host does not assist.

Second issue, Your Honor.  So this has to do with the slides for Dr. Bertero.  It's really Slides 8 through 50, but I'll take you to some specific ones.  So if you turn first to Slide 8.

Okay.  So, first, at Slide 8, he's arguing two distinct -- no two distinct modules, no hard magnetic storage layer, no separate module for switching, only a stack of thin magnetic layers stored together.

Second, page 13 of the slides -- so on Slide 13, they're arguing that these have to be structurally distinct.  And on Slide 15, they're arguing functionally distinct.  These

slides go all the way through Slide 50.

Let me now show you where those appear in Dr. Bertero's report, because it's all in the stricken section.

So first, this is Dr. Bertero's report at page 93. And noted -- notably it's paragraph 89 [sic].  He argues (as read):

"The asserted patents repeatedly and unambiguously describe the different roles and properties of the nucleation host and hard magnetic storage layer."  Offering many examples.

Number 2, he goes on to say at page 95 in paragraph 191 (as read):

"They retain the separate roles of the nucleation host and the hard magnetic storage layer.

The third is at page 111.  This is in paragraph 207. He says (as read):

"In other words, all of the layers contribute to thermal stability and all of the layers share similar design and functional features in the full media stack, i.e., all of the layers store information and all of the layers assist each other in switching."

This is exactly the argument they're making now.

And, finally, they make the argument at

**UNITED STATES DISTRICT COURT**

paragraph 185 that the multiple thin layers function altogether as a storage medium.  And in paragraph 186 (as read):

"For that reason, the G1 layers 'cannot store information in magnetically oriented bits'"..."and all of the G layers are required to reliably store" information.

This is exactly the argument that Dr. Bertero is making in paragraphs -- in Slides 8 through 50.

Your Honor, in the motion *in limine*, at pages 3 to 4, struck:

"Allegedly at the untimely reverse doctrine of equivalence, WD never disclosed this noninfringement theory during discovery, never pled it as an affirmative defense.

The Court grants the motion as to Bertero's opinions concerning the RDOE defense at pages -- at paragraphs 184 to 213.  Every single one of those paragraphs that they're relying on for this has been struck.  That's argument number one with respect to Bertero, Your Honor.

THE COURT:  Mr. Frenkel, you're going to address this?

MR. FRENKEL:  Your Honor, give me one second.  I just want to hand up a copy of Dr. Bertero's report.

Your Honor, Dr. Bertero had similar arguments in other sections of his report that were not stricken.  In the

UNITED STATES DISTRICT COURT

section that Your Honor focused on in the summary judgment order noting that Western Digital could maintain the defense of having a separate and distinct hard magnetic storage layer from a nucleation host, there was a -- there's support for that in paragraphs 107 through 119, none of which were stricken.  So, for example, he was -- he states that he reviewed Dr. Re's deposition testimony and supports the contentions that the -- he disagrees that he can support the contentions that the G1 and SCL layers in all of the accused products are hard magnetic storage layer, and he cites testimony.

THE COURT:  Slow down.

MR. FRENKEL:  I'm sorry.

And then in paragraph 112, he said:

"This testimony confirms that the single layer Dr. Re identifies as the hard magnetic storage layer is not a "hard magnetic storage layer' that 'stores information,' as those terms are used in the patents."

Says:

"Most, if not all, of the layers have comparable Ku; they have comparable thickness; and they're all separated by ECLs."

He goes on for several paragraphs.  In paragraph 118, he says:

"If one adopts Dr. Re's interpretation that a

layer is a hard magnetic storage layer if it is one of multiple layers that collectively store information, then all of the magnetic layers are hard magnetic storage layers, and the clear delineation in the claims and the written description between the nucleation host and the hard magnetic storage layer breaks down.  Neither the claims nor the written description permit that a layer be both a hard magnetic storage layer and one of the ferromagnetic layers of the nucleation host."

And he goes on.  It goes on through the entire page.

It's here.  I know that it was in his RDOE section also.  But it's here in his report, and he should be able to testify about it.

THE COURT:  Mr. Fenster.

MR. FENSTER:  So that part was struck as part of the new storage layers.  So recall in the interrogatories, in the first one they only identified the increasing.  In the second interrogatory they identified it does not store information in magnetically oriented bits; the entire stack is required to store information.

This was one of the four new noninfringement arguments that we brought our motion on.  This is our motion at Document 234 (as read):

"The new infringement theories include whether the hard storage layer has a coercive field, whether the hard magnetic storage layer stores information in magnetically oriented bits and whether it is formed on the underlayer."

You'll recall the "formed on."

Your Honor then struck -- granted the motion to strike in its entirety the motion as granted.

What he's saying -- what Mr. Frenkel is saying is that these paragraphs weren't struck because they weren't identified by paragraph number.  This is the argument -- the new argument that was raised in the second round of noninfringement arguments that Your Honor struck and is subject to this motion to strike.

THE COURT:  Objection will be sustained.

Next item.

MR. FENSTER:  Thank you, Your Honor.

So there's -- so I think that if I understand, Your Honor, all of Slides 8 through 50 are out, in which case I won't go through their individual Rule 26 objections, including a really outrageous one with respect to the slides in that section.  But if they're already out, I won't burden the Court with it.

THE COURT:  Okay.  You need time to regroup?

MR. LUMISH:  May I ask you a question, Your Honor?

THE COURT:  Sure.

MR. LUMISH:  Your Honor, before we opened, we had a very similar discussion.  They asked Your Honor to strike all of my opening slides about the distinction between the two modules.  Your Honor denied it.  We opened the case on it.

If I understand your rulings, we're no longer permitted to make the defense that there are no two distinct modules of a hard magnetic storage layer and a nucleation host. If that's the case, I mean, essentially, we have no infringement case, and I've opened on something that is now stricken when we're halfway in our case in chief.

I don't know if that's what you intended to do, but that's where I think MRT's head is and what they think has just happened.  I need to understand whether we have any infringement case we can put on.

THE COURT:  Mr. Fenster.

MR. FENSTER:  Sure.  So they are allowed, as Your Honor ruled in the summary judgment ruling, to challenge the sufficiency of our methodology of the coercive field limitations.  That was one of the bases for denying our motion for summary judgment, that they can't put in their new testing, but they're allowed to test to challenge the methodology of our testing.  And that is the subject of Dr. Bertero's second set of slides, and we don't challenge that.

And they can cross-examine Dr. Re and say that he

UNITED STATES DISTRICT COURT

didn't meet his burden of proof as to any of their elements.

But in terms of affirmative arguments, that -- they have not preserved any, and I do think that that's where we're at, that they're allowed to challenge the sufficiency of our evidence.  They can argue that 2K over M is the wrong formula.  That's what they preserved.  That's what Your Honor held in the order denying the motion for summary judgment.  That's what they're allowed to do.

MR. LUMISH:  We, of course, disagree with that, Your Honor.  And, twofold, one is, under any argument, we don't believe it was stricken that Dr. Bertero's opinion is that there is no single hard magnetic storage layer.  Leave everything else aside, I don't think that should be or has been stricken in any of the motions that Mr. Fenster is now revisiting.

And then what you were just told is that your summary judgment motion went this same direction.  And our view is it goes in exactly the opposite direction.  I showed you this when I did my 50(a) motion at the end of their case in chief.

But I have on the screen through the document camera Your Honor's summary judgment order telling us that a fact finder may determine that only the entire stack stores and that would be a disputed fact as to what is the hard magnetic storage layer, what is the nucleation host.  Your Honor said

that the Court agrees with WD on the point that the fact finder may determine that only the entire stack meets the hard magnetic storage limitation, which may prevent the fact finder from identifying the nucleation host.

We built our case around this summary judgment order, which we took as Your Honor saying this is what we can do after all of the motions *in limine* and *Dauberts* and so forth. We followed this as our map, and we don't believe all that's been stricken. And there are many paragraphs from the report that support these arguments that have never been stricken.

THE COURT: Court's ruling stands.

Let's proceed.

MR. LUMISH: I'm sorry to bother Your Honor. Does that mean we cannot make the distinct components argument at this point?

THE COURT: Mr. Fenster.

MR. FENSTER: Your Honor, I do believe that the distinct components argument is out. That was struck as part of the reverse doctrine of equivalents. He can say that the hard magnetic storage layer does not store on its own. He did make that argument that it doesn't store on its own, and Dr. Bertero can make that argument. He can't rely on the testing to do so.

MR. LUMISH: We are not making an RDOE argument.

That's what was stricken.  I'm just talking noninfringement now.

THE COURT:  Let's proceed.

MR. LUMISH:  Your Honor asked if we needed time to regroup.  If we may -- we are about to put a witness up -- we need to adjust because this is a complete change in our case.

THE COURT:  How much time do you need?

MR. LUMISH:  May we have half an hour, Your Honor?

THE COURT:  Okay.  The jury will be so advised.

MR. LUMISH:  Thank you.

THE COURTROOM DEPUTY:  All rise.  Court is in recess.

**(Recess from 10:10 a.m. to 10:49 a.m.)**

**(Out of the presence of the jury.)**

MR. LUMISH:  Your Honor, we've talked with the other side, and we're changing the order of our witnesses in order to address the issues that occurred this morning.  So our intention now is to finish with Dr. Desai, then move, instead of our original plan, to Dr. Goglia, and then to our fact witness, Ms. Salayphonh, and then Dr. Bertero.

We've had the conversation with them.  They have a couple of objections to the Goglia slides that have not yet been addressed, but that's because the order changed.  I just wanted to inform the Court of that.

THE COURT:  Thank you.

**UNITED STATES DISTRICT COURT**

MR. LEDAHL:  Your Honor, would you like us to address those small number of objections now?

THE COURT:  No.

MR. LUMISH:  Okay.  Your Honor, may Dr. Desai retake the stand?

THE COURT:  Yes.

MR. LUMISH:  Thank you.

**(In the presence of the jury.)**

THE COURT:  Good morning, ladies and gentlemen.  The reason for the late start this morning was that I had a doctor's appointment with the dermatologist, who I see quarterly for skin cancers.  It's something that I have to stay on top of.  Not life-threatening, but something I have to stay on top of.  When we returned, I took up some matters with counsel that caused further delay, so I regret that we're starting so late in the morning.  Okay.

THE COURTROOM DEPUTY:  Sir, you are reminded that you're still under oath as you took previously.

THE WITNESS:  Yes.

THE COURT:  Mr. Lee.

**MRUGESH DESAI, PREVIOUSLY SWORN, RESUMES THE STAND**

**REDIRECT EXAMINATION (Continued)**

BY MR. LEE:

Q    Good morning, Dr. Desai.

A    Good morning.

Q    Hope you had a good weekend away from trial.

A    Yes.

Q    So I'd like to continue following up on some of the things that MRT's counsel showed you.

So can we now bring up PDX-3, Slide 82, please. Thank you.

Now, do you recall MRT's lawyer asking about this slide on Friday?

A    Yes.

Q    And do you see where it says "GX1" and then in parentheses "5ECL" over the stack on the left?

A    Yes.

Q    And in the title bar, it says "Group 3"; right?

A    Yes.

Q    Okay.  And now is the GX1 product the same as the 5X1 product?

A    It is different.

Q    Now, do you recall MRT's lawyer telling you several times that it doesn't matter that MRT used the data from the Cobra G spreadsheet, JX-2028, for the G1 layer of Group 3, the 5X1 product, instead of the spreadsheet you used for all the other G1 layers in the other accused products from JX-2015?

A    Correct.

Q    Now, I just wanted to follow up on that.  And let me actually start by switching to the document viewer.  So this is

a paper copy of PDX-3, Slide 82.  And you see that stack on the left there that we just talked about?

A     Yes.

Q     And so if we were to take the GX1 numbers for the middle layers, which I believe is 8.27 Ku -- let me write that on here.  So I have written -- for the record, I've written "8.27" next to the three layers labeled oxide 2, oxide 3, oxide 4.

And then I believe they took the Cobra G number -- or sorry, they corrected their values by inserting the anisotropy value of 8.05 from JX-2015.  So I'm going to write that down here.  And that's next to the oxide 1 label.

Now, does that show an overall increase from the top to the bottom on the anisotropy?

A     No.

Q     And so if the bottom layer -- if the bottom layer were 8.05, and the three layers above it were 8.27, should the coloring on here, would that stay the same or would it be the same color for all three?

A     Color is just to separate them.  It does not represent the numbers there.

Q     I see.  And so -- but if the colors were meant to represent -- if purple were meant to represent lower anisotropy and green were to represent higher anisotropy, would these layers be correctly colored for the 5X1 product?

A     In that one, it's not correctly colored.

Q    Now, if you change the thickness of a layer, would that change the coercive field value?

A    Yes.

Q    And how small a change would be necessary?  Would the coercive -- could the coercive field value change even if you changed the thickness by an angstrom?

A    Yes.  It will change by 100 to 150 oersted, the unit. That's a big change.

Q    And just for the jury's reference, how small or how thin is a single angstrom?

A    It's basically -- again, if you split the hair 100,000 times, then whatever you get, that's a tiny portion, is a nanometer.  Basically 1/10th of nanometer is an angstrom.

Q    Okay.  So it's like a thousandth to a thousandth of a human hair, or something like that?

A    That is correct.

Q    Okay.  Now, do you also recall MRT's lawyer asking you questions about a, quote, "multiple ECL media," unquote?

A    Yes.

        MR. LEE:  Okay.  And can we please bring up PDX-3, Slide 153.

BY MR. LEE:

Q    Now, MRT's lawyer, I believe, showed this slide to you where your testimony is over the figure of those dominos there. Did he tell you your testimony was not actually about this

**UNITED STATES DISTRICT COURT**

figure?

A    No, it was not told.

Q    Okay.  And in any event, does that figure in the slide show how Western Digital's accused products actually work?

A    No.

Q    Okay.  And what I would like to do is to turn to the actual document from which that figure is taken.

So let's please pull up JX-2034, page 1.

Okay.  Now, do you remember MRT's attorney showing you this document?  And, actually, I believe I also asked you some questions about this document.

A    Yes.

Q    Now let's turn to page 53 of JX-2034.

Okay.  And do you remember MRT's lawyer showing you this page showing -- that says "Mag layer structure revolution"?

A    Yes.

Q    Now, this page itself doesn't actually identify what mag layer structure Dr. Ikeda at least found revolutionary?

A    That is correct.

Q    So let's take a close look.

MR. LEE:  Let's go to two pages later in this document, page 54 of JX-2034.  I think page 54, Mr. Schmoller.

BY MR. LEE:

Q    According to this page, which, again, is a couple pages

**UNITED STATES DISTRICT COURT**

after that title page, what is the structure that's identified in the title of this slide?

A     It's about how ECL structure works.

Q     Okay.  So not graded structures, ECL?

A     That is correct.

Q     Now, let's go to the previous slide.  JX-2034, Slide 53 [sic].

      Now, I think there's a number of stacks here.  The third stack from the left, what is that labeled?  The label is at the bottom, I believe.

A     Graded.

Q     And then the stack next to it, what is that labeled?

A     Triple ECL.

      MR. LEE:  Actually, Mr. Schmoller, if you could put those two stacks up side by side.

BY MR. LEE:

Q     Now, what is the difference between the two stacks?  Is it the number of mag layers?

A     No.  Inserting ECL.

Q     And is that the only difference between the graded structure and the triple ECL structure that you can see?

A     That's correct.

Q     And so, then, does the "multiple ECL structures" term, does that just refer to using multiple ECL's?

A     That is correct.

Q    Does that say anything, in and of itself, about what the different layers -- what the anisotropy of those layers should be?

A    No.

Q    Okay.  And at least in Dr. Ikeda's mind, is it the addition of ECLs to the structure that is the so-called mag layer structure revolution?

A    That is correct.

Q    Not a graded anisotropy structure?

A    No.

Q    And not the use of mag layers with graded or varying anisotropy?

A    That is correct.

Q    Now, let's turn to another page in this document, a few pages further down, page 56 of JX-2034.

Do you recognize this document?

A    Yes.

Q    Or this page, I guess I should say.  Okay.

Now, this shows the dominos.

Let's actually put this up side by side with Dr. Re's slide.  If you could please put JX-2034.56 next to PDX-3.153.

Does Dr. Re include both dominos in his slide?

A    No.

Q    He just includes the version with the ECL layers?

A    That is correct.

MR. LEE:  Okay.  You can take down the PDX and leave the other page up.  Thank you.  Oh, other way around, Mr. Schmoller.  Please bring up JX-2034, page 56.

BY MR. LEE:

Q    So what is the only difference between the top graphic and the bottom graphic?

A    ECL.

Q    And so when Dr. Re's slide titled the bottom graphic "'Domino effect' Graded and Multiple ECL," was that -- is that graded multiple ECL, is that actually a reference to just the bottom one or is it saying that the top one is graded and the bottom is multiple ECL?

A    Yeah, bottom is multiple ECL.

Q    And the one in Dr. Re's slide, did he put in the ECL version or the graded version?

A    Just the graded version.

Q    And regardless of what version he put in, does this actually reflect the way Western Digital's products work?

A    No.

Q    Now, MRT's lawyer also asked you about the cap layer switching.

Do you remember that?

A    Correct.

Q    Now, do you recall -- and you were here during Dr. Re's

testimony about supposed infringement; right?

A    Yes.

Q    Okay.  Now, did Dr. Re include the cap layer in his nucleation host for any of the accused products?

A    No.

Q    Did he include the cap layer for the hard magnetic storage layer for any of the accused products?

A    No.

Q    Did he rely on the -- did he point to the cap layer at all for the claim limitations?

A    No.

Q    And when was -- do you recall when the cap layer was first introduced into Western Digital's products?

A    Even before I joined.  So...

Q    Okay.  And can you remind the jury when you joined?

A    In 2009.

Q    Do you know whether or not the cap layer was in Western Digital's products before 2006?

A    Yes.

         MR. LEE:  Pass the witness, Your Honor.

         THE COURT:  Mr. Mirzaie.

         MR. MIRZAIE:  Yes.  Thank you, Your Honor.

                    **RECROSS-EXAMINATION**

BY MR. MIRZAIE:

Q    Good morning, Dr. Desai.

**UNITED STATES DISTRICT COURT**

A       Good morning.

Q       Dr. Desai, one of the issues that you discussed on redirect examination, both Friday and today, is this issue of switching.

        Do you recall that?

A       Yes.

Q       And you stated a conclusion on Friday that all of the mag layers switch together.

        Do you recall that?

        MR. LEE:  Objection, Your Honor.  This is the subject of their motion this morning.  I don't think counsel should be allowed to inquire about it.

        MR. MIRZAIE:  Your Honor, the ruling was that Western Digital is still allowed to challenge the sufficiency and that if --

        THE COURT:  Overruled.

        MR. MIRZAIE:  -- this came up -- thank you, Your Honor.

BY MR. MIRZAIE:

Q       You stated a conclusion that all layers switch together.

        Do you recall that?

A       Yes.

Q       And I want to avoid any confusion about what that means, based on your testimony, sir.

        Now, first of all, you didn't show a single document

UNITED STATES DISTRICT COURT

to the jury that says "All layers switch together."  Can we agree on that?

A    Yes.

Q    Okay.  Dr. Re -- I have the pack of documents right here. He showed all of these documents to the jury.  These are the ones that he discussed.  You were sitting right there.

Do you recall that?

A    Yes, but I disagree that he showed anything.

Q    Okay.  But you'll agree that you didn't show a single layer that says that the mag layers switch at the same time or they all switch together; correct?

A    I've been doing for 15 years.  Yes, they switch together.

Q    Dr. Desai, can you answer my question?

A    Yes.

Q    You didn't show the jury a single document from Western Digital that says that; fair?

A    Yes.

Q    Okay.  Now, I wanted to follow up on that testimony to see what you really mean by that, because the details matter here.

And perhaps to help us out, if we could pull up Western Digital's opening Slide 23.  And I have some follow-up questions about your testimony.

Now, this is a slide that -- from Western Digital's opening statement entitled "The Accused Products."

**UNITED STATES DISTRICT COURT**

Do you see that, sir?

A    Yes.

Q    Now, there's been a lot of talk this week about certain documents from Western Digital just showing cartoons, other documents from Western Digital, internal ones, not being representative of the product.  But this slide says "Accused Products" right on the title; correct, sir?

A    Yes.

Q    What it shows here is the advanced ECC structure from 3EBL, on the left, going all the way to multilayer EBL, MLEBL, on the right; correct?

A    Yes.

Q    And EBL, we've established, means exchange break layer; correct?

A    Yes.

Q    And according to your testimony, that's synonymous with exchange coupling layer, or ECL; correct?

A    Correct.

        MR. MIRZAIE:  Okay.  Now, if we could zoom in on the 3EBL.  Thank you.

BY MR. MIRZAIE:

Q    Now, the exchange coupling or break layers, sir, they reduce or partially break the exchange coupling between two adjacent mag layers; correct?

A    Yes.

**UNITED STATES DISTRICT COURT**

Q    Thank you.

