Douglas E. Lumish, SBN 183863
  doug.lumish@lw.com
Richard G. Frenkel, SBN 204133
  rick.frenkel@lw.com
Patricia Young, SBN 291265
  patricia.young@lw.com
Linfong Tzeng, SBN 281798
  linfong.tzeng@lw.com
Chaarushena Deb, SBN 342764
  chaaru.deb@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Joseph H. Lee, SBN 248046
  joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235

Attorneys for Defendant and Counterclaim Plaintiff
Western Digital Technologies, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MR TECHNOLOGIES, GMBH,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>vs.<br><br>WESTERN DIGITAL<br>TECHNOLOGIES, INC.,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | CASE NO. 8:22-cv-01599-JVS-DFM<br><br>Judge:  District Judge James V. Selna<br>Magistrate Judge Douglas F. McCormick<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT WESTERN DIGITAL TECHNOLOGIES, INC.'S MOTION FOR A NEW TRIAL**<br><br>Complaint Filed:  August 26, 2022<br><br>Hearing Date:  November 18, 2024<br>Time:  1:30 p.m.<br>Courtroom:  10C |

Sarah W. Wang (admitted *pro hac vice*)
  sarah.wang@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7642

Gabriel K. Bell (admitted *pro hac vice*)
  gabriel.bell@lw.com
Charles S. Dameron (admitted *pro hac vice*)
  charles.dameron@lw.com
Ashley N. Finger (admitted *pro hac vice*)
  ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201


Steve Hanle, SBN 168876
  shanle@stradlinglaw.com
Salil Bali, SBN 263001
  sbali@stradlinglaw.com
Ahmad S. Takouche, SBN 322911
  atakouche@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725 4000
Facsimile:  (949) 725 4100

Henning Schmidt (admitted *pro hac vice*)
  hschmidt@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
500 W. 2nd St., Suite 1900
Austin, TX 78701
Telephone: (512) 788-5018

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   LEGAL STANDARD ............................................................................. 1

III.  THE COURT SHOULD GRANT A NEW TRIAL ON
      INFRINGEMENT ................................................................................... 2

      A.    A New Trial is Warranted Because the Infringement
            Verdict Was Against the Clear Weight of the Evidence ............... 2

      B.    A New Trial on Infringement is Warranted Due to a Series
            of Incorrect Rulings ..................................................................... 3

            1.    The Court Erred in Excluding WD's Non-
                  Infringement Argument Regarding Two Distinct
                  Modules ............................................................................. 3

            2.    The Court Erred in Excluding WD's "Assist in
                  Switching" Argument ........................................................ 5

      C.    A New Trial Is Warranted Due to Erroneous Jury
            Instructions .................................................................................. 6

      D.    A New Trial Is Warranted Due to Demonstrably Incorrect
            Testimony on Coercivity .............................................................. 9

IV.   THE COURT SHOULD GRANT A NEW TRIAL ON
      INVALIDITY ........................................................................................ 10

      A.    The Court Erred in Precluding Certain Use of the Patent
            Specifications ............................................................................... 10

      B.    The Court Erred in Excluding the Berger and Li
            Combination .................................................................................. 13

V.    THE COURT SHOULD GRANT A NEW TRIAL ON
      DAMAGES ............................................................................................ 15

      A.    A New Trial is Warranted Because the Jury's Infringement
            Verdict Was Against the Clear Weight of the Evidence ............... 15

      B.    The Court Erred in Excluding a Lump-Sum Reasonable
            Royalty Damages Number Based on the Panasonic License ......... 15

      C.    Alternatively, Western Digital Should Have Been Able to
            Present a Damages Number Based on Evidence at Trial ............... 18

      D.    The Court Erred in Permitting MRT to Present a
            Reasonable Royalty Number Not in its Expert Report ................. 20

VI.   CONCLUSION ...................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,*
694 F.3d 1312 (Fed. Cir. 2012) ............................................................ 16

*Advanced Display Sys., Inc. v. Kent State Univ.,*
212 F.3d 1272 (Fed. Cir. 2000) .............................................................. 5

*Alza Corp. v. Mylan Lab'ys, Inc.,*
464 F.3d 1286 (Fed. Cir. 2006) ............................................................ 14

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.,*
No. C 04-05385, 2009 WL 8612367 (N.D. Cal. Sept. 23, 2009)................. 5, 10

*Becton Dickinson & Co. v. Tyco Healthcare Grp.,*
616 F.3d 1249 (Fed. Cir. 2010) .............................................................. 7

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.,*
967 F.3d 1353 (Fed. Cir. 2020) ............................................................ 16

*Boyd v. City & Cnty. of San Francisco,*
576 F.3d 938 (9th Cir. 2009) ................................................................. 5

*CellTrust Corp. v. ionLake, LLC,*
No. 19-cv-2855, 2023 WL 8448792 (D. Minn. Dec. 6, 2023)........................... 6

*Chiron Corp. v. Genentech, Inc.,*
363 F.3d 1247 (Fed. Cir. 2004) .......................................................... 2, 10

*CommScope Techs. LLC v. Dali Wireless Inc.,*
10 F.4th 1289 (Fed. Cir. 2021) .............................................................. 6

*Constant v. Advanced Micro-Devices, Inc.,*
848 F.2d 1560 (Fed. Cir. 1988) ............................................................ 11

*Crowley v. EpiCept Corp.,*
883 F.3d 739 (9th Cir. 2018) ................................................................. 8

*Doe v. Glanzer,*
232 F.3d 1258 (9th Cir. 2000) ............................................................... 8

ii

*DyStar Textilfarben GmbH v. C.H. Patrick Co.*,
  464 F.3d 1356 (Fed. Cir. 2006) .......................................................................... 13

*Ecolab, Inc. v. Paraclipse, Inc.*,
  285 F.3d 1362 (Fed. Cir. 2002) ........................................................................ 2, 8

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
  762 F.3d 829 (9th Cir. 2014) ............................................................................ 2, 3

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2020) .......................................................................... 16

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*,
  195 F.3d 1322 (Fed. Cir. 1999), *amended on reh'g*, 204 F.3d 1359
  (Fed. Cir. 2000) ............................................................................................... 3, 18

*Hamilton v. Wal-Mart Stores, Inc.*,
  No. 5:17-CV-01415, 2020 WL 2041938 (C.D. Cal. Feb. 11, 2020) ............. 2, 10

*Intel Corp. v. PACT XPP Schweiz AG*,
  61 F.4th 1373 (Fed. Cir. 2023) ........................................................................... 13

*Intel Corp. v. Qualcomm Inc.*,
  21 F.4th 784 (Fed. Cir. 2021) ............................................................................. 13

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014) ............................................................................ 1

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ............................................................................................ 11

