Douglas E. Lumish, SBN 183863
 doug.lumish@lw.com
Richard G. Frenkel, SBN 204133
 rick.frenkel@lw.com
Patricia Young, SBN 291265
 patricia.young@lw.com
Linfong Tzeng, SBN 281798
 linfong.tzeng@lw.com
Chaarushena Deb, SBN 342764
 chaaru.deb@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Joseph H. Lee, SBN 248046
 joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235

Attorneys for Defendant and Counterclaim Plaintiff
Western Digital Technologies, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MR TECHNOLOGIES, GMBH,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>vs.<br><br>WESTERN DIGITAL<br>TECHNOLOGIES, INC.,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | CASE NO. 8:22-cv-01599-JVS-DFM<br><br>Judge:  District Judge James V. Selna<br>Magistrate Judge Douglas F. McCormick<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285**<br><br>Complaint Filed:  August 26, 2022<br><br>Hearing Date:    October 28, 2024<br>Time:         1:30 p.m.<br>Courtroom:     10C |

1   Sarah W. Wang (admitted *pro hac vice*)
      sarah.wang@lw.com
2   LATHAM & WATKINS LLP
    330 North Wabash Avenue, Suite 2800
3   Chicago, IL 60611
    Telephone: (312) 876-7642
4

5   Gabriel K. Bell (admitted *pro hac vice*)
      gabriel.bell@lw.com
6   Charles S. Dameron (admitted *pro hac vice*)
      charles.dameron@lw.com
7   Ashley N. Finger (admitted *pro hac vice*)
      ashley.finger@lw.com
8   LATHAM & WATKINS LLP
    555 Eleventh Street, NW, Suite 1000
9   Washington, D.C. 20004
    Telephone: (202) 637-2200
10  Facsimile: (202) 637-2201

11

12  Steve Hanle, SBN 168876
      shanle@stradlinglaw.com
13  Salil Bali, SBN 263001
      sbali@stradlinglaw.com
14  Ahmad S. Takouche, SBN 322911
      atakouche@stradlinglaw.com
15  STRADLING YOCCA CARLSON & RAUTH LLP
    660 Newport Center Drive, Suite 1600
16  Newport Beach, CA 92660-6422
    Telephone:  (949) 725 4000
17  Facsimile:  (949) 725 4100

18
    Henning Schmidt (admitted *pro hac vice*)
19    hschmidt@stradlinglaw.com
    STRADLING YOCCA CARLSON & RAUTH LLP
20  500 W. 2nd St., Suite 1900
    Austin, TX 78701
21  Telephone: (512) 788-5018

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................. 1

II. LEGAL STANDARDS ........................................................ 2

III. ARGUMENT ...................................................................... 3

    A. This Case is Not Exceptional ...................................... 3

        1. WD Did Not Engage in Litigation Misconduct ......... 5

            a. WD Did Not Delay Production of or Misrepresent Anisotropy Data .......................... 5

            b. WD Did Not Misrepresent Cap Layer Data .................... 8

            c. WD's February 9 Non-Infringement Arguments Did Not Rise to Misconduct and Were Already Struck .......................................... 9

            d. Portions of WD's Expert Reports and Trial Presentations Did Not Rise to Misconduct and Were Already Struck .......................................... 10

            e. WD Did Not "Persistent[ly] Disregard" This Court's Claim Construction Order ............................... 11

            f. WD Did Not Disregard Other Rulings ......................... 11

            g. WD Did Not Seek to Raise Excluded Arguments at Trial ...................................................... 12

        2. WD's Positions Were Not "Objectively Baseless" ................. 14

        3. There Was No Willful Infringement ....................... 17

    B. The Requested Fees Are Not Reasonable ........................... 17

        1. The Rates Requested By MRT Are Unreasonable ................. 18

        2. MRT's Documentation Is Inadequate ....................... 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

          3.     MRT Cannot Demonstrate a Causal Connection Between the Requested Fees and the Purported Misconduct .................................................................................. 20

          4.     MRT Relies on Block-Billing, Which Warrants a Reduction .................................................................................. 21

IV.    CONCLUSION .............................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Akamai Techs., Inc. v. MediaPointe, Inc.*,
  No. 2:22-cv-06233, 2024 WL 1699352 (C.D. Cal. Apr. 10, 2024) .................... 5

*Alifax Holding SpA v. Alcor Scientific LLC*,
  Nos. 22-1641, 22-1723, 2024 WL 2932910 (Fed. Cir. June 11, 2024) ... 9, 16, 17

*Arcona, Inc. v. Farmacy Beauty, LLC*,
  No. 2:17-cv-7058, 2021 WL 2414856 (C.D. Cal. June 14, 2021),
  *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022) ................... 21

*Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*,
  No. 18-cv-707, 2020 WL 757891 (D. Del. Feb. 14, 2020), *aff'd*, 828
  F. App'x 721 (Fed. Cir. 2020) ............................................................................ 10

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  892 F.2d 1547 (Fed. Cir. 1989) .............................................................. 3, 17, 18

*Cambrian Sci. Corp. v. Cox Comm'cns, Inc.*,
  79 F. Supp. 3d 1111 (C.D. Cal. 2015) ............................................................. 3, 9

*Drop Stop LLC v. Jian Qing Zhu*,
  757 F. App'x 994 (Fed. Cir. 2019) ...................................................................... 4

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
  889 F.3d 1291 (Fed. Cir. 2018) ........................................................................... 3

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
  No. 15-cv-10154, 2023 WL 3815276 (S.D.N.Y. June 5, 2023) .......................... 5

*Fox v. Vice*,
  563 U.S. 826 (2011) .......................................................................................... 20

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
  790 F.3d 1369 (Fed. Cir. 2015) ....................................................................... 7, 8

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) .......................................................................................... 20

*Guangzhou Trading Co., Ltd. v. Dbest Prods., Inc.*,
  No. 2:21-cv-04758, 2023 WL 4203491 (C.D. Cal. Apr. 28, 2023) .................. 17

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................. 3, 18, 19

*Innovation Scis., LLC v. Amazon.com, Inc.*,
  842 F. App'x 555 (Fed. Cir. 2021) ...................................................... 15

*Intell. Ventures I LLC v. Trend Micro Inc.*,
  944 F.3d 1380 (Fed. Cir. 2019) ................................................................. 3

*Khan v. Hemosphere Inc*,
  825 F. App'x 762 (Fed. Cir. 2020) .................................................... 3, 9

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
  No. 2:12-cv-04976, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013),
  *aff'd*, 552 F. App'x 989 (Fed. Cir. 2014) .......................................... 18

*Large Audience Display Sys., LLC v. Tennman Prods., LLC.*,
  745 F. App'x 153 (Fed. Cir. 2018)...................................................... 18