And, sir, before the switching takes place -- and I think you testified to this on Friday -- the cap layer at the top, do you see that?

A    Yes.

Q    Okay.  So before the switching takes place, you'll agree with me, won't you, that there's magnetic moments in each of the layers that are oriented either up or down; correct?

A    Before switching happens, yes.

Q    Yeah.  And when the switching starts -- the cap layer, first of all, is part of the magnetic stack of media on top of the mag layers; correct?

A    Yes.

Q    And that cap layer is the first layer that initiates the switching through the head; correct?

A    Again, it sees --

(Reporter requests clarification

for the record.)

THE WITNESS:  It sees the field first.  And they all switch together.

BY MR. MIRZAIE:

Q    Now, sir, the cap layer is the first layer that initiates the switching through the head; correct?

A    They all switch together.

Q    That's not what you testified in your deposition, is it,

UNITED STATES DISTRICT COURT

sir?

You have your cross-examination binder there, sir, and if you could turn to your deposition.

MR. LEE:  Your Honor, this was asked and answered previously.

THE COURT:  Overruled.

BY MR. MIRZAIE:

Q    Sir, if you could turn to your deposition.  This is Volume I, page 28, line 20, through 29, 01.

A    Sorry.  Could you please say it one more time.

Q    Yes.  Volume I, page 28, line 20, through page 29, line 1.  Are you there?

A    Page 28, line 20?

Q    Yes.  Are you there?

MR. LEE:  Your Honor, they're publishing a different Q and A from what was just asked the witness.

MR. MIRZAIE:  Your Honor, it includes exactly verbatim what was asked in the last two questions from the witness.

MR. LEE:  I don't think the witness is contradicting his testimony, Your Honor.

THE COURT:  Overruled.

MR. MIRZAIE:  Thank you, Your Honor.

THE WITNESS:  Page 21?

BY MR. MIRZAIE:

Q    Page 28 of the actual transcript, sir.

A    Yes.

Q    And you were asked, "What is a cap layer?"

And your response under oath was:

"Cap layer is part of a magnetic stack of

media.  It's on the cap on the top of layers, which

is a highly lateral exchange couple" --

A    Sorry, I'm -- sorry.  I apologize.  I don't -- I don't

know.  I'm on page 28.  There are four pages on it.

Q    It's the page at the top of the actual deposition

testimony, yes, 28.

A    Page 106, you mean?  On page 28, there's a page 106?

Q    No, it's the page 28, not the 106.  So if you could turn

to that.  Just like you turned to the deposition on Friday,

sir.  Same way.

A    I see it.

Q    Okay.  Thank you.

You were asked, "What is a cap layer?"

Your response was:

"Cap layer is part of a magnetic stack of the

media.  It's on the cap on the top of the layers,

which is a highly lateral exchange couple and

initiates -- the first layer that initiates the

switching through the head will see that layer,

first magnetic head."

UNITED STATES DISTRICT COURT

Did I read that correctly?

A     Yes.

Q     Okay.  Thank you.  (Reading:)

"And since the exchange coupling is higher, a larger effective magnetic grain switches the layer first and then the weakly magnetic ECLs will assist switching the rest of the layers in that direction."

Correct, sir?

A     No.

Q     If you could pull up your deposition again, sir, this is on page 155, lines 4 through 13, of your sworn deposition.

Are you there?

A     Yes.

Q     Now, this is -- just a few months ago you were asked, "How does it do that?"

And your answer was:

"So if I understand correctly, we have a higher lateral exchange in the cap layer, and that's the closest layer from the head, writing head.  And that excites -- since the exchange coupling is higher, it's a larger effective magnetic grain switches the layer first.  And then through the weakly magnetical -- magnetically ECLs will assist the switching of the rest of the layers

UNITED STATES DISTRICT COURT

in that certain direction."

Did I read that correctly?

A    Yes.

Q    Thank you.

Now, you would agree, sir, won't you, that the exchange coupling layers in the DCMs used in the accused products are very weakly magnetic; true?

A    Yes, I would say so.

Q    And you would agree that the exchange coupling between the G2 and the G1 layer allows the magnetic moments in G2 to influence the magnetic moments in G1; correct?

A    They influence both layers of each other, yes.

Q    Sir, does the G2 layer influence the G1 layer during switching?  Strike that.

You agree that the exchange coupling between G2 and G1 allows the magnetic moments in G2 to influence the magnetic moments in G1; correct?

A    No.

Q    Okay.  Well, let's turn to page 206 of your deposition, sir, please.

Are you there?

A    Yes.

Q    This is another sworn deposition just a few months ago under oath, same oath that you're under today; correct?

A    Yes.

**UNITED STATES DISTRICT COURT**

Q      Now, 206, lines 4 through 9, the question was:

"Do you agree that the exchange coupling between the G1-2 and G1-1 allows the magnetic moments in G1-2 to influence the magnetic moments in G1-1?"

Your answer, "You can say that generally, yes."

Did I read that correctly?

A      Yes.

Q      Okay.  Now, I could walk you through the rest of the representative products to show that the answer is the same, but you would agree that the G2 layer of the remaining representative products interacts or influences with the G1 layer's magnetic moments; correct?

A      As I said, generally, they all influence each other.

Q      Thank you.

And now, sir, when we're going in this direction -- strike that.

Now, sir, beyond these details, you are not clear on the mechanisms of what causes the magnetic moments in the capping layer to rotate when the right field is applied; correct?

A      They switch together.

Q      Sir, that wasn't my question.  I'd appreciate if you -- I know that that's the same line that you've been stating, but if you please pay close attention to my --

THE COURT:  Sir, listen to the question and answer just the question, please.

MR. MIRZAIE:  Thank you.

BY MR. MIRZAIE:

Q    Now, you're not clear on the mechanisms of what causes the magnetic moments in the capping layer to rotate when the right field is applied; correct?

A    I understand the physics.

Q    That's not the testimony you gave, sir, in your deposition, sir.

Can you please turn to page 155 now.  Once you're there, if you could go to line 14, sir.

Sir, were you asked:

"So when the write field is applied, the write field causes magnetic moments in the capping layer to rotate; right?"

And your answer was:

"So if I need to answer this question, I think I would say I'm not clear on the mechanism because a lot of theories that people have produced, that how switching behaviors are, my job is just to make sure that, hey, I get the writeability, I get my SNR, that the thing works. I just move forward."

Did I read that correctly.

MR. LEE:  Your Honor, for completeness, we'd ask that they also read 155, lines --

THE COURT:  Get to a mic, please.

MR. LEE:  Your Honor, for completeness, we'd also ask him to read lines -- page 155, lines 24, through to 156, line 8.

THE COURT:  Would you read that, please.

MR. MIRZAIE:  Can you repeat that?

MR. LEE:  Sure.  Just the next Q and A from 155, line 24, through to 156, line 8.

BY MR. MIRZAIE:

Q     (Reading:)

        "Is there someone at Western Digital that has
    a deeper understanding of the physics as far as the
    magnetic moments and how they affect each other
    layer to layer?"

        "Again, I don't know what the deport means
    because their own theories and their own opinions
    and different ways of characterizing theoretically,
    and I'm not sure whether any of those -- which one
    is real or what.  What is actually happening is
    hard to experimentally prove on what's happening."

        Did I read that correctly?

A     Yes.

Q     Okay.  Now, Dr. Ikeda, we heard from him last week;

correct?

A     Yes.

Q     He's your employee; is that correct?

A     Yes.

Q     He has a Ph.D. in electrical engineering; right?

A     Yeah.  I have to check, yes.

Q     And you're not suggesting to the jury that he doesn't know how the accused products work, are you?

A     He was just explaining the general concepts.

Q     Sir, he answered the questions about how they switch.  Do you recall that?  He stated those details.

A     Sorry, I don't recall.

          MR. MIRZAIE:  Okay.  If we could pull up -- if we could pull up Dr. Ikeda's deposition at line 41 -- or page 41, rather.  Apologies.  Dr. Ikeda, page 41, lines 5 through 11.

          MR. LEE:  Your Honor, I'm not sure --

          Are you trying to impeach the witness?  Because Dr. Ikeda's testimony is not his testimony.  I don't think the witness said anything that would be inconsistent with Dr. Ikeda's testimony.

          MR. MIRZAIE:  Your Honor, Dr. Desai is the corporate rep.  I believe we're entitled to impeach him with other witnesses' deposition.

          THE COURT:  Overruled.

          MR. MIRZAIE:  Now, if we could pull up Dr. Ikeda --

**UNITED STATES DISTRICT COURT**

no.  We could go to -- let's go to PDX-3.217.

BY MR. MIRZAIE:

Q    And here, I think, Western Digital's lawyers just asked you --

MR. MIRZAIE:  If we could go back out.  Well, actually, keep it there.

BY MR. MIRZAIE:

Q    -- whether Dr. Ikeda was actually talking about the accused products at Western Digital.

Do you recall that?

A    Yes.

Q    And what he says here is -- the question is:

"So to reduce grain size to about 6 nanometers, Western Digital had to develop an alloy that produces grains having a diameter of approximately 6 nanometers.  But because smaller grains are less thermally stable, Western Digital had to increase the Hk of the grains, which, in turn, required the use of a multiple ECL structure to help switch the bottom mag layer; correct."

His answer was "That's correct."

Did I read that correctly?

A    You read correctly, yes.

Q    Okay.  And you're not disputing that there's a multiple ECL structure in the accused products, are you?

**UNITED STATES DISTRICT COURT**

A      No, I'm not.

MR. MIRZAIE:  Now, do we have Dr. Ikeda's deposition transcript by chance?  And if we do, we could pull that up at page 41, lines 5 through 11.

MR. LEE:  Your Honor, I'd ask that they give me a copy of the transcript.  It's a totally different witness. They didn't provide me a copy.

Can you please give me a copy at least to look at.

MR. MIRZAIE:  We can move on, Your Honor.  We can move on.  We'll show that later.

BY MR. MIRZAIE:

Q      Now, sir, your counsel asked you about JX-2034 on your redirect examination right now.

Do you recall that?

A      Yes.

MR. MIRZAIE:  And if we could go actually to Dr. Re's slides at PDX-3.226.

Now, on the mag layer structure revolution, Dr. Ikeda made clear that this shows the basic design of Western Digital's PMR media.

Do you see that?

A      This is just a general concept of development material.

Q      Sir, I think your testimony last Friday was that "This document is yet another cartoon"; right?

Do you remember you said that?

UNITED STATES DISTRICT COURT

A     It's a yes.

Q     But you relied on the same document, didn't you, to discuss the chambers that are used to -- in the PVC deposition process?  You relied on the same document to tell the jury about how the products are made?

A     Yeah.  It just tells you the number of layers and how they're becoming complex.  That was the context.

Q     So you're saying that on page 27 you showed the jury, in this internal document -- you relied on this to tell the jury how the products are made, but by the time we reach a few pages later, it's just a cartoon?  Is that what you're telling the jury?

A     Again, this is a cartoon of the general media structure. It does not represent the product.

Q     Okay.  Now, sir, you will agree that the --

MR. MIRZAIE:  The very next slide, actually, let's go to that one.

BY MR. MIRZAIE:

Q     You talked with your lawyer on redirect about the ECL structure.

Do you recall that?

A     Yes.

Q     Now, this is the very next slide in the internal presentation.  And by the way, the testimony was that it was company-wide to the engineers.

UNITED STATES DISTRICT COURT

Do you recall that?

A    Yes.

Q    So you were -- you're in the company; correct?

A    Yes.

Q    You didn't stand up and say, "This doesn't represent the products" during that presentation; correct?

A    I said this does not represent the product.  It represents the media structure but does not represent the product.

Q    Okay.  So if we go to this slide, on your redirect examination, counsel for Western Digital asked you some questions about the relatively low low Ku layer, the low Ku layer, and the relatively high Ku layer.

Do you recall that?

A    I see that, yes.

Q    And that's what it means to have graded anisotropy; correct?

A    Yes, you could say that.

Q    Okay.  I did say that.  Would you say that?

A    Yes.

Q    Okay.  Now, on the -- the diagram on the right, the only difference, will you agree with me, on the diagram is the insert of ECL layers between -- right above those three Ku layers; agreed?

A    Yes.

Q    And that's, according to this -- Dr. Ikeda's image, the

UNITED STATES DISTRICT COURT

difference between an ECL structure on the right versus a non-ECL structure on the left; agreed?

A      Yes.

Q      Now, so you're not telling the jury that these two structures switch in the same way, are you?

A      Yeah.

Q      You're telling the jury that the two structures switch in exactly the same way?

A      I said the ECL structure switch in the same way that all the products that do does.

Q      But you're telling the jury that a non-ECL structure switches in the same way as an ECL structure?  Is that what you're telling the jury?

A      Sorry.  I'm not sure how to answer that.

Q      Okay.  And maybe it's because you don't know all the mechanisms.  But you do understand what the word "coherent switching" means, don't you?

A      No.  I have to look it up.  No.

Q      Okay.  So you don't know what the word "coherent switching" means or "incoherent switching" means?  Is that what you're saying?

A      Yeah.  I defer.

Q      Okay.  You'll defer to perhaps Dr. Bertero, who's the expert in this case; correct?

A      Yeah.

UNITED STATES DISTRICT COURT

Q    Okay.  Now, the first multilayer ECL or EBL product was the double break exchange, the double EBL at Western Digital; correct?

A    No.  We had the one ECL structure.

Q    And I said the first multi-ECL or EBL.  The first multiple ECL or EBL was the two, or double; correct?  The first one that was more than one, sir.

A    Yes.

Q    Okay.  And one of the primary benefits of the multiple ECL media is that it allows a higher degree of incoherent switching throughout the grain; correct?

A    No, I don't know about that.

Q    Well, sir, that's what you described in the presentation at Western Digital, didn't you?

A    Outside presentation as one of the theories to describe that.

Q    Okay.  Then you'll agree with me that you described to the public that a double exchange break layer media is the latest generation media structure, and it allows a higher degree of incoherent switching through the grain column; correct?

A    It is something which is already -- a lot of theories are behind it, and it's probably derived from the previous public presentation.

Q    And you'll agree with me, sir, that in that presentation

you stated, in your presentation, that it allows a higher anisotropy Ku media to be used, yet maintaining good writeability; agreed?

A    Again, it's from the previous presentation, was done publicly.  That's part of it.

Q    And you also agree that it should be a key enabler for smaller grain media grains, which is required for extending conventional PMR recording past the 1-terabyte-per-square-inch mark; correct?

A    But -- yeah, that's what happens.

MR. MIRZAIE:  Okay.  Now, if we can pull up the actual document.

BY MR. MIRZAIE:

Q    This is JX-2037 that your -- that the opening slide image is from.  And go to page 50, please.

Now, before we do that, this is your presentation, correct, sir?

A    Yes.

Q    PMR Media Magnetics Roadmap, September 10, 2015; right?

A    Yes.

Q    If we go to page 50.

You'll agree with me, right, sir, that the image that we all agreed on which was representative of the "accused products," quote/unquote, in the opening slide of Western Digital's presentation -- opening statement is right there on

this slide; correct?

A      Yes.

Q      Okay.  So then you'll agree with me also that according to this Western Digital confidential document -- you see the -- if we remove that for a moment -- "Western Digital Confidential" in red at the bottom of that screen, sir?

A      Yes.

Q      This is created before this lawsuit was filed, right, sir?

A      Yes.

Q      You'll agree with me that you said:

         "Graded anisotropy media concept is achieved
         using multiple exchange break layers (EBL) and
         optimizing the Ku of magnetic layers," won't you?

A      Again, this is a document from the development material. That's what it says, yes.

Q      Thank you.

         So now, sir, on your redirect examination last week, you testified again about JX-2015 and -2028.

         Do you recall the spreadsheets?

A      If you could bring it up.  Sorry.

Q      Well, yeah, I actually brought -- I actually brought a copy of that sheet.  This is the spreadsheet that we heard about for quite a while from your side, sir, this week.  You'll recall when I put up this slide on the document camera.  This

is our demonstrative slide (indicating).

Do you recall that, sir?

A     Yes.

Q     Now, I have to do a mea culpa here.  There was a typo on the headings, the -- thousands of pages of documents in this case.  There was a typo.  And according to your testimony, the 20 -- JX Exhibit Number 2015 and 2828 were switched.

Do you recall that?

A     I see now it's switched.

Q     Okay.  And -- but, sir, Western Digital has spent time referring to these values and these two spreadsheets pointed to by Dr. Re on an issue that just does not matter.  Can we agree on that?

A     Sorry.  It does matter.

Q     So, now, I -- Dr. Re -- if we could pull up his slide at PDX-3.55 -- we agreed last week he relies on those values to determine this 2K over M values.

Do you remember that?

A     2K over M is an approximate.  We don't agree on that.

Q     No, my question, sir, if you could focus on it, please, was Dr. Re relies on those documents for the 2K over M value.

You were sitting right here.  You saw that; correct?

A     Yes.

Q     And for those values, if it's 9.42 or 8.05, they're both greater than 0.5 -- rather, if it's 9.42 or 8.05, the 2K over M

is either 2.12 or 2.00.  We established that last week.

Do you remember that?

A     Yes.

Q     And either one is greater than 0.5; right?

A     Yes.

Q     Either one is greater than 1.71; right?

A     Yes.

Q     So hopefully we could change to -- we want to stay laser focused on the issues that matter here.  On those issues, you talked -- by the way, on the recipes, now, you agree that the -- again, you agree that the G2 layer is deposited in a separate chamber from the G1 layer, and they're made of different compositions; correct?  That's clear?

A     Yes.

Q     Now -- and the G1 layer, that's made up of a cobalt-platinum-based alloy; correct?

A     With the composition optimized with oxides, yes.

MR. LEE:  Objection, Your Honor.  This is outside the scope of the redirect.

MR. MIRZAIE:  Your Honor, they went through the recipes in DX-1018.

THE COURT:  Overruled.

BY MR. MIRZAIE:

Q     And you'll agree that the accused products have a specific thickness for G1 right around 3 nanometers.  Can we

UNITED STATES DISTRICT COURT

agree on that?

A    Something like that, yes.

Q    And the jury can look in their notebook to the patent to see if the -- in Column 5 the patent shows it -- suggests -- teaches it the same way, can't they?

A    Yes.

Q    Okay.  Now, your counsel also pulled up -- final point -- PDX-3.82.

MR. MIRZAIE:  Can we pull that back up.

BY MR. MIRZAIE:

Q    I think that the point that you were trying to suggest is that the GX1 is not the 5X1.

Do you recall that?

A    Yes.

Q    Now, this is PDX-3.82 that your lawyer showed you and the jury.  What he didn't show you was the two slides before that; correct?

A    Yes.

Q    Okay.  If we can go to the two slides before that.

Now, this slide is .80.  And you see that the G5 layer, which your counsel did not show you -- do you see the G5 layer?

A    Yes.

Q    Now, the K value there is less than 7.50.

Do you see that?

**UNITED STATES DISTRICT COURT**

A    That's not the measured value.

Q    I'm asking you if that -- if I've correctly read the document.  Does it say less than 7.5?

A    Yeah, number says it.  Yes.

Q    Thank you.

The next slide that your counsel didn't show you is this one; correct?

A    Yes.

Q    We did show the G5 being at less than 7.5; correct?

A    Wrongly, yes.

Q    Okay.  And by the way, you're not the expert and Dr. Bertero is, for infringement.  We agreed on that; right?

A    Yes.  We measure, so yes.

Q    Now, the G5 is less than 7.50, and G1 is 9.42; right?

A    I disagree, though, with those numbers.

Q    But you're not disagreeing that that's what the spreadsheet says, are you?

A    That's spreadsheet made by you.

Q    Okay.  Now, if we go to the document that it was based on, which is JX-2032 -- last point, sir -- page 7 of JX-2032, this is where the image -- this is the image on the left-hand side; correct?

A    Again, this is a cartoon.  And I said I did not put those nucleus whole star hard layer.  All layers are same for me.  I just double up the media with the optimizing legend --

UNITED STATES DISTRICT COURT

Q    Sir, in this internal presentation your employees developed, does it show that 5X1 has the same structure as the slide we showed for GX1?

A    It is not.

Q    It shows it left and right.  We can show it again if you want to put it, but it shows that...

Well, let me ask you this:  The 5 at the beginning of it just stands for the fact that it was made in the Malaysia plant; correct, sir?

A    That is correct.

Q    And the G just stands for the fact that it was made in the Chinese plant; right?

A    Yes.

MR. MIRZAIE:  No more questions.

THE COURT:  Sir, you may step down.  Thank you.

Call your next witness, please.

MR. BALI:  Your Honor, I believe the next witness is Dr. Peter Goglia, but there's still some issues to be resolved with the slides.

THE COURT:  We'll take a short break here, ladies and gentlemen.

THE COURTROOM DEPUTY:  All rise.

**(Out of the presence of the jury.)**

MR. LEDAHL:  Your Honor, we have two discrete issues with Dr. Goglia's proposed slides.  The first of which --

THE COURT:  Would you hand up a copy, please.