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
  No. 12 C 9033, 2017 WL 6569629 (N.D. Ill. Dec. 22, 2017) ......................... 8, 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .......................................................................... 15

*McCoy v. Heal Sys., LLC*,
  850 F. App'x 785 (Fed. Cir. 2021) ................................................................ 12, 13

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) .............................................................................. 10

Page(s)

*Molski v. M.J. Cable, Inc.*,
 481 F.3d 724 (9th Cir. 2007)), *aff'd*, 2022 WL 2374445 (9th Cir.
 June 30, 2022) ........................................................................................ 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*,
 521 F.3d 1351 (Fed. Cir. 2008) .............................................................. 8

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
 773 F.3d 1186 (Fed. Cir. 2014) ....................................................... 13, 14

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
 491 F.3d 1342 (Fed. Cir. 2007) ....................................................... 12, 13

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*,
 459 F.3d 1311 (Fed. Cir. 2006) .............................................................. 8

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
 164 F.3d 1372 (Fed. Cir. 1998) .............................................................. 7

*Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*,
 No. 1-12-cv-01013 (D. Del. Aug. 7, 2015), Dkt. 319 .......................... 10

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011) ....................................................... 16, 17

*United States v. Seschillie*,
 310 F.3d 1208 (9th Cir. 2002) .............................................................. 19

*Wordtech Sys, Inc. v. Integrated Network Sols., Inc.*,
 609 F.3d 1308 (Fed. Cir. 2010), Dkt. 505 .................................. 16, 17, 18

**RULES**

Fed. R. Civ. P. 26(a)(2)(D)(ii) .................................................................. 6

Fed. R. Civ. P. 50(c) ................................................................................. 1

Fed. R. Civ. P. 59 ............................................................................ 1, 2, 21

Fed. R. Civ. P. 59(a)(1)(A) ....................................................................... 1

Fed. R. Evid. 703 .................................................................................... 19

1    Pursuant to Fed. R. Civ. P. 59, Defendant Western Digital Technologies, Inc.

2    ("WD") respectfully moves for a new trial (Dkt. 615) should the Court deny WD's

3    renewed motion for JMOL (Dkt. 616).  If the Court grants WD's renewed motion for

4    JMOL, WD respectfully requests that the Court conditionally grant this motion.

5    Fed. R. Civ. P. 50(c).

6    **I.    INTRODUCTION**

7    On July 26, 2024, the jury returned a verdict that the accused WD products, *see*

8    Dkt. 231, infringe claims 1, 10, and 11 of U.S. Patent No. 9,928,864 ("'864 patent")

9    and claims 1 and 7 of the U.S. Patent No. 11,138,997 ("'997 patent") ("Asserted

10    Claims"), Dkt. 574.  The jury also found the Asserted Claims not invalid and awarded

11    $262,388,800 in damages.  *Id.*

12    The Court should grant WD's motion for a new trial on infringement, invalidity,

13    and damages.  A new trial on infringement is warranted because the jury's verdict is

14    against the great weight of the evidence and based on a series of incorrect and

15    prejudicial rulings culminating in an erroneous jury instruction regarding the meaning

16    of a claim term that directly affects infringement.  A new trial on invalidity is

17    separately warranted due to incorrect rulings preventing a fulsome invalidity

18    presentation.  And, a new trial on damages is warranted because the jury's verdict is

19    against the great weight of the evidence and inconsistent rulings prevented WD from

20    presenting any damages figure, but permitted MRT to adapt its theories to present an

21    entirely new demand.

22    **II.    LEGAL STANDARD**

23    Federal Rule of Civil Procedure 59(a)(1)(A) permits the Court to grant a new

24    trial "for any reason for which a new trial has heretofore been granted in an action at

25    law in federal court."  Regional circuit law applies.  *InTouch Techs., Inc. v. VGO*

26    *Commc'ns, Inc.*, 751 F.3d 1327, 1338 (Fed. Cir. 2014).

27    In the Ninth Circuit, courts may grant a motion for a new trial "if the verdict is

28    contrary to the clear weight of the evidence, is based upon false or perjurious evidence,

or to prevent a miscarriage of justice." *Hamilton v. Wal-Mart Stores, Inc.*, No. 5:17-CV-01415, 2020 WL 2041938, at *3 (C.D. Cal. Feb. 11, 2020) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)), *aff'd*, 2022 WL 2374445 (9th Cir. June 30, 2022).  "A trial court should grant a motion for a new trial if (1) the jury instructions were erroneous or inadequate, (2) the court made incorrect and prejudicial admissibility rulings, or (3) the verdict is contrary to the great weight of the evidence." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004) (applying Ninth Circuit precedent).  In patent cases, "[a]n erroneous instruction regarding claim interpretation that affects the jury's decision on infringement is grounds for a new trial." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002).

"A district court enjoys considerable discretion in granting or denying the motion." *Hamilton*, 2020 WL 2041938, at *3 (cleaned up).  In considering a Rule 59 motion, the court "is not required to view the trial evidence in the light most favorable to the verdict"; instead, it may "weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841-42 (9th Cir. 2014).

## III.    THE COURT SHOULD GRANT A NEW TRIAL ON INFRINGEMENT

A new trial on infringement is warranted because: (1) the verdict was against the clear weight of the evidence; (2) a series of incorrect and prejudicial rulings prevented WD from rebutting MRT's infringement positions; (3) this Court's jury instruction regarding "comprising" permitted the jury to reach a conclusion contrary to law; and (4) the verdict was informed by demonstrably incorrect testimony regarding the coercivity limitations.

### A.    A New Trial is Warranted Because the Infringement Verdict Was Against the Clear Weight of the Evidence

For the reasons set forth in the concurrently-filed memorandum in support of WD's renewed motion for JMOL (Dkt. 635), the jury's infringement verdict is against

the clear weight of the evidence. MRT failed to present sufficient evidence that the accused products contain any of the following three required elements of the Asserted Claims: (1) a "hard magnetic storage layer" ("HMSL") that stores information; (2) a separate "nucleation host" ("NH") that assists with switching the HMSL; and (3) the respective coercivities of the accused HMSL and NH. *Id.* Where, as here, the great weight of the evidence shows that the material properties of the accused products could not meet the asserted claims, a new trial on infringement is warranted. *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1333 (Fed. Cir. 1999), *amended on reh'g*, 204 F.3d 1359 (Fed. Cir. 2000). Accordingly, should the Court deny WD's renewed motion for JMOL, the Court should grant WD's motion for a new trial.