*Lumen View Tech. LLC v. Findthebest.com*,
  811 F.3d 479 (Fed. Cir. 2016) ............................................................... 3

*Nova Chems. Corp. v. Dow Chem. Co.*,
  856 F.3d 1012 (Fed. Cir. 2017) ............................................................ 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ................................................................. 1, 2, 15, 17

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ............................................................................... 3

*In re PersonalWeb Techs. LLC*,
  85 F.4th 1148 (Fed. Cir. 2023) ........................................................... 20

*In re Rembrandt Techs. LP Pat. Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018) .............................................................. 3

*SFA Sys. LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ........................................................... 14

*Sigma Enters., LLC v. Alluring Deals, LLC*,
  No. 17-cv-171074, 2017 WL 10439659 (C.D. Cal. Nov. 15, 2017) ................. 20

iv

*SiOnyx LLC v. Hamamatsu Photonics K.K.*,
   981 F.3d 1339 (Fed. Cir. 2020) .......................................................................... 17

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
   No. 17-cv-00660, 2018 WL 6016149 (C.D. Cal. Aug. 13, 2018),
   *aff'd*, 773 F. App'x 625 (2019) ................................................................... 18, 19

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
   No. 17-cv-660, 2018 WL 6164300 (C.D. Cal. June 7, 2018), *aff'd*,
   773 F. App'x 625 (Fed. Cir. 2019) .................................................................. 11

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   14 F.4th 1323 (Fed. Cir. 2021) .......................................................................... 4

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   254 F. Supp. 3d 680 (D. Del. 2017) ................................................................... 4

*Tinnus Enters., LLC v. Telebrands Corp.*,
   369 F. Supp. 3d 704 (E.D. Tex. 2019) ............................................................... 4

*Top Lighting Corp. v. Linco, Inc.*,
   No. 15-cv-01589, 2019 WL 13020830 (C.D. Cal. Aug. 26, 2019) ............ 17, 21

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   130 F. Supp. 3d 1331 (C.D. Cal. 2015), *aff'd*, 669 F. App'x 575
   (Fed. Cir. 2016) ................................................................................................ 19

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ........................................................................... 21

*Zeigler v. Cnty. of San Luis Obispo*,
   No. 17-cv-9295, 2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ......................... 20

## STATUTES

35 U.S.C. § 285 ........................................................................................................ 2

# I.    INTRODUCTION

The Patent Act permits an award of attorneys' fees to compensate a prevailing party for being forced to litigate an "exceptional" case—one that "stands out from others" for remarkably weak litigating positions or vexatious litigation misconduct. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-554 (2014). While Plaintiff MR Technologies, GmbH ("MRT") marches through a handful of rulings it happened to have won, none of them (alone or together) renders this case so "uncommon," "rare," or "unusual" as to warrant a fees award. *Id.*

In normal course, both parties disputed, won, and lost certain issues leading up to trial.  MRT filed its initial complaint on August 26, 2022, asserting four patents, Dkt. 1, but dropped two of them after Western Digital Technologies, Inc. ("WD") identified deficiencies in MRT's infringement contentions, Dkt. 33-34.    Early decisions were split—WD's motion for judgment on the pleadings was granted, but with leave to amend, Dkt. 82 at 1-5; WD's motion to strike MRT's amended infringement contentions was granted as a motion to compel further amendment, *id.* at 5-9; and at claim construction, not only did the parties cooperate and agree to a substantial number of terms, but claim construction was not one-sided.  For example, the Court adopted some of MRT's proposed constructions, some of WD's proposed constructions, and some derived by the Court.  Dkt. 195.  Throughout discovery, both parties were permitted to amend their positions.  Dkt. 82 at 1-5; Dkt. 217.  MRT, however, was precluded from adding late-raised willful infringement allegations due to failure to produce long-withheld correspondence and lack of diligence.  Dkt. 230.  And, while MRT throws around colorful accusations relating to deficient document production, MRT moved to compel exactly once—and lost.  Dkt. 66.

Summary judgment and *Daubert* motions also resulted in rulings in favor of both sides.  Dkt. 310; Dkt. 341; Dkt. 474.  And while the Court denied WD's motion for summary judgment on non-infringement, the Court also denied MRT's motion for summary judgment on infringement, and in doing so, agreed with WD that one of

1    MRT's infringement theories (that MRT ultimately pursued at trial) "poses problems."

2    Dkt. 321 at 8-9.

3        The centerpiece of MRT's fees motion is that the Court granted MRT's motion

4    to strike certain non-infringement theories.  Dkt. 342; Dkt. 619 at 14-20.  That order

5    itself has already remedied any adverse impact on MRT.  And WD complied.  To the

6    extent WD re-raised any issues, it was to—permissibly and efficiently—preserve them

7    on the record.  *E.g.*, 7/19/24 Vol. II Tr. 73:2-13, 82:2-13.

8        Ultimately, while the jury found for MRT, it also independently reduced the

9    damages award from the only figure presented at trial ($305.9 million) to $262

10   million—a further indication that the case was closer than MRT would have it seem

11   and that WD's positions were not unreasonable.  Dkt. 574; *see also* Dkt. 567.

12       The record demonstrates nothing more than a standard pattern of wins and

13   losses—nothing exceptional.  That MRT happened to prevail at trial does not justify

14   distorting the record with hindsight to assert that WD had engaged in misconduct and

15   taken unusually weak positions all along.

16       Should the Court nonetheless find this case meets the high bar of "exceptional,"

17   MRT would be entitled to, at most, reasonable, compensatory fees for the narrow

18   issues raised in its motion.  MRT's request is neither reasonable nor compensatory.

19   ## II.    LEGAL STANDARDS

20       "The court in exceptional cases may award reasonable attorney fees to the

21   prevailing party."  35 U.S.C. § 285.  As the Supreme Court has emphasized, this

22   discretionary "power is reserved for 'exceptional' cases," and should be invoked

23   rarely.  *Octane Fitness*, 572 U.S. at 553.  Whether a case is exceptional is a

24   "case-by-case exercise" based on "the totality of the circumstances." *Id.* at 554.  Fees

25   should be reserved for cases that "stand[] out from others with respect to the

26   substantive strength of a party's litigation position (considering both the governing

27   law and the facts of the case) or the unreasonable manner in which the case was

28   litigated." *Id.*

1    To determine that a case is "exceptional," courts are "required" to look at the

2 entire litigation. *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1383-84

3 (Fed. Cir. 2019). Generally, neither a "portion of a case" nor "a single, isolated act"

4 renders a case exceptional. *Id.* The party seeking fees (MRT) bears the burden of

5 proving the case is exceptional by a preponderance of the evidence. *Energy Heating,*

6 *LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1306 (Fed. Cir. 2018).