MR. LEDAHL:  Yes.  The first issue, Your Honor, relates to -- and I'm happy to put them on the document camera if it helps, but it relates to Slide 25, 28, and 29.

Your Honor, all of these slides reflect information about products that were excluded pursuant to the Court's ruling on our Motion *in Limine* Number 1 relating to noninfringing alternatives.  For example, they relate to products that are referred to as things like Firebird, Mariner.  These were things that were identified late as noninfringing alternatives.  We moved to exclude them.

The Court's ruling on those in Motion *in Limine* Number 1 was to grant that ruling -- grant that motion that those things could not be offered as proper noninfringing alternatives.  As I said, all three slides -- 25, 28, 29 -- implicate those products.

I'm happy to take up the other two, which are just Rule 26, or we can address this first.

THE COURT:  Let's address this first.

MR. BALI:  Good morning, Your Honor.  Salil Bali for defendant.

I believe this oversimplifies -- or overexpands plaintiff's MIL.  Plaintiff's MIL specifically was related to specific documents related to media structures disclosed.  The slides at issue are write head related.  They talk about the

UNITED STATES DISTRICT COURT

write head and the read head.  Neither of those are related to any infringement issue here.

Dr. Goglia's report talks about other technologies that WD develops that increase areal density.  These are other programs completely unrelated to the media at all that were developed around the same time that affect areal density.

The broad swath of just saying anything that has anything with "Firebird" on it is a little bit of an abuse of what Your Honor said.  It was specific relating to noninfringing alternatives, which was related to a media development, not everything that touches Firebird or a specific product name.

THE COURT:  Mr. Ledahl.

MR. LEDAHL:  To be clear, Your Honor, we're not asking that Dr. Goglia not be permitted to talk about his opinion relating to write heads influencing areal density.  We are objecting to him using documents -- and they agreed when we met and conferred that they weren't offering the underlying documents into evidence, but that it's not proper from our perspective to try to use these documents as the vehicle for that.

MR. BALI:  If I may, Your Honor, we are -- exactly, we did agree to not admit them into evidence.  But showing the jury that there is areal density differences developed through a write -- a read head roadmap is exactly to the point of

Dr. Goglia's expertise and his testimony.  He worked on some of these projects.

THE COURT:  Objection will be overruled.

MR. LEDAHL:  The last two, Your Honor, are in Slides 10 and 20.  And these are issues with respect to essentially Rule 26, problems of material that was not presented in Dr. Goglia's report.  The -- and also with respect to exhibit -- I think both exhibit -- or both slides also include material that is being shown here that's not admitted, not being offered into evidence, and we think inappropriate to publish to the jury in this fashion.

MR. BALI:  Your Honor, exhibit -- I believe page 20 is right here in Dr. Goglia's report.  The exact same image was in Dr. Goglia's report, page 22 -- sorry -- starting on page 21, carrying through to page 22, where he discusses the head media spacing and its relationship to areal density. That's related to page 20.

I believe Mr. Ledahl was talking about exhibit page 10 as the other option -- or other -- there is nothing here -- Dr. Goglia does include other timelines.  We're not seeking to admit any of this.

This demonstrative relates to other timelines that are used in support in the industry.  That is disclosed in Dr. Goglia's report starting at paragraph 21 where he says clearly (as read):

**UNITED STATES DISTRICT COURT**

"The industry and individual HDD

manufacturers have for many years tracked areal

density of HDD product developed and shipped."

These graphs and tables below are examples of that,

and then he gives several other examples.  This is just a

demonstrative showing from WD's own documents other examples of

that same tracking being done.

THE COURT:  Mr. Ledahl.

MR. LEDAHL:  Very, very briefly, Your Honor.  What

we just heard about this slide was that these are other

documents that are different than the ones that Dr. Goglia

talked about in his report.  That's the objection.  These

aren't the ones in his report.  They shouldn't be including

them in this fashion.

THE COURT:  Objection sustained.  He can talk in

general about timelines.

MR. BALI:  No problem, Your Honor.  We'll remove

that slide.

THE COURT:  Okay.  Bring the jury in, please.

MR. BALI:  One quick clarification.  You said the

slide with the multiple timelines is out?

THE COURT:  Yes.

MR. BALI:  The other slide with the areal density

that was shown in his report?

THE COURT:  Yes, fine.

**UNITED STATES DISTRICT COURT**

MR. BALI:  That's fine.  Okay.  Thank you, Your Honor.

**(In the presence of the jury.)**

THE COURTROOM DEPUTY:  Be seated and come to order. This Court is again in session.

MR. BALI:  Western Digital would like to call as its next witness Dr. Peter Goglia.

**PETER GOGLIA, DEFENDANT'S WITNESS, WAS SWORN**

MR. BALI:  Your Honor, can we approach with binders?

THE COURT:  Please.

THE COURTROOM DEPUTY:  Sir, if you could please state your full name, spelling your name for the record.

THE WITNESS:  Yes.  My name is Peter Goglia, spelled P-e-t-e-r, G-o-g-l-i-a.

**DIRECT EXAMINATION**

BY MR. BALI:

Q   Dr. Goglia, I think the other notebooks that you have in front of you, you can put those on the floor or set them aside.

A    There we go.

Q   Good morning, Dr. Goglia.  Could you take a second and introduce yourself to the jury, please.

A    Yes.  Good morning.  My name is Peter Goglia.  I live in the San Francisco East Bay.  I'm married, have two kids.

Q   Dr. Goglia, you're here as an expert for Western Digital. Are you being paid for your work on this case?

**UNITED STATES DISTRICT COURT**

A     Yes, I am.

Q     And how much are you being paid?

A     $400 per hour.

Q     Is your payment tied to any outcomes in this case?

A     No.

Q     Dr. Goglia, did you prepare slides to assist with your presentation today?

A     Yes, I did.

MR. BALI:  Let's pull those up, Mr. Schmoller.

BY MR. BALI:

Q     Could you briefly describe your educational background to the jury?

A     Sure.  I have a master's and Ph.D. in mechanical engineering from the University of Illinois and a bachelor's of science from Cornell University, also in mechanical engineering.

Q     After receiving your Ph.D., where did you go to work?

A     I worked for Hewlett-Packard disk memory division.  And then from 1987 to 1989, I worked for Control Data.  They had a division called Imprimis, which covered hard drives.  Without changing my desk, I joined Seagate because Seagate acquired the Imprimis division.  And so from '89 to 2004, I was a Seagate employee.

Q     And did you overlap with Dr. Re at Seagate?

A     I did.

**UNITED STATES DISTRICT COURT**

Q    And do you know Dr. Re?

A    I do.

Q    What was your title when you left Seagate?

A    I was executive director of mechanical gen team.

Q    Could you explain what the mechanical gen team was?

A    Yes.  The mechanical gen team is a team that addresses technologies that are in the advanced technology development about two years out from product and grooms them for production.

Q    And where did you go after leaving Seagate?

A    I joined Western Digital.

Q    And what was your role at Western Digital?

A    I was VP of research and development for the recording head operation.

Q    And what did that cover?  What were your responsibilities?

A    Well, we covered the design and process development of new recording head technologies in both the Fremont facility and in Thailand.

Q    And approximately how many people reported to you in that role?

A    More or less 200.

Q    And when did you leave Western Digital?

A    I left in 2007.

Q    And have you remained involved in the hard drive industry

**UNITED STATES DISTRICT COURT**

since 2007 when you left Western Digital?

A     Yes.  I joined several companies that were also involved in hard drive space and later established a consulting practice also addressing hard drives.

Q     So is it fair to say you've remained in the hard drive or storage industry for almost 40 years now?

A     I have.

Q     Are you a member of any industry societies?

A     Yes.  I belonged to the IEEE and the American Society of Mechanical Engineers.

Q     Do you have any publications or other accolades?

A     I do.  I have quite a number of publications in the hard drive space.  I've been an invited speaker at a number of venues in the industry and 12 patents.

Q     Are any of your patents related to hard drive technology?

A     Yes, they are.

Q     What area of hard drive technology?

A     I've been involved in many different aspects of hard drive.  My patents are in head media spacing.

          MR. BALI:  Your Honor, at this time I'd like to offer Dr. Peter Goglia as an expert on technologies and innovations that contribute to the advancement of the hard drive industry.

          THE COURT:  Any objection?

          MR. LEDAHL:  No objection, Your Honor.

THE COURT:  Dr. Goglia will be received as an expert in those areas.  You'll recall that means I find that he has the minimum -- at least the minimum to express opinions on the -- in that area.  It's for you to determine how much weight to give his opinions.

BY MR. BALI:

Q     What were you asked to do in this case?  What was your assignment?

A     I was asked to evaluate all the technologies other than those in the accused as well as Dr. Re's opinion of the MRT patents.

Q     And so how did you go about doing that?

A     Well, I looked at Dr. Re's conclusions in his report.  I relied on many documents from Western Digital.  I did my own research on the state of the industry.  Of course, I have many years of experience; I relied on that.  And then I've been here witnessing testimony.

Q     Did you come to any conclusions?

A     Yes.

Q     Could you summarize your conclusions at a high level for the jury, please?

A     Well, there were numerous technological innovations required -- other than the MRT patented technologies that are required to advance areal density.  Those other innovations are not simple.  They're not ordinary.  I recorded extensive

UNITED STATES DISTRICT COURT

research and development at extensive expense.  And, thirdly, Dr. Re's opinions on 46 percent contribution between 300 gigabits per square inch and 1.3 terabits per square inch is simply incorrect and unreliable.

Q    Dr. Goglia, could you take a look at Exhibit 1460 in your binder.  Are you familiar with this document?

A    Yes.

Q    What is this?

A    This is a presentation that I made at the Flash Memory Summit in 2017, prepared by myself and Dr. Ed Grochowski.

Q    Did you rely on this presentation for your analysis here?

A    Yes.

MR. BALI:  I move for DX-1460 into evidence.

THE COURT:  Any objection?

MR. LEDAHL:  No objection, Your Honor.

THE COURT:  1460 will be received.

**(Exhibit Number DX-1460 received.)**

Q    Dr. Goglia, let's look at page 30, which I've put on a slide for you as well.

Are you familiar with this timeline?

A    Yes, I am.

Q    And who put together this timeline?

A    Well, it was compiled by Dr. Grochowski and myself.

Q    And do you recall seeing this graphic in Mr. Lumish's opening statement?

UNITED STATES DISTRICT COURT

A      Yes, I do.

Q      What was the source of the data in this graphic?

A      Well, if you look at the chart, there's a number of dots on the chart.  Each of those dots represent a product, a leading product from whichever company produced it, and the areal density of that product.

Q      And would you rely on this type of data when you were at Seagate or Western Digital?

A      Yes.  It's data that's commonly used in the industry.  I relied on it as did many, many others.

Q      And is areal density tracked across the industry?

A      Yes, it is.

Q      And who tracks it?

A      Well, areal density is one of the key development aspects of a hard drive because it affects capacity.  So it's tracked carefully by each company that produces hard drives, the component suppliers, analysts, and also consortia that are involved in the hard drive space.  It's a widely tracked quantity.

Q      And is IBM one of those companies that might track areal density?

A      Well, IBM is interesting.  They invented the hard drive back in 1956.  They had a hard drive business for quite some time.  They divested of that business and sold it to Hitachi under the name of Hitachi Global Storage, later acquired by

UNITED STATES DISTRICT COURT

Western Digital.

After they sold the business, they continued to be in the computing and storage space.  Since this is one of the key things that is tracked, they are interested in continuing to track it.

Q    Is this table from 2015 an example of IBM tracking such data?

A    Yes, it is.

Q    I don't want to ask you any of the highlights that are present in the document right now because those were there previously.  But what generally does this table show?

A    There's three technologies that are tracked here:  HDD; NAND, which is flash technology; and LTO tape, which is a backup technology.  This is tracking a number of different parameters for each of those.  One of them is areal density.

Q    Does it track areal density for hard drives?

A    Yes.  It's the third line down under "HDD."

Q    And I notice there's a significant change in 2013.  Do you know what caused that?

A    Well, there's a note at the bottom.  It says, "HDD shingle magnetic recording introduced in late 2013."  You can attribute that last increase -- the second number, 900 -- in 2013 to that technology.

Q    Could this one technology by itself have achieved those types of areal densities?

A    No.   Areal density is a combination of many technologies. When you change one, there's a number of different things that have to change at the same time in order to achieve that areal density.  So shingled is one of those technologies that is accompanied by a range of other creative, innovative technologies to achieve that new areal density.

Q    So coming back to this chart that we were just talking about, how would you characterize the innovations prior to the introduction of PMR?

A    The hard drive business is an incredible business.  It started in 1956, and you can see on this chart there are dozens of technologies that have been introduced in that period of time.

It's very significant that in order to achieve the kind of density growth from 2,000 bits, not gigabits -- we're talking about gigabits as our standard here -- but 2,000 bits per square inch from the introduction of the hard drive to, you know, the introduction of PMR, there's 200 gigabits per square inch.  So we're talking about technology development and technologies that are creative, innovative, and revolutionary to create 100 million times the areal density from the first hard drive.

Q    So to be clear about what you said, you -- unpack that a little bit, you just mentioned that the IBM RAMAC, when that was introduced in 1956, what was the areal density of that

product?

A    2,000 bits per square inch.

Q    And the areal density in 2005, what was the areal density at that point?

A    More or less 200 billion bits per square inch or gigabits per square inch.

Q    And that multiple is -- how much growth did the industry experience from 1956 through 2005?

A    It's incredible, but it's 100 million times.

Q    And since 2005, when the industry was at approximately 200 gigabits per square inch, what has the growth been to get to what we're talking about as the upper limit now at 1.3 terabytes?

A    1.3 terabits per square inch is 1300 gigabits per square inch.  So 200 to 1300 is 6.5 times.

Q    And approximately how many people -- how many engineers or scientists were working on hard drive technology from the 1950s to the introduction of PMR?

A    It's -- well, there were hundreds of companies involved. Thousands of employees, maybe even tens of thousands of employees, and many billions of dollars of research and development went into creating this incredible technology growth.

Q    So I wanted to focus in -- you had said the -- sorry -- the introduction of PMR was around 2005, 2006.  So I see on

your chart you have that labeled.  Could you remind the jury, what are all of those dots on the chart?

A    As I mentioned, each dot represents a leading product introduction.  So these are products.  And the areal density of those is either published or calculated from the capacity of the disks.  It's a standard by which the industry tracks areal density.

Q    I also notice that, after the introduction of PMR, you only have one other technology listed there.  Is there a reason for that?

A    Well, this chart was getting a little busy, and I wanted to be able to see what those images look like.  There just wasn't room for more images.

Q    Is there anything on your chart here that would be characterized as the technology claimed by the MRT patents?

A    It's not listed on this chart, no.

Q    Did you review a chart like this from Dr. Re presented in 2015?

A    I did.

Q    Let's look at, I think, JX-1295 [sic], page 5.  That's already in evidence, so the jury will have that with them.

        What does this slide show?

A    Well, this is another timeline of areal density growth over nearly the beginning of the industry to 2015, the current time, of this chart.

UNITED STATES DISTRICT COURT

Q    And is this slide similar to the timeline you prepared that we were just walking through?

A    Well, the data points and the slopes are very similar.  So the shape of the curve and the areal density growth is quite similar.

Q    In this slide does Dr. Re include several technologies contributing to the advancement of areal density?

A    Well, if you look at the chart, yes, they're grouped in groups, and around the time frame of when those technologies were introduced.  And the CAGR is compound annual growth rate of areal density.  So these groupings of technologies are what Dr. Re lists as contributing to those growth rates.

Q    In this chart does Dr. Re identify the technologies claimed by the MRT patent?

A    No, it's not listed on this chart.

Q    And when calculating the areal density contributions that he attributes to the MRT patent, did Dr. Re include all of these technologies that he lists on this chart?

A    No.

          THE COURT:  I think we'll take the lunch break here.

          Recall, ladies and gentlemen, we're just going to take one hour today.  So we'll resume at 1:00 o'clock.  Please remember the admonition not to discuss the case with anyone, not to form any opinions of the issues in the case until it's submitted to you.  So we'll see you at 1:00 o'clock, please.


UNITED STATES DISTRICT COURT

THE COURTROOM DEPUTY:  All rise.

**(Out of the presence of the jury.)**

THE COURT:  Anything before we take the break?

MR. LEDAHL:  Not for the plaintiff, Your Honor.

MR. LUMISH:  Not for Western Digital, Your Honor.

THE COURT:  We'll be in recess.

**(Proceedings concluded at 12:02 p.m.)**

**--oOo--**

**UNITED STATES DISTRICT COURT**

*CERTIFICATE OF OFFICIAL REPORTER*

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME COURT REPORTER, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Date:  July 24, 2024*


                              */S/ DEBBIE HINO-SPAAN*

                              *Debbie Hino-Spaan, CSR No. 7953*
                              *Federal Official Court Reporter*


**UNITED STATES DISTRICT COURT**

| $ |
|---|

**$400** [1] - 65:3

| ' |
|---|

**'89** [1] - 65:22
**'cannot** [1] - 18:3
**'Domino** [1] - 33:10
**'stores** [1] - 19:17

| / |
|---|

**/S** [1] - 77:19

| 0 |
|---|

**0.5** [2] - 55:25, 56:4
**01** [1] - 39:9

| 1 |
|---|

**1** [6] - 7:6, 28:11, 30:8, 39:12, 60:7, 60:13
**1-053** [1] - 1:24
**1-terabyte-per-square-inch** [1] - 53:8
**1.3** [3] - 69:3, 73:12, 73:14
**1.71** [1] - 56:6
**1/10th** [1] - 29:13
**10** [3] - 53:19, 62:5, 62:19
**100** [3] - 29:7, 72:21, 73:9
**100,000** [1] - 29:11
**106** [3] - 40:12, 40:13
**107** [1] - 19:5
**10:10** [1] - 25:13
**10:49** [1] - 25:13
**11** [2] - 46:15, 48:4
**111** [1] - 17:16
**112** [1] - 19:13
**118** [1] - 19:24
**119** [1] - 19:5
**12** [1] - 67:14
**1200** [1] - 3:5
**1224** [1] - 3:5
**12424** [5] - 2:5, 2:9, 2:13, 2:21, 3:9
**12:02** [1] - 76:7
**12th** [5] - 2:5, 2:9, 2:13, 2:21, 3:9
**13** [3] - 16:23, 41:12
**1300** [2] - 73:14, 73:15
**14** [1] - 44:12
**140** [4] - 3:19, 4:9, 4:21, 5:5
**1460** [2] - 69:5, 69:16

**15** [2] - 16:25, 36:12
**150** [1] - 29:7
**153** [1] - 29:21
**155** [5] - 41:12, 44:11, 45:2, 45:5, 45:9
**156** [2] - 45:5, 45:10
**1600** [2] - 4:6, 4:13
**183** [1] - 15:19
**184** [1] - 18:16
**185** [1] - 18:1
**186** [1] - 18:2
**191** [1] - 17:12
**1950s** [1] - 73:18
**1956** [4] - 70:23, 72:11, 72:25, 73:8
**1987** [1] - 65:19
**1989** [1] - 65:19
**1:00** [2] - 75:22, 75:25

| 2 |
|---|

**2** [2] - 17:11, 28:7
**2,000** [3] - 72:15, 72:16, 73:2
**2.00** [1] - 56:1
**2.12** [1] - 56:1
**20** [7] - 39:9, 39:11, 39:13, 55:7, 62:5, 62:12, 62:17
**200** [6] - 2:17, 66:22, 72:18, 73:5, 73:11, 73:15
**20024** [1] - 2:18
**2004** [1] - 65:22
**2005** [4] - 73:3, 73:8, 73:10, 73:25
**2006** [2] - 34:18, 73:25
**2007** [2] - 66:24, 67:1
**2009** [1] - 34:16
**2013** [3] - 71:18, 71:21, 71:22
**2015** [5] - 53:19, 55:7, 71:6, 74:18, 74:24
**2017** [1] - 69:10
**202-664-0623** [1] - 2:18
**2024** [3] - 1:16, 7:1, 77:15
**2028** [1] - 54:19
**206** [2] - 42:19, 43:1
**207** [1] - 17:16
**20th** [1] - 3:23
**21** [3] - 39:24, 62:15, 62:24
**213** [1] - 18:17
**217** [1] - 15:19
**22** [2] - 62:14, 62:15
**23** [3] - 1:16, 7:1, 36:22
**234** [1] - 20:25