## B.    A New Trial on Infringement is Warranted Due to a Series of Incorrect Rulings

Over the course of trial, the Court's rulings iteratively raised the bar for WD to rebut MRT's infringement theories. First, WD built its non-infringement case around an argument endorsed by this Court's summary judgment order, but, following mischaracterizations by MRT, the Court prevented WD from making the same argument in the later portion of its trial presentation and closing argument. Second, the Court improperly excluded WD's non-infringement argument that the accused "nucleation host" does not "assist in switching," which was properly preserved and responsive to late-raised arguments by MRT. These rulings, alone or together, resulted in substantial prejudice and warrant a new trial.

### 1.    The Court Erred in Excluding WD's Non-Infringement Argument Regarding Two Distinct Modules

As detailed in WD's renewed JMOL motion, the Asserted Claims require both a HMSL that stores information and a separate NH that assists in switching the HMSL. *E.g.*, '864 patent cl. 1; Dkt. 321 at 3-4 (describing the patents as "a two-layer approach to storage"); Dkt. 635. None of the accused products can satisfy both of these requirements. For the claimed HMSL, MRT relies on either (1) a single layer that

1  cannot store or (2) the entire magnetic stack, including the same layers MRT identifies

2  as the NH.  The Court acknowledged the "problem[]" with the latter theory in its

3  summary judgment order, agreeing with WD that MRT cannot identify "the same

4  components as meeting both 'the hard magnetic storage layer' and 'the nucleation

5  host.'"  Dkt. 321 at 8-9.  Accordingly, in its opening statement, WD emphasized that

6  the Asserted Claims require two distinct modules.  MRT tried to prevent WD from

7  presenting slides showing this, but the Court overruled the objections and allowed WD

8  to proceed.  7/16/24 Vol. I Tr. 15:5-18:21; 7/17/24 Vol. I Tr. 56:11-63:10.  WD then

9  presented this defense through its cross-examinations of the named inventor (Dr.

10  Suess) and MRT's technical expert (Dr. Re), as well as through testimony from Dr.

11  Desai, a fact witness familiar with the accused products.  7/17/24 Vol. II Tr.

12  33:6-41:18; 7/18/24 Vol. II Tr. 55:22-73:16; 7/19/24 Vol. II Tr. 53:12-56:21,

13  62:3-63:5.  Aware that it could not demonstrate that both the HMSL and NH

14  limitations were met, MRT sought to guard against this deficiency by conflating the

15  two claim elements in its affirmative case.  7/18/24 Vol. I Tr. 41:7-15, 48:3-11.

16      Mid-trial, MRT moved to strike a *different* argument, discussed further *infra*:

17  "that the accused products do not have the claimed 'nucleation host' because the

18  [accused NH] purportedly do not assist in switching the [accused HMSL]."  Dkt. 543

19  at 2; *see also* Dkt. 555.  In arguing that motion, MRT stated that the ruling *in limine*

20  excluding *yet another* argument (reverse doctrine of equivalents or "RDOE")

21  extended to preclude WD from arguing that the Asserted Claims require both a HMSL

22  and a separate NH.  *Compare* 7/23/24 Vol. I Tr. 7:23-25:12 *with* Dkt. 345-1 at 14-16

23  (MRT's MIL) *and* Dkt. 473 at 3-4 (excluding RDOE).  Contrary to MRT's

24  representations, neither ruling had any bearing on whether WD could argue that the

25  Asserted Claims require, but the accused products do not have, a distinct HMSL

26  separate from a NH.  That argument was separately preserved, including throughout

27  WD's technical expert's report.  7/23/24 Vol. I Tr. 18:22-20:15; Dkt. 395-9 (Bertero

28  Report) ¶¶ 107-119.  Nevertheless, the Court found that WD could no longer pursue

that argument through witness testimony or in its closing statement. *See* 7/23/24 Vol. I Tr. 22:2-25:10; 7/25/24 Vol. II Tr. 154:6-155:18.

That ruling was both erroneous and substantially prejudicial. In closing arguments, WD was not permitted to identify MRT's failure of proof, while MRT emphasized the absence of the two distinct modules argument from WD's presentation. 7/26/24 Tr. 73:2-77:15. The jury's "verdict was 'more probably than not' affected as a result." *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009).

Other courts have granted motions for a new trial where, as here, mid-trial orders altered the scope of one party's trial presentation "after key testimony," allowing the other side to argue failure of proof on that basis and permitting "prejudicial error to creep into the trial process." *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C 04-05385, 2009 WL 8612367, at *2-4 (N.D. Cal. Sept. 23, 2009); *cf. Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1284-89 (Fed. Cir. 2000) (remanding for new trial based on new evidence mid-trial).

### 2. The Court Erred in Excluding WD's "Assist in Switching" Argument

In addition to precluding WD from arguing that the Asserted Claims require two distinct modules, the Court also erroneously excluded argument that the accused NH layers do not "assist in switching" the accused HMSL as required by the Court's construction of "nucleation host." 7/23/24 Vol. I Tr. 8:2-16:14; Dkt. 195 at 30.

MRT successfully moved to strike this non-infringement argument on the basis that it had already been "struck … as untimely," citing to the Court's earlier order unrelated to non-infringement, but addressing WD's separate RDOE defense, arguing that, even if the claim limitations are literally met, the accused products rely on fundamentally different mechanisms. Dkt. 543. This narrow exclusion of WD's RDOE defense is irrelevant. WD sought to present evidence and testimony relating

1  to the actual operation of the accused products as a conventional
2  non-infringement ground, not RDOE.

3        WD sought to present this theory to rebut an eleventh-hour theory from MRT.
4  MRT's expert (Dr. Re) argued for the first time in his February 13, 2024 opening
5  report that the accused products must—based on underlying principles, not data—
6  switch in a domino-like fashion from layer to layer, thereby meeting the "assist in
7  switching" requirement.  Dkt. 359-4 (Re Report) ¶¶ 79-80, 117.  MRT then doubled
8  down on this theory at trial.  7/18/24 Vol. I Tr. 95:3-17; 7/18/24 Vol. II Tr. 75:16-
9  80:13; 7/19/24 Vol. I Tr. 23:10-25:25, 31:22-32:16.

10       In response, WD sought to introduce evidence and testimony that the accused
11 NH does not, in reality, operate according to MRT's late-raised theory.  WD's expert,
12 Dr. Bertero, timely set forth his counterargument in his March 13, 2024 rebuttal report,
13 explaining that, in the accused products, the layers switch and store together as a single
14 magnetic stack, such that there is no separate and distinct NH that assists in switching.
15 Bertero Report ¶¶ 111-114 (citing Desai 1/26/24 Dep. Tr. 36:19-38:8,
16 266:25-267:15).  WD should have been permitted to present this argument at trial.
17 Fed. R. Civ. P. 26(a)(2)(D)(ii) (allowing rebuttal "on the same subject matter
18 identified by another party").