7    If the fee-seeking party demonstrates that the case is "exceptional," fees should

8 only be awarded in an amount proportional to compensate the prevailing party for the

9 cost of litigating against the particular misconduct. The purpose of a fees award is

10 "compensatory, not punitive." *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254,

11 1278 (Fed. Cir. 2018) (citation omitted); *Beckman Instruments, Inc. v. LKB Produkter*

12 *AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989). Accordingly, there must be a "causal

13 connection between the misconduct and [awarded] fees." *Rembrandt*, 899 F.3d at

14 1280. Where the court has already meaningfully addressed the purported misconduct

15 in another way, such as by striking contentions, fees are not warranted. *Cambrian Sci.*

16 *Corp. v. Cox Comm'cns, Inc.*, 79 F. Supp. 3d 1111, 1116 (C.D. Cal. 2015); *see also*

17 *Khan v. Hemosphere Inc*, 825 F. App'x 762, 772 (Fed. Cir. 2020).

18    When calculating any applicable fees, courts begin with the "lodestar method"

19 of "multiplying a reasonable hourly rate by the reasonable number of hours required

20 to litigate a comparable case." *Lumen View Tech. LLC v. Findthebest.com*, 811 F.3d

21 479, 483 (Fed. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551

22 (2010)). The party seeking fees "bears the burden of establishing entitlement to an

23 award and documenting the appropriate hours expended and hourly rates." *Hensley*

24 *v. Eckerhart*, 461 U.S. 424, 437 (1983).

25 **III.   ARGUMENT**

26    **A.   This Case is Not Exceptional**

27    MRT characterizes this litigation as exceptional based not on the facts, record,

28 and history of the case, but rather on MRT's own interpretation of events. Stripped

1    of assertions, speculation, and inflammatory characterizations, MRT's accusations

2    stand unsupported.  Far from involving flagrant misconduct or shockingly weak

3    positions that would warrant fees, MRT simply happened to prevail in several motions

4    and at trial.

5            The cases cited by MRT stand in contrast to the course of events in this

6    litigation.  In *SRI*, the district court awarded fees because the defendant "pursued

7    litigation as aggressively as the court has seen in its judicial experience," including

8    "maintaining nineteen invalidity theories until the eve of trial but ultimately presenting

9    only two at trial, presenting weak non-infringement theories that were contrary to the

10   district court's claim construction ruling and [defendant's] own internal documents,

11   exhaustive summary judgment and sanctions efforts, over-designation of deposition

12   testimony for trial, and asserting 'every line of defense post-trial.'"  *SRI Int'l, Inc. v.*

13   *Cisco Sys., Inc.*, 14 F.4th 1323, 1326, 1332 (Fed. Cir. 2021) (citation omitted); *see*

14   *also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 722 (D. Del. 2017) (further

15   explaining that the only non-infringement defense for one product group was directly

16   contrary to the court's claim construction order, the only non-infringement defense

17   for the other product group directly contradicted product literature, defendant created

18   a "summary judgment labyrinth," and defendant went so far as to assert violations of

19   "the criminal bribery statutes").  In *Drop Stop*, defendant altered a non-infringement

20   opinion, evaded service, defaulted, misused information obtained during confidential

21   settlement negotiations, and engaged in late discovery and frivolous motions practice.

22   *Drop Stop LLC v. Jian Qing Zhu*, 757 F. App'x 994, 998 (Fed. Cir. 2019).  And in

23   *Tinnus*, defendant "knew its inequitable conduct claim was weak because it barely

24   survived Plaintiffs' initial motion to dismiss," "abuse[d]" the court's "emergency

25   motion practice," "brought numerous unmeritorious motions" on the same issues,

26   "filed a belated motion to dismiss this case just a few months before trial," and

27   "engaged in sanctionable discovery misconduct."  *Tinnus Enters., LLC v. Telebrands*

28   *Corp.*, 369 F. Supp. 3d 704, 745 (E.D. Tex. 2019).

WD's actions are not comparable.  Fees are not warranted here because (1) this was mine-run litigation with wins and loss on both sides (not remotely litigation misconduct), (2) WD took objectively reasonable positions (albeit not always successfully), and (3) there was no allegation, let alone finding, of willful infringement.  For any, or all, of those reasons, this case is routine, not exceptional.

### 1.    WD Did Not Engage in Litigation Misconduct

MRT points to seven instances of purported litigation misconduct: (1) later production of anisotropy data alongside motions to strike MRT's infringement contentions, (2) testimony regarding the "cap layer" MRT contends is inconsistent, (3) non-infringement arguments that were struck, (4) arguments made in expert reports and at trial that were struck, (5) non-infringement arguments MRT contends are contrary to the Court's claim construction order, (6) arguments MRT contends WD improperly maintained, and (7) purportedly re-raising already-stricken theories at trial.  Many of MRT's arguments are mischaracterizations and none of them—alone or together—render this case exceptional.

### a.    WD Did Not Delay Production of or Misrepresent Anisotropy Data

MRT attributes malintent to WD not producing anisotropy data for alloy components until October-December 2023.  Dkt. 619 at 5, 11.  But WD produced the referenced documents prior to the January 30, 2024 close of fact discovery and prior to any substantive depositions in the case.  Dkt. 187.  *Cf. Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, No. 15-cv-10154, 2023 WL 3815276, at *5 (S.D.N.Y. June 5, 2023) (awarding fees where defendant provided financial information three years into the litigation, after the close of fact discovery, and after expert reports, despite a court order).  MRT, for its part, did not move to compel on this issue, which weighs against awarding fees.  *See Akamai Techs., Inc. v. MediaPointe, Inc.*, No. 2:22-cv-06233, 2024 WL 1699352, at *3 (C.D. Cal. Apr. 10, 2024) (finding that "failure to disclose [certain] communications … until the end of fact discovery" was not "egregious" in

1    part because the other party did not file "any motions to compel on this issue"); Dkt.

2    43(MRT's motion to compel production of documents for an additional 267 products

3    added in MRT's amended infringement contentions); Dkt. 38-1 (WD's co-pending

4    motion to strike the additional products).

5        MRT's revisionist retelling misrepresents the pattern of events.  In the

6    Complaint and MRT's February 21, 2023 amended infringement contentions, MRT

7    identified elemental compositions of oxygen, platinum, and chromium as

8    representative of anisotropy and relied on EDX analyses for those values.  Dkt. 38-1

9    at 2-3, 7.  Based on MRT's composition-based theory, WD identified that the accused

10   products could not meet certain claim limitations and on March 23, 2023 moved for

11   judgment on the pleadings and to strike MRT's amended infringement contentions for

12   at least that reason.  *Id.* at 2-5, 7, 14-15.

13       WD further explained, including through an accompanying declaration from

14   Dr. Bertero (WD's technical expert), that the sputtering process used to create the

15   accused products "produces intermixing" that "prevents one from determining

16   anisotropy of any individual layer *based on the target compositions of the layers* ...