**24** [3] - 45:5, 45:10, 77:15
**25** [2] - 60:4, 60:15
**26** [5] - 6:4, 14:14, 21:20, 60:18, 62:6
**27** [1] - 49:8
**28** [11] - 39:9, 39:11, 39:13, 40:1, 40:9, 40:11, 40:12, 40:13, 60:4, 60:15, 77:8
**2800** [2] - 3:13, 4:17
**2828** [1] - 55:7
**29** [4] - 39:9, 39:11, 60:4, 60:15
**2K** [5] - 23:5, 55:17, 55:19, 55:21, 55:25

| 3 |
|---|

**3** [6] - 15:23, 18:9, 27:13, 27:20, 28:7, 56:25
**30** [1] - 69:18
**300** [1] - 69:2
**310-826-7474** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**312-876-7700** [2] - 3:14, 4:18
**330** [2] - 3:13, 4:17
**34** [1] - 6:5
**38** [1] - 13:4
**39** [1] - 13:4
**3EBL** [2] - 37:10, 37:20

| 4 |
|---|

**4** [5] - 15:23, 18:10, 28:7, 41:12, 43:1
**40** [1] - 67:6
**41** [4] - 46:14, 46:15, 48:4
**411** [1] - 1:24
**46** [1] - 69:2
**4TH** [1] - 1:24

| 5 |
|---|

**5** [6] - 1:10, 46:15, 48:4, 57:4, 59:7, 74:20
**50** [6] - 16:16, 17:1, 18:8, 21:19, 53:15, 53:21
**50(a** [1] - 23:19
**53** [2] - 30:13, 31:6
**54** [2] - 30:23
**56** [2] - 32:15, 33:4
**5ECL** [1] - 27:11

**5X1** [5] - 27:15, 27:20, 28:24, 57:12, 59:2

| 6 |
|---|

**6** [2] - 47:13, 47:16
**6.5** [1] - 73:15
**60611** [2] - 3:14, 4:18
**64** [1] - 6:6
**650** [1] - 3:22
**650-328-4600** [4] - 3:20, 4:10, 4:22, 5:6
**660** [2] - 4:5, 4:13
**69** [1] - 6:18

| 7 |
|---|

**7** [1] - 58:20
**7.5** [2] - 58:3, 58:9
**7.50** [2] - 57:24, 58:14
**714-540-1235** [1] - 3:24
**753** [1] - 77:8
**7953** [2] - 1:23, 77:20

| 8 |
|---|

**8** [7] - 16:16, 16:18, 16:19, 18:8, 21:19, 45:6, 45:10
**8.05** [4] - 28:10, 28:16, 55:24, 55:25
**8.27** [3] - 28:5, 28:6, 28:16
**80** [1] - 57:20
**800** [1] - 2:17
**82** [2] - 27:5, 28:1
**89** [1] - 17:5
**8:22-cv-01599-JVS-DFM** [1] - 1:7

| 9 |
|---|

**9** [1] - 43:1
**9.42** [3] - 55:24, 55:25, 58:14
**900** [1] - 71:22
**90025** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**92626** [1] - 3:23
**92660** [2] - 4:6, 4:14
**92701** [1] - 1:25
**93** [1] - 17:4
**94025** [3] - 3:19, 4:10, 4:21
**94025-1008** [1] - 5:5
**949-725-4000** [1] - 4:14
**949-725-4278** [1] - 4:7
**95** [1] - 17:11

**9:43** [2] - 1:17, 7:2

| A |
|---|

**a.m** [2] - 25:13
**A.M** [2] - 1:17, 7:2
**able** [5] - 12:13, 14:12, 14:15, 20:14, 74:12
**above-entitled** [1] - 77:11
**abuse** [1] - 61:8
**accolades** [1] - 67:11
**accompanied** [1] - 72:5
**according** [5] - 30:25, 37:16, 50:25, 54:3, 55:6
**accused** [12] - 19:9, 27:22, 30:4, 34:4, 34:7, 42:6, 46:8, 47:9, 47:25, 53:23, 56:24, 68:10
**Accused** [2] - 36:25, 37:6
**achieve** [3] - 72:3, 72:6, 72:14
**achieved** [2] - 54:12, 71:24
**acknowledges** [2] - 11:16
**acquired** [2] - 65:21, 70:25
**actual** [4] - 30:7, 40:1, 40:10, 53:12
**addition** [1] - 32:6
**additional** [2] - 11:23, 12:20
**address** [6] - 10:2, 18:20, 25:17, 26:2, 60:18, 60:19
**addressed** [1] - 25:23
**addresses** [1] - 66:6
**addressing** [1] - 67:4
**adjacent** [1] - 37:24
**adjust** [1] - 25:6
**admit** [2] - 61:23, 62:21
**admitted** [1] - 62:9
**admonition** [1] - 75:23
**adopts** [1] - 19:25
**advance** [1] - 68:24
**advanced** [2] - 37:9, 66:7
**advancement** [2] - 67:22, 75:7
**advised** [1] - 25:9
**affect** [2] - 45:15, 61:6
**affects** [1] - 70:15
**affirmatively** [2] - 13:12, 14:15

**UNITED STATES DISTRICT COURT**

**ago** [2] - 41:15, 42:23
**agree** [25] - 13:11, 15:3, 36:2, 36:9, 38:6, 42:5, 42:9, 42:15, 43:2, 43:11, 49:15, 50:21, 52:17, 52:25, 53:6, 53:22, 54:3, 54:11, 55:12, 55:19, 56:10, 56:11, 56:24, 57:1, 61:23
**agreed** [7] - 50:23, 51:2, 53:3, 53:23, 55:16, 58:12, 61:17
**agrees** [1] - 24:1
**Ahmad** [1] - 7:20
**AICHELE** [1] - 2:16
**Aichele** [1] - 7:15
**allegedly** [1] - 18:11
**allowed** [6] - 22:17, 22:22, 23:4, 23:8, 35:12, 35:14
**allows** [6] - 42:10, 42:16, 43:3, 52:10, 52:19, 53:1
**alloy** [2] - 47:14, 56:16
**almost** [1] - 67:6
**ALSO** [1] - 5:8
**alternatives** [4] - 60:8, 60:11, 60:15, 61:10
**altogether** [1] - 18:1
**amended** [3] - 8:10, 14:24, 15:17
**American** [1] - 67:9
**ANA** [3] - 1:18, 1:25, 7:1
**analysis** [1] - 69:11
**analysts** [1] - 70:17
**AND** [5] - 3:3, 3:17, 4:3, 4:16, 5:3
**Andy** [1] - 5:10
**ANGELES** [1] - 77:3
**Angeles** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**angstrom** [3] - 29:6, 29:10, 29:13
**anisotropy** [12] - 8:16, 14:23, 28:10, 28:13, 28:22, 28:23, 32:2, 32:9, 32:12, 50:15, 53:2, 54:12
**annual** [1] - 75:10
**answer** [9] - 36:13, 41:17, 43:6, 43:10, 44:1, 44:17, 44:18, 47:21, 51:14
**answered** [2] - 39:4, 46:10
**apologies** [1] - 46:15
**apologize** [2] - 10:7,

40:8
**appear** [1] - 17:2
**appearances** [1] - 7:9
**APPEARANCES** [4] - 2:1, 3:1, 4:1, 5:1
**applied** [3] - 43:20, 44:7, 44:14
**apply** [2] - 9:13, 9:16
**appointment** [1] - 26:11
**appreciate** [2] - 16:8, 43:23
**approach** [1] - 64:9
**approximate** [1] - 55:19
**area** [2] - 67:17, 68:4
**areal** [29] - 61:4, 61:6, 61:16, 61:24, 62:16, 63:2, 63:23, 68:24, 70:6, 70:11, 70:14, 70:20, 71:15, 71:16, 71:25, 72:1, 72:3, 72:6, 72:21, 72:25, 73:3, 74:4, 74:6, 74:23, 75:4, 75:7, 75:11, 75:16
**areas** [1] - 68:2
**argue** [6] - 13:12, 14:15, 14:16, 15:4, 16:14, 23:5
**argues** [2] - 8:24, 17:5
**arguing** [3] - 16:19, 16:24, 16:25
**argument** [24] - 8:8, 8:11, 8:17, 8:21, 13:11, 13:13, 13:14, 13:20, 14:5, 14:13, 14:24, 15:21, 17:24, 17:25, 18:7, 18:18, 21:11, 21:12, 23:10, 24:15, 24:19, 24:22, 24:23, 24:25
**arguments** [10] - 8:19, 8:22, 14:25, 16:2, 16:8, 18:24, 20:24, 21:13, 23:2, 24:10
**aside** [2] - 23:13, 64:18
**aspects** [2] - 67:18, 70:14
**asserted** [1] - 17:7
**assignment** [1] - 68:8
**assist** [16] - 8:12, 8:24, 9:10, 11:4, 13:3, 13:10, 14:2, 14:11, 14:17, 14:25, 15:1, 16:14, 17:22, 41:6, 41:25, 65:6
**assist..** [1] - 13:24
**assisting** [6] - 9:9,

9:13, 9:14, 11:11, 12:20, 14:9
**assists** [1] - 10:15
**AT** [4] - 2:20, 4:9, 4:16, 4:20
**attempt** [1] - 11:18
**attention** [1] - 43:25
**attorney** [1] - 30:9
**ATTORNEY** [4] - 2:20, 4:9, 4:16, 4:20
**attribute** [1] - 71:21
**attributes** [1] - 75:17
**August** [1] - 5:9
**AUGUST** [7] - 2:4, 2:8, 2:12, 2:16, 2:20, 3:4, 3:8
**Avenue** [3] - 2:17, 3:13, 4:17
**avoid** [1] - 35:23

**B**

**bachelor's** [1] - 65:14
**background** [1] - 65:11
**backup** [1] - 71:14
**balance** [1] - 12:3
**Bali** [3] - 6:6, 7:19, 60:20
**BALI** [17] - 4:5, 59:17, 60:20, 61:22, 62:12, 63:17, 63:20, 63:23, 64:1, 64:6, 64:9, 64:16, 65:9, 65:10, 67:20, 68:6, 69:13
**bar** [1] - 27:13
**based** [3] - 35:24, 56:16, 58:19
**bases** [3] - 9:7, 14:21, 22:20
**basic** [1] - 48:19
**Bay** [1] - 64:23
**Beach** [2] - 4:6, 4:14
**Beard** [1] - 7:22
**becoming** [1] - 49:7
**beginning** [2] - 59:7, 74:24
**behaviors** [1] - 44:21
**behind** [1] - 52:23
**belonged** [1] - 67:9
**below** [1] - 63:4
**benefits** [1] - 52:9
**Bertero** [16] - 9:4, 10:8, 10:22, 12:17, 13:1, 13:23, 15:7, 15:18, 16:16, 18:7, 18:19, 18:24, 24:23, 25:20, 51:23, 58:12
**Bertero's** [14] - 8:11, 8:23, 10:2, 10:5,

11:1, 12:2, 13:22, 14:13, 17:3, 17:4, 18:15, 18:23, 22:23, 23:11
**between** [12] - 20:6, 22:4, 31:17, 31:20, 33:6, 37:23, 42:9, 42:15, 43:3, 50:22, 51:1, 69:2
**beyond** [2] - 12:1, 43:18
**big** [1] - 29:8
**billion** [1] - 73:5
**billions** [1] - 73:21
**binder** [2] - 39:2, 69:6
**binders** [1] - 64:9
**bit** [2] - 61:8, 72:24
**bits** [6] - 20:21, 21:4, 72:15, 72:16, 73:2, 73:5
**bits'"..."and** [1] - 18:4
**bledahl@raklaw. com** [1] - 2:11
**bother** [1] - 24:14
**bottom** [12] - 28:13, 28:15, 31:10, 33:7, 33:9, 33:12, 33:13, 33:14, 47:20, 54:6, 71:20
**Boulevard** [6] - 2:5, 2:9, 2:13, 2:21, 3:5, 3:9
**brand** [4] - 8:8, 8:21, 8:25, 13:10
**brand-new** [4] - 8:8, 8:21, 8:25, 13:10
**break** [9] - 37:13, 37:22, 37:23, 52:2, 52:18, 54:13, 59:20, 75:20, 76:3
**breaks** [1] - 20:7
**BRIAN** [1] - 2:8
**Brian** [1] - 7:13
**brief** [1] - 9:7
**briefly** [2] - 63:9, 65:11
**bring** [5] - 27:5, 29:20, 33:4, 54:21, 63:19
**broad** [1] - 61:7
**brought** [3] - 20:24, 54:22
**Buczko** [1] - 7:14
**BUCZKO** [1] - 2:12
**built** [1] - 24:5
**burden** [4] - 11:24, 12:12, 21:22, 23:1
**business** [5] - 70:23, 70:24, 71:2, 72:10
**busy** [1] - 74:11
**BY** [37] - 2:8, 2:16, 3:8,

3:12, 3:18, 3:22, 4:5, 4:9, 4:12, 4:16, 4:20, 5:4, 6:4, 6:6, 26:23, 29:22, 30:24, 31:16, 33:5, 34:24, 35:19, 37:21, 38:21, 39:7, 39:25, 44:4, 45:11, 47:2, 47:7, 48:11, 49:18, 53:13, 56:23, 57:10, 64:16, 65:10, 68:6

**C**

**CA** [1] - 1:25
**CAGR** [1] - 75:10
**calculated** [1] - 74:5
**calculating** [1] - 75:16
**California** [14] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10, 3:19, 3:23, 4:6, 4:10, 4:14, 4:21, 5:5, 77:7
**CALIFORNIA** [4] - 1:2, 1:18, 7:1, 77:4
**CALLED** [2] - 6:4, 6:6
**camera** [3] - 23:21, 54:25, 60:3
**cancers** [1] - 26:12
**cannot** [2] - 13:12, 24:15
**cap** [16] - 33:21, 34:3, 34:6, 34:9, 34:12, 34:17, 38:3, 38:10, 38:14, 38:22, 40:3, 40:5, 40:6, 40:18, 40:21, 41:19
**Cap** [1] - 40:20
**capacity** [2] - 70:15, 74:5
**capping** [3] - 43:20, 44:6, 44:15
**carefully** [1] - 70:16
**CARLSON** [2] - 4:4, 4:12
**carrying** [1] - 62:15
**cartoon** [4] - 48:24, 49:11, 49:13, 58:23
**cartoons** [1] - 37:4
**cascading** [2] - 10:15, 10:21
**Case** [1] - 1:6
**case** [19] - 11:19, 12:8, 13:14, 21:19, 22:5, 22:9, 22:10, 22:11, 22:15, 23:19, 24:5, 25:6, 51:24, 55:6, 64:25, 65:4, 68:7, 75:23, 75:24
**caused** [2] - 26:15,

71:19

**causes** [3] - 43:19, 44:5, 44:15

**Center** [3] - 3:22, 4:5, 4:13

**Central** [1] - 77:7

**CENTRAL** [1] - 1:2

**certain** [2] - 37:3, 42:1

**CERTIFICATE** [1] - 77:1

**Certified** [1] - 1:5

**certify** [1] - 77:7

**Chaaru** [1] - 7:20

**chaaru.deb@lw.com** [1] - 4:11

**CHAARUSHENA** [1] - 4:9

**challenge** [7] - 15:3, 15:4, 22:18, 22:22, 22:24, 23:4, 35:14

**chamber** [1] - 56:12

**chambers** [1] - 49:3

**Chan** [1] - 7:14

**CHAN** [1] - 2:20

**chance** [1] - 48:3

**CHANG** [1] - 3:12

**Chang** [1] - 7:14

**change** [11] - 25:6, 29:1, 29:2, 29:4, 29:5, 29:7, 29:8, 56:8, 71:18, 72:2, 72:3

**changed** [2] - 25:23, 29:6

**changing** [2] - 25:16, 65:21

**characterize** [1] - 72:8

**characterized** [1] - 74:15

**characterizing** [1] - 45:19

**chart** [15] - 70:3, 70:4, 72:7, 72:11, 74:1, 74:2, 74:11, 74:14, 74:16, 74:17, 74:25, 75:8, 75:13, 75:15, 75:18

**check** [1] - 46:6

**Chicago** [2] - 3:14, 4:18

**chief** [2] - 22:11, 23:20

**Chinese** [1] - 59:12

**Chris** [1] - 5:10

**cites** [1] - 19:10

**claim** [3] - 12:15, 12:19, 34:10

**claimed** [2] - 74:15, 75:14

**claims** [3] - 12:11, 20:5, 20:8

**clarification** [2] - 38:17, 63:20

**clear** [9] - 11:25, 20:4, 43:18, 44:5, 44:19, 48:19, 56:13, 61:14, 72:23

**clearly** [1] - 62:25

**client** [3] - 7:12, 7:21, 11:15

**close** [2] - 30:21, 43:25

**closest** [1] - 41:20

**cobalt** [1] - 56:16

**cobalt-platinum-based** [1] - 56:16

**Cobra** [2] - 27:19, 28:8

**Code** [1] - 77:8

**coercive** [6] - 14:6, 21:2, 22:19, 29:2, 29:5

**coherent** [3] - 10:23, 51:16, 51:19

**collection** [1] - 10:18

**collectively** [1] - 20:2

**color** [2] - 28:18, 28:19

**colored** [2] - 28:24, 28:25

**coloring** [1] - 28:17

**colors** [1] - 28:21

**Column** [1] - 57:4

**column** [1] - 52:20

**combination** [1] - 72:1

**coming** [1] - 72:7

**commonly** [1] - 70:9

**companies** [3] - 67:2, 70:20, 73:19

**company** [4] - 49:25, 50:3, 70:5, 70:16

**company-wide** [1] - 49:25

**comparable** [2] - 19:21

**compiled** [1] - 69:23

**complete** [1] - 25:6

**completely** [1] - 61:5

**completeness** [2] - 45:1, 45:4

**complex** [1] - 49:7

**component** [1] - 70:17

**components** [2] - 24:15, 24:19

**composition** [1] - 56:17

**compositions** [1] - 56:13

**compound** [1] - 75:10

**computing** [1] - 71:3

**concept** [2] - 48:22, 54:12

**concepts** [1] - 46:9

**concerning** [1] - 18:16

**concluded** [1] - 76:7

**conclusion** [2] - 35:7, 35:20

**conclusions** [3] - 68:13, 68:18, 68:20

**Conference** [1] - 77:12

**conferred** [1] - 61:18

**confidential** [1] - 54:4

**Confidential** [1] - 54:6

**confirms** [1] - 19:14

**conformance** [1] - 77:12

**confusion** [1] - 35:23

**consistent** [2] - 10:24, 11:8

**consortia** [1] - 70:17

**construction** [2] - 9:9, 12:20

**consulting** [1] - 67:3

**contentions** [9] - 9:11, 9:15, 11:7, 11:10, 12:24, 14:3, 14:10, 19:7, 19:8

**context** [1] - 49:7

**continue** [1] - 27:3

**Continued** [4] - 3:1, 4:1, 5:1, 26:22

**continued** [2] - 6:4, 71:2

**continuing** [1] - 71:4

**contradicting** [1] - 39:20

**contribute** [2] - 17:18, 67:22

**contributing** [2] - 75:7, 75:12

**contribution** [1] - 69:2

**contributions** [1] - 75:16

**Control** [1] - 65:19

**conventional** [1] - 53:8

**conversation** [1] - 25:21

**copy** [8] - 8:2, 18:23, 28:1, 48:6, 48:7, 48:8, 54:23, 60:1

**Cornell** [1] - 65:15

**corporate** [2] - 5:9, 46:21

**correct** [53] - 27:23, 29:16, 30:20, 31:5, 31:22, 31:25, 32:8, 32:13, 33:1, 33:24, 36:11, 37:7, 37:11, 37:14, 37:17, 37:18, 37:24, 38:8, 38:12,

38:15, 38:23, 41:9, 42:11, 42:17, 42:24, 43:13, 43:21, 44:7, 46:1, 46:3, 47:20, 47:21, 50:3, 50:6, 50:16, 51:24, 52:3, 52:6, 52:11, 52:21, 53:9, 53:17, 54:1, 55:22, 56:13, 56:16, 57:17, 58:7, 58:9, 58:22, 59:9, 59:10, 77:9

**corrected** [1] - 28:9

**correctly** [11] - 28:24, 28:25, 41:1, 41:18, 42:2, 43:7, 44:25, 45:23, 47:22, 47:23, 58:2

**Costa** [1] - 3:23

**COUNSEL** [4] - 2:1, 3:1, 4:1, 5:1

**counsel** [10] - 7:9, 7:18, 26:15, 27:4, 35:11, 48:12, 50:10, 57:7, 57:21, 58:6

**COUNTERCLAIM** [5] - 2:3, 3:3, 3:17, 4:3, 5:3

**Counterclaim** [2] - 1:6, 1:10

**COUNTY** [1] - 77:3

**couple** [4] - 25:22, 30:25, 40:7, 40:22

**coupling** [9] - 37:17, 37:22, 37:23, 41:4, 41:22, 42:6, 42:9, 42:15, 43:2

**course** [2] - 23:9, 68:15

**court** [1] - 25:11

**Court** [7] - 18:15, 21:22, 24:1, 25:24, 64:5, 77:6, 77:20

**COURT** [61] - 1:1, 1:24, 7:16, 7:23, 8:1, 9:5, 9:19, 11:20, 12:22, 13:25, 14:16, 15:8, 15:13, 16:8, 16:12, 18:20, 19:11, 20:16, 21:15, 21:24, 22:1, 22:16, 24:12, 24:17, 25:3, 25:7, 25:9, 25:25, 26:3, 26:6, 26:9, 26:20, 34:21, 35:16, 39:6, 39:22, 44:1, 45:3, 45:7, 46:24, 56:22, 59:15, 59:20, 60:1, 60:19, 61:13, 62:3, 63:8, 63:15, 63:19,