19       Permitting MRT to present a new infringement theory at trial and preventing
20 WD from responding constitutes substantially prejudicial error.  *See CellTrust Corp.*
21 *v. ionLake, LLC*, No. 19-cv-2855, 2023 WL 8448792, at *7 (D. Minn. Dec. 6, 2023)
22 ("Prejudice is apparent from the inability to fully respond[.]").  Without WD's
23 responsive positions, the jury was left to accept MRT's view of what constitutes the
24 claimed NH that must "assist in switching."

25       **C.    A New Trial Is Warranted Due to Erroneous Jury Instructions**

26       To infringe, the accused products must meet every element of the Asserted
27 Claims.  *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1296-1300
28 (Fed. Cir. 2021).  "Where a claim lists elements separately, 'the clear implication of

6

the claim language' is that those elements are 'distinct components' of the patented invention." *Becton Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (cleaned up).  Here, the claims require a HMSL that stores information and a separate NH that assists in switching.  *E.g.*, '864 patent cl. 1; Dkt. 635.  The use of the transitional term "comprising" in the preamble does not "abrogate" either of these claim elements or "alter the[ir] scope." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998).  The "curative" instruction proposed by MRT and adopted by the Court regarding "comprising" invited the jury to do exactly that.

Prior to trial, the parties agreed to a standard instruction regarding the meaning of "comprising."  Dkt. 482 at 32-33.  In addition to adopting the standard instruction, the Court tacked on MRT's proposed "curative" instruction:

> "[I]f the accused hard magnetic layer meets the elements of the claims but also assists in switching one or more layers in the stack, then it nevertheless may still meet the [] 'hard magnetic storage layer' element in the claim.  Similarly, if the accused 'nucleation host' meets the elements in the claims but also stores information in magnetically oriented bits, then it nevertheless may meet the 'nucleation host' element of the claim.  As long as the elements in the claim are met, there is infringement."  7/26/24 Tr. 38:20-39:6; Dkt. 578 at 16.

When read in combination with the standard instruction on "comprising," the "curative" instruction emphasized MRT's argument—that so long as something stores and something switches, the HMSL and NH claim limitations are met—and substantially nullified WD's.  Aware that the accused products would not otherwise infringe, MRT intended as much.  7/26/24 Tr. 19:1-20:5; Dkt. 543 (requesting curative instruction in view of testimony that the accused NH layers do not assist in switching); *see also, e.g.*, 7/18/24 Vol. II Tr. 65:5-66:14, 72:16-25; 7/19/24 Vol. I Tr. 37:7-24; 7/23/24 Vol. II Tr. 99:10-100:5, 101:18-21; 7/24/24 Vol. I Tr. 96:11-17 (testimony

1  that the accused products operate as an entire magnetic stack without an HMSL and
2  NH); Dkt. 321 at 8-9 (summary judgment order acknowledging that MRT's entire
3  stack theory would "pose problems"); Dkt. 635.

4      WD timely objected and requested alternative instructions that would have
5  remedied the error.  Dkt. 560; 7/26/24 Tr. 12:13-21:11; *see Serio-US Indus., Inc. v.*
6  *Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1317 (Fed. Cir. 2006).  Specifically,
7  WD urged the Court to maintain the previously agreed-upon, neutral, and standard
8  instruction regarding the meaning of "comprising," and argued that a curative
9  instruction was unwarranted.  7/26/24 Tr. 13:1-18:11; Dkt. 560.  To diverge from the
10 common understanding of "comprising," MRT should have (but did not) raise the
11 issue as a matter of claim construction.  *O2 Micro Int'l Ltd. v. Beyond Innovation*
12 *Tech. Co. Ltd.*, 521 F.3d 1351, 1358-59 (Fed. Cir. 2008).

13     The additional jury instruction on "comprising" was legally erroneous,
14 misleading, and prejudicial.  *Serio-US*, 459 F.3d at 1317.  Where the Court provides
15 "[an] erroneous instruction [that] could well have changed the result of jury's decision
16 on infringement," that instruction is prejudicial and warrants a new trial.  *LoggerHead*
17 *Tools, LLC v. Sears Holding Corp.*, No. 12 C 9033, 2017 WL 6569629, at *16 (N.D.
18 Ill. Dec. 22, 2017); *see also Ecolab*, 285 F.3d at 1373; *Crowley v. EpiCept Corp.*, 883
19 F.3d 739, 747–48 (9th Cir. 2018).  "There is a strong presumption" that the jury
20 follows curative instructions in reaching its verdict.  *Doe v. Glanzer*, 232 F.3d 1258,
21 1270 (9th Cir. 2000).

22     The erroneous construction here is similar to the instruction that led to a new
23 trial in *LoggerHead*.  2017 WL 6569629.  There, the court instructed the jury that the
24 claimed "arm portion" "must" be a sub-portion of a gripping element.  *Id.* at *16.  The
25 correct claim interpretation, however, required a separate "arm portion" that "projects
26 from the body portion of the gripping element."  *Id.*  Because the jury was presented
27 with evidence and testimony that there was no separate, projecting "arm portion" and
28 the instruction "could well have changed the result of the jury's decision on

infringement," the court granted a new trial. *Id.* at *16-17. A new trial is likewise warranted here based on the "comprising" instruction alone, and especially when combined with the other rulings limiting WD's non-infringement defense.

### D.    A New Trial Is Warranted Due to Demonstrably Incorrect Testimony on Coercivity

The Asserted Claims recite that the HMSL and NH have separate coercivity requirements. To find infringement, the jury needed to conclude that every representative accused product (Dkt. 231) meets both the coercive field requirement of the HMSL ($H_s > 0.5$ Tesla) and comparative coercive field of the NH ($H_n < H_s$). *E.g.*, '864 patent cl. 1; 7/17/24 Vol. II Tr. 39:21-41:18.

At trial, MRT's infringement expert, Dr. Re, relied on the "simple formula" $2K/M_s$ to calculate the coercive fields of the accused products. 7/17/24 Vol. I Tr. 106:8-21; *see also* 7/18/24 Vol. I Tr. at 45:14-47:7, 57:16-58:24, 61:18-63:17, 64:20-66:18, 69:4-70:2, 74:9-75:11, 76:3-6, 91:18-93:20, 96:2-20, 97:9-22, 98:4-100:2; 7/18/24 Vol. II Tr. 15:23-17:23. But this formula was not, as MRT repeatedly and incorrectly stated, how the patent "defined" coercivity. 7/17/24 Vol. I Tr. 106:8-21; 7/18/24 Vol. I Tr. 45:14-46:11, 90:10-21, 96:2-5. Nor is it how coercivity is generally determined. Rather, coercivity is typically measured or calculated using a different equation. 7/17/24 Vol. II Tr. 41:3-42:12; 7/18/24 Vol. II Tr. 104:18-25; Bertero Report ¶¶ 129-130, 135.