17   nor by any other data possessed by WD" and that "WD does not measure the

18   anisotropy of the individual layers of its storage media."  *Id.* at 22-24 (emphasis

19   added).  None of those statements was inaccurate.  Dr. Bertero accurately conveyed

20   that there was no measurement of anisotropy of the layers in the accused products.

21       WD's later (but still timely) production included test data of independently

22   analyzed thin films showing Ku (anisotropy) values for raw materials.  Desai 2/9/24

23   Dep. Tr. at 196:12-15, 202:9-203:19 (describing Exhibit 11, which would become trial

24   exhibit JX2015, as providing test measurements for specific alloys in "thin film

25   form").  Dr. Bertero's testimony at trial was, again, consistent.  7/24/24 Vol. I Tr.

26   46:6-25 ("This is not in the products."), 47:5-23 (explaining that one document shows

27   "there is a Ku gradient"), 112:12-113:17 (explaining that "[y]ou do want to know in

28   general what the values of the magnetic properties are").

1    On May 4, 2023, the Court granted WD's motion for judgment on the pleadings
2    with leave to amend, compelled MRT to serve amended infringement contentions, and
3    denied WD's request to stay discovery in view of MRT adding 21 new claims and 267
4    new products.  Dkt. 82; *see also* Dkt. 38-1 at 24-25.  The information the Court found
5    that WD "presumably has … readily available" was recipe information for the 267
6    new products, Dkt. 82 at 9, that MRT acknowledges WD produced, Dkt. 619 at 9.  On
7    May 8, 2023 MRT then served, for the first time, requests for production directed to
8    anisotropy.  Dkt. 619-2 Request Nos. 45-46; *contra* Dkt. 619 at 5 (characterizing WD
9    as refusing to produce documents "MRT had sought since November 2022").  MRT's
10   amended infringement contentions incorporating the recipe data for the new products
11   suffered from deficiencies similar to those WD identified previously—this time
12   relying solely on platinum concentrations.  Dkt. 102-1 at 16-18; Dkt. 102-4 at 18-19.
13   Reasonably, WD filed another motion to strike.  Dkt. 102-1.  WD had already
14   succeeded on the merits of a similar motion, MRT was changing its infringement
15   positions, *and* MRT had already taken the position that "it is not possible to determine
16   anisotropy by looking only at one element" (the theory MRT now pursued).  Dkt. 73,
17   Coffey Decl. ¶¶ 18-21.

18   The Court denied WD's motion to strike on October 6, 2023.  Dkt. 153.
19   Meanwhile, in June 2023, WD agreed to search for documents reflecting
20   measurements of anisotropy.  Finger Decl., Ex. 1 (WD June 7, 2023 Responses to
21   Requests for Production) Response Nos. 45-46.  WD then found and produced the
22   documents containing the raw-material anisotropy data that ultimately became
23   exhibits at trial.

24   At trial, Dr. Bertero confirmed that the produced test data represented
25   anisotropies of raw materials, not layers of the storage media, and that WD does not
26   measure (and, accordingly, did not produce) data showing the anisotropy of such
27   layers.  7/24/24 Vol. I Tr. 32:24-34:17, 37:16-19, 46:6-25, 47:5-23, 112:12-113:17;
28   *see also* Dkt. 38-2 ¶¶ 40-41; Dkt. 76-1 ¶ 16.  While earlier declarations could have

1    been worded more precisely, inexact wording does not render a case exceptional.

2    *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373-77 (Fed.

3    Cir. 2015).

4    Finally, the figures in MRT's own motion bely its final argument, that,

5    regardless, there is no "dip" in anisotropy. Dkt. 619 at 12. MRT's "Overall Increase"

6    labels do not erase the fact that, even in the figures created by MRT, nearly all the

7    representative products have anisotropy values that rise and fall. Dkt. 619 at 3. Only

8    one product (5QB) out of 267 does not have a noticeable dip. And, in any case, all of

9    this occurred while the parties disputed the meaning of the "from layer to layer"

10   limitation, which the Court would not resolve until late December 2023. Dkt. 195 at

11   9-14, 30.

12                    **b.    WD Did Not Misrepresent Cap Layer Data**

13   MRT's second argument arises from the same fact pattern: WD's motions for

14   judgment on the pleadings and motions to strike grounded in MRT's infringement

15   theories at the time. WD did not represent that the cap layer has the highest

16   anisotropy; rather, based on MRT's eventually-dropped theory that anisotropy can be

17   derived from oxygen or platinum concentrations, WD explained that the cap layer

18   would have the highest anisotropy. Dkt. 102-1 at 22-23 ("the platinum concentration

19   of the cap is higher than the platinum concentration of the hard magnetic storage

20   layer"); *id.* (further explaining that high-anisotropy cap layers were known in the

21   industry and literature); Dkt. 70-1 at 16 ("platinum concentration is highest in the

22   uppermost cap layer, which is known to have a very high anisotropy"); Dkt. 38-1 at

23   20-21 ("Applying Plaintiff's theory based on high platinum and low chromium

24   concentrations, the cap layer with the very high platinum and low chromium

25   concentrations, would have higher anisotropy[.]"). That *MRT's* original infringement

26   theory proved to be demonstrably incorrect certainly does not indicate that WD

27   engaged in litigation misconduct. *See* Dkt. 619 at 12-14.

28

1    Regardless, where "the evidence shifted," and even where an "expert testified

2    inconsistently at trial," and the parties' adapted their positions as a result, a finding of

3    exceptionality is not warranted. *Alifax Holding SpA v. Alcor Scientific LLC*, Nos.

4    22-1641, 22-1723, 2024 WL 2932910, at *10 (Fed. Cir. June 11, 2024).

5             **c.    WD's February 9 Non-Infringement Arguments Did**

6                      **Not Rise to Misconduct and Were Already Struck**

7    MRT contends that WD's supplemental non-infringement interrogatory

8    responses—served before the close of fact discovery—nonetheless warrant a finding

9    of exceptionality. But MRT successfully moved to strike those arguments, Dkt. 324,

10   thereby obtaining an "appropriate remedy." *Cambrian*, 79 F. Supp. 3d at 1116; *see*

11   *also Khan*, 825 F. App'x at 772 (upholding denial of fees where the conduct "was

12   largely identical to the conduct … considered by the court in granting" another

13   remedy).

14   While MRT implies that WD filed a frivolous motion for summary judgment

15   on these excluded grounds, WD moved for summary judgment before the motion to

16   strike was decided due to the case schedule. Dkt. 187. The motion to strike and the

17   parties' motions for summary judgment were later heard and decided together. Dkt.

18   324 at 6. WD therefore did not and could not have known at the time that those

19   non-infringement positions would be excluded. The Court subsequently denied WD's

20   motion, as well as MRT's co-pending motion for summary judgment of

21   infringement—agreeing, however, that MRT's infringement case had weaknesses.