63:22, 63:25, 64:10, 67:24, 68:1, 69:14, 69:16, 75:20, 76:3, 76:6, 77:6

**Court's** [2] - 60:6, 60:12

**court's** [1] - 24:12

**COURTROOM** [7] - 7:6, 25:11, 26:17, 59:22, 64:4, 64:11, 76:1

**cover** [1] - 66:15

**covered** [2] - 65:20, 66:17

**create** [1] - 72:21

**created** [1] - 54:8

**creating** [1] - 73:22

**creative** [2] - 72:5, 72:20

**cross** [3] - 15:4, 22:25, 39:2

**cross-examination** [2] - 15:4, 39:2

**cross-examine** [1] - 22:25

**CRR** [1] - 1:23

**CSR** [2] - 1:23, 77:20

**culpa** [1] - 55:4

**current** [1] - 74:24

**curve** [1] - 75:4

**cuts** [1] - 11:5

## D

**D.C** [1] - 2:18

**DALE** [1] - 3:12

**Dale** [1] - 7:14

**Data** [1] - 65:19

**data** [6] - 27:19, 70:2, 70:7, 70:9, 71:7, 75:3

**Date** [1] - 77:15

**Dauberts** [1] - 24:7

**DAY** [1] - 1:10

**dchang@raklaw.com** [1] - 3:15

**DCMs** [1] - 42:6

**Deb** [1] - 7:20

**DEB** [1] - 4:9

**Debbie** [1] - 77:20

**DEBBIE** [3] - 1:23, 77:5, 77:19

**deck** [1] - 6:18

**deeper** [1] - 45:14

**DEFENDANT** [7] - 2:3, 3:3, 3:17, 4:3, 5:3, 6:4, 6:6

**Defendant** [2] - 1:6, 1:9

**defendant** [2] - 8:18,

60:21
**DEFENDANT'S** [1] - 64:8
**defendant's** [1] - 5:10
**defense** [4] - 18:14, 18:16, 19:2, 22:7
**defer** [2] - 51:22, 51:23
**deficiencies** [1] - 13:11
**degree** [2] - 52:10, 52:20
**deja** [1] - 12:23
**delay** [1] - 26:15
**delineation** [1] - 20:5
**demonstrative** [3] - 55:1, 62:22, 63:6
**denied** [3] - 11:19, 12:13, 22:5
**densities** [1] - 71:25
**density** [29] - 61:4, 61:6, 61:16, 61:24, 62:16, 63:3, 63:23, 68:24, 70:6, 70:11, 70:14, 70:21, 71:15, 71:16, 72:1, 72:4, 72:6, 72:15, 72:21, 72:25, 73:3, 74:4, 74:7, 74:23, 75:4, 75:7, 75:11, 75:16
**denying** [2] - 22:20, 23:7
**deport** [1] - 45:17
**deposited** [1] - 56:11
**deposition** [26] - 10:3, 10:6, 10:9, 10:23, 11:1, 11:3, 11:17, 12:2, 12:4, 15:12, 15:14, 19:7, 38:25, 39:3, 39:8, 40:10, 40:14, 41:11, 41:12, 42:19, 42:23, 44:10, 46:14, 46:23, 48:2, 49:3
**DEPUTY** [7] - 7:6, 25:11, 26:17, 59:22, 64:4, 64:11, 76:1
**derived** [1] - 52:23
**dermatologist** [1] - 26:11
**DESAI** [2] - 6:4, 26:21
**Desai** [7] - 25:18, 26:4, 26:24, 34:25, 35:2, 36:13, 46:21
**Desai's** [2] - 10:3, 10:25
**describe** [3] - 17:8, 52:15, 65:11
**described** [2] - 52:13, 52:17

**describes** [1] - 13:5
**description** [2] - 20:6, 20:8
**design** [3] - 17:20, 48:19, 66:17
**desk** [1] - 65:21
**details** [3] - 36:19, 43:18, 46:11
**determine** [4] - 23:23, 24:2, 55:17, 68:4
**develop** [1] - 47:14
**developed** [4] - 59:2, 61:6, 61:24, 63:3
**development** [10] - 48:22, 54:15, 61:11, 66:7, 66:13, 66:17, 69:1, 70:14, 72:19, 73:22
**develops** [1] - 61:4
**dhinospaan@yahoo. com** [1] - 1:25
**diagram** [2] - 50:20, 50:21
**diameter** [1] - 47:15
**Dieter** [2] - 5:9, 7:13
**difference** [5] - 31:17, 31:20, 33:6, 50:21, 51:1
**differences** [1] - 61:24
**different** [11] - 17:8, 27:17, 32:2, 39:15, 45:19, 48:6, 56:13, 63:11, 67:18, 71:14, 72:2
**Digital** [28] - 7:7, 7:18, 14:14, 19:2, 35:14, 36:16, 37:4, 37:5, 45:13, 47:9, 47:14, 47:17, 50:10, 52:2, 52:14, 54:4, 54:5, 55:10, 64:6, 64:24, 66:11, 66:12, 66:23, 67:1, 68:14, 70:8, 71:1, 76:5
**DIGITAL** [1] - 1:8
**Digital's** [9] - 30:4, 33:19, 34:13, 34:18, 36:22, 36:24, 47:3, 48:20, 53:25
**DIRECT** [1] - 64:15
**Direct** [1] - 6:6
**direction** [5] - 23:17, 23:18, 41:8, 42:1, 43:16
**director** [1] - 66:4
**disagree** [3] - 23:9, 36:8, 58:15
**disagreeing** [1] - 58:16
**disagrees** [1] - 19:8

**disclosed** [13] - 8:9, 13:7, 14:2, 14:3, 14:9, 15:6, 15:16, 15:22, 15:24, 16:2, 18:12, 60:24, 62:23
**disclosure** [1] - 14:14
**discovery** [2] - 9:11, 18:13
**discrete** [1] - 59:24
**discuss** [2] - 49:3, 75:23
**discussed** [2] - 35:2, 36:6
**discusses** [1] - 62:15
**discussion** [1] - 22:3
**Disk** [1] - 6:18
**disk** [1] - 65:18
**disks** [1] - 74:6
**disputed** [1] - 23:24
**disputing** [1] - 47:24
**distinct** [13] - 9:18, 9:20, 9:22, 10:17, 13:18, 16:20, 16:24, 16:25, 19:3, 22:7, 24:15, 24:19
**distinction** [2] - 12:5, 22:4
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [2] - 77:6, 77:7
**divested** [1] - 70:24
**DIVISION** [1] - 1:2
**division** [3] - 65:18, 65:20, 65:22
**doctor's** [1] - 26:11
**doctrine** [8] - 13:19, 15:16, 15:20, 15:21, 16:1, 16:5, 18:11, 24:20
**Document** [1] - 20:25
**document** [23] - 23:21, 27:25, 30:7, 30:10, 30:11, 30:23, 32:14, 32:16, 35:25, 36:15, 48:24, 49:2, 49:4, 49:9, 53:12, 54:4, 54:15, 54:25, 58:3, 58:19, 60:3, 69:6, 71:10
**documents** [13] - 36:4, 36:5, 37:4, 37:5, 55:5, 55:21, 60:24, 61:17, 61:19, 61:20, 63:6, 63:11, 68:14
**dollars** [1] - 73:21
**domain** [1] - 10:14
**dominos** [3] - 29:24, 32:19, 32:23
**done** [2] - 53:4, 63:7

**dot** [1] - 74:3
**dots** [3] - 70:3, 70:4, 74:2
**double** [7] - 9:12, 9:15, 52:2, 52:6, 52:18, 58:25
**doug** [1] - 7:17
**doug.lumish@lw. com** [1] - 3:20
**DOUGLAS** [1] - 3:18
**down** [8] - 19:11, 20:7, 28:11, 32:15, 33:2, 38:8, 59:15, 71:17
**dozens** [1] - 72:11
**Dr** [101] - 6:19, 7:13, 8:11, 8:23, 10:2, 10:3, 10:5, 10:8, 10:22, 10:25, 11:1, 12:2, 12:17, 13:1, 13:22, 13:23, 14:3, 14:7, 14:13, 15:5, 15:7, 15:18, 16:16, 17:3, 17:4, 18:7, 18:23, 18:24, 19:6, 19:15, 19:25, 22:23, 22:25, 23:11, 24:23, 25:18, 25:19, 25:20, 26:4, 26:24, 30:19, 32:5, 32:21, 32:23, 33:9, 33:15, 33:25, 34:3, 34:25, 35:2, 36:4, 36:13, 45:25, 46:14, 46:15, 46:18, 46:20, 46:21, 46:25, 47:8, 48:2, 48:17, 48:19, 50:25, 51:23, 55:12, 55:15, 55:21, 58:12, 59:18, 59:25, 61:3, 61:15, 62:1, 62:7, 62:13, 62:14, 62:20, 62:24, 63:11, 64:7, 64:20, 64:24, 65:6, 65:24, 66:1, 67:21, 68:1, 68:10, 68:13, 69:2, 69:5, 69:10, 69:18, 69:23, 74:17, 75:6, 75:12, 75:13, 75:17
**dr** [1] - 64:17
**drive** [16] - 66:25, 67:3, 67:5, 67:13, 67:15, 67:17, 67:19, 67:23, 70:15, 70:18, 70:22, 70:23, 72:10, 72:17, 72:22, 73:17
**Drive** [7] - 3:19, 3:22, 4:5, 4:9, 4:13, 4:21, 5:5
**Drives** [1] - 6:19
**drives** [4] - 65:20,

67:4, 70:16, 71:16
**during** [4] - 18:13, 33:25, 42:13, 50:6
**DX-1018** [1] - 56:21
**DX-1460** [3] - 6:18, 69:13, 69:17

---

**E**

---

**East** [1] - 64:23
**EBL** [7] - 37:10, 37:13, 52:1, 52:2, 52:5, 52:6, 54:13
**ECC** [1] - 37:9
**ECL** [29] - 29:18, 31:3, 31:4, 31:13, 31:19, 31:21, 31:23, 32:25, 33:8, 33:10, 33:11, 33:13, 33:14, 33:15, 37:17, 47:19, 47:25, 49:19, 50:22, 51:1, 51:2, 51:9, 51:11, 51:12, 52:1, 52:4, 52:5, 52:6, 52:10
**ECL's** [1] - 31:24
**ECLs** [4] - 19:22, 32:6, 41:6, 41:24
**ed** [1] - 69:10
**educational** [1] - 65:11
**Edward** [1] - 6:19
**effect'** [1] - 33:10
**effective** [2] - 41:5, 41:22
**either** [5] - 38:8, 56:1, 56:4, 56:6, 74:5
**electrical** [1] - 46:5
**element** [2] - 12:8, 13:8
**elements** [2] - 12:14, 23:1
**employee** [2] - 46:3, 65:23
**employees** [3] - 59:1, 73:20, 73:21
**enabler** [1] - 53:6
**end** [1] - 23:19
**engineering** [3] - 46:5, 65:14, 65:16
**Engineers** [1] - 67:10
**engineers** [2] - 49:25, 73:16
**entire** [4] - 20:12, 20:21, 23:23, 24:2
**entirety** [1] - 21:8
**entitled** [3] - 36:25, 46:22, 77:11
**equivalence** [1] - 18:12
**equivalents** [7] -

13:19, 15:16, 15:20, 15:21, 16:1, 16:5, 24:20
**ESQ** [12] - 2:4, 2:8, 2:12, 2:16, 3:4, 3:8, 3:12, 3:18, 3:22, 4:5, 4:12, 5:4
**essentially** [2] - 22:9, 62:6
**established** [3] - 37:13, 56:1, 67:3
**evaluate** [1] - 68:9
**event** [1] - 30:3
**EVIDENCE** [1] - 6:17
**evidence** [9] - 12:10, 13:5, 15:6, 23:5, 61:19, 61:23, 62:10, 69:13, 74:21
**exact** [2] - 14:8, 62:13
**exactly** [10] - 13:13, 13:19, 16:4, 17:24, 18:7, 23:18, 39:17, 51:8, 61:22, 61:25
**EXAMINATION** [3] - 26:22, 34:23, 64:15
**examination** [6] - 15:4, 35:3, 39:2, 48:13, 50:10, 54:18
**Examination** [3] - 6:4, 6:5, 6:6
**examine** [1] - 22:25
**example** [3] - 19:6, 60:8, 71:6
**examples** [4] - 17:10, 63:4, 63:5, 63:6
**exchange** [16] - 37:13, 37:17, 37:22, 37:23, 40:7, 40:22, 41:4, 41:19, 41:21, 42:6, 42:9, 42:15, 43:2, 52:2, 52:18, 54:13
**excites** [1] - 41:21
**exclude** [2] - 14:4, 60:11
**excluded** [3] - 9:1, 13:14, 60:6
**excuse** [1] - 10:1
**executive** [1] - 66:4
**EXHIBIT** [1] - 6:17
**exhibit** [4] - 62:8, 62:12, 62:19
**Exhibit** [3] - 55:7, 69:5, 69:17
**EXHIBITS** [1] - 6:15
**expense** [1] - 69:1
**experience** [2] - 68:16, 73:8
**experimentally** [1] - 45:22
**expert** [11] - 11:12,

11:13, 11:16, 11:24, 14:9, 15:18, 51:24, 58:11, 64:24, 67:21, 68:1
**expertise** [1] - 62:1
**experts** [1] - 12:12
**explain** [1] - 66:5
**explaining** [1] - 46:9
**express** [1] - 68:3
**expressing** [1] - 15:20
**expressly** [1] - 11:3
**extending** [1] - 53:7
**extensive** [2] - 68:25, 69:1

### F

**facility** [1] - 66:18
**fact** [7] - 23:22, 23:24, 24:1, 24:3, 25:19, 59:8, 59:11
**fail** [1] - 12:7
**failed** [1] - 12:15
**failure** [1] - 12:12
**fair** [2] - 36:16, 67:5
**familiar** [2] - 69:6, 69:20
**far** [1] - 45:14
**fashion** [2] - 62:11, 63:14
**fault** [1] - 12:1
**features** [1] - 17:20
**FEDERAL** [2] - 1:24, 77:5
**Federal** [1] - 77:20
**FENSTER** [15] - 2:4, 7:11, 7:25, 8:2, 12:23, 14:2, 14:20, 15:10, 15:14, 16:10, 16:13, 20:17, 21:17, 22:17, 24:18
**Fenster** [10] - 7:12, 8:4, 9:7, 11:20, 11:22, 12:22, 20:16, 22:16, 23:14, 24:17
**ferromagnetic** [2] - 13:2, 20:10
**few** [4] - 32:14, 41:15, 42:23, 49:10
**field** [10] - 14:6, 21:3, 22:19, 29:2, 29:5, 38:19, 43:20, 44:7, 44:14, 44:15
**figure** [4] - 29:24, 30:1, 30:3, 30:7
**filed** [2] - 8:7, 54:8
**final** [1] - 57:7
**finally** [1] - 17:25
**finder** [3] - 23:23, 24:1, 24:3

**fine** [2] - 63:25, 64:1
**finish** [1] - 25:18
**Firebird** [3] - 60:9, 61:8, 61:11
**first** [29] - 8:7, 8:15, 9:2, 9:16, 12:24, 15:18, 16:17, 16:19, 17:4, 20:19, 34:13, 35:25, 38:11, 38:14, 38:19, 38:22, 40:23, 40:25, 41:6, 41:23, 52:1, 52:5, 52:6, 59:25, 60:2, 60:18, 60:19, 72:21
**flash** [1] - 71:13
**Flash** [1] - 69:9
**Floor** [6] - 2:5, 2:9, 2:13, 2:21, 3:9, 3:23
**floor** [1] - 64:18
**focus** [2] - 55:20, 73:24
**focused** [2] - 19:1, 56:9
**follow** [3] - 27:24, 36:18, 36:22
**follow-up** [1] - 36:22
**followed** [1] - 24:8
**following** [1] - 27:3
**FOR** [5] - 2:3, 3:3, 3:17, 4:3, 5:3
**foregoing** [1] - 77:9
**form** [1] - 75:24
**format** [1] - 77:11
**formed** [3] - 13:13, 21:5, 21:6
**formula** [1] - 23:5
**forth** [1] - 24:8
**forward** [2] - 14:18, 44:24
**fought** [1] - 12:13
**four** [3] - 8:19, 20:23, 40:9
**frame** [1] - 75:9
**Francisco** [1] - 64:23
**Frankel** [1] - 7:19
**Fremont** [1] - 66:18
**Frenkel** [2] - 18:20, 21:9
**FRENKEL** [3] - 5:4, 18:22, 19:12
**Friday** [6] - 27:8, 35:3, 35:7, 38:3, 40:14, 48:23
**front** [1] - 64:18
**full** [2] - 17:20, 64:12
**function** [2] - 9:25, 18:1
**functional** [1] - 17:20
**functionality** [1] - 10:20

**functionally** [1] - 16:25
**functions** [2] - 10:1, 13:18
**fundamental** [1] - 10:11

### G

**G-o-g-l-i-a** [1] - 64:14
**G1** [15] - 8:12, 18:3, 19:8, 27:20, 27:22, 42:10, 42:11, 42:13, 42:16, 42:17, 43:12, 56:12, 56:15, 56:25, 58:14
**G1-1** [2] - 43:3, 43:5
**G1-2** [2] - 43:3, 43:4
**G2** [8] - 13:2, 42:10, 42:13, 42:15, 42:16, 43:11, 56:11
**G3** [1] - 13:2
**G4** [2] - 13:2
**G5** [4] - 57:20, 57:21, 58:9, 58:14
**gen** [3] - 66:4, 66:5, 66:6
**general** [4] - 46:9, 48:22, 49:13, 63:16
**generally** [3] - 43:6, 43:14, 71:11
**generation** [1] - 52:19
**gentlemen** [3] - 26:9, 59:21, 75:21
**Giants** [1] - 6:19
**gigabits** [7] - 69:3, 72:15, 72:16, 72:18, 73:5, 73:11, 73:14
**Global** [1] - 70:25
**GmbH** [1] - 7:7
**GMBH** [1] - 1:4
**Goglia** [16] - 25:19, 25:22, 59:18, 61:15, 62:20, 63:11, 64:7, 64:13, 64:20, 64:22, 64:24, 65:6, 67:21, 68:1, 69:5, 69:18
**GOGLIA** [2] - 6:6, 64:8
**goglia** [1] - 64:17
**Goglia's** [7] - 59:25, 61:3, 62:1, 62:7, 62:13, 62:14, 62:24
**graded** [10] - 31:4, 31:11, 31:20, 32:9, 32:11, 33:11, 33:12, 33:16, 33:17, 50:15
**Graded** [2] - 33:10, 54:12
**grain** [6] - 41:5, 41:23, 47:13, 52:11, 52:20,

53:7
**grains** [4] - 47:15, 47:17, 47:18, 53:7
**grant** [2] - 60:13
**granted** [3] - 16:9, 21:7, 21:8
**grants** [1] - 18:15
**graphic** [5] - 33:6, 33:7, 33:9, 69:24, 70:2
**graphs** [1] - 63:4
**greater** [3] - 55:25, 56:4, 56:6
**green** [1] - 28:23
**GREGORY** [1] - 5:4
**Grochowski** [3] - 6:20, 69:10, 69:23
**grooms** [1] - 66:8
**Group** [2] - 27:13, 27:20
**grouped** [1] - 75:8
**groupings** [1] - 75:11
**groups** [1] - 75:9
**growth** [8] - 72:15, 73:7, 73:11, 73:23, 74:23, 75:4, 75:10, 75:12
**guess** [1] - 32:18
**GX1** [5] - 27:10, 27:15, 28:4, 57:12, 59:3