As the specification makes clear, $2K/M_s$ applies only to a simple "bilayer structure" with certain characteristics, namely, "the same thermal stability as the single layer structure." '864 patent at 6:47-60; *see also* 7/18/24 Vol. II Tr. 103:2-104:17 (MRT's expert confirming the same). This simple bilayer structure is neither the claimed invention nor descriptive of the accused products. '864 patent at 7:10-14 (describing the invention as permitting "the coercive field and the thermal energy barrier [to] be separately adjusted" while in the prior art "these quantities" were "not adjustable separately"); 7/17/24 Vol. I Tr. 21:17-20 ("Dr. Suess unlocked a

way, created an invention, that fundamentally decoupled the thermal stability from the writability in a way that had never been done before."), 94:15-20 ("Q: Now, are these bilayer structures your invention? A: No."), 101:12-15; 7/17/24 Vol. II Tr. 13:3-12; 7/18/24 Vol I Tr. 25:10-26:5, 31:6-16; 7/18/24 Vol. II Tr. 104:2-4 (similar), 125:17-126:7 (distinguishing the claimed invention from prior art due to "this decoupling of the coercive field from thermostability."); *see also* 7/18/24 Vol. I Tr. 79:17-80:5; JX2032 (depicting layers in accused products).

Dr. Re's testimony asserting that $2K/M_s$ applies was, therefore, demonstrably incorrect and should have been excluded. To find infringement, the jury must have relied on MRT's coercivity testimony. A new trial should therefore be granted because the "verdict is … based upon false … evidence." *Hamilton*, 2020 WL 2041938, at *3 (quoting *Molski*, 481 F.3d at 729); *Avago*, 2009 WL 8612367, at *3 (granting a new trial where the jury was left to "speculate" as to dispositive values); *Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, No. 1-12-cv-01013 (D. Del. Aug. 7, 2015), Dkt. 319 (granting a new trial where plaintiff presented an "incorrect infringement theory" that may have "unfairly influenced the verdict").

## IV.    THE COURT SHOULD GRANT A NEW TRIAL ON INVALIDITY

WD separately requests a new trial on invalidity because the Court committed prejudicial error through two incorrect rulings: (1) precluding cross-examination regarding disclosures in the patents-in-suit, and (2) excluding the obviousness combination of Berger and Li. Because these errors substantially prejudiced WD's ability to present its invalidity case and tainted the jury's verdict, a new trial should be granted. *Chiron*, 363 F.3d at 1258.

### A.    The Court Erred in Precluding Certain Use of the Patent Specifications

In deciding MRT's Motion *in Limine* No. 3 ("MIL 3"), the Court improperly precluded WD from relying on the specifications of the patents-in-suit for "motivation to combine," finding those disclosures "irrelevant." Dkt. 473 at 8. At trial, the Court

applied its order to exclude *any* mention of the specifications, regardless of purpose. 7/24/24 Vol. II Tr. 7:6-12:8; 7/25/24 Vol. II Tr. 96:23-98:18 (sustaining an objection to a line of questioning solely because WD was using the specification). WD was substantially prejudiced by these erroneous rulings, including at least because they prevented WD from using the specification to rebut two arguments made by MRT.

*First*, the Court prevented WD from responding to Dr. Re's argument that the Hagedorn reference (described in the specification) could not be considered because it was not "in the same field of endeavor" as the patents-in-suit. 7/25/24 Vol. II Tr. 71:1-3. This was MRT's primary challenge to two of WD's three invalidity grounds. *Id.* at 71:1-74:1. Dr. Re went on to opine that a skilled artisan would not have considered Hagedorn because "[t]o me it sounds like a textbook example of hindsight." *Id.* at 72:5-12. This is both legally and factually incorrect. Improper "hindsight" relates to assessing the validity of the patents based on a later-in-time perspective. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). Here, the patents themselves teach that Hagedorn: (1) relates to the "design of recording media"; (2) demonstrates a "factor of five decrease" in coercive field—one factor the patents-in-suit aim to decrease; and (3) describes equations to calculate coercivity for a multilayer structure. '864 patent at 6:61-7:52. The specification also distinguishes the purported invention from Hagedorn, further highlighting that a skilled artisan would consider Hagedorn relevant prior art. *Id.* at 7:10-14. And, in deposition testimony the Court blocked by sustaining an objection at trial, 7/25/24 Vol. II Tr. 96:23-98:18, Dr. Re previously admitted that the patents-in-suit confirm Hagedorn described "a multilayered nucleation host," the opposite of the bilayer structure Dr. Re testified Hagedorn had and which formed the basis for his hindsight argument, Re 10/25/23 Dep. Tr. 112:19-113:24.

WD should have been able to cross-examine Dr. Re on the credibility of this opinion, including by challenging him with the specification and his related admissions. *E.g.*, *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570

(Fed. Cir. 1988) ("A statement in a patent that something is in the prior art is binding on the applicant and patentee for determinations of anticipation and obviousness.") (citations omitted); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007) (similar); *see also McCoy v. Heal Sys., LLC*, 850 F. App'x 785, 789 (Fed. Cir. 2021) (finding that the Board "did not err by accepting the specification's own assertions of what is well known in the art."). WD was not given the opportunity to explain, leading to the Court's erroneous exclusion of that questioning. 7/25/24 Vol. II Tr. 97:25-98:18.

As a result, the jury was misled into believing that there was nothing to contradict Dr. Re's opinion that Hagedorn was a bilayer structure and not in the same field of endeavor as the patents-in-suit, even though the specification itself established otherwise. This error affected the jury's verdict on invalidity by leaving unchallenged one of only two arguments MRT presented regarding the Hagedorn-based combinations. The other, that it was "conventional wisdom" to place the HMSL on top, was refuted by unrebutted testimony that prior art expressly disclosed a HMSL on the bottom. *E.g.*, 7/25/24 Vol. I Tr. 25:13-18, 34:19-37:21, 50:8-22, 72:4-23; 7/25/24 Vol. II Tr. 70:15-73:17, 75:9-76:1, 102:20-103:8, 106:9-14.

*Second*, the Court prevented WD from using the specification to challenge testimony that an inventive aspect of the patnets-in-suit was for the HMSL to be on the bottom. 7/17/24 Vol. I Tr. 22:9-21 ("no one … had ever come up with a structure" where "the hard storage layer is actually farther away from the write field"), 101:16-104:5 (named inventor testifying "[t]his is completely new"); 7/18/24 Vol. I Tr. 26:10-20, 28:11-17 (similar). Because of the sweeping bar on relying on the specification, WD was prevented from using the express teachings in the specification that "[a]lthough the hard magnetic storage layer is shown on top of the nucleation layer, the order of the layers can also be reversed." '864 patent at 4:17-25, Fig. 1; *see also id.* at 5:8-16 (attributing no importance to the location of the HMSL), 1:26-2:29 (citing prior art where the HMSL is on the bottom). Relying on the specification to

demonstrate what a skilled artisan considers conventional is proper. *PharmaStem*, 491 F.3d at 1362; *McCoy*, 850 F. App'x at 789.