22   Dkt. 321 at 4, 8-9. WD then moved for reconsideration of only the narrow exclusion

23   of testing data, arguing that the Court overlooked certain details relating to case

24   timing. Dkt. 335. The Court denied the motion for reconsideration, Dkt. 441, and

25   WD proceeded without those arguments.

26

27

28

### d.    Portions of WD's Expert Reports and Trial Presentations Did Not Rise to Misconduct and Were Already Struck

MRT goes on to list other successful motions to strike narrow sections of expert reports. Dkt. 619 at 16-17. These, too, were already remedied. And, these, too—either alone or when considered alongside the other accused conduct—do not give rise to a "rare" case of "vexatious, unjustified … bad faith litigation," "an overall vexatious litigation strategy," or "numerous instances of litigation misconduct." *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, No. 18-cv-707, 2020 WL 757891, at *2 (D. Del. Feb. 14, 2020) (collecting cases and finding that arguments leading to motions to strike in combination with other issues did not warrant a finding of exceptionality), *aff'd*, 828 F. App'x 721 (Fed. Cir. 2020).

MRT also asserts that "WD raised yet another new noninfringement argument" at trial, referring to WD's position that the accused nucleation host does not "assist in switching" as required by the Court's construction. Dkt. 619 at 17; *see also* Dkt. 195 at 30. Characterizing this argument as "new" is inconsistent with MRT's basis for moving to strike, arguing at trial that the argument had *already* been "struck … as untimely." Dkt. 619 at 17; *see also* Dkt. 543. As explained in WD's brief in support of its motion for a new trial, the Court's order excluding this argument was prejudicial error for two reasons: (1) the argument was not the same as the argument that was previously struck (as MRT contended in support of its motion to strike) and (2) the argument was responsive to a late-raised theory from MRT. Dkt. 636.

MRT's expert (Dr. Re) argued for the first time in his February 13, 2024 opening expert report that the accused products must (in theory) switch in a domino-like fashion from layer to layer. Dkt. 359-4 (Re Report) ¶¶ 79-80, 117. This was MRT's only argument that the accused "nucleation host" satisfied the Court's construction of the term requiring the component to "assist in switching." Dkt. 195 at 30. MRT proceeded to repeatedly raise this argument at trial. 7/18/24 Vol. I Tr.

95:3-17; 7/18/24 Vol. II Tr. 75:16-80:13; 7/19/24 Vol. I Tr. 23:10-25:25, 31:22-32:16. In response, WD sought to introduce evidence and testimony that the accused nucleation host does not operate according to MRT's domino theory, an argument that was presented and preserved in WD's rebuttal expert report. Dkt. 395-9 ¶¶ 111-114. WD's pursuit of this argument was both proper and reasonable. And, as explained above, a successful motion to strike weighs *against* awarding fees.

### e.    WD Did Not "Persistent[ly] Disregard" This Court's Claim Construction Order

MRT next points to the Court's grant of a small slice of one of its motions *in limine*. Dkt. 473. WD reasonably read the Court's denial of MRT's summary judgment order as permitting argument about, for example, the "properties of the layers or stack" that would enable storage. Dkt. 395 at 6 (quoting Dkt. 321 at 10). Even if WD was wrong, unlike in *Spitz* (the sole case cited by MRT), the Court's claim construction order did not dispose of WD's entire case, nor did WD repeatedly and persistently disregard the Court's order. *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. 17-cv-660, 2018 WL 6164300, at *5 (C.D. Cal. June 7, 2018), *aff'd*, 773 F. App'x 625 (Fed. Cir. 2019). And, as described above, the Court's exclusionary order timely provided MRT with a remedy.

### f.    WD Did Not Disregard Other Rulings

MRT next refers to two adverse rulings that directly resulted from the timing of the relevant court order, which was entirely outside of the WD's control. First, with respect to WD's enablement and written description arguments, the Court denied WD's motion to amend its invalidity contentions to add those defenses on February 14, 2024. Dkt. 232. That is the day *after* WD served Dr. Victora's opening expert report on invalidity maintaining those arguments. *See* Dkt. 343-2 at Cover. Second, as described above, MRT's motion to strike WD's "four noninfringement arguments" was not granted until April 1, 2024. Dkt. 324. This time *over a month* after WD served Dr. Bertero's opening expert report on non-infringement. WD could not have

1  "attempt[ed] to evade the Court's rulings" as there were no rulings to evade.  *Contra*
2  Dkt. 619 at 19.

3         **g.**     **WD Did Not Seek to Raise Excluded Arguments at**
4                  **Trial**

5        Finally, MRT refers to arguments that were struck during the course of trial.
6  As explained in WD's motion for a new trial, these arguments were neither
7  impermissible nor otherwise excluded.  Indeed, they were excluded in error.  Dkt. 636.
8  At a minimum, it was reasonable for WD to raise these arguments at trial.

9        The first argument MRT contends was "previously struck" is that, while the
10  claims require both a hard magnetic storage layer and a distinct nucleation host, the
11  accused products switch and store as an entire stack, precluding a finding of two
12  separate modules.  The Court acknowledged in its summary judgment order this
13  "problem[]" arising from MRT relying on the entire stack as the accused hard
14  magnetic storage layer, agreeing with WD that MRT cannot identify "the same
15  components as meeting both 'the hard magnetic storage layer' and 'the nucleation
16  host.'" Dkt. 321 at 8-9.  Accordingly, in its opening statement at trial, WD emphasized
17  that the asserted claims require two distinct modules.  MRT tried to prevent WD from
18  presenting slides showing this, but the Court overruled the objections and allowed WD
19  to proceed.  7/16/24 Vol. I Tr. 15:5-18:21; 7/17/24 Vol. I Tr. 56:11-63:10; 7/17/24
20  Vol. II Tr. 33:6-41:18; 7/18/24 Vol. II Tr. 55:22-73:16; 7/19/24 Vol. II Tr.
21  53:12-56:21, 62:3-63:5.

22        Then, mid-trial, MRT moved to strike a *different* argument, discussed above:
23  "that the accused products do not have the claimed 'nucleation host' because the
24  [accused NH layers] purportedly do not assist in switching the [accused HMSL]."
25  Dkt. 543 at 2; *see also* Dkt. 555.  In arguing that motion, MRT stated that the ruling
26  *in limine* excluding *yet another* argument (reverse doctrine of equivalents or "RDOE")
27  extended to preclude WD from arguing that the Asserted Claims require both a hard
28  magnetic storage layer and a separate nucleation host.  *Compare* 7/23/24 Vol. I Tr.