### H

**Hac** [1] - 2:16
**hair** [2] - 29:11, 29:15
**half** [1] - 25:8
**halfway** [1] - 22:11
**hamstring** [1] - 11:18
**hand** [3] - 18:23, 58:21, 60:1
**Hanle** [1] - 7:20
**HANLE** [1] - 4:12
**happy** [2] - 60:3, 60:17
**Hard** [1] - 6:18
**hard** [44] - 9:21, 11:2, 12:5, 16:20, 17:9, 17:14, 19:3, 19:9, 19:15, 19:16, 20:1, 20:4, 20:7, 20:9, 21:2, 21:3, 22:8, 23:12, 23:24, 24:2, 24:21, 34:6, 45:22, 58:24, 65:20, 66:25, 67:3, 67:4, 67:5, 67:12, 67:15, 67:17, 67:18, 67:22, 70:15, 70:16, 70:18, 70:22, 70:23, 71:16, 72:10, 72:17, 72:22, 73:17
**HDD** [5] - 63:1, 63:3,

| | | | | |
|---|---|---|---|---|
| 71:12, 71:17, 71:20<br>**head** [15] - 22:13, 38:15, 38:23, 40:24, 40:25, 41:20, 41:21, 60:25, 61:1, 61:25, 62:16, 66:14, 66:18, 67:19<br>**headings** [1] - 55:5<br>**heads** [1] - 61:16<br>**heard** [4] - 14:5, 45:25, 54:23, 63:10<br>**held** [2] - 23:6, 77:10<br>**help** [2] - 36:21, 47:20<br>**helps** [1] - 60:4<br>**hereby** [1] - 77:7<br>**Hewlett** [1] - 65:18<br>**Hewlett-Packard** [1] - 65:18<br>**high** [2] - 50:12, 68:20<br>**higher** [7] - 28:23, 41:4, 41:19, 41:22, 52:10, 52:19, 53:1<br>**highlights** [1] - 71:9<br>**highly** [2] - 40:7, 40:22<br>**HINO** [3] - 1:23, 77:5, 77:19<br>**Hino** [1] - 77:20<br>**HINO-SPAAN** [3] - 1:23, 77:5, 77:19<br>**Hino-Spaan** [1] - 77:20<br>**Hitachi** [2] - 70:24, 70:25<br>**Hk** [1] - 47:18<br>**Honor** [88] - 7:11, 7:15, 7:17, 7:25, 8:4, 8:14, 8:19, 9:6, 9:12, 9:17, 9:18, 10:6, 10:9, 11:21, 11:23, 12:23, 13:18, 14:7, 14:20, 15:11, 15:22, 16:4, 16:7, 16:10, 16:11, 16:15, 18:9, 18:19, 18:22, 18:24, 19:1, 21:7, 21:13, 21:17, 21:19, 21:25, 22:2, 22:3, 22:5, 22:18, 23:6, 23:10, 23:25, 24:6, 24:14, 24:18, 25:4, 25:8, 25:15, 26:1, 26:4, 34:20, 34:22, 35:10, 35:13, 35:18, 39:4, 39:15, 39:17, 39:21, 39:23, 45:1, 45:4, 46:16, 46:21, 48:5, 48:9, 56:18, 56:20, 59:17, 59:24, 60:2, 60:5, 60:20, 61:9, | 61:14, 61:22, 62:4, 62:12, 63:9, 63:17, 64:2, 64:9, 67:20, 67:25, 69:15, 76:4, 76:5<br>**Honor's** [2] - 9:9, 23:22<br>**HONORABLE** [1] - 1:3<br>**hope** [1] - 27:1<br>**hopefully** [1] - 56:8<br>**host** [16] - 8:12, 9:10, 9:21, 12:25, 13:10, 16:13, 16:14, 17:9, 17:14, 19:4, 20:6, 20:11, 22:8, 23:25, 24:4, 34:4<br>**hosts** [1] - 15:1<br>**hour** [3] - 25:8, 65:3, 75:22<br>**human** [1] - 29:15<br>**hundreds** [1] - 73:19<br>**hypothetical** [1] - 12:9<br>**HYUK** [1] - 3:22<br><br>**I**<br><br>**i.e** [1] - 17:21<br>**IBM** [4] - 70:20, 70:22, 71:6, 72:24<br>**identified** [10] - 8:16, 8:18, 8:19, 13:1, 14:22, 20:19, 20:20, 21:11, 31:1, 60:10<br>**identifies** [1] - 19:15<br>**identify** [3] - 12:25, 30:18, 75:13<br>**Identify** [1] - 14:21<br>**identifying** [1] - 24:4<br>**IEEE** [1] - 67:9<br>**Ikeda** [6] - 30:19, 45:25, 46:15, 46:25, 47:8, 48:19<br>**Ikeda's** [6] - 32:5, 46:14, 46:18, 46:20, 48:2, 50:25<br>**Illinois** [3] - 3:14, 4:18, 65:14<br>**image** [6] - 50:25, 53:14, 53:22, 58:21, 62:13<br>**images** [2] - 74:12, 74:13<br>**imagine** [2] - 12:9, 12:10<br>**impeach** [2] - 46:17, 46:22<br>**implicate** [1] - 60:16<br>**Imprimis** [2] - 65:20, 65:22<br>**IN** [1] - 6:17 | **inappropriate** [1] - 62:10<br>**INC** [1] - 1:8<br>**Inc** [1] - 7:8<br>**inch** [10] - 69:3, 72:17, 72:19, 73:2, 73:5, 73:6, 73:11, 73:14, 73:15<br>**include** [8] - 21:1, 32:23, 34:3, 34:6, 62:9, 62:20, 75:6, 75:17<br>**includes** [2] - 32:25, 39:17<br>**including** [2] - 21:20, 63:13<br>**incoherent** [3] - 51:20, 52:10, 52:20<br>**inconsistent** [1] - 46:19<br>**incorrect** [1] - 69:4<br>**increase** [4] - 28:12, 47:18, 61:4, 71:22<br>**increasing** [4] - 8:16, 14:23, 20:19<br>**incredible** [3] - 72:10, 73:9, 73:22<br>**indicate** [1] - 10:13<br>**indicating** [1] - 8:3<br>**indicating)** [1] - 55:1<br>**individual** [2] - 21:20, 63:1<br>**Industry** [1] - 6:19<br>**industry** [14] - 62:23, 63:1, 66:25, 67:6, 67:8, 67:14, 67:23, 68:15, 70:9, 70:11, 73:7, 73:10, 74:6, 74:24<br>**influence** [6] - 42:11, 42:12, 42:13, 42:16, 43:4, 43:14<br>**influences** [1] - 43:12<br>**influencing** [1] - 61:16<br>**inform** [1] - 25:24<br>**information** [9] - 17:22, 18:4, 18:6, 19:17, 20:3, 20:20, 20:22, 21:4, 60:5<br>**infringement** [14] - 9:11, 11:6, 11:10, 12:15, 12:24, 13:8, 14:3, 14:10, 21:1, 22:10, 22:15, 34:1, 58:12, 61:2<br>**initiates** [4] - 38:14, 38:22, 40:23<br>**innovations** [4] - 67:22, 68:22, 68:24, 72:8 | **innovative** [2] - 72:5, 72:20<br>**inquire** [1] - 35:12<br>**insert** [1] - 50:22<br>**inserting** [2] - 28:9, 31:19<br>**instead** [2] - 25:18, 27:21<br>**intended** [1] - 22:12<br>**intention** [1] - 25:18<br>**interacts** [1] - 43:12<br>**interested** [1] - 71:4<br>**interesting** [1] - 70:22<br>**internal** [4] - 37:5, 49:9, 49:23, 59:1<br>**interpretation** [1] - 19:25<br>**interrogatories** [4] - 14:20, 15:15, 15:17, 20:18<br>**interrogatory** [9] - 8:9, 8:14, 8:15, 9:8, 9:14, 11:5, 11:7, 11:11, 20:20<br>**introduce** [1] - 64:21<br>**introduced** [5] - 34:13, 71:21, 72:12, 72:25, 75:10<br>**introduction** [7] - 72:9, 72:17, 72:18, 73:18, 73:25, 74:4, 74:8<br>**invented** [1] - 70:22<br>**invited** [1] - 67:13<br>**involved** [5] - 66:25, 67:2, 67:18, 70:18, 73:19<br>**issue** [12] - 9:2, 9:21, 14:8, 14:14, 16:12, 16:15, 35:3, 55:12, 60:2, 60:25, 61:2<br>**issues** [9] - 8:5, 25:17, 35:2, 56:9, 59:18, 59:24, 62:5, 75:24<br>**IT** [2] - 5:10, 5:10<br>**item** [1] - 21:16<br>**itself** [3] - 30:18, 32:1, 71:24<br><br>**J**<br><br>**Jacob** [1] - 7:14<br>**JACOB** [1] - 2:12<br>**JAMES** [1] - 1:3<br>**jbuczko@raklaw. com** [1] - 2:15<br>**Jennifer** [1] - 7:22<br>**Jesse** [1] - 7:21<br>**job** [1] - 44:21<br>**joined** [5] - 34:14, | 34:15, 65:21, 66:11, 67:2<br>**JOSEPH** [1] - 3:22<br>**Joseph** [1] - 7:19<br>**joseph.lee@lw.com** [1] - 3:24<br>**JUDGE** [1] - 1:3<br>**judgment** [9] - 13:8, 14:10, 19:1, 22:18, 22:21, 23:7, 23:17, 23:22, 24:5<br>**Judicial** [1] - 77:12<br>**JULY** [2] - 1:16, 7:1<br>**July** [1] - 77:15<br>**jury** [31] - 7:5, 12:14, 25:9, 25:14, 26:8, 34:15, 36:1, 36:5, 36:15, 46:7, 49:4, 49:8, 49:9, 49:12, 51:4, 51:7, 51:11, 51:13, 57:3, 57:16, 59:23, 61:24, 62:11, 63:19, 64:3, 64:21, 65:12, 68:21, 74:1, 74:21, 76:2<br>**JURY** [1] - 1:15<br>**jury's** [1] - 29:9<br>**JX** [1] - 55:7<br>**JX-1295** [1] - 74:20<br>**JX-2015** [3] - 27:22, 28:10, 54:19<br>**JX-2028** [1] - 27:20<br>**JX-2032** [2] - 58:20<br>**JX-2034** [7] - 30:8, 30:13, 30:23, 31:6, 32:15, 33:4, 48:12<br>**JX-2034.56** [1] - 32:21<br>**JX-2037** [1] - 53:14<br><br>**K**<br><br>**KABAT** [7] - 2:4, 2:8, 2:12, 2:16, 2:20, 3:4, 3:8<br>**Kabat** [1] - 5:9<br>**keep** [1] - 47:6<br>**key** [3] - 53:6, 70:14, 71:4<br>**kids** [1] - 64:23<br>**kind** [3] - 8:5, 10:20, 72:15<br>**Kroeger** [1] - 7:13<br>**KROEGER** [1] - 3:4<br>**Ku** [8] - 19:21, 28:5, 50:11, 50:12, 50:22, 53:2, 54:14<br><br>**L**<br><br>**label** [2] - 28:11, 31:9 |

**UNITED STATES DISTRICT COURT**

**labeled** [4] - 28:7, 31:9, 31:12, 74:1
**ladies** [3] - 26:9, 59:20, 75:21
**larger** [2] - 41:5, 41:22
**laser** [1] - 56:8
**last** [10] - 11:19, 39:18, 45:25, 48:23, 54:18, 55:16, 56:1, 58:20, 62:4, 71:22
**late** [4] - 26:10, 26:16, 60:10, 71:21
**lateral** [3] - 40:7, 40:22, 41:19
**latest** [1] - 52:19
**LATHAM** [7] - 3:12, 3:18, 3:21, 4:8, 4:16, 4:20, 5:4
**Latham** [1] - 7:18
**LAW** [4] - 2:20, 4:9, 4:16, 4:20
**lawsuit** [1] - 54:8
**lawyer** [8] - 27:7, 27:18, 29:17, 29:23, 30:14, 33:21, 49:19, 57:15
**lawyers** [1] - 47:3
**layer** [83] - 8:13, 8:17, 9:21, 10:14, 10:19, 11:2, 12:6, 14:16, 14:23, 16:21, 17:10, 17:15, 19:3, 19:10, 19:15, 19:16, 20:1, 20:7, 20:9, 21:2, 21:3, 22:8, 23:12, 23:25, 24:21, 27:20, 28:15, 29:1, 30:15, 30:19, 32:7, 33:21, 34:3, 34:6, 34:7, 34:9, 34:12, 34:17, 36:10, 37:13, 37:17, 38:3, 38:10, 38:14, 38:22, 40:3, 40:5, 40:18, 40:20, 40:23, 40:24, 41:5, 41:19, 41:20, 41:23, 42:10, 42:13, 43:11, 43:20, 44:6, 44:16, 45:16, 47:20, 48:18, 50:11, 50:12, 52:18, 56:11, 56:12, 56:15, 57:21, 57:22, 58:24
**layer'** [1] - 19:17
**layer's** [1] - 43:13
**layers** [57] - 8:12, 8:16, 8:24, 9:23, 10:18, 12:25, 13:1, 13:2, 13:3, 13:10, 14:2, 14:11, 16:22, 17:18, 17:19, 17:21,

17:22, 18:1, 18:3, 18:5, 19:9, 19:20, 20:2, 20:3, 20:4, 20:10, 20:18, 27:22, 28:5, 28:7, 28:16, 28:24, 31:18, 32:2, 32:11, 32:25, 35:8, 35:20, 36:1, 36:10, 37:22, 37:24, 38:8, 38:12, 40:6, 40:21, 41:7, 41:25, 42:6, 42:12, 49:6, 50:22, 50:23, 54:13, 54:14, 58:24
**leading** [2] - 70:5, 74:3
**least** [4] - 30:19, 32:5, 48:8, 68:3
**leave** [3] - 23:12, 33:2, 66:23
**leaving** [1] - 66:10
**LEDAHL** [10] - 2:8, 26:1, 59:24, 60:2, 61:14, 62:4, 63:9, 67:25, 69:15, 76:4
**Ledahl** [4] - 7:13, 61:13, 62:18, 63:8
**Lee** [3] - 6:4, 7:19, 26:20
**LEE** [21] - 3:22, 26:23, 29:20, 29:22, 30:22, 30:24, 31:14, 31:16, 33:2, 33:5, 34:20, 35:10, 39:4, 39:15, 39:20, 45:1, 45:4, 45:9, 46:16, 48:5, 56:18
**left** [10] - 27:11, 28:2, 31:9, 37:10, 51:2, 58:21, 59:5, 66:3, 66:24, 67:1
**left-hand** [1] - 58:21
**legend** [1] - 58:25
**less** [7] - 47:17, 57:24, 58:3, 58:9, 58:14, 66:22, 73:5
**level** [1] - 68:20
**life** [1] - 26:13
**life-threatening** [1] - 26:13
**limine** [5] - 13:20, 15:22, 15:23, 18:9, 24:7
**Limine** [2] - 60:7, 60:12
**limit** [1] - 73:12
**limitation** [1] - 24:3
**limitations** [2] - 22:20, 34:10
**limited** [2] - 12:4,

12:17
**line** [11] - 39:9, 39:11, 39:12, 39:13, 43:24, 44:12, 45:6, 45:10, 46:14, 71:17
**lines** [7] - 41:12, 43:1, 45:2, 45:5, 46:15, 48:4
**listed** [3] - 74:9, 74:16, 75:15
**listen** [1] - 44:1
**lists** [2] - 75:12, 75:18
**Liu** [2] - 5:9, 7:14
**live** [1] - 64:22
**LLP** [9] - 3:12, 3:18, 3:21, 4:4, 4:8, 4:12, 4:16, 4:20, 5:4
**look** [10] - 30:21, 48:8, 51:18, 57:3, 69:5, 69:18, 70:3, 74:12, 74:20, 75:8
**looked** [1] - 68:13
**LOS** [1] - 77:3
**Los** [6] - 2:6, 2:10, 2:14, 2:22, 3:6, 3:10
**low** [3] - 50:11
**lower** [1] - 28:22
**LTO** [1] - 71:13
**LUMISH** [18] - 3:18, 7:17, 9:6, 9:20, 11:21, 16:11, 21:25, 22:2, 23:9, 24:14, 24:25, 25:4, 25:8, 25:10, 25:15, 26:4, 26:7, 76:5
**Lumish** [5] - 7:17, 9:5, 13:16, 15:8, 15:25
**Lumish's** [1] - 69:24
**lunch** [1] - 75:20

## M

**Mag** [1] - 30:15
**mag** [10] - 30:18, 31:18, 32:6, 32:11, 35:7, 36:10, 37:24, 38:12, 47:20, 48:18
**magnetic** [45] - 9:21, 11:2, 12:6, 16:20, 16:22, 17:9, 17:14, 19:3, 19:9, 19:15, 19:16, 20:1, 20:3, 20:4, 20:7, 20:9, 21:3, 22:8, 23:12, 23:24, 24:3, 24:21, 34:6, 38:7, 38:11, 40:5, 40:20, 40:25, 41:5, 41:6, 41:23, 42:7, 42:10, 42:11, 42:16, 43:3, 43:4,

43:13, 43:19, 44:6, 44:15, 45:15, 54:14, 71:21
**magnetical** [1] - 41:24
**magnetically** [4] - 18:4, 20:21, 21:4, 41:24
**Magnetics** [1] - 53:19
**magnetization** [1] - 10:21
**maichele@raklaw. com** [1] - 2:19
**Maine** [1] - 2:17
**maintain** [1] - 19:2
**maintaining** [1] - 53:2
**Malaysia** [1] - 59:8
**manufacturers** [1] - 63:2
**map** [1] - 24:8
**Marc** [2] - 7:11, 8:4
**MARC** [1] - 2:4
**Mariner** [1] - 60:9
**mark** [1] - 53:9
**married** [1] - 64:23
**master's** [1] - 65:13
**material** [4] - 48:22, 54:15, 62:6, 62:9
**Matter** [1] - 7:6
**matter** [6] - 27:19, 36:19, 55:12, 55:14, 56:9, 77:11
**matters** [1] - 26:14
**MATTHEW** [1] - 2:16
**Matthew** [1] - 7:14
**mchan@raklaw.com** [1] - 2:23
**mea** [1] - 55:4
**mean** [5] - 14:17, 22:9, 24:15, 36:19, 40:12
**means** [9] - 11:4, 35:23, 37:13, 45:17, 50:15, 51:17, 51:20, 68:2
**meant** [2] - 28:21, 28:22
**measure** [1] - 58:13
**measured** [1] - 58:1
**mechanical** [5] - 65:13, 65:15, 66:4, 66:5, 66:6
**Mechanical** [1] - 67:10
**mechanism** [1] - 44:19
**mechanisms** [3] - 43:19, 44:5, 51:16
**media** [20] - 17:21, 29:18, 38:11, 40:6, 40:21, 48:20, 49:13, 50:8, 52:10, 52:18, 52:19, 53:2, 53:7,

54:12, 58:25, 60:24, 61:5, 61:10, 62:16, 67:19
**Media** [1] - 53:19
**medium** [1] - 18:2
**meet** [2] - 14:22, 23:1
**meets** [1] - 24:2
**member** [1] - 67:8
**Memory** [1] - 69:9
**memory** [1] - 65:18
**Menlo** [4] - 3:19, 4:10, 4:21, 5:5
**mentioned** [2] - 72:24, 74:3
**Mesa** [1] - 3:23
**met** [2] - 14:15, 61:18
**methodology** [2] - 22:19, 22:22
**mfenster@raklaw. com** [1] - 2:7
**mic** [1] - 45:3
**middle** [1] - 28:4
**might** [1] - 70:20
**MIL** [2] - 60:23
**million** [2] - 72:21, 73:9
**mind** [1] - 32:5
**minimum** [2] - 68:3
**MINNA** [1] - 2:20
**Minna** [1] - 7:14
**Mirzaie** [3] - 6:5, 7:13, 34:21
**MIRZAIE** [36] - 3:8, 34:22, 34:24, 35:13, 35:17, 35:19, 37:19, 37:21, 38:21, 39:7, 39:17, 39:23, 39:25, 44:3, 44:4, 45:8, 45:11, 46:13, 46:21, 46:25, 47:2, 47:5, 47:7, 48:2, 48:9, 48:11, 48:16, 49:16, 49:18, 53:11, 53:13, 56:20, 56:23, 57:9, 57:10, 59:14
**MLEBL** [1] - 37:10
**module** [1] - 16:21
**modules** [6] - 10:1, 10:17, 11:13, 16:20, 22:5, 22:8
**moment** [1] - 54:5
**moments** [12] - 38:7, 42:10, 42:11, 42:16, 42:17, 43:4, 43:13, 43:19, 44:6, 44:15, 45:15
**months** [2] - 41:15, 42:23
**morning** [18] - 7:11, 7:16, 7:17, 7:21,

7:23, 8:4, 25:17, 26:9, 26:10, 26:16, 26:24, 26:25, 34:25, 35:1, 35:11, 60:20, 64:20, 64:22