This ruling substantially prejudiced WD because Dr. Re's primary challenge to the Li prior art was that it would be unconventional to have the HMSL on the bottom, directly contrary to the specification. 7/25/24 Vol. II Tr. 76:24-80:14. The jury was therefore misled regarding the inventiveness of reversing the order of the layers, affecting the ultimate verdict of no invalidity. Although WD used other references on cross-examination, they did not carry the same weight as the patents themselves.

**B.    The Court Erred in Excluding the Berger and Li Combination**

The Court's order regarding MIL 3 was separately erroneous because it prevented WD from presenting the Berger and Li combination based on a purportedly insufficient motivation to combine. Dkt. 473 at 6-7.

MRT's assertion that the motivation to combine was "generic" should not have precluded WD from arguing obviousness based on the Berger and Li combination at trial. Dkt. 343 at 6. A motivation-to-combine "rationale is not inherently suspect merely because it's generic in the sense of having broad applicability or appeal." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021); *see also DyStar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006) (finding motivation to combine "even absent any hint of suggestion in the references themselves"). "Generic" or "conclusory" analysis is only insufficient when it bears "no relation to any specific combination of prior art elements from specific references" and fails to "explain why a skilled artisan would have combined them in the way the claimed invention does." *Intel*, 21 F.4th at 797 (emphasis, quotation, and citation omitted). Dr. Victora's opinions cleared that bar. The subsequent question of whether a skilled artisan "would have been motivated to combine prior-art references is a factual question" for the jury. *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023); *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196

1  (Fed. Cir. 2014) (citing *Alza Corp. v. Mylan Lab'ys, Inc.*, 464 F.3d 1286, 1289 (Fed.

2  Cir. 2006)).  The Court's order improperly kept that question from the jury.

3        Further, MRT's primary criticism was that Dr. Victora provided a

4  "single-sentence opinion" regarding motivation to combine.  Dkt. 343 at 7.  Not so.

5  MRT implies that the "entirety" of Dr. Victora's motivation to combine Berger with

6  Li was "because all of the cited references are closely related in the field of magnetic

7  storage media and cross reference each other heavily." Dkt. 343 at 6 (citing Dkt. 343-

8  2 (Victora Report) ¶ 806).  But paragraphs 794 to 806 provide further explanation

9  regarding the motivation to combine.  First, Dr. Victora lays out the structure of the

10  perpendicular media in Berger.  Victora Report ¶ 795.  Then, Dr. Victora explains that

11  a skilled artisan would be motivated to improve this perpendicular media by reducing

12  the coercive force.  *Id.* ¶ 797.  To accomplish this, Dr. Victora explains that both

13  Hagedorn (¶¶ 797-799, 801-804) and Li (¶ 805) teach using multilayer structures with

14  increasing anisotropy towards the storage layer.  Paragraph 806 provided "further"

15  motivation to combine Berger and Li.  While the fulsome motivation to combine

16  argument was initially described in relation to Hagedorn, Dr. Victora explained that a

17  skilled artisan would combine Li with Berger for all the same reasons. Dkt. 343 at 6;

18  Victora Report ¶¶ 794-806; *see also* Dkt. 379 at 3-6.  Dr. Victora's reasoning was

19  neither generic nor conclusory, and the Court erred in excluding the

20  combination of Berger and Li.

21        The exclusion of the Berger and Li ground was substantially prejudicial.  The

22  combination of Berger and Li was not duplicative of any other combination presented

23  to the jury.  And, unlike Hagedorn, Li's status as relevant prior art was undisputed.

24  7/25/24 Vol. II Tr. 109:4-110:1.  Moreover, because Berger has the hard magnetic

25  storage layer at the bottom, the orientation of the layers in the ultimate combination

26  aligns with the Asserted Claims.  *Id.* at 105:17-109:1, 110:23-118:3.  Accordingly,

27  presenting Berger and Li likely affected the jury's finding of no invalidity.

28

# V.    THE COURT SHOULD GRANT A NEW TRIAL ON DAMAGES

WD seeks a new trial on damages because the damages award was against the clear weight of the evidence and the Court committed prejudicial error by preventing WD from presenting any damages number for a lump-sum reasonable royalty.  WD should have been able to present a damages figure based on both the Panasonic Agreement and existing calculations in its damages expert report, but was precluded from doing so.  Both exclusions were in error, and either warrants a new trial.  This is especially so because MRT was impermissibly permitted to adapt its theories to present a reasonable royalty demand not contained in its expert's report.

## A.    A New Trial is Warranted Because the Jury's Infringement Verdict Was Against the Clear Weight of the Evidence

For the reasons set forth in WD's memorandum in support of WD's renewed motion for JMOL (Dkt. 635), the jury's damages award is against the clear weight of the evidence.  MRT failed to present sufficient evidence that MRT was entitled to damages because MRT's expert: (1) presented a damages demand he did not analyze under the *Georgia-Pacific* factors to arrive at the final number the parties would have arrived at in a hypothetical negotiation; (2) started with profits from the entire hard disk drive, rather than the SSPPU; and (3) used an inaccurate regression model.  *Id.* "[A] new trial on damages is necessary" where, as here, "[t]he evidence does not sustain a finding" that the parties "would have agreed to a lump-sum royalty payment" propounded by the patentee.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335 (Fed. Cir. 2009).  Accordingly, should the Court deny WD's renewed motion for JMOL, it should grant WD's motion for a new trial.

## B.    The Court Erred in Excluding a Lump-Sum Reasonable Royalty Damages Number Based on the Panasonic License

It was prejudicial error to preclude WD's damages expert, Dr. Becker, from presenting a lump-sum reasonable royalty damages number of no more than $1.4 million based on the Panasonic Agreement.  Dr. Becker's analysis began with that

agreement, for which the Court agreed there was sufficient evidence of technological and economic comparability. Dkt. 473 at 13-14. Dr. Becker then used that agreement "as a starting point to which the *Georgia-Pacific* factors are then applied to bring the rate up or down" to reach a $1.4 million lump sum. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). This approach is well-established. *E.g.*, *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1376 (Fed. Cir. 2020); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2020) (affirming a damages award involving a license with a lump sum payment to which the expert applied the *Georgia-Pacific* factors). "[W]hen the methodology is sound … disputes about the degree of relevance or accuracy … may go to the testimony's weight, but not its admissibility." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

Despite Dr. Becker's fulsome analysis, he was precluded from providing his $1.4 million damage number based on (1) the Court's interpretation of *Wordtech Sys, Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010), Dkt. 505 at 3, and (2) the Court's incorrect assumption that the $1.4 million number was derived from the already-excluded "Analytical Approach." Both conclusions are erroneous.