7:23-25:12 *with* Dkt. 345-1 at 14-16 (MRT's MIL) *and* Dkt. 473 at 3-4 (excluding RDOE).  Contrary to MRT's representations, neither ruling had any bearing on whether WD could argue that the Asserted Claims require, but the accused products do not have, a distinct hard magnetic storage layer and a separate nucleation host. That argument was separately preserved, including throughout WD's technical expert's report.  7/23/24 Vol. I Tr. 18:22-20:15; Dkt. 395-9 (Bertero Report) ¶¶ 107-119.  Nevertheless, the Court found that WD could no longer pursue that argument through witness testimony or in its closing statement.  *See* 7/23/24 Vol. I Tr. 22:2-25:10; 7/25/24 Vol. II Tr. 154:6-155:18.  And WD did not attempt to do so.

MRT's objections to Dr. Bertero's demonstratives were not a separate event where WD sought to introduce the argument "again."  *Contra* Dkt. 619 at 20.  MRT's objections to Dr. Bertero's demonstratives were the first time the issue was raised *by MRT*.  7/23/24 Vol. I Tr. 16:15-18:19.  It was in this context that MRT latched onto the Court's exclusion of other arguments to preclude WD's non-infringement defense.

MRT then proposed and obtained a curative instruction that compounded the error, the prejudice to WD, and the windfall to MRT.  Dkt. 578.

The second argument MRT contends was already excluded is the single question:

> "Q. With the materials available to you at Western Digital, how thick would the G1 layers need to be to store information in magnetically oriented bits?"

7/24/24 Vol. I Tr. 110:17-111:13.  Although the G1 layers refer to layers within the accused products, MRT asserted that this question sought testimony regarding "prior art" and also (inconsistently) that "[i]t's totally irrelevant … to the claims."  *Id.*  The question is directed to subject matter far from the prior art bilayer media concepts or pre-suit communications excluded in the order MRT cited in its motion.  Dkt. 473 at 5-6.  Rather, the question was directed to whether the accused G1 layers could be

1  considered hard magnetic storage layers—a question directly relevant to the issues in

2  the case.

3        And, the third argument MRT contends was already excluded is any discussion

4  of the Hagedorn reference described and disclosed in the patent specification. 7/25/24

5  Vol. II Tr. 96:20-98:18.  Again, the order MRT cited in its motion does not exclude

6  this line of questioning.  The order excluded argument based on hindsight that "the

7  Asserted Patents establish (1) that Aharoni, Hagedorn, Victora, and Li were known in

8  the art to be relevant and related *and* (2) that it was known and routine to place the

9  HMSL on the bottom." Dkt. 473 at 8 (emphasis in original).  WD was permitted to

10  rely on the specification to "provide evidence for either of these facts independently."

11  *Id.* WD sought to do no more at trial. 7/25/24 Vol. II Tr. at 98:2 ("it's just a discussion

12  of what Hag[e]dorn teaches").

13        In sum, nothing MRT points to—alone or in combination—rises to the level of

14  litigation misconduct.  Rather, MRT catalogues motions it won and asserts without

15  support that WD's conduct must so egregious as to warrant a finding of exceptionality.

16              **2.    WD's Positions Were Not "Objectively Baseless"**

17        MRT also argues it is entitled to fees because "WD advanced weak and

18  unsubstantiated defenses." Dkt. 619 at 20.  To find that a case is exceptional based

19  on weak litigating positions, the positions must be "objectively baseless." *Nova*

20  *Chems. Corp. v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017).  The inquiry

21  is not directed to "the correctness or eventual success" of the position. *Id.* (quoting

22  *SFA Sys. LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015)).

23        Unlike either case cited by MRT, WD's positions were well-supported by both

24  fact and law.  In *Nova*, a losing defendant in a patent action filed a new fraud action

25  in equity (as other relief was time-barred) based on theories that were sparse and "not

26  even plausible." 856 F.3d at 1014-16 (citation omitted).  Accordingly, the district

27  court dismissed the action, awarded the defendant fees, and the Federal Circuit

28  affirmed.  *Id.*  And in *Innovation Sciences*, the patentee filed an eleven-patent suit

where eight patents were found ineligible at the motion to dismiss stage for creating a "sweeping universe of preemption," thereby rendering the case "weak at inception"; the subsequent claim construction ruling resulted in the claims of another patent being necessarily ineligible or invalid; for another patent, the only infringement theory was "plainly inconsistent with two separate claim constructions"; and for the last patent, the infringement theory was unclear. *Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 555-58 (Fed. Cir. 2021) (citations omitted). Accordingly, the district court granted summary judgment of non-infringement on the three patents remaining at that stage and ultimately awarded fees. *Id.* at 556.

Here, both parties had wins and losses over the course of the proceeding. And, despite motions for summary judgment, the case proceeded to trial. While MRT prevailed, WD's positions were not so weak that the case "stands out from others." *Octane Fitness*, 572 U.S. at 554. Tellingly, MRT relies entirely on arguments WD presented at trial and disputes the underlying merits.

*First*, MRT argues that its own failure to connect the correct product data to the coercive field limitations for the Group 3 products (5X1) is, somehow, a deficient argument on the part of WD. For this best-selling group of products, MRT used data for the never-sold Cobra G product, not representative product 5X1 or any other product in Group 3. 7/18/24 Vol. II Tr. 89:2-92:17; JX2028; *see also* Dkt. 231 (stipulating to representative products). MRT's expert admitted he did not confirm those values apply to any accused product. 7/18/24 Vol. II Tr. 92:18-98:21. And WD's technical witness confirmed that it would be inappropriate to use data for the Cobra G product because the differing substrate, parameters, process, and grain size would result in different intrinsic properties for the material. 7/19/24 Vol. II Tr. 58:14-59:25. It was MRT's burden of proof and MRT failed to meet it.

*Second*, MRT mischaracterizes WD's non-infringement argument that the accused hard magnetic storage layers do not "store information" as required by the Court's construction because the entire stack is needed for storing to occur. In other

1    words, the accused hard magnetic storage layer cannot, itself, store.  MRT attempts to

2    recast WD's non-infringement position as requiring the HMSL to be "take[n] out"

3    from the stack or media and store information when physically separated from the

4    other layers.  7/24/24 Vol. I Tr. 74:8-11; *see also* 7/18/24 Vol. II Tr. 131:22-132:7.

5    This is not WD's position.  Rather, the claims and the Court's construction require a

6    distinct hard magnetic storage layer that itself stores information in magnetically

7    oriented bits—regardless of whether it is located within a stack. Dkt. 195 at 30; Dkt.

8    321 at 8-9.

9        *Third*, MRT implies that it was unreasonable for WD to challenge its expert's

10    reliance on the $2K/M_s$ coercivity estimation to show infringement.  While the patent

11    permits the use of this formula to estimate the coercive field in some contexts, the

12    specification unequivocally establishes that this formula applies only to a bilayer

13    "structure where the magnetization in the hard and soft layer is parallel and uniform."