**Mortensen** [1] - 5:10

**most** [1] - 19:20

**motion** [17] - 8:7, 9:3, 9:8, 13:20, 18:9, 18:15, 20:24, 21:7, 21:8, 21:14, 22:20, 23:7, 23:17, 23:19, 35:11, 60:13

**Motion** [2] - 60:7, 60:12

**motions** [3] - 15:23, 23:14, 24:7

**move** [6] - 13:25, 25:18, 44:24, 48:9, 48:10, 69:13

**moved** [8] - 13:7, 14:4, 14:5, 14:10, 15:22, 16:3, 60:11

**moving** [1] - 13:22

**MR** [116] - 1:4, 7:7, 7:11, 7:12, 7:17, 7:25, 8:2, 9:6, 9:20, 11:21, 12:23, 14:2, 14:20, 15:10, 15:14, 16:10, 16:11, 16:13, 18:22, 19:12, 20:17, 21:17, 21:25, 22:2, 22:17, 23:9, 24:14, 24:18, 24:25, 25:4, 25:8, 25:10, 25:15, 26:1, 26:4, 26:7, 26:23, 29:20, 29:22, 30:22, 30:24, 31:14, 31:16, 33:2, 33:5, 34:20, 34:22, 34:24, 35:10, 35:13, 35:17, 35:19, 37:19, 37:21, 38:21, 39:4, 39:7, 39:15, 39:17, 39:20, 39:23, 39:25, 44:3, 44:4, 45:1, 45:4, 45:8, 45:9, 45:11, 46:13, 46:16, 46:21, 46:25, 47:2, 47:5, 47:7, 48:2, 48:5, 48:9, 48:11, 48:16, 49:16, 49:18, 53:11, 53:13, 56:18, 56:20, 56:23, 57:9, 57:10, 59:14, 59:17, 59:24, 60:2, 60:20, 61:14, 61:22, 62:4, 62:12, 63:9, 63:17, 63:20, 63:23, 64:1, 64:6, 64:9, 64:16, 65:9,

65:10, 67:20, 67:25, 68:6, 69:13, 69:15, 76:4, 76:5

**MRT** [6] - 27:19, 68:10, 68:23, 74:15, 75:14, 75:17

**MRT's** [9] - 22:13, 27:4, 27:7, 27:18, 29:17, 29:23, 30:9, 30:14, 33:21

**MRUGESH** [2] - 6:4, 26:21

**Mulholland** [1] - 7:21

**multi** [1] - 52:5

**multi-ECL** [1] - 52:5

**multilayer** [2] - 37:10, 52:1

**multiple** [15] - 18:1, 20:2, 29:18, 31:23, 31:24, 33:11, 33:13, 33:14, 47:19, 47:24, 52:6, 52:9, 54:13, 63:21, 73:7

**Multiple** [1] - 33:10

## N

**name** [6] - 61:12, 64:12, 64:13, 64:22, 70:25

**NAND** [1] - 71:13

**nanometer** [2] - 29:13

**nanometers** [3] - 47:14, 47:16, 56:25

**nearly** [1] - 74:24

**necessary** [1] - 29:4

**need** [7] - 7:24, 12:16, 21:24, 22:14, 25:6, 25:7, 44:18

**needed** [1] - 25:4

**negative** [1] - 14:17

**never** [16] - 8:8, 8:21, 8:24, 13:9, 14:4, 14:11, 14:23, 14:25, 15:6, 15:15, 15:21, 15:24, 18:12, 18:13, 24:10

**new** [13] - 8:8, 8:19, 8:21, 8:25, 13:10, 15:20, 20:18, 20:23, 21:1, 21:12, 22:21, 66:17, 72:6

**Newport** [4] - 4:5, 4:6, 4:13, 4:14

**next** [13] - 16:12, 21:16, 28:7, 28:11, 31:12, 32:21, 45:9, 49:16, 49:23, 58:6, 59:16, 59:17, 64:7

**non** [2] - 51:2, 51:11

**non-ECL** [2] - 51:2, 51:11

**none** [1] - 19:5

**noninfringement** [10] - 8:9, 8:17, 8:22, 13:13, 14:21, 14:24, 18:13, 20:23, 21:13, 25:1

**noninfringing** [4] - 60:8, 60:10, 60:14, 61:10

**nonmagnetic** [1] - 12:11

**North** [2] - 3:13, 4:17

**notably** [1] - 17:5

**note** [1] - 71:20

**notebook** [1] - 57:3

**notebooks** [1] - 64:17

**noted** [1] - 17:5

**nothing** [1] - 62:20

**notice** [2] - 71:18, 74:8

**noting** [1] - 19:2

**notion** [1] - 11:24

**nucleation** [17] - 8:12, 9:10, 9:21, 12:25, 13:9, 15:1, 16:13, 16:14, 17:9, 17:14, 19:4, 20:6, 20:10, 22:8, 23:25, 24:4, 34:4

**nucleus** [1] - 58:24

**Number** [4] - 55:7, 60:7, 60:13, 69:17

**number** [15] - 17:11, 18:18, 21:11, 26:2, 28:8, 31:8, 31:18, 49:6, 58:4, 67:12, 67:13, 70:3, 71:14, 71:22, 72:2

**numbers** [3] - 28:4, 28:20, 58:15

**numerous** [1] - 68:22

## O

**o'clock** [2] - 75:22, 75:25

**oath** [4] - 26:18, 40:4, 42:24

**objecting** [1] - 61:17

**objection** [11] - 16:9, 21:15, 35:10, 56:18, 62:3, 63:12, 63:15, 67:24, 67:25, 69:14, 69:15

**objections** [3] - 21:20, 25:22, 26:2

**occurred** [1] - 25:17

**occurs** [1] - 14:18

**oersted** [1] - 29:7

**OF** [9] - 1:2, 1:14, 2:1, 3:1, 4:1, 5:1, 77:1, 77:3, 77:4

**offer** [2] - 14:19, 67:21

**offered** [2] - 60:14, 62:10

**offering** [2] - 17:10, 61:18

**Official** [1] - 77:20

**OFFICIAL** [3] - 1:24, 77:1, 77:5

**once** [1] - 44:11

**one** [43] - 8:18, 10:14, 10:18, 11:21, 12:14, 13:3, 18:17, 18:18, 18:22, 19:25, 20:1, 20:10, 20:19, 20:23, 21:21, 22:20, 23:10, 28:25, 33:12, 33:15, 35:2, 39:10, 45:20, 49:17, 52:4, 52:7, 52:9, 52:15, 56:4, 56:6, 58:7, 63:20, 70:14, 70:20, 71:3, 71:15, 71:24, 72:2, 72:4, 74:9, 75:22

**one's** [1] - 13:14

**ones** [7] - 11:14, 16:17, 36:6, 37:5, 63:11, 63:13

**oOo** [1] - 76:8

**opened** [3] - 22:2, 22:5, 22:10

**opening** [7] - 22:4, 36:22, 36:25, 53:14, 53:24, 53:25, 69:25

**operation** [1] - 66:14

**opinion** [3] - 23:11, 61:16, 68:10

**opinions** [6] - 18:15, 45:18, 68:3, 68:5, 69:2, 75:24

**opposite** [1] - 23:18

**opposition** [2] - 13:9

**optimized** [1] - 56:17

**optimizing** [2] - 54:14, 58:25

**option** [1] - 62:19

**OR** [1] - 6:17

**order** [11] - 15:22, 19:2, 23:7, 23:22, 24:6, 25:16, 25:23, 64:4, 72:3, 72:14

**ordinary** [1] - 68:25

**oriented** [4] - 18:4, 20:21, 21:4, 38:8

**original** [2] - 8:22, 25:19

**outcomes** [1] - 65:4

**outrageous** [1] - 21:21

**outside** [2] - 52:15, 56:18

**overall** [1] - 28:12

**overexpands** [1] - 60:22

**overlap** [1] - 65:24

**overruled** [6] - 35:16, 39:6, 39:22, 46:24, 56:22, 62:3

**oversimplifies** [1] - 60:22

**own** [6] - 24:21, 24:22, 45:18, 63:6, 68:14

**oxide** [4] - 28:7, 28:11

**oxides** [1] - 56:17

## P

**p.m** [1] - 76:7

**pack** [1] - 36:4

**Packard** [1] - 65:18

**page** [49] - 16:23, 17:4, 17:11, 17:16, 20:12, 30:8, 30:13, 30:15, 30:18, 30:23, 30:25, 31:1, 32:14, 32:15, 32:18, 33:3, 33:4, 39:9, 39:11, 39:13, 39:24, 40:1, 40:9, 40:10, 40:12, 40:13, 41:12, 42:19, 44:11, 45:5, 46:14, 46:15, 48:4, 49:8, 53:15, 53:21, 58:20, 62:12, 62:14, 62:15, 62:17, 62:19, 69:18, 74:20, 77:11

**PAGE** [1] - 6:3

**Page** [1] - 40:12

**pages** [10] - 13:4, 15:23, 18:9, 18:16, 30:22, 30:25, 32:15, 40:9, 49:10, 55:5

**paid** [2] - 64:25, 65:2

**paper** [1] - 28:1

**papers** [2] - 10:6, 12:1

**paragraph** [9] - 17:5, 17:12, 17:16, 18:1, 18:2, 19:13, 19:24, 21:11, 62:24

**paragraphs** [8] - 15:19, 18:8, 18:16, 18:17, 19:5, 19:23, 21:10, 24:9

**paralegal** [1] - 5:9

**parameters** [1] - 71:15

**parcel** [1] - 9:17

**parentheses** [1] -

27:11
**Park** [4] - 3:19, 4:10, 4:21, 5:5
**part** [10] - 9:17, 9:18, 9:20, 20:17, 24:19, 38:11, 40:5, 40:20, 53:5
**partially** [1] - 37:23
**pass** [2] - 8:2, 34:20
**passage** [2] - 15:8, 15:10
**past** [1] - 53:8
**patent** [4] - 57:3, 57:4, 75:14, 75:17
**patented** [1] - 68:23
**patents** [7] - 17:7, 19:18, 67:14, 67:15, 67:19, 68:11, 74:15
**PATRICIA** [1] - 4:20
**Patricia** [1] - 7:19
**patricia.young@lw. com** [1] - 4:22
**PAUL** [1] - 3:4
**Paul** [1] - 7:13
**pay** [1] - 43:25
**payment** [1] - 65:4
**PDX** [1] - 33:2
**PDX-3** [3] - 27:5, 28:1, 29:20
**PDX-3.153** [1] - 32:22
**PDX-3.217** [1] - 47:1
**PDX-3.226** [1] - 48:17
**PDX-3.55** [1] - 55:16
**PDX-3.82** [2] - 57:8, 57:15
**people** [3] - 44:20, 66:20, 73:16
**per** [11] - 65:3, 69:3, 72:17, 72:18, 73:2, 73:5, 73:6, 73:11, 73:14
**percent** [1] - 69:2
**perhaps** [2] - 36:21, 51:23
**period** [1] - 72:12
**permit** [1] - 20:8
**permitted** [4] - 12:3, 12:18, 22:7, 61:15
**perspective** [1] - 61:20
**PETER** [3] - 6:6, 64:8, 64:14
**Peter** [5] - 59:18, 64:7, 64:13, 64:22, 67:21
**Ph.D** [3] - 46:5, 65:13, 65:17
**physics** [2] - 44:8, 45:14
**pkroeger@raklaw. com** [1] - 3:7

**place** [2] - 38:2, 38:6
**PLAINTIFF** [5] - 2:3, 3:3, 3:17, 4:3, 5:3
**Plaintiff** [2] - 1:5, 1:10
**plaintiff** [3] - 7:12, 8:5, 76:4
**plaintiff's** [4] - 5:9, 5:10, 60:23
**plan** [1] - 25:19
**plant** [2] - 59:9, 59:12
**platinum** [1] - 56:16
**pled** [1] - 18:13
**PMR** [8] - 48:20, 53:8, 53:19, 72:9, 72:18, 73:18, 73:25, 74:8
**point** [14] - 11:22, 11:23, 12:6, 12:18, 13:11, 16:9, 24:1, 24:16, 34:9, 57:7, 57:11, 58:20, 61:25, 73:4
**pointed** [2] - 13:16, 55:11
**points** [1] - 75:3
**portion** [1] - 29:12
**position** [4] - 9:22, 10:11, 10:23, 14:18
**positions** [1] - 11:9
**practice** [1] - 67:3
**prepare** [1] - 65:6
**prepared** [2] - 69:10, 75:1
**presence** [6] - 7:5, 25:14, 26:8, 59:23, 64:3, 76:2
**present** [1] - 71:10
**PRESENT** [1] - 5:8
**presentation** [15] - 12:7, 49:24, 50:6, 52:13, 52:15, 52:24, 52:25, 53:1, 53:4, 53:16, 53:25, 59:1, 65:7, 69:9, 69:11
**presented** [3] - 12:10, 62:7, 74:17
**preserved** [2] - 23:3, 23:6
**prevent** [1] - 24:3
**previous** [3] - 31:6, 52:23, 53:4
**previously** [3] - 26:18, 39:5, 71:11
**PREVIOUSLY** [1] - 26:21
**primary** [1] - 52:9
**Pro** [1] - 2:16
**problem** [1] - 63:17
**problems** [1] - 62:6
**proceed** [3] - 7:15, 24:13, 25:3

**Proceedings** [1] - 76:7
**proceedings** [1] - 77:10
**PROCEEDINGS** [1] - 1:14
**process** [3] - 10:15, 49:4, 66:17
**produced** [2] - 44:21, 70:5
**produces** [2] - 47:15, 70:16
**product** [17] - 27:15, 27:16, 27:21, 28:24, 37:6, 49:14, 50:7, 50:8, 52:1, 61:12, 63:3, 66:8, 70:4, 70:5, 70:6, 73:1, 74:3
**production** [1] - 66:9
**Products** [2] - 36:25, 37:7
**products** [24] - 19:9, 27:22, 30:4, 33:19, 34:4, 34:7, 34:13, 34:18, 42:7, 43:10, 43:12, 46:8, 47:9, 47:25, 49:5, 49:10, 50:6, 51:10, 53:24, 56:24, 60:6, 60:9, 60:16, 74:4
**programs** [1] - 61:5
**projection** [1] - 14:1
**projects** [1] - 62:2
**proof** [4] - 11:25, 12:12, 12:19, 23:1
**proper** [2] - 60:14, 61:19
**properties** [1] - 17:9
**proposed** [1] - 59:25
**prove** [6] - 9:25, 12:7, 12:14, 12:15, 15:5, 45:22
**provide** [1] - 48:7
**public** [2] - 52:18, 52:23
**publications** [2] - 67:11, 67:12
**publicly** [1] - 53:5
**publish** [1] - 62:11
**published** [1] - 74:5
**publishing** [1] - 39:15
**pull** [11] - 30:8, 36:21, 41:11, 46:13, 46:14, 46:25, 48:3, 53:11, 55:15, 57:9, 65:9
**pulled** [1] - 57:7
**purple** [1] - 28:22
**pursuant** [2] - 60:6, 77:8

**put** [19] - 14:18, 15:5, 15:19, 16:2, 22:15, 22:21, 25:5, 31:14, 32:20, 32:21, 33:15, 33:18, 54:25, 58:23, 59:6, 60:3, 64:18, 69:18, 69:22
**PVC** [1] - 49:3

**Q**

**quantity** [1] - 70:19
**quarterly** [1] - 26:12
**questions** [7] - 29:18, 30:11, 36:23, 39:18, 46:10, 50:11, 59:14
**quick** [1] - 63:20
**quite** [4] - 54:24, 67:12, 70:23, 75:4
**quote** [1] - 29:18
**quote/unquote** [1] - 53:24

**R**

**raised** [4] - 8:21, 8:23, 13:9, 21:12
**RAMAC** [1] - 72:24
**range** [1] - 72:5
**rate** [1] - 75:10
**rates** [1] - 75:12
**rather** [2] - 46:15, 55:25
**RAUTH** [2] - 4:4, 4:12
**RDOE** [3] - 18:16, 20:13, 24:25
**re** [18] - 14:3, 14:7, 15:5, 19:15, 22:25, 32:23, 34:3, 36:4, 55:12, 55:15, 55:21, 65:24, 66:1, 74:17, 75:6, 75:12, 75:13, 75:17
**re's** [11] - 13:1, 19:6, 19:25, 32:21, 33:9, 33:15, 33:25, 48:17, 68:10, 68:13, 69:2
**reach** [1] - 49:10
**read** [19] - 17:6, 17:12, 17:17, 18:2, 20:25, 41:1, 42:2, 43:7, 44:25, 45:2, 45:5, 45:7, 45:23, 47:22, 47:23, 58:2, 61:1, 61:25, 62:25
**Reading** [2] - 41:3, 45:12
**ready** [1] - 7:15
**real** [1] - 45:21
**really** [3] - 16:16,

21:21, 36:19
**REALTIME** [1] - 77:5
**reason** [3] - 18:3, 26:10, 74:9
**received** [3] - 68:1, 69:16, 69:17
**receiving** [1] - 65:17
**recess** [2] - 25:12, 76:6
**Recess** [1] - 25:13
**recipes** [2] - 56:10, 56:21
**recognize** [1] - 32:16
**record** [4] - 7:10, 28:6, 38:18, 64:12
**recorded** [1] - 68:25
**recording** [4] - 53:8, 66:13, 66:18, 71:21
**Recross** [1] - 6:5
**RECROSS** [1] - 34:23
**Recross-Examination** [1] - 6:5
**RECROSS-EXAMINATION** [1] - 34:23
**red** [1] - 54:6
**REDIRECT** [1] - 26:22
**Redirect** [1] - 6:4
**redirect** [6] - 35:3, 48:13, 49:19, 50:9, 54:18, 56:19
**reduce** [2] - 37:23, 47:13
**refer** [1] - 31:24
**reference** [2] - 29:9, 33:11
**referred** [1] - 60:9
**referring** [2] - 15:25, 55:11
**refers** [1] - 13:4
**reflect** [2] - 33:19, 60:5
**regardless** [1] - 33:18
**regret** [1] - 26:15
**regroup** [2] - 21:24, 25:5
**regulations** [1] - 77:12
**rejected** [1] - 14:7
**REJECTED** [1] - 6:17
**relate** [1] - 60:8
**related** [7] - 60:23, 60:24, 60:25, 61:1, 61:10, 62:17, 67:15
**relates** [4] - 11:1, 60:3, 60:4, 62:22
**relating** [3] - 60:7, 61:9, 61:16
**relationship** [1] - 62:16

relatively [2] - 50:11, 50:12
reliably [1] - 18:5
relied [6] - 49:2, 49:4, 49:9, 68:14, 68:16, 70:10
relies [2] - 55:16, 55:21
rely [5] - 10:21, 24:23, 34:9, 69:11, 70:7
relying [1] - 18:17
remained [2] - 66:25, 67:5
remaining [1] - 43:11
remember [7] - 30:9, 30:14, 33:23, 48:25, 55:18, 56:2, 75:23
remind [2] - 34:15, 74:1
reminded [1] - 26:17
remove [2] - 54:5, 63:17
rep [1] - 46:22
repeat [1] - 45:8
repeatedly [1] - 17:7
report [32] - 8:11, 8:23, 10:2, 11:1, 11:12, 11:13, 11:24, 12:2, 12:3, 13:1, 13:5, 14:9, 14:13, 15:7, 15:19, 16:2, 16:3, 17:3, 17:4, 18:23, 18:25, 20:14, 24:10, 61:3, 62:7, 62:13, 62:14, 62:24, 63:12, 63:13, 63:24, 68:13
reported [2] - 66:20, 77:10
reporter [1] - 38:17
REPORTER [3] - 1:24, 77:1, 77:6
Reporter [1] - 77:20
REPORTER'S [1] - 1:14
represent [9] - 28:19, 28:22, 28:23, 49:14, 50:5, 50:7, 50:8, 70:4
representative [7] - 5:9, 7:12, 11:15, 37:6, 43:10, 43:12, 53:23
represents [2] - 50:7, 74:3
requests [1] - 38:17
required [6] - 18:5, 20:21, 47:19, 53:7, 68:23, 68:24
requirement [2] -

12:11, 12:20
requires [1] - 9:10
research [4] - 66:13, 68:15, 69:1, 73:21
resolved [1] - 59:18
respect [4] - 18:19, 21:21, 62:5, 62:7
respond [2] - 11:22, 16:11
responded [2] - 8:8, 11:9
response [10] - 8:14, 8:15, 9:9, 9:15, 11:5, 11:11, 14:7, 40:4, 40:19
responses [2] - 8:9, 9:8
responsibilities [1] - 66:16
rest [3] - 41:7, 41:25, 43:9
resume [1] - 75:22
RESUMES [1] - 26:21
retain [1] - 17:13
retake [1] - 26:4
returned [1] - 26:14
reverse [7] - 13:19, 15:16, 15:21, 16:1, 16:5, 18:11, 24:20
review [1] - 74:17
reviewed [1] - 19:6
revisiting [1] - 23:15
revolution [3] - 30:16, 32:7, 48:18
revolutionary [2] - 30:19, 72:20
Reza [1] - 7:13
REZA [1] - 3:8
RICHARD [1] - 5:4
Rick [1] - 7:19
rick.frenkel@lw.com [1] - 5:6
rise [3] - 25:11, 59:22, 76:1
rmirzaie@raklaw.com [1] - 3:11
Roadmap [1] - 53:19
roadmap [1] - 61:25
ROBERT [1] - 2:12
role [2] - 66:12, 66:21
roles [2] - 17:8, 17:13
room [1] - 74:13
ROOM [1] - 1:24
rotate [3] - 43:20, 44:6, 44:16
round [1] - 21:12
Rule [4] - 14:14, 21:20, 60:18, 62:6
ruled [1] - 22:18

ruling [6] - 22:18, 24:12, 35:13, 60:7, 60:12, 60:13
rulings [1] - 22:6
Russ [1] - 5:9
RUSS [7] - 2:4, 2:8, 2:12, 2:16, 2:20, 3:4, 3:8