*First, Wordtech* does not stand for the proposition that there must be "additional data" beyond the *Georgia-Pacific* factors to present a lump sum royalty amount, "such as, how the parties calculated [the] lump sum, the licensee's intended products, [and] how many products each licensee expected to produce." Dkt. 505 at 3. In *Wordtech*, the patentee relied solely on a fact witness to present licenses, offering no expert opinion on damages. 609 F.3d at 1319-20. On appeal, the patentee sought to justify the jury's damages award because the award "is roughly the average" of the two lump-sum agreements presented (but not analyzed) at trial. *Id.* at 1320. It was this arbitrary averaging of licenses that the Federal Circuit found unjustified and in need of "additional data," such as sales volume. *Id.* The problem—that a prior license for "$350,000 to produce one thousand devices" would not mean that the defendant would

1    "have agreed *ex ante* to pay $250,000 if it expected to make only fifty-six units"—is

2    not present here and does not affect Dr. Becker's analysis.  *Id.*  Ultimately, *Wordtech*

3    stands for the uncontroversial premise that "there must be a basis in fact to associate

4    the royalty rates used in prior licenses to the particular hypothetical negotiation at

5    issue in the case."  *Uniloc*, 632 F.3d at 1317 (describing *Wordtech*).  Dr. Becker

6    accomplished that through a comprehensive *Georgia-Pacific* analysis.

7         Here, Dr. Becker used the amounts disclosed in the comparable Panasonic

8    Agreement as the "starting point evidence" for an established royalty rate stemming

9    from *Georgia-Pacific* factors 1 (royalties received by patentee), 2 (rates paid by

10   licensee for comparable patents), and 12 (customary rates).  Dkt. 395-11 (Becker

11   Report) ¶¶ 72-74, 136, 145, 175-176, 256-257.  Then, with respect to *Georgia-Pacific*

12   factor 3 regarding the nature and scope of the Panasonic Agreement, Dr. Becker

13   identified that the Panasonic Agreement involved dozens of patents compared to the

14   two at issue and that "the scope of rights granted in the Panasonic Agreement" was

15   "worldwide" and "broader" than here, and adjusted for the resulting "downward

16   influence on the amount of the reasonable royalty."  *Id.*  ¶¶ 136-143, 178-184, 258-

17   259.  For factors 4 and 5 relating to the competitive positions of the parties, Dr. Becker

18   found "no adjustment" was necessary.  *Id.* ¶¶ 139, 185-192, 260.  Likewise, as there

19   is no evidence of convoyed sales, factor 6 is "neutral."  *Id.* ¶¶ 193-195, 261.  Factor

20   7, in turn, "suggest[s] a downward adjustment to the royalty implied by the non-

21   exclusive license granted by Panasonic."  *Id.* ¶ 259.  And factor 8 regarding

22   profitability and commercial success of patented products "provides no adjustment to

23   the starting point royalty amounts."  *Id.* ¶¶ 196-200, 262.  Factors 9 and 10 regarding

24   the nature and alleged benefit of the patents-in-suit, including "improvement to the

25   recording media within the Accused Products" also did not require "further

26   adjustment."  *Id.* ¶¶ 205, 263 (factor 9); *id.* ¶¶ 203, 263 (factor 10).  This well-accepted

27   methodology resulted in a $1.4 million lump-sum that Dr. Becker should have been

28   permitted to present at trial.

1    Even taking the single quoted sentence in *Wordtech* out of context, Dkt. 505 at

2   3, Dr. Becker satisfies the requirement of examining "how the parties calculated the

3   lump sum, the licensee's intended products, *or* how many products each licensee is

4   expected to produce." *Wordtech*, 609 F.3d at 1320 (emphasis added).[1]  In his analysis

5   of the Panasonic Agreement, Dr. Becker opined that "the scope of Western Digital

6   products that are licensed under the Panasonic Agreement is at least as broad as the

7   scope of the Accused Products."   Becker Report ¶ 212.   This underscores that

8   excluding Dr. Becker's lump sum of $1.4 million based on *Wordtech* was erroneous.

9    *Second*, the Court found that Dr. Becker's "lump sum damages opinion" was

10  based on both the Panasonic Agreement and the "Analytical Approach," the latter of

11  which was excluded.  Dkt. 505 at 3.  But Dr. Becker's analysis of the *Georgia-Pacific*

12  factors to arrive at his no more than $1.4 million lump sum is entirely separate from

13  his "Analytical Approach."  Dkt. 498-2 at 2 (citing Becker Report ¶ 265 n. 314).  Dr.

14  Becker makes clear that his analysis of the "Market Approach" based on the Panasonic

15  Agreement "considered on its own … implies a lump-sum royalty of no more than

16  $1.4 million."  *Id.*  By contrast, Dr. Becker's "Analytical Approach"—in which he

17  relied on a selection of WD patents—led to his opinion that the lump sum is no more

18  than $1.7 million.   Dkt. 498-2 at 4-5.   Dr. Becker's analysis of the Panasonic

19  Agreement under *Georgia-Pacific* (the "Market Approach") stands on its own.

20    Accordingly, WD should have been able to present its damages number of no

21  more than $1.4 million and was greatly prejudiced when it was unable to do so.  The

22  jury was provided with only MRT's orders-of-magnitude higher damages demand.

23    **C.    Alternatively, Western Digital Should Have Been Able to Present a**

24    **Damages Number Based on Evidence at Trial**

25    The Court separately erred in precluding Dr. Becker from presenting a $13.68

26  million number in rebuttal to Mr. Bergman's $305.9 million demand.

27  _____

28  [1] *Wordtech* does not recite "and" or otherwise require all three exemplary adjustments.

18

Federal Rule of Evidence 703 permits experts to base their opinions on "facts or data in the case that the expert has been made aware of," Fed. R. Evid. 703, including "presentation at the trial," Advisory Committee Notes. *See also United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002) ("[A]n expert … might just as well hear all of the trial testimony so as to be able to base his opinion on more accurate factual assumptions."). Dr. Becker arrived at $13.68 million based on his previously-disclosed analysis and new information presented at trial.