14    '864 patent at 6:47-51.  MRT's expert (Dr. Re) admitted as much, testifying that this

15    portion of the specification relates to "a structure that only has one hard and one soft

16    layer."  7/18/24 Vol. II Tr. 103:2-104:17.  This bilayer structure is, however,

17    inconsistent with the claim language (which recites a "multilayer structure") and the

18    accused products.  *E.g.*, '864 patent cl. 1; *see also* 7/18/24 Vol. I Tr. 25:10-26:5 ("more

19    than two layers"); 7/18/24 Vol. II Tr. 104:2-4 (confirming that the "bilayer structure

20    is not the claimed invention").  In fact, the named inventor (Dr. Suess) admitted that

21    there are "some conditions under which that equation … would be a very bad

22    approximation." 7/17/24 Vol. II Tr. 43:24-44:3.

23        *Fourth*, MRT describes certain invalidity arguments as "thin."  Dkt. 619 at

24    22-23.  Thin, however, is not objectively baseless, as demonstrated by the fact that the

25    Court denied summary judgment on these issues.  Dkt. 323 at 8-9 (finding that the

26    same invalidity theories "raise a triable issue of fact").  "[T]he denial of summary

27    judgment can be an indication that the party's claims were objectively reasonable and

28

1   suitable for resolution at trial." *Alifax*, 2024 WL 2932910, at *11 (internal quotation

2   marks and citation omitted).

3   And, finally, MRT refers to a nomination letter that does not affect or inform

4   the merits of the case—much less the reasonableness of WD's positions.

### 3.    There Was No Willful Infringement

6   Another factor weighing against awarding fees is the absence of willful

7   infringement findings (or even allegations) in this case. As this Court has held, "a

8   finding of willful infringement is highly relevant to finding a case exceptional."

9   *Guangzhou Trading Co., Ltd. v. Dbest Prods., Inc.*, No. 2:21-cv-04758, 2023 WL

10  4203491, at *3 (C.D. Cal. Apr. 28, 2023); *see also SiOnyx LLC v. Hamamatsu

11  Photonics K.K.*, 981 F.3d 1339, 1355 (Fed. Cir. 2020) (describing willful infringement

12  as "among the reasons that a court may find a case to be exceptional" (citation

13  omitted)); *Top Lighting Corp. v. Linco, Inc.*, No. 15-cv-01589, 2019 WL 13020830,

14  at *6-7 (C.D. Cal. Aug. 26, 2019). Historically, willful infringement is one type of

15  "independently sanctionable conduct" sufficient to justify a fees award. *Octane

16  Fitness*, 572 U.S. at 555. Without such "independently sanctionable conduct" (like

17  willfulness) fees awards are "rare." *Id.* Under the totality of the circumstances test,

18  the lack of willful infringement weighs against finding exceptionality. And, even

19  when infringement is found to be willful, an accompanying fees award is far from

20  mandatory. *Id.*

21                          *    *    *

22  Because MRT has not shown that WD engaged in litigation misconduct, took

23  objectively unreasonable positions, or willfully infringed, this case was routine (not

24  exceptional) and fees are not warranted.

### B.    The Requested Fees Are Not Reasonable

26  If the Court nonetheless imposes fees, the amount should at least be reduced.

27  *First*, MRT is not entitled to full fees based on litigation misconduct. Because

28  fees are compensatory and not punitive, the amount "imposed must in some way be

1    related to bad faith and misconduct." *Beckman Instruments,* 892 F.2d at 1553.  Full
2    fees are only warranted where misconduct is "pervasive enough to infect the entire
3    litigation" or "severely affected every stage of the litigation." *Large Audience Display*
4    *Sys., LLC v. Tennman Prods., LLC.*, 745 F. App'x 153, 157 (Fed. Cir. 2018)
5    (collecting cases) (internal citations and quotations omitted).  MRT makes no such
6    showing. And MRT has not requested or calculated fees for any particular misconduct
7    or even any particular stage of litigation.

8        *Second*, a requested amount is presumed reasonable only if it reflects the
9    multiplication of a reasonable number of hours expended with a reasonable hourly
10   rate.  Here, neither the rates nor the hours used in MRT's calculation are reasonable.

11       *Third*, although MRT provides an attorney time report in support of its motion,
12   many entries do not provide sufficient detail to determine whether the fees incurred
13   were "reasonably expended" or "excessive, redundant, or otherwise unnecessary."
14   *Hensley*, 461 U.S. at 434.  These vague entries also foreclose linking the requested
15   fees to any alleged misconduct.  Accordingly, if the Court decides to award fees, the
16   amount MRT requests should be reduced to $2,929,500, the reasonable lodestar
17   amount of $5,548,296 reduced by 34% in view of MRT's inclusion of clearly
18   irrelevant time entries, as well as a further reduction of the resulting amount by 20%
19   for block-billing practices.  Finger Decl. ¶¶ 9, 20-22.

20                   **1.**    **The Rates Requested By MRT Are Unreasonable**

21       "In determining reasonable hourly rates, the Court considers the rates for
22   similar work by attorneys of comparable skill, experience, and reputation in the
23   community." *Lakim Indus., Inc. v. Linzer Prods. Corp.*, No. 2:12-cv-04976, 2013 WL
24   1767799, at *8 (C.D. Cal. Apr. 24, 2013) (citation omitted), *aff'd*, 552 F. App'x 989
25   (Fed. Cir. 2014).  The relevant community is where the Court sits, *id.*, and in patent
26   cases, courts "routinely rely upon the AIPLA survey," *Spitz Techs. Corp. v. Nobel*
27   *Biocare USA LLC*, No. 17-cv-00660, 2018 WL 6016149, at *5 (C.D. Cal. Aug. 13,
28   2018), *aff'd*, 773 F. App'x 625 (2019).

1   While MRT includes a comparison to a recent AIPLA survey in support of its

2   fees motion, MRT uses the ninetieth percentile as its benchmark for reasonableness.

3   Dkt. 619-1 at 7-8.  Generally, courts in this district rely on the survey's average,

4   median, or third quartile figures.  *See, e.g.*, *Spitz*, 2018 WL 6016149, at *5 (using the

5   third quartile); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp.

6   3d 1331, 1337-38 (C.D. Cal. 2015), *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) (using

7   the average and the third quartile).  MRT's rates are substantially higher than the third

8   quartile in the AIPLA survey based on either experience ($625-$680 for 10-34 years)

9   or location ($780 for Los Angeles).  *Compare* Dkt. 619-1 ¶ 18 *with id.* ¶ 19; *see also*

10  Finger Decl. ¶¶ 4-5.

11  Unlike other cases where this Court and others in this district have found rates

12  to be reasonable in view of the AIPLA survey, RAK's rates include rates that are more

13  than double.  Dkt. 619-1 ¶ 18.  All but one attorney's hourly rate is over $150 per hour

14  higher.  *Cf. Spitz*, 2018 WL 6016149, at *5 (finding rates over the AIPLA third quartile

15  by $49 or less to be reasonable); *Universal Elecs.*, 130 F. Supp. 3d at 1337-38 (finding

16  rates below the AIPLA third quartile to be reasonable).