## S

SACV-22-1599 [1] - 7:7
Salayphonh [1] - 25:20
SALIL [1] - 4:5
Salil [2] - 7:19, 60:20
San [1] - 64:23
SANTA [3] - 1:18, 1:25, 7:1
Sarah [1] - 7:20
SARAH [1] - 4:16
sarah.wang@lw.com [1] - 4:19
saw [1] - 55:22
sbali@stradlinglaw.com [1] - 4:7
Schmoller [5] - 5:10, 30:23, 31:14, 33:4, 65:9
science [1] - 65:15
scientists [1] - 73:17
SCL [1] - 19:9
scope [1] - 56:19
Scott [4] - 3:19, 4:9, 4:21, 5:5
screen [2] - 23:21, 54:6
Seagate [7] - 65:21, 65:22, 65:24, 66:3, 66:10, 70:8
seated [1] - 64:4
second [13] - 8:18, 8:23, 9:17, 11:19, 15:16, 16:15, 16:23, 18:22, 20:19, 21:12, 22:23, 64:20, 71:22
section [6] - 13:4, 16:6, 17:3, 19:1, 20:13, 21:22
Section [1] - 77:8
sections [1] - 18:25
see [23] - 10:8, 26:11, 27:10, 28:1, 28:21, 31:21, 36:19, 37:1, 38:4, 40:16, 40:24, 48:21, 50:14, 54:4, 55:9, 57:4, 57:20, 57:21, 57:25, 72:11, 73:25, 74:12, 75:25

seeing [1] - 69:24
seeking [1] - 62:21
sees [2] - 38:16, 38:19
SELNA [1] - 1:3
separate [13] - 9:25, 10:1, 10:18, 10:19, 11:13, 11:24, 14:1, 16:21, 17:13, 19:3, 28:19, 56:12
separated [1] - 19:22
September [1] - 53:19
serious [1] - 8:6
served [3] - 8:14, 8:18, 8:19
session [1] - 64:5
set [3] - 10:18, 22:23, 64:18
several [5] - 19:23, 27:18, 63:5, 67:2, 75:6
shanle@stradlinglaw.com [1] - 4:15
shape [1] - 75:4
share [1] - 17:19
sheet [1] - 54:23
shingle [1] - 71:20
shingled [1] - 72:4
shipped [1] - 63:3
short [1] - 59:20
show [19] - 10:5, 13:21, 16:4, 17:2, 28:12, 30:4, 35:25, 36:9, 36:15, 43:10, 48:10, 57:16, 57:21, 58:6, 58:9, 59:2, 59:5, 71:11, 74:22
showed [10] - 15:9, 15:11, 23:18, 27:4, 29:23, 36:5, 36:8, 49:8, 57:15, 59:3
showing [6] - 30:9, 30:14, 30:15, 37:4, 61:23, 63:6
shown [2] - 62:9, 63:24
shows [9] - 12:5, 13:5, 32:19, 37:9, 48:19, 57:4, 59:5, 59:6
sic [1] - 74:20
sic] [2] - 17:5, 31:7
side [7] - 25:16, 31:15, 32:20, 54:24, 58:22
significant [2] - 71:18, 72:14
similar [6] - 17:20, 18:24, 22:3, 75:1, 75:3, 75:5
simple [1] - 68:25
simply [1] - 69:4

single [7] - 18:17, 19:14, 23:12, 29:10, 35:25, 36:9, 36:15
sitting [2] - 36:6, 55:22
size [1] - 47:13
skin [1] - 26:12
Slide [12] - 6:18, 16:18, 16:19, 16:23, 16:25, 17:1, 27:5, 28:1, 29:21, 31:6, 36:22, 60:4
slide [31] - 27:8, 29:23, 30:3, 31:2, 31:6, 32:21, 32:23, 33:9, 33:15, 36:24, 37:6, 49:16, 49:23, 50:9, 53:14, 53:24, 54:1, 54:25, 55:1, 55:15, 57:20, 58:6, 59:3, 63:10, 63:18, 63:21, 63:23, 69:19, 74:22, 75:1, 75:6
Slides [4] - 16:16, 18:8, 21:19, 62:5
slides [20] - 8:2, 9:4, 13:23, 16:16, 16:23, 17:1, 21:21, 22:4, 22:24, 25:22, 48:17, 57:16, 57:19, 59:19, 59:25, 60:5, 60:15, 60:25, 62:8, 65:6
slopes [1] - 75:3
slow [1] - 19:11
small [3] - 26:2, 29:4, 29:9
smaller [2] - 47:16, 53:7
SNR [1] - 44:23
so-called [1] - 32:6
so.. [1] - 34:14
societies [1] - 67:8
Society [1] - 67:9
sold [2] - 70:24, 71:2
someone [1] - 45:13
sorry [12] - 19:12, 24:14, 28:9, 39:10, 40:8, 46:12, 51:14, 54:21, 55:14, 62:14, 73:24
source [1] - 70:2
SOUTHERN [1] - 1:2
Spaan [1] - 77:20
SPAAN [3] - 1:23, 77:5, 77:19
space [4] - 67:3, 67:13, 70:18, 71:3
spacing [2] - 62:16, 67:19
speaker [1] - 67:13

**UNITED STATES DISTRICT COURT**

**specific** [5] - 16:17, 56:25, 60:24, 61:9, 61:11
**specifically** [1] - 60:23
**spelled** [1] - 64:13
**spelling** [1] - 64:12
**spent** [1] - 55:10
**split** [1] - 29:11
**spreadsheet** [5] - 27:20, 27:21, 54:23, 58:17, 58:18
**spreadsheets** [2] - 54:20, 55:11
**sprung** [1] - 8:25
**square** [10] - 69:3, 72:17, 72:18, 73:2, 73:5, 73:6, 73:11, 73:14
**stability** [1] - 17:19
**stable** [1] - 47:17
**stack** [12] - 16:21, 17:21, 20:21, 23:23, 24:2, 27:11, 28:1, 31:9, 31:12, 38:11, 40:5, 40:20
**stacks** [3] - 31:8, 31:15, 31:17
**stand** [3] - 10:4, 26:5, 50:5
**STAND** [1] - 26:21
**standard** [5] - 9:12, 9:16, 11:9, 72:16, 74:6
**stands** [3] - 24:12, 59:8, 59:11
**star** [1] - 58:24
**start** [2] - 26:10, 27:25
**started** [1] - 72:11
**starting** [3] - 26:16, 62:14, 62:24
**starts** [1] - 38:10
**STATE** [1] - 77:4
**state** [3] - 7:9, 64:12, 68:15
**statement** [3] - 36:25, 53:25, 69:25
**states** [1] - 19:6
**States** [3] - 77:6, 77:8, 77:13
**STATES** [1] - 1:1
**stating** [1] - 43:24
**stay** [5] - 13:23, 26:12, 26:13, 28:17, 56:8
**stenographically** [1] - 77:10
**step** [1] - 59:15
**Steve** [1] - 7:20
**STEVEN** [1] - 4:12
**still** [4] - 12:13, 26:18, 35:14, 59:18

**Storage** [2] - 6:19, 70:25
**storage** [28] - 9:21, 9:23, 10:18, 11:2, 12:6, 16:20, 17:10, 17:14, 18:2, 19:3, 19:10, 19:16, 20:1, 20:4, 20:7, 20:9, 20:18, 21:2, 21:3, 22:8, 23:12, 23:25, 24:3, 24:21, 34:7, 67:6, 71:3
**store** [10] - 9:24, 11:14, 17:21, 18:3, 18:5, 20:2, 20:20, 20:22, 24:21, 24:22
**stored** [1] - 16:22
**stores** [3] - 10:10, 21:4, 23:23
**storing** [1] - 10:20
**STRADLING** [2] - 4:4, 4:12
**STREET** [1] - 1:24
**stricken** [9] - 17:3, 18:25, 19:5, 22:11, 23:11, 23:14, 24:9, 24:11, 25:1
**strike** [8] - 14:4, 14:6, 16:3, 21:8, 21:14, 22:3, 42:14, 43:17
**struck** [12] - 8:10, 8:20, 13:20, 15:23, 16:4, 18:10, 18:18, 20:17, 21:7, 21:10, 21:13, 24:19
**structurally** [1] - 16:24
**structure** [24] - 30:15, 30:19, 31:1, 31:3, 31:21, 32:6, 32:7, 32:9, 37:9, 47:19, 47:25, 48:18, 49:13, 49:20, 50:8, 51:1, 51:2, 51:9, 51:11, 51:12, 52:4, 52:19, 59:2
**structures** [5] - 31:4, 31:23, 51:5, 51:7, 60:24
**subject** [4] - 9:3, 21:13, 22:23, 35:11
**submitted** [1] - 75:25
**substrate** [1] - 12:11
**Suess** [2] - 5:9, 7:13
**sufficiency** [3] - 22:19, 23:4, 35:14
**sufficient** [1] - 12:19
**suggest** [2] - 9:3, 57:11
**suggesting** [1] - 46:7
**suggests** [1] - 57:4

**Suite** [6] - 2:17, 3:5, 3:13, 4:6, 4:13, 4:17
**summarize** [2] - 10:25, 68:20
**summary** [9] - 13:8, 14:10, 19:1, 22:18, 22:21, 23:7, 23:17, 23:22, 24:5
**Summit** [1] - 69:10
**super** [1] - 11:25
**suppliers** [1] - 70:17
**support** [4] - 19:4, 19:8, 24:10, 62:23
**supports** [1] - 19:7
**supposed** [1] - 34:1
**sustained** [2] - 21:15, 63:15
**SW** [1] - 2:17
**swath** [1] - 61:7
**switch** [19] - 9:23, 10:3, 11:2, 11:14, 13:2, 35:8, 35:20, 36:1, 36:10, 36:11, 36:12, 38:20, 38:24, 43:22, 46:10, 47:20, 51:5, 51:7, 51:9
**switched** [2] - 55:7, 55:9
**switches** [4] - 10:10, 41:5, 41:23, 51:12
**switching** [32] - 8:12, 8:25, 9:10, 10:7, 10:14, 10:19, 13:3, 13:10, 14:12, 14:25, 15:2, 16:21, 17:23, 27:25, 33:22, 35:4, 38:2, 38:6, 38:9, 38:10, 38:15, 38:23, 40:24, 41:7, 41:25, 42:14, 44:21, 51:17, 51:20, 52:11, 52:20
**sworn** [2] - 41:12, 42:23
**SWORN** [2] - 26:21, 64:8
**synonymous** [1] - 37:16

# T

**table** [3] - 7:18, 71:6, 71:11
**tables** [1] - 63:4
**Takouche** [1] - 7:20
**talks** [2] - 10:2, 61:3
**tape** [1] - 71:13
**teaches** [1] - 57:5
**team** [4] - 66:4, 66:5, 66:6
**Tech** [1] - 7:12

**technical** [1] - 11:15
**technician** [2] - 5:10, 5:10
**technological** [1] - 68:22
**technologies** [17] - 61:3, 66:7, 66:18, 67:21, 68:9, 68:23, 71:12, 72:1, 72:4, 72:6, 72:12, 72:20, 75:6, 75:9, 75:11, 75:13, 75:18
**TECHNOLOGIES** [2] - 1:4, 1:8
**Technologies** [2] - 7:7, 7:8
**technology** [12] - 66:7, 67:15, 67:17, 71:13, 71:14, 71:23, 71:24, 72:19, 73:17, 73:22, 74:9, 74:15
**tens** [1] - 73:20
**terabits** [2] - 69:3, 73:14
**terabytes** [1] - 73:13
**term** [1] - 31:23
**terms** [2] - 19:17, 23:2
**test** [1] - 22:22
**testified** [3] - 38:3, 38:25, 54:19
**testify** [2] - 12:3, 20:15
**testimony** [23] - 14:19, 15:25, 19:7, 19:10, 19:14, 29:24, 29:25, 34:1, 35:24, 36:18, 36:23, 37:16, 39:21, 40:11, 44:9, 46:18, 46:20, 48:23, 49:24, 55:6, 62:1, 68:17
**testing** [4] - 14:6, 22:21, 22:23, 24:24
**Thailand** [1] - 66:19
**that..** [1] - 59:6
**THE** [72] - 6:4, 6:6, 7:6, 7:16, 7:23, 8:1, 9:5, 9:19, 11:20, 12:22, 13:25, 14:16, 15:8, 15:13, 16:8, 16:12, 18:20, 19:11, 20:16, 21:15, 21:24, 22:1, 22:16, 24:12, 24:17, 25:3, 25:7, 25:9, 25:11, 25:25, 26:3, 26:6, 26:9, 26:17, 26:19, 26:20, 26:21, 34:21, 35:16, 38:19, 39:6, 39:22, 39:24, 44:1, 45:3, 45:7, 46:24, 56:22, 59:15, 59:20, 59:22,

60:1, 60:19, 61:13, 62:3, 63:8, 63:15, 63:19, 63:22, 63:25, 64:4, 64:10, 64:11, 64:13, 67:24, 68:1, 69:14, 69:16, 75:20, 76:1, 76:3, 76:6
**theoretically** [1] - 45:19
**theories** [5] - 21:1, 44:20, 45:18, 52:15, 52:22
**theory** [1] - 18:13
**thermal** [1] - 17:19
**thermally** [1] - 47:17
**they've** [2] - 13:17, 14:11
**thickness** [4] - 19:21, 29:1, 29:6, 56:25
**thin** [3] - 16:21, 18:1, 29:9
**third** [3] - 17:16, 31:9, 71:17
**thirdly** [1] - 69:1
**thousands** [3] - 55:5, 73:20
**thousandth** [2] - 29:14
**threatening** [1] - 26:13
**three** [7] - 8:5, 28:7, 28:16, 28:18, 50:22, 60:15, 71:12
**throughout** [3] - 9:22, 10:24, 52:11
**tied** [1] - 65:4
**timeline** [4] - 69:20, 69:22, 74:23, 75:1
**timelines** [4] - 62:20, 62:22, 63:16, 63:21
**timely** [1] - 16:3
**tiny** [1] - 29:12
**Title** [1] - 77:8
**title** [5] - 27:13, 31:1, 31:2, 37:7, 66:3
**titled** [2] - 6:18, 33:9
**today** [4] - 35:3, 42:24, 65:7, 75:22
**together** [17] - 9:24, 10:3, 10:10, 11:3, 11:15, 16:22, 35:8, 35:20, 36:1, 36:11, 36:12, 38:20, 38:24, 43:22, 69:22
**took** [4] - 24:6, 26:14, 26:18, 28:8
**top** [10] - 26:13, 26:14, 28:12, 33:6, 33:12, 38:4, 38:11, 40:6, 40:10, 40:21

**totally** [1] - 48:6
**touches** [1] - 61:11
**Town** [1] - 3:22
**track** [3] - 70:20, 71:5, 71:16
**tracked** [6] - 63:2, 70:11, 70:15, 70:18, 71:4, 71:12
**tracking** [3] - 63:7, 71:6, 71:14
**tracks** [2] - 70:13, 74:6
**Transcript** [1] - 1:5
**transcript** [5] - 40:1, 48:3, 48:6, 77:9, 77:11
**TRANSCRIPT** [1] - 1:14
**trial** [5] - 8:25, 9:7, 10:16, 12:7, 27:1
**TRIAL** [1] - 1:15
**triple** [2] - 31:13, 31:21
**true** [2] - 42:7, 77:9
**try** [2] - 11:18, 61:20
**trying** [3] - 12:1, 46:17, 57:11
**TUESDAY** [2] - 1:16, 7:1
**turn** [10] - 16:17, 30:6, 30:13, 32:14, 39:3, 39:8, 40:13, 42:19, 44:11, 47:19
**turned** [1] - 40:14
**two** [25] - 9:22, 9:25, 10:1, 13:17, 16:19, 16:20, 22:4, 22:7, 30:22, 31:15, 31:17, 37:23, 39:18, 51:4, 51:7, 52:6, 55:11, 57:16, 57:19, 59:24, 60:17, 62:4, 64:23, 66:8
**twofold** [1] - 23:10
**type** [1] - 70:7
**types** [1] - 71:25
**typo** [2] - 55:4, 55:6

**U**

**U.S** [1] - 1:3
**unambiguously** [1] - 17:8
**under** [8] - 9:3, 23:10, 26:18, 40:4, 42:24, 70:25, 71:17
**underlayer** [1] - 21:5
**underlying** [1] - 61:18
**unit** [1] - 29:7
**UNITED** [1] - 1:1
**United** [3] - 77:6, 77:8,

77:13
**University** [2] - 65:14, 65:15
**unpack** [1] - 72:23
**unquote** [1] - 29:18
**unrelated** [1] - 61:5
**unreliable** [1] - 69:4
**untimely** [1] - 18:11
**up** [39] - 7:24, 8:2, 9:4, 15:5, 18:23, 25:5, 26:14, 27:3, 27:5, 27:24, 29:20, 30:8, 31:15, 32:20, 33:3, 33:4, 35:17, 36:18, 36:21, 36:22, 38:8, 41:11, 46:13, 46:14, 46:25, 48:3, 50:5, 51:18, 53:11, 54:21, 54:25, 55:15, 56:15, 57:7, 57:9, 58:25, 60:1, 60:17, 65:9
**upper** [5] - 8:11, 8:24, 12:25, 14:11, 73:12

**V**

**value** [6] - 28:10, 29:2, 29:5, 55:21, 57:24, 58:1
**values** [5] - 28:9, 55:11, 55:16, 55:17, 55:24
**varying** [1] - 32:11
**vehicle** [1] - 61:20
**venues** [1] - 67:14
**verbatim** [1] - 39:18
**version** [6] - 11:7, 32:25, 33:16, 33:17, 33:18
**versus** [2] - 9:21, 51:1
**Vice** [1] - 2:16
**view** [2] - 12:19, 23:17
**viewer** [1] - 27:25
**VOLUME** [1] - 1:10
**Volume** [2] - 39:9, 39:11
**VP** [1] - 66:13
**vs** [2] - 1:7, 7:7
**vu** [1] - 12:23

**W**

**Wabash** [2] - 3:13, 4:17
**walk** [1] - 43:9
**walking** [1] - 75:2
**wall** [1] - 10:14
**Wang** [1] - 7:20
**WANG** [1] - 4:16
**WAS** [1] - 64:8

**Washington** [1] - 2:18
**Watkins** [1] - 7:18
**WATKINS** [7] - 3:12, 3:18, 3:21, 4:8, 4:16, 4:20, 5:4
**ways** [2] - 11:6, 45:19
**WD** [3] - 18:12, 24:1, 61:4
**WD's** [1] - 63:6
**weakly** [3] - 41:6, 41:24, 42:7
**week** [6] - 37:3, 45:25, 54:18, 54:24, 55:16, 56:1
**weekend** [2] - 8:8, 27:1
**weight** [1] - 68:4
**welcome** [1] - 7:23
**Wendy** [2] - 5:9, 7:14
**WEST** [1] - 1:24
**Western** [37] - 7:7, 7:18, 14:14, 19:2, 30:4, 33:19, 34:13, 34:17, 35:14, 36:15, 36:22, 36:24, 37:4, 37:5, 45:13, 47:3, 47:9, 47:14, 47:17, 48:20, 50:10, 52:2, 52:14, 53:24, 54:4, 54:5, 55:10, 64:6, 64:24, 66:11, 66:12, 66:23, 67:1, 68:14, 70:8, 71:1, 76:5
**WESTERN** [1] - 1:8
**whichever** [1] - 70:5
**whole** [1] - 58:24
**wide** [1] - 49:25
**widely** [1] - 70:18
**Wilshire** [6] - 2:5, 2:9, 2:13, 2:21, 3:5, 3:9
**WITHDRAWN** [1] - 6:16
**WITNESS** [5] - 26:19, 38:19, 39:24, 64:8, 64:13
**witness** [13] - 11:15, 25:5, 25:20, 34:20, 39:16, 39:19, 39:20, 46:17, 46:19, 48:6, 59:16, 59:17, 64:7
**WITNESSES** [1] - 6:3
**witnesses** [1] - 25:16
**witnesses'** [1] - 46:23
**witnessing** [1] - 68:17
**word** [2] - 51:16, 51:19
**words** [1] - 17:18
**works** [2] - 31:3, 44:23
**worse** [1] - 13:15
**write** [8] - 28:5, 28:10,

44:14, 44:15, 60:25, 61:1, 61:16, 61:25
**writeability** [2] - 44:23, 53:3
**writing** [1] - 41:20
**written** [4] - 20:5, 20:8, 28:6
**wrongly** [1] - 58:10

**Y**

**years** [5] - 36:12, 63:2, 66:8, 67:6, 68:16
**YOCCA** [2] - 4:4, 4:12
**Young** [1] - 7:19
**YOUNG** [1] - 4:20
**yourself** [1] - 64:21

**Z**

**zoom** [1] - 37:19

**UNITED STATES DISTRICT COURT**