*First*, Dr. Becker relied on the exact calculations disclosed in his report. That analysis began with the incremental benefit formula reproduced below. Becker Report ¶ 321; *id.* ¶¶ 278-79.

$$Incremetal\ Benefit = [ASP \times (1 - R\&D\% - SGA\%) - ASC] \times PiS\%$$

As explained in the report, the incremental benefit is then multiplied by the total number of terabytes (approximately 116.4 million) and discounted at a 12.8% rate to reach the final damages demand. *Id.* ¶¶ 278-79. As Dr. Becker explained, in the incremental benefit calculation: (1) ASP is price per terabyte; (2) ASC is cost per terabyte; (3) R&D% is percent of incremental price attributable to research and development ("R&D"), which is the cost of R&D per terabyte; and (4) SG&A% is the percent of incremental price attributable to selling, general, and administrative costs ("SG&A"), which is the cost of SG&A per terabyte. *Id.* ¶ 322. Dr. Becker then relied on another expert, Dr. Goglia, for the PiS%, the percent allegedly attributable to MRT's patents of either 2.7% or 4.0%. *Id.* ¶¶ 322, 369 n.435, SLB-23. For these PiS% values, the result was $7.5 and $11.0 million, respectively. *Id.* ¶ 369 n.435, SLB-23.

*Second*, each of these inputs was presented at trial. *See generally* 7/24/24 Vol. II Tr. 26-47. In rebutting Mr. Bergman's damages demand, Dr. Becker: (1) testified that ASP should be $15.45 rather than $18.45 (*id.* at 43:10-13); (2) that ASC should be $8.48 rather than $7.21 (*id.* at 46:16-47:16); (3) accepted Mr. Bergman's number

of $2.64 R&D costs per terabyte (*id.* at 27:21-29:2); and (4) accepted Mr. Bergman's SG&A number of $1.29 (*id.* at 26:22-27:20; 7/19/24 Vol. I Tr. 106:20-107:4). Dr. Goglia was precluded from opining that PiS% is either 2.7% or 4.0%, but testified that the value is 4.9% to rebut Dr. Re's opinion that PiS% is 46%. 7/23/24 Vol. II Tr. 24:6-25:47, 34:20-36:23. From that, it was simple math for Dr. Becker to calculate a $13.68 million damages number.

The Court, however, precluded Dr. Becker from relying on one small piece: Dr. Goglia's testimony that the PiS% is 4.9%, because Dr. Becker relied on Dr. Goglia's original PiS% of 2.7% or 4.0% PiS% in his report. 7/24/24 Vol. I Tr. 14:7-16:1. This adjustment of PiS% represents the *only* difference between the damages numbers in Dr. Becker's report and the $13.68 million number. It was a simple (and permissible) calculation to input the 4.9% value presented at trial in place of the 2.7% or 4.0% from Dr. Becker's report to arrive at $13.68 million.

In contrast, Mr. Bergman was able to perform new, never disclosed calculations based on entirely new numbers. *See* 7/25/24 Vol. I Tr. 11:17-14:10. This highlights the prejudice of preventing Dr. Becker from presenting a damages number of $13.68 million.

### D.    The Court Erred in Permitting MRT to Present a Reasonable Royalty Number Not in its Expert Report

The Court's ruling preventing WD from presenting a damages number should have likewise precluded MRT from presenting a damages number. *See* Dkt. 512-1 at 1; 7/16/24 Vol. II Tr. 50:24-51:3 (allowing Mr. Bergman to present a lump sum). As discussed in WD's renewed motion for JMOL, the Court excluded Dr. Becker's $1.4 million damages number because it was "just a piece" of his *Georgia-Pacific* analysis and the other piece—the Analytical Approach—was already excluded. Dkt. 635. Meanwhile, MRT's expert, Mr. Bergman, was permitted to present a new $305.9 million lump sum which too was just a piece of the analysis in his report. *Id.* at 16-19.

1      Mr. Bergman originally opined that the lump-sum reasonable royalty would

2  have been $253.4 million. *Id.* He arrived at this number by finding the midpoint

3  between two inputs—the Market Approach ($200.9 million) and the Income

4  Approach ($305.9 million). *Id.* MRT's $200.9 million number (based on the MagSil

5  Agreement) was struck, so Mr. Bergman relied solely on the second input ($305.9

6  million) to arrive at a revised lump-sum reasonable royalty. *Id.* In addition to the

7  $305.9 million damages demand being unsupported by substantial evidence, Dkt. 635,

8  equal application of the same standard preventing Dr. Becker from providing a

9  damages number should have precluded Mr. Bergman from providing this new

10  demand. *Id.* In the Court's words, the Income Approach ($305.9 million) is "just a

11  piece" of Mr. Bergman's "*Georgia[-]Pacific* analysis," and the other input was

12  excluded, such that the $305.9 million "cannot stand alone to support the lump sum

13  figure." *Id.* at 1 (citing Dkt. 505 at 3)). This disparate treatment was prejudicial and

14  resulted in a jury award against the clear weight of the evidence; indeed, an award that

15  exceeded the figure Mr. Bergman identified as his opinion in his report.

16  **VI.  CONCLUSION**

17      For the reasons set forth above, Western Digital respectfully requests a new trial

18  pursuant to Federal Rule of Civil Procedure 59.

19

20  DATED:  Sept. 26, 2024      **LATHAM & WATKINS LLP**

21                    By:  */s/ Douglas E. Lumish*
                      Douglas E. Lumish

22                        Richard G. Frenkel
                      Gabriel K. Bell

23                        Patricia Young
                      Joseph H. Lee

24                        Linfong Tzeng
                      Sarah W. Wang

25                        Charles S. Dameron

26                        Ashley N. Finger

27                        Chaarushena Deb

28

1

**STRADLING YOCCA CARLSON &
RAUTH LLP**

2

3          Steven M. Hanle
          Salil Bali
4          Ahmad S. Takouche
          Henning Schmidt

5

6          *Attorneys for Defendant and*
          *Counterclaim Plaintiff Western Digital*
7          *Technologies, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Western Digital Technologies,

3  Inc. certifies that this brief contains 6,997 words, which [choose one]:

4      <u>X</u>  complies with the word limit of L.R. 11-6.1.

5      ____ complies with the word limit set by court order dated [date].

6

7  DATED:  Sept. 26, 2024           **LATHAM & WATKINS LLP**

8                                   By:  <u>*/s/ Douglas E. Lumish*</u>
                                        Douglas E. Lumish
9                                       Richard G. Frenkel
                                        Gabriel K. Bell
10                                      Patricia Young
                                        Joseph H. Lee
11                                      Linfong Tzeng
                                        Sarah W. Wang
12                                      Charles S. Dameron
                                        Ashley N. Finger
13                                      Chaarushena Deb
14
15                                 **STRADLING YOCCA CARLSON &
                                    RAUTH LLP**
16
17                                      Steven M. Hanle
                                        Salil Bali
18                                      Ahmad S. Takouche
                                        Henning Schmidt
19
20                                 *Attorneys for Defendant and
                                    Counterclaim Plaintiff Western Digital
21                                  Technologies, Inc.*
22
23
24
25
26
27
28