17  RAK's rates are also higher than the figures set forth in the Real Rate Report,

18  ranging from $885 to $1,169.  Dkt. 619-1 ¶¶ 20-21 (containing a typographical error

19  indicating a rate of $1,303).  Those rates do not, however, adjust for years of

20  experience and reflect only law firms with more than 1,000 attorneys, which RAK is

21  not.  Dkt. 619-1 ¶¶ 20-21 & n.2.

22  Beginning with a reasonable rate, the highest third quartile AIPLA rate of $780

23  and multiplying it by the total attorney hours set forth in MRT's declaration results in

24  $5,548,296 (not over $8 million) in fees.  Finger Decl. ¶¶ 5-9.

## 2.    MRT's Documentation Is Inadequate

26  The party moving for fees must "provide adequate documentation of services

27  rendered, and vague entries may be disallowed."  *Spitz*, 2018 WL 6016149, at *4

28  (citation omitted); *see also Hensley*, 461 U.S. at 433.

The overwhelming majority of MRT's billing entries do not provide sufficient detail to demonstrate that the work was reasonable, necessary, or related to alleged misconduct. For example, over 140 entries contain vague descriptions, such as "work on discovery," without any regard to the subject matter or purpose of the discovery. *E.g.*, Dkt. 619-4 at 1-18. Another 158 refer to "work on oppositions," *e.g.*, *id.* at 30-31, "prepare for hearing," *e.g., id.* at 33, "[t]eam call," *e.g., id.* at 22, "[r]eview documents," *e.g.*, *id.* at 7, or "case emails," *e.g.*, *id.* at 5-10; and 62 refer generally to expert reports, *e.g.*, *id.* at 13. Accordingly, the Court should exclude these entries from any award, and reduce the amount by at least 20%.[1] *See Sigma Enters., LLC v. Alluring Deals, LLC*, No. 17-cv-171074, 2017 WL 10439659, at *12 (C.D. Cal. Nov. 15, 2017) ("[V]ague entries will not be included in the fee award." (citation omitted)); *Zeigler v. Cnty. of San Luis Obispo*, No. 17-cv-9295, 2023 WL 3432238, at *7-8 (C.D. Cal. Mar. 1, 2023) (applying a percent reduction based on the number of vague billing entries).

### 3.   MRT Cannot Demonstrate a Causal Connection Between the Requested Fees and the Purported Misconduct

The lack of specificity in MRT's billing entries further prevents MRT from demonstrating the fees MRT "would not have paid but for the [purported] misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)); *see also In re PersonalWeb Techs. LLC*, 85 F.4th 1148 (Fed. Cir. 2023).

In its motion, MRT relies on a narrow set of motions and rulings to argue misconduct: anisotropy data and related motions, specific arguments that were struck, maintaining a particular non-infringement defense, and raising certain issues at trial. MRT does not attempt to relate any entries to the accused conduct, nor are the

---

[1] WD identifies 360 deficient entries out of 1780 lines contained in Dkt. 619-4. Finger Decl. ¶¶ 11-16. The use of lines (instead of entries) weighs in favor of MRT and WD has rounded down. *Id.*.

connections readily ascertainable. Many entries are, on their face, demonstrably unrelated to the issues raised in MRT's motion. For example, 23 entries relate to MRT's amended complaints, *e.g.*, Dkt. 619-4 at 3; 140 relate to claim construction ("claim construction" or "CC"), *e.g.*, *id.* at 6; 63 relate to damages issues, *e.g.*, *id.* at 10-11; and 33 relate to infringement contentions, *e.g.*, *id.* at 4. The Court should therefore further reduce any fees award by at least 14%.[2]

### 4. MRT Relies on Block-Billing, Which Warrants a Reduction

MRT also practices block-billing, which "makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). This Court and others in this district have applied reductions of 10-30% to fees based on block-billing. *See e.g.*, *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058, 2021 WL 2414856, at *5 (C.D. Cal. June 14, 2021), *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022); *Top Lighting Corp. v. Linco, Inc.*, No. 15-cv-1589, 2019 WL 13020830, at *8 (C.D. Cal. Aug. 26, 2019). Accordingly, WD requests that any award be further reduced by at least 20%.

## IV. CONCLUSION

For the foregoing reasons, WD respectfully requests that the Court deny MRT's motion for attorneys' fees because the case is not exceptional. If the Court finds this case to be exceptional, WD respectfully requests that the Court limit MRT's fee award to a reasonable, compensatory amount of no more than $2,929,500.

DATED: October 7, 2024       **LATHAM & WATKINS LLP**

By:  */s/ Douglas E. Lumish*
     Douglas E. Lumish
     Richard G. Frenkel
     Gabriel K. Bell
     Patricia Young
     Joseph H. Lee
     Linfong Tzeng
     Sarah W. Wang

---

[2] WD identified 259 deficient entries. Finger Decl. ¶¶ 17-19.

1
2      Charles S. Dameron
       Ashley N. Finger
3      Chaarushena Deb

4      **STRADLING YOCCA CARLSON & RAUTH LLP**
5
6      Steven M. Hanle
       Salil Bali
7      Ahmad S. Takouche
       Henning Schmidt
8
9      *Attorneys for Defendant and Counterclaim Plaintiff Western Digital Technologies, Inc.*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WESTERN DIGITIAL'S OPP. TO MOT. FOR ATTORNEYS' FEES
8:22-cv-01599-JVS-DFM

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2        The undersigned, counsel of record for Western Digital Technologies,

3    Inc. certifies that this brief contains 6,936 words, which [choose one]:

4            _X_  complies with the word limit of L.R. 11-6.1.

5            ____ complies with the word limit set by court order dated [date].

6

7    DATED:  October 7, 2024            **LATHAM & WATKINS LLP**

8                                By:   <u>*/s/ Douglas E. Lumish*</u>
                                        Douglas E. Lumish
9                                       Richard G. Frenkel
                                        Gabriel K. Bell
10                                      Patricia Young
                                        Joseph H. Lee
11                                      Linfong Tzeng
                                        Sarah W. Wang
12                                      Charles S. Dameron
                                        Ashley N. Finger
13                                      Chaarushena Deb

14
                                        **STRADLING YOCCA CARLSON &**
15                                      **RAUTH LLP**

16
                                        Steven M. Hanle
17                                      Salil Bali
                                        Ahmad S. Takouche
18                                      Henning Schmidt

19
                                        *Attorneys for Defendant and*
20                                      *Counterclaim Plaintiff Western Digital*
                                        *Technologies, Inc.*
21

22

23

24

25

26

27